Declaration of George M. Borababy

Exhibit # 5

LEXSEE 2006 US DIST LEXIS 45938

**United States of America, Plaintiff, v. UnitedHealth Group Incorporated and PacifiCare Health Systems, Inc., Defendants.**

Civil Action No. 1:05CV02436

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

*2006 U.S. Dist. LEXIS 45938; 2006-1 Trade Cas. (CCH) P75,255*

**May 23, 2006, Filed**

**COUNSEL:** [*1] For UNITED STATES OF AMERICA, Plaintiff: Jon B. Jacobs, U.S. DEPARTMENT OF JUSTICE, Anti-Trust Division, Washington, DC; Nicole Gordon, U. S. DEPARTMENT OF JUSTICE, Washington, DC.

For UNITEDHEALTH GROUP INCORPORATED, Defendant: Laura A. Wilkinson, WEIL GOTSHAL & MANGES LLP, Washington, DC.

For PACIFICARE HEALTH SYSTEMS, INC., Defendant: Gary Alan MacDonald, SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP, Washington, DC.

**JUDGES:** RICARDO M. URBINA, United States District Judge.

**OPINION BY:** RICARDO M. URBINA

**OPINION:**

FINAL JUDGMENT

WHEREAS, plaintiff, United States of America, filed its Complaint on December 19, 2005, plaintiff and defendants, defendant UnitedHealth Group Incorporated and defendant PacifiCare Health Systems, Inc., by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain [*2] Divestiture of certain rights or assets by defendants, and their adherence to certain injunctions, to ensure that competition is not substantially lessened;

AND WHEREAS, plaintiff requires defendants to make certain Divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, defendants have represented to the United States that the Divestitures required by this Final Judgment can and will be made, and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the Divestiture or injunctive provisions contained herein;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

**I. JURISDICTION**

This Court has jurisdiction over the subject matter of, and each of the parties to, this action. The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, as amended, *15 U.S.C. § 18*.

**II. DEFINITIONS**

As used in this Final Judgment:

A. "Boulder" means the Metropolitan Statistical [*3] Area comprising Boulder County, Colorado.

B. "Boulder Contract" means that portion of PacifiCare's current contract with the Regents of the University of Colorado, effective January 1, 2004, which covers the commercial HMO insurance of approximately six thousand and sixty-six (6,066) members as of June 30, 2005 resident in Boulder.

C. "Commercial Health Insurance Products" means United or PacifiCare products for comprehensive commercial health coverage (whether Administrative Ser-

Case 1:06-cv-01221-ESH   Document 13-12   Filed 02/21/2007   Page 3 of 8

Page 2
2006 U.S. Dist. LEXIS 45938, *; 2006-1 Trade Cas. (CCH) P75,255

vices Only ("ASO") or fully insured) including, but not limited to: (1) Health Maintenance Organization ("HMO") group products; (2) Preferred Provider Organization ("PPO") group products; (3) Point-of-Service ("POS") group products; (4) indemnity insurance group products; and (5) Exclusive Provider Organization ("EPO") group products, but does not include Medicare Health Insurance Products.

D. "CTN" means CareTrust Networks, formerly known as California Physicians' Service Agency, Inc. ("CPSA"), a California business corporation that operates the CTN network in California, its successors and assigns, and its parent, subsidiaries, divisions, groups, affiliates, partnerships, and their respective directors, [*4] officers, managers, agents, and employees.

E. "Divestiture," "Divest" or "Divesting" means the sale, transfer, ceding, assignment or disposition of the beneficial interest in a contract or policy for health care coverage included in the Divestiture Assets by commercially reasonable means in accordance with applicable law.

F. "Divestiture Assets" means the Tucson Commercial Insurance Contracts and the Boulder Contract, and may also include copies of all relevant contracts, business records, data and information that specifically relate to the Divestiture Assets, but excluding defendants' proprietary assets and know-how used for general application in defendants' businesses.

G. "Legacy United Customers" means existing or new customers that have, prior to the closing of the Transaction, committed to purchase or been issued a quote for health care services from United using the CTN network in California.

H. "Transition United Customers" means any customers that have, after the closing of the Transaction, received a quote for health care services from United under a policy that has an effective date of July 5, 2006 or earlier. Such customers and their members may access the CTN network [*5] until no later than July 5, 2006.

I. "Medicare Health Insurance Product" means any plan, whether HMO, PPO, fee-for-service or other, providing managed care Medicare coverage under any of the following: Medicare Part B, Medicare Advantage, Medicare Cost Plans, or the Programs of All Inclusive Care (PACE).

J. "PacifiCare" means defendant PacifiCare Health Systems, Inc., a Delaware corporation with its headquarters in Cypress, California, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their respective directors, officers, managers, agents, and employees.

K. "Purchaser" or "Purchasers" means the entity or entities to whom the Divestiture Assets are Divested.

L. "Transaction" means the merger contemplated by the Agreement and Plan of Merger dated July 6, 2005, by and among United, Point Acquisition LLC and PacifiCare.

M. "Tucson" means the Metropolitan Statistical Area consisting of Pima County, Arizona.

N. "Tucson Commercial Insurance Contracts" means contracts or policies identified by United for the provision of any Commercial Health Insurance Products covering at least fifty-four thousand five hundred and seventeen [*6] (54,517) members who reside or work in Tucson, representing the total number of resident commercially insured members in Tucson that PacifiCare reported as of June 30, 2005. Such contracts include contracts identified by United covering at least 7,581 members that obtain health coverage under United or PacifiCare contracts for Commercial Health Insurance Products with small group employers (2-50 employees) sitused in Tucson ("Tucson Small Group Employers"), such 7,581 members representing the total number of resident Tucson Small Group Employer members that PacifiCare reported as of June 30, 2005. Such contracts may otherwise include contracts identified by United for any Commercial Health Insurance Products entered into by PacifiCare or United.

O. "United" means defendant UnitedHealth Group Incorporated, a Minnesota corporation with its headquarters in Minnetonka, Minnesota, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their respective directors, officers, managers, agents, and employees.

III. APPLICABILITY

A. This Final Judgment applies to Pacificare and United, as defined above, and to all other [*7] persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B. Defendants shall require, as a condition of the sale or other disposition of all or substantially all of their assets or of lesser business units that include either the Divestiture Assets or any rights under United's network access agreement with CareTrust Networks, that the acquirer agrees to be bound by the provisions of this Final Judgment. Defendants however, need not obtain such an agreement from any Purchaser of the Divested Assets.

IV. DIVESTITURES

A. Defendants are hereby ordered and directed to Divest the Divestiture Assets in a manner consistent with this Final Judgment to one or more Purchasers accept-

Case 1:06-cv-01221-ESH    Document 13-12    Filed 02/21/2007    Page 4 of 8

2006 U.S. Dist. LEXIS 45938, *; 2006-1 Trade Cas. (CCH) P75,255

Page 3

able to the United States, in its sole discretion, within: (i) one hundred and twenty (120) calendar days after the date on which the Transaction closes; or (ii) within five (5) days after notice of the entry of this Final Judgment by the Court, whichever is later. If approval or consent from any government unit is necessary with respect to Divestiture of the Divestiture Assets by defendants or the Divestiture Trustee, [*8] and if applications or requests for approval or consent have been filed with the appropriate governmental unit within one hundred and twenty (120) calendar days after the date on which the Transaction closes, but an order or other dispositive action on such applications has not been issued before the end of the period permitted for Divestiture, the period shall be extended with respect to Divestiture of those Divestiture Assets for which governmental approval or consent has not been issued until five (5) business days after such approval or consent is received.

B. The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed sixty-five (65) days total and shall notify the Court in such circumstances. Defendants agree to use their best efforts to Divest the Divestiture Assets as expeditiously as possible.

C. In accomplishing the Divestitures ordered by this Final Judgment, defendants promptly shall make known, by usual and customary means, the availability of the Divestiture Assets. Defendants shall inform any person making an inquiry regarding a possible purchase that the Divestiture is being made pursuant to this Final Judgment [*9] and shall provide such person with a copy of this Final Judgment. Defendants shall offer to furnish to all prospective Purchasers, subject to reasonable confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process, except information and documents subject to the attorney-client privilege or the attorney work-product privilege. Defendants shall make available such non-privileged information to the United States at the same time that such information is made available to prospective Purchasers.

D. Defendants shall permit prospective Purchasers of the Divestiture Assets to have reasonable access to personnel and access to any and all financial, operational, or other documents and information as is customarily provided as part of a due diligence process for a transaction of this type.

E. Defendants shall provide to prospective Purchasers, and to the United States, information relating to the personnel in the sales and account management of the Divestiture Assets to enable such Purchasers to make offers of employment to those persons. Prior to Divestiture, defendants shall not interfere with any negotiations [*10] by any Purchaser to employ any such persons. For a period of one year from the date of the completion of each Divestiture, defendants shall not hire or solicit to hire any such person who was hired by any Purchaser, unless such individual has (1) a written offer of employment from a third party in such capacity or (2) a written notice from such Purchaser stating that the Purchaser does not intend to continue to employ the individual in such capacity.

F. Defendants shall warrant to all Purchaser(s) that the contracts included in the Divestiture Assets are in full force and effect on the date that binding agreements for the Divestiture are signed.

G. Defendants shall use their best efforts to Divest the Divestiture Assets and procure any consents and approvals required for such Divestitures.

H. Pursuant to a transition services agreement on customary commercial terms and conditions and approved by the United States, at the Purchaser's request, defendants will provide certain transitional support services for the Divestiture Assets for a period of time not to exceed eighteen (18) months from the date of Divestiture. These services may include claims processing, computer operations [*11] support, eligibility, enrollment, utilization management and run-out administration and such other services as are reasonably necessary to operate the Divestiture Assets.

I. Unless the United States otherwise consents in writing, the Divestiture pursuant to Section IV, or by trustee appointed pursuant to Section V, shall include the entire Divestiture Assets and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by the Purchaser(s) as part of a viable, ongoing business engaged in the sale of Commercial Health Insurance Products. The Divestiture of the Divestiture Assets may be made to one or more Purchasers, provided that in each instance it is demonstrated to the sole satisfaction of the United States that the Divestiture Assets will remain viable and the Divestitures will remedy the competitive harm alleged in the Complaint. The Divestitures, whether pursuant to Section IV or Section V of this Final Judgment: (1) shall be made to Purchaser(s) that, in the United States's sole judgment, each have the intent and capability (including the necessary managerial, operational, technical, and financial [*12] capability) to compete effectively in the sale of Commercial Health Insurance Products; and (2) shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between defendants and any Purchaser gives defendants the ability to interfere with the Purchaser's ability to compete effectively.

Case 1:06-cv-01221-ESH   Document 13-12   Filed 02/21/2007   Page 5 of 8

2006 U.S. Dist. LEXIS 45938, *; 2006-1 Trade Cas. (CCH) P75,255

Page 4

J. If, before defendants can Divest the Boulder Contract, the University of Colorado has terminated its entire contract with PacifiCare for commercial HMO insurance or the portion thereof that relates to the Boulder membership as defined in this Final Judgment and has awarded that entire contract or the Boulder portion to a Commercial Health Insurance plan other than United or PacifiCare, then defendants shall not be required to Divest the Boulder Contract or any other contracts or assets in the Boulder MSA. If the University of Colorado has not terminated the contract entirely or the Boulder portion but, in the United States's sole discretion, Divesting the Boulder Contract as it is defined in this Final Judgment would be unreasonably disruptive to the University of Colorado, then defendants shall instead be required to Divest contracts [*13] identified by United covering at least 6,066 members who reside or work in Boulder and who obtain health coverage under United or PacifiCare contracts for Commercial Health Insurance Products.

### V. APPOINTMENT OF TRUSTEE

A. If defendants have not Divested the Divestiture Assets within the time period specified in Section IV, defendants shall notify the United States of that fact in writing. Upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to effect the Divestiture of any of the Divestiture Assets not already Divested or subject to a binding Divestiture agreement.

B. After the appointment of a trustee becomes effective, only the trustee shall have the right to Divest the Divestiture Assets. The trustee shall have the power and authority to accomplish the Divestitures to Purchaser(s) acceptable to the United States: (1) at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment; (2) subject to Section V.C below, by hiring at the cost and expense of defendants any investment bankers, attorneys, [*14] or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the Divestitures; and (3) with such other powers as the Court deems appropriate.

C. Defendants shall not object to any Divestiture by the trustee on any ground other than the trustee's malfeasance. Any such objections by defendants must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

D. The trustee shall serve at the cost and expense of defendants, on such terms and conditions as the United States approves, and shall account for all monies derived from the sale of the Divestiture Assets sold by the trustee and for all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to defendants and the trust shall then be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets and based [*15] on a fee arrangement providing the trustee with an incentive based on the price and terms of the Divestitures and the speed with which they are accomplished, but timeliness is paramount.

E. Defendants shall use their best efforts to assist the trustee in accomplishing the required Divestitures, including best efforts to effect all necessary regulatory approvals and consents. The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the personnel, books, and records that relate to the Divestiture Assets, and defendants shall develop financial or other information relevant to the Divestiture Assets as the trustee may reasonably request, subject to customary confidentiality assurances.

F. After its appointment, the trustee shall file monthly reports with the United States and the Court setting forth the trustee's efforts to accomplish the Divestitures ordered under this Final Judgment; provided, however, that to the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address and [*16] telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to Divest the Divestiture Assets.

G. If the trustee has not accomplished such Divestitures within six (6) months after its appointment, the trustee thereupon shall file promptly with the Court a report setting forth (1) the trustee's efforts to accomplish the required Divestitures; (2) the reasons, in the trustee's judgment, why the required Divestitures have not been accomplished; and (3) the trustee's recommendations; provided, however, that to the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. The trustee shall at the same time furnish such report to the United States, who shall have the right to be heard and to make additional recommendations consistent with the purpose of the trust. The Court shall enter thereafter [*17] such orders as it shall deem appropriate in order to carry out the purpose of this Final Judgment

Case 1:06-cv-01221-ESH    Document 13-12    Filed 02/21/2007    Page 6 of 8

Page 5
2006 U.S. Dist. LEXIS 45938, *; 2006-1 Trade Cas. (CCH) P75,255

which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

### VI. NOTICE OF PROPOSED DIVESTITURES

A. Within two (2) business days following execution of a definitive Divestiture agreement, contingent upon compliance with the terms of this Final Judgment, to effect, in whole or in part, any proposed Divestitures pursuant to Section IV or Section V of this Final Judgment, defendants or the trustee, whichever is then responsible for effecting the Divestitures, shall notify the United States of the proposed Divestitures. If the trustee is responsible, it shall similarly notify defendants. The notice shall set forth the details of the proposed Divestiture and list the name, address, and telephone number of each person not previously identified who offered to, or expressed an interest in or a desire to, acquire any ownership interest in the Divestiture Assets that is the subject of the binding contract, together with full details of same.

B. Within fifteen (15) calendar days of its receipt of such notice, [*18] the United States may request from defendants, the trustee, the proposed Purchaser(s), or any other third party additional information concerning the proposed Divestitures, the proposed Purchaser(s), and any other potential Purchaser(s). Defendants and the trustee shall furnish any additional relevant information requested from them promptly, and in all events within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C. Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from defendants, the trustee, the proposed Purchaser(s), and any third party, whichever is later, the United States shall provide written notice to defendants and the trustee, if there is one, stating whether it objects to the proposed Divestitures. If the United States provides written notice to defendants and the trustee that it does not object, then the Divestitures may be consummated, subject only to defendants' limited right to object to the Divestiture under Section V.C of this Final Judgment. Absent written notice that the United States [*19] does not object to the proposed Purchaser(s) or upon objection by the United States, such Divestitures proposed under Section IV or Section V shall not be consummated. Upon objection by defendants under Section V.C, a Divestiture proposed under Section V shall not be consummated unless approved by the Court.

### VII. INJUNCTIVE PROVISIONS

A. Effective one (1) year after the entry of this Final Judgment, United shall discontinue renting the CTN provider network in the State of California and shall not rent the CTN provider network for the period of the Final Judgment.

B. Effective upon the closing of the Transaction, United shall not:

(1) communicate with CTN in any way regarding the introduction of new United or CTN Commercial Health Insurance Products, in California or elsewhere;

(2) permit any United customer, other than a Legacy United Customer or a Transition United Customer, to access the CTN network, except that such access by a Transition United Customer shall cease on or before July 5, 2006;

(3) have any involvement with CTN relating to negotiations over rates or other terms with any physician or hospital in any provider network;

(4) have any involvement with CTN [*20] relating to the development of any provider network;

(5) exchange with CTN any non-public information (including, but not limited to, information relating to PacifiCare's network or the sale or marketing of Commercial Health Insurance Products) that is not necessary for United's rental of provider services from or access by Legacy United Customers or Transition United Customers to CTN's network;

(6) engage in any joint efforts with CTN to sell or market Commercial Health Insurance Products.

This Section VII.B shall not affect CTN's existing network maintenance and network standards obligations and any other existing CTN obligations to United with respect to providers in the CTN network.

C. United shall develop and enact procedures to ensure, during the time period in which it continues to rent CTN's network in California, that any non-public information obtained from CTN about CTN's network, or any other provider network, is not disseminated to persons other than those with a legitimate need for it. Such procedures shall ensure that:

(1) any non-public information obtained from CTN about CTN's network is not disseminated to any United employee who has responsibility for either: [*21] (a) negotiating with physicians or hospitals in any provider network; or (b) selling Commercial Health Insurance Products to any customer other than a Legacy United Customer or a Transition United Customer;

(2) any non-public information about PacifiCare's network that is not necessary for United's rental of provider services from or access by Legacy United Customers or Transition United Customers to CTN's network is not disseminated to any CTN employee; and

Case 1:06-cv-01221-ESH    Document 13-12    Filed 02/21/2007    Page 7 of 8

Page 6

2006 U.S. Dist. LEXIS 45938, *; 2006-1 Trade Cas. (CCH) P75,255

(3) neither United nor CTN has any involvement in the marketing or sale of Commercial Health Insurance Products by the other.

D. Within ten (10) business days of the entry of the Final Judgment, United shall submit to the United States a document setting forth in detail its proposed plan for complying with the injunctions in this Section VII. The United States shall have the sole discretion to approve or disapprove United's proposed compliance plan, and shall notify United within five (5) business days of its decision. If United's proposal is rejected, the United States shall state its reasons for doing so, and United shall be given the opportunity to submit, within five (5) business days of receiving the notice of rejection, [*22] a revised compliance plan.

E. From the closing of the Transaction, United shall not require any physician practicing in Tucson, as a condition for participating in any of United's networks for its Commercial Health Insurance Products, to agree to participate in United's network for any Medicare Health Insurance Product. Similarly, United shall not require any physician practicing in Tucson, as a condition for participating in United's network for any Medicare Health Insurance Product, to agree to participate in any of United's networks for its Commercial Health Insurance Products. United may, however, permit any physician who wants, and voluntarily agrees, to participate in one or more of its networks to do so without violating this Final Judgment. This provision does not apply to (i) contracts entered into by United or PacifiCare prior to the closing of the Transaction that provide for participation in both Commercial Health Insurance Products and Medicare Health Insurance Products; or (ii) any contractual provision that obliges physicians to participate with respect to all Commercial Health Insurance Products of either defendant.

**VIII. AFFIDAVITS**

A. Within twenty (20) [*23] calendar days of the filing of the Complaint in this matter and every thirty (30) calendar days thereafter until the Divestitures and other remedies set forth herein have been completed, whether pursuant to Section IV or Section V, defendants shall deliver to the United States an affidavit as to the fact and manner of compliance with Section IV or Section V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts that defendants have made to solicit a Purchaser(s) for the Divestiture Assets and to provide required information to prospective Purchasers including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by defendants, [*24] including limitations on the information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B. Within twenty (20) calendar days of the filing of the Complaint in this matter, defendants shall deliver to the United States an affidavit that describes in reasonable detail all actions defendants have taken and all steps defendants have implemented on an ongoing basis to comply with Section IX of this Final Judgment. The affidavit also shall describe, but not be limited to, defendants' efforts to maintain and operate the Divestiture Assets. Defendants shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in defendants' earlier affidavits filed pursuant to this Section within fifteen (15) calendar days after the change is implemented.

C. Until one (1) year after the Divestitures required by this Final Judgment have been completed, defendants shall preserve all records of all efforts made to preserve the Divestiture Assets and effect the Divestitures.

**IX. PRESERVATION OF ASSETS**

Until the Divestitures required by the Final Judgment have been accomplished, defendants shall: (1) preserve and maintain [*25] the value and goodwill of the Divestiture Assets; (2) operate the Divestiture Assets in the ordinary course of business; and (3) take no action that would jeopardize, delay, or impede the Divestiture of the Divestiture Assets.

**X. FINANCING**

Defendants shall not finance all or any part of any Purchase made pursuant to Section IV or V of this Final Judgment.

**XI. COMPLIANCE INSPECTION**

A. For the purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to defendants, be permitted:

Case 1:06-cv-01221-ESH   Document 13-12   Filed 02/21/2007   Page 8 of 8

2006 U.S. Dist. LEXIS 45938, *; 2006-1 Trade Cas. (CCH) P75,255

Page 7

(1) access during defendants' office hours to inspect and copy, or at the United States's option, to require that defendants provide copies of, all books, ledgers, accounts, records and documents in the possession, custody, or control [*26] of defendants, relating to any matters contained in this Final Judgment; and

(2) to interview, either informally or on the record, defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by defendants.

B. Upon the written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, defendants shall submit written reports, or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C. No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D. If at the time information or documents are furnished [*27] by defendants to the United States, defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under *Rule 26(c)(7) of the Federal Rules of Civil Procedure*, and defendants mark each pertinent page of such material, "Subject to claim of protection under *Rule 26(c)(7) of the Federal Rules of Civil Procedure*," then the United States shall give defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than grand jury proceedings).

## XII. NO REACQUISITION

Defendants may not reacquire any of the Divestiture Assets during the term of this Final Judgment, provided, however, that nothing herein shall affect defendants' ability to bid or offer to provide health care coverage or services, including to employers and members covered by contracts or policies included in the Divestiture Assets.

## XIII. RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as [*28] may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIV. EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire five (5) years from the date of its entry.

## XV. PUBLIC INTEREST DETERMINATION

The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, *15 U.S.C. § 16*, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' response to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

RICARDO M. URBINA

United States District Judge