Declaration of George M. Borababy

Exhibit #  6

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| **OMNICARE, INC.** | : | |
| | : | **CIVIL ACTION NO. 06-103-WOB** |
| **Plaintiff,** | : | |
| | : | **Electronically Filed** |
| **v.** | : | |
| | : | |
| **UNITEDHEALTH GROUP, INC.,** | : | **DEFENDANTS' REPLY MEMORANDUM** |
| **PACIFICARE HEALTH SYSTEMS,** | : | **OF LAW IN SUPPORT OF MOTION** |
| **INC., and RxSOLUTIONS, INC. d/b/a** | : | **TO TRANSFER VENUE OR IN THE** |
| **PRESCRIPTION SOLUTIONS,** | : | **ALTERNATIVE TO DISMISS** |
| | : | **PLAINTIFF'S ANTITRUST CLAIMS** |
| **Defendants.** | : | |
| | : | |

## INTRODUCTION

Plaintiff Omnicare, in its opposition Memorandum, ignores the allegations asserted in its own Complaint and repeatedly misstates the applicable law and United's arguments in support of the pending Motions.

In response to the Motion to transfer, Omnicare seeks to bind United to the terms of what it labeled in its Complaint as the "UHG Agreement," except for one term—Section 7.4, in which Omnicare expressly waived its right to bring suit in Kentucky for any dispute "arising under or in connection with this Agreement." (Bryan Decl., Ex. A: UHG Agreement at 20-21, Section 7.4.) Omnicare cannot have it both ways. Since it continues to attempt to enforce what it now calls the "WHI Agreement," this action should be transferred.

Even if this action is retained, Omnicare fails to satisfy the law of this Circuit in its attempt to state its antitrust claims. The antitrust claims pled by Omnicare are merely an illusion, designed to ratchet up Omnicare's alleged damages beyond those available for its fraud allegations. The Court should not be swayed by Omnicare's sleight of hand and should grant United's Motion to transfer, or alternatively, dismiss Counts I and II of the Complaint.

## **ARGUMENT**

### I.    **OMNICARE EXPRESSLY WAIVED ITS RIGHT TO BRING SUIT IN KENTUCKY.**

#### A.    **Omnicare's Response Cannot Be Reconciled With Its Complaint.**

In an effort to avoid transfer, Omnicare attempts to distance itself from the contract between Omnicare and Walgreens Health Initiatives—the very contract that it embraced in its Complaint. This new position, however, conflicts with Omnicare's own prayer for relief and other averments made in the Complaint. Omnicare even changed the label that it gave to this agreement, referring to it as the "WHI Agreement" in its opposition brief (*e.g.*, Opp. Br. at i, 2-3, 7-8, 10-18, 20-21, 27, 29-30), but as the "UHG Agreement" in its Complaint (*e.g.*, Compl. ¶¶ 7, 13-17, 42-45, 54, 56-61, 66, 74, 103, Prayer for Relief I.B., I.C., II.B., II.C., III.B., V.B). Omnicare cannot now run from the contract to avoid transfer when it invoked the terms of the agreement throughout the Complaint.

Even beyond the superficial change in the labels that it uses, Omnicare now argues that "Omnicare's claims are not based on the WHI Agreement" (Opp. Br. at 12), that "[t]he WHI Agreement has <u>no</u> bearing whatsoever on the antitrust and tort claims Omnicare has asserted" (*id.* at 14), that "none of Omnicare's causes of action pertains to the WHI Agreement" (*id.* at 15), and that "the relief it seeks in no way involves the rescission or reformation of the WHI Agreement" (*id.* at 15). Yet, in its Complaint, Omnicare expressly seeks an order "[d]eclaring that the UHG Agreement is effective" and an order declaring that "UHG must honor the terms of that agreement for all of its covered lives." (Compl., Prayer for Relief at 27-28.) Omnicare also seeks an injunction "compelling [United and PacifiCare] to utilize the terms of the UHG Agreement." (*Id.* at 28-29.)

Accordingly, Omnicare's first argument, that the forum selection clause it agreed to in the "WHI Agreement" does not apply to this action, is in conflict with the averments of its own Complaint. Omnicare should not be allowed to invoke the contract for purposes of the relief it seeks and simultaneously disavow the contract's venue provisions.

2

### B.    The WHI-Omnicare Agreement Contains a Valid Choice-of-Forum Provision Enforceable Against Omnicare.

Omnicare next argues that the forum selection clause cannot be enforced by United because neither it, nor the other defendants, are "parties" to the agreement. Omnicare cites to the last sentence of the clause, which states: "These consents to jurisdiction shall not be deemed to confer rights on any person other than the parties to this Agreement." (Bryan Decl., Ex. A: WHI Agreement at 21, Section 7.4.) A plain reading of the WHI Agreement, however, reveals that United is entitled to rely upon and enforce the choice-of-forum provisions of the contract. For example, Recitals B and D of the agreement explicitly state that Walgreens Health Initiatives is acting "on behalf of the [Plan] Sponsors" and that Omnicare and Walgreens Health Initiatives desire to set forth terms pursuant to which Omnicare "may provide certain services to PBM and/or Plans." (*Id.* at 1) (emphasis added).)

Omnicare's contractual undertakings show that United stands in the position of a third-party beneficiary to the WHI Agreement as a plan sponsor under either Kentucky or Illinois law.[1] *See Presnell Constr. Managers, Inc. v. EH Constr. LLC*, 134 S.W.3d 575, 579 (Ky. 2004) (holding that under Kentucky law, a person is a third-party beneficiary if that person is to receive some performance under the contract); *see also Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 734-35 (7th Cir. 2005) (under Illinois law, a promissor's liability to a third-party beneficiary must appear from the language of the contract); *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 931 (7th Cir. 2003) (despite provision of contract stating that "nothing herein is intended to create any third party benefit," the court concluded that under Illinois law, the plaintiff stated a valid third-

---

[1] While the issue is at this point still premature, Defendants believe that the remaining claims in the Complaint will ultimately be decided under Illinois law, pursuant to Kentucky conflict of law rules. *See, e.g., Tripplett v. Minn. Mining & Mfg. Co.*, 422 F. Supp. 2d 779, 782 (W.D. Ky. 2006) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Bonnlander v. Leader Nat. Ins. Co.*, 949 S.W.2d 618, 619-20 (Ky. 1996) (same).

party beneficiary claim based on a separate provision conferring an intended benefit on the plaintiff). As a third-party beneficiary to the WHI Agreement, United is entitled to invoke the forum selection clause entered on its behalf and agreed to by Omnicare.

### C.   The Contract's Forum Selection Clause Outweighs the Only Other Relevant Factor.

Just as in the *Kentucky Speedway* case, only three of the ten factors impact the decision of which forum is appropriate here: (1) the parties' forum selection clause; (2) the public interest in having the controversy adjudicated locally; and (3) the plaintiff's choice of forum in filing the Complaint. *See Ky. Speedway, L.L.C. v. Nat'l Assn. of Stock Car Racing, Inc.*, 406 F. Supp. 2d 751, 755 (E.D. Ky. 2005) (explaining why other seven factors are "a wash"). The Court's analysis regarding the remaining seven factors is equally applicable here, and Omnicare made no effort to address or distinguish that analysis. (*See* Opp. Br. at 18-24.)

A forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Moses v. Bus. Card Express*, 929 F.2d 1132, 1136 (6th Cir. 1991). In this case, the forum selection clause should receive more weight than the one addressed in *Kentucky Speedway*. (Defts.' Br. at 11-12 (discussing *Kentucky Speedway*, 406 F. Supp. 2d at 753-54, 756).) Unlike Omnicare, the plaintiff in *Kentucky Speedway* sued NASCAR for its failure to even enter a contract allowing plaintiff Kentucky Speedway to sponsor a NEXTEL race. Here, not only is a contract present, but it is the very agreement embraced by Omnicare, although it now wishes to avoid that contract's venue provisions.

With regard to local interest, Omnicare argues that the state of Kentucky has just as strong an interest in the adjudication of this case as it did in the *Kentucky Speedway* case. (Opp. Br. at 19, 21 (citing *Scotts Co. v. Aventis S.A.*, 145 Fed. Appx. 109, 114 (6th Cir. 2005) (unpublished opinion).) Unlike the plaintiffs in *Kentucky Speedway* and *Scotts*, however, the "brunt of the harm," *see Scotts*,

4

145 Fed. Appx. at 114, will not be born by the State of Kentucky or its residents. In *Kentucky Speedway*, the entire economic viability of the racetrack hinged on the adjudication of the dispute. 406 F. Supp. 2d at 755-56 ("a NEXTEL race is the World Series or SuperBowl of that sport. Many members of the local community are fans . . . . Obviously, there would be a great shot in the arm to the local economy that would also result, as well as an enhancement to community prestige."). By contrast, Omnicare is a typical diversity plaintiff corporation that does not warrant the same weight of local interest consideration as did the plaintiff in *Kentucky Speedway*.

Omnicare carefully bargained for venue in Illinois. Given the relative neutrality of the other factors, Omnicare should be held to its original choice. For these reasons, United requests that the Court grant its Motion to Transfer Venue.

## II.   THE COMPLAINT FAILS TO ALLEGE ANTITRUST INJURY.

### A.   Antitrust Plaintiffs Are Required to Make Specific Allegations as to Antitrust Injury and Standing to Survive a Motion to Dismiss.

In its opposition brief, Omnicare misconstrues United's position, stating that "Defendants urge the Court to invoke a heightened standard in evaluating the [C]omplaint." (Opp. Br. at 25.) Omnicare, however, cites no page and can quote no words, even out of context, from United's opening brief as support for that assertion. Rather than urge a heightened standard, United has identified the required antitrust pleading elements of antitrust injury and standing and has shown the corresponding deficiencies in Omnicare's Complaint.

To survive a motion to dismiss, Omnicare must allege facts sufficient to demonstrate antitrust injury, including both of the following: (a) allegations sufficient to satisfy the necessary predicate test; and (b) allegations of market-wide anticompetitive effects. *See, e.g., Valley Prods. Co. v. Landmark*, 128 F.3d 398, 403 (6th Cir. 1997) (necessary predicate test applied and discussed); *Care Heating & Cooling, Inc. v. Am. Standard, Inc.*, 427 F.3d 1008, 1014 (6th Cir. 2005) (requiring

allegations of market-wide anticompetitive effects). Omnicare must also state allegations sufficient to show antitrust standing, including, more specifically, that it is the proper party to enforce the antitrust laws. *Leak v. Grant Med. Ctr.*, 893 F. Supp. 757, 762 (S.D. Ohio 1995). Omnicare has failed to meet either of these requirements, and therefore, Omnicare's antitrust claims should be dismissed.

**B.**    <u>The Complaint Fails to Allege Facts Sufficient to Satisfy the Necessary Predicate Test.</u>

Omnicare's alleged injury, at best, is only tangentially linked to the alleged violation—but that is not sufficient. Rather, the alleged injury should "flow[] directly from conduct that is not itself an antitrust violation." *See Valley Prods.*, 128 F.3d at 403; *see also, e.g.*, *Buyer's Corner Realty, Inc. v. N. Ky. Ass'n of Realtors*, 410 F. Supp. 2d, 574, 579 (E.D. Ky. 2006) (Bertelsman, J.) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat Inc.*, 429 U.S. 477, 489 (1977) (antitrust injury requires that plaintiffs plead "more than mere injury proximately caused by a violation of the antitrust laws.")).

United articulated two independent, lawful intervening causes of the alleged harm: (1) United exercised its lawful right to withdraw its Part D plans from the WHI Agreement; and (2) United and PacifiCare exercised their lawful rights to merge. Regardless of the alleged violation (that United instructed PacifiCare to refuse to negotiate with Omnicare), the two articulated intervening causes would have resulted in the same harm allegedly befalling Omnicare. Simply put, there is no antitrust injury where, as here, "it has been apparent from the face of the complaint that actual and unequivocally legal action by the defendant would have caused plaintiff's injury, even if there had been no antitrust violation." *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 914 (6th Cir. 2003).

To avoid the impact of these two lawful intervening causes under established Sixth Circuit law, Omnicare resorts to an inaccurate characterization of two cases. Contrary to Plaintiff's assertions (*see* Opp. Br. at 26, 28), the Sixth Circuit in *Cardizem* and *NicSand* did not overrule or

refuse to follow *Hodges v. WSM, Inc.*, 26 F.3d 36, 38 (6th Cir. 1994), *Valley Products*, and *Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d 1105, 1109 (6th Cir. 1989). Rather, in *Cardizem* and *NicSand*, the court rejected the defendants' interpretation of Sixth Circuit case law as requiring antitrust plaintiffs to deny the universe of intervening causes that could conceivably have occurred, but did not actually occur. *NicSand, Inc. v. 3M Co.*, No. 05-3431, — F.3d —, 2006 WL 2252517, at *12-13 (6th Cir. Aug. 8, 2006); *Cardizem*, 332 F.3d at 915. Because the Sixth Circuit in *Cardizem* and *NicSand* did not overrule those cases, they continue to be the law of this Circuit. Indeed, Plaintiff omits the fact that the *NicSand* court made this very point when describing the holding in *Cardizem*.

> The panel did not consider itself to have overruled the necessary predicate test because in none of the relevant precedents—*Axis, Hodges*, or *Valley Products*—"was a complaint dismissed for failure to allege antitrust injury based on a defendant's claim that it *could* have caused the same injury without committing the alleged violation." *Id.* [*Cardizem*, 332 F.3d] at 914.

*NicSand*, 2006 WL 2252517, at *13; *see also, e.g., CTUnify, Inc. v. Nortel Networks, Inc.*, 115 Fed. Appx. 831, 836 (6th Cir. 2004) (while unpublished, this post-*Cardizem* Sixth Circuit decision relies on both *Hodges* and *Valley Products*). As explained in *Cardizem*, and as exemplified by *Hodges, Valley Products, Axis, S.p.A., CTUnify* and *Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 616 (6th Cir. 2001), the question for this Court is whether, regardless of the alleged violation, *the harm* would have occurred as a result of the intervening lawful action. Here, as in each of these five cases, the alleged harm would have occurred regardless of any alleged anticompetitive conduct.

The *Hodges* case provides a good example of how the necessary predicate test should be applied. The defendants in *Hodges* owned "both Opryland and their own tour company, Grand Ole Opry Tours." *NicSand*, 2006 WL 2252517, at *12 (citing *Hodges*); *Cardizem*, 332 F.3d at 914 (same). The *Hodges* plaintiffs alleged that the defendants "agreed to rent tour buses from tour companies other than the plaintiffs' in exchange for a promise from those companies not to transport

passengers to Opryland." *Id.* In response to these allegations of a vertical and horizontal agreement to eliminate competition, the defendants argued that the plaintiffs would have suffered the same harm as a result of a lawful intervening cause—one of the defendants, Opryland, USA, refused to allow the plaintiffs' shuttles on to the Opryland property. The plaintiffs failed to satisfy the necessary predicate test, because a refusal to allow the plaintiffs access to the Opryland property would have caused the same harm absent the alleged conspiracy. *See NicSand*, 2006 WL 2252517, at *12; *Hodges*, 26 F.3d at 39. Noticeably, the court did not question whether the articulated *lawful action* would have occurred. That is, the court assumed that Opryland, USA, really would have refused plaintiffs access in the hypothetical absence of the alleged conspiracy. The court, then, focused on whether, regardless of the alleged violation, *the harm* would have occurred as a result of the articulated, intervening, lawful action.

The same holds true for the other cases. In *Valley Products*, the plaintiff brought suit alleging that the defendant prevented its franchisees from contracting or even negotiating with the plaintiff. *NicSand*, 2006 WL 2252517, at *12 (citing *Valley Prods.*, 128 F.3d at 403-03). As in *Hodges*, the court assumed that the defendant would have acted exactly as it actually did, and the court focused on whether *the harm* would have occurred absent the alleged anticompetitive conduct. *Id.* (concluding that the plaintiff's allegations did not satisfy the necessary predicate test and quoting *Valley Products*, 128 F.3d at 404).

Likewise, in *Axis, S.p.A.*, the court focused on whether the alleged harm would have occurred, assuming that the defendant would have done exactly as it actually did—assert its lawful patent rights. *See Axis, S.p.A.*, 870 F.2d at 1107-12. The court concluded that the same harm would have occurred. Similarly, in *CTUnify*, defendant Nortel decided to limit the number of training companies designated as a preferred vendor. 115 Fed. Appx. at 836 (unpublished decision). The

court assumed that Nortel would act exactly as it actually did, and concluded that the same harm would have occurred as a result of Nortel's lawful decision to limit its preferred vendors. *Id.* Finally, in *Watkins & Son Pet Supplies*, the court did not question whether the defendant really would have terminated its distributorship agreement with the plaintiff in the hypothetical absence of the alleged antitrust violation. *See* 254 F.3d at 616. The court concluded that the alleged harm would have occurred as a result of the defendant's lawful decision to terminate its distributorship. *Id.*

The necessary predicate test is alive and well in this Circuit, and despite Omnicare's argument to the contrary, the Sixth Circuit's holdings in *Hodges, Valley Products, Axis, S.p.A., CTUnify,* and *Watkins* remain good law under a proper interpretation of *Cardizem* and *NicSand*. In addition, a proper interpretation reveals that Omnicare mistakenly analogizes United's articulated intervening causes to the causes identified by the defendants in *Cardizem* and *NicSand*—causes which: (1) hypothetically could have occurred but did not actually occur; and (2) were themselves the alleged violative conduct. For instance, in *Cardizem*, the defendants argued that defendant Andrx *could have* unilaterally exercised a lawful right to withhold its generic drug from the market. 332 F.3d at 912. In reality, Andrx did not choose to unilaterally withhold its generic drug and instead, accepted $40 million annually to withhold the generic drug. *Id.* at 902-03, 912, 914-15. In addition, the alleged violation was the $40 million agreement itself. *Id.* at 914.

Similarly, the plaintiff in *NicSand* alleged that 3M violated the antitrust statutes when it offered very large discounts to certain retailers in exchange for multi-year exclusive dealing agreements. 2006 WL 2252517, at *2. Like the defendants in *Cardizem*, 3M articulated hypothetically possible intervening actions that the distributors could have taken, but never actually did take. *Id.* at *12 ("[T]he harm inflicted on NicSand by the exclusive contracts could have been

brought about by the distributors' voluntary conduct . . . ."). In addition, the actions that the distributors actually did take were themselves the allegedly violative conduct (exclusions of plaintiff).

Unlike the causes articulated in *NicSand* and *Cardizem*, both of the independent, intervening causes articulated by United in this case actually occurred. United actually withdrew its Part D plans from the WHI Agreement, as is readily apparent from the face of the pleadings. (*E.g.*, Compl. ¶¶ 60-61.) In addition, United and PacifiCare actually merged, again, as is readily apparent from the face of the pleadings. (*E.g.*, Compl. ¶¶ 35-39.) Further, Omnicare has not alleged, nor can it, that either of the independent, intervening lawful actions taken by Defendants themselves constitute an antitrust violation. Instead, Omnicare has averred that the violative conduct in this case was PacifiCare's refusal to negotiate with Omnicare brought about by an alleged conspiracy between United and PacifiCare. (Opp. Br. at 4, 6.) In fact, Omnicare has gone so far as to claim that United instructed PacifiCare not to negotiate with Omnicare in furtherance of the alleged scheme. (*Id.* at 8, 9.)

To make Omnicare's error clear, this case would have been a correct analogue to *Cardizem* if United had made this hypothetical argument:

> "The Court should dismiss because PacifiCare, entirely by itself, without any input or communication with United on the issue, could have chosen not to negotiate a contract with Omnicare. Thus, the Complaint fails to meet the necessary predicate test."

Had United articulated *this* as the intervening cause, only then would Omnicare's opposition find support in *Cardizem*. This hypothetical posits an intervening cause that: (1) could have occurred, but never actually did occur; and (2) is itself the allegedly violative conduct. As it stands, however, the two intervening causes raised by United correctly resemble those articulated in *Hodges, Valley Products, Axis, S.p.A., CTUnify,* and *Watkins*. On the face of the Complaint, it is apparent that two independent, actual, and unequivocally legal actions by Defendants would have caused Omnicare's

injury, regardless of the alleged antitrust violation. Thus, Omnicare's antitrust counts should be dismissed because they are not the necessary predicate of the alleged harm.

**C.    <u>The Complaint Fails to Allege Market-Wide Anticompetitive Effects.</u>**

Omnicare, like other antitrust plaintiffs in this Circuit, must also specifically allege market-wide anticompetitive effects. *See Care Heating & Cooling, Inc.*, 427 F.3d at 1014 ("Individual injury, without accompanying market-wide injury, does not fall within the protections of the Sherman Act."), *quoted in Buyer's Corner*, 410 F. Supp. 2d at 579. This conclusion is supported throughout the Sixth Circuit, despite Omnicare's attempts to limit *Care Heating & Cooling. See, e.g., Ford Motor Co. v. Lane*, 86 F. Supp. 2d 711, 721 (E.D. Mich. 2000) (denying standing because "[h]ere, as in *Associated General*, there is no allegation that the collusive agreement had any marketwide effect on competition."); *Louisa Coca-Cola Bottling Co. v. Pepsi-Cola Metro. Bottling Co.*, 94 F. Supp. 2d 804, 814 (E.D. Ky. 1999) (Wilhoit, J.) ("A single competitor's lost profits does not demonstrate a market wide competitive detriment.") (internal citation omitted); *Mid-Mich. Radiology Assocs. v. Cent. Mich. Cmty. Hosp.*, 94-CV-10057, 1995 WL 239360, at *4 (E.D. Mich. Feb. 14, 1995) (finding no antitrust injury where "[a]lthough plaintiff's averments regard the type of injury protected by antitrust laws, i.e. prices and competition, under the alleged facts, there has been no change in the market.").[2] Omnicare has alleged only an injury to itself when it complains that it could not charge a higher price in exchange for providing additional services to the insureds of United—services that potentially violate CMS regulations.

Furthermore, contrary to Omnicare's argument, courts do *not* presume market-wide anticompetitive effects for antitrust injury where a *per se* claim is involved. Omnicare cites to

---

[2] In its opposition brief, Plaintiff directs the Court to a Northern District of Illinois case, a Ninth Circuit Case, a Northern District of Alabama case, an unpublished case from the Eastern District of Pennsylvania, two unpublished cases from the Southern District of New York, and a statement from an antitrust treatise. (Opp. Br. at 30-31.) These authorities do nothing to diminish the weight of *Care Heating & Cooling* in this Circuit.

*Cardizem* for the proposition that for *per se* violations, "market-wide anticompetitive effects are

always presumed." (Opp. Br. at 34 n.18.) *Cardizem*, however, explicitly rejected that proposition:

"Our conclusion that the Agreement was a *per se* illegal restraint of trade does not obviate the need

to decide whether the plaintiffs adequately alleged antitrust injury." 332 F.3d at 909 n.15 (citing

*Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990)). The Supreme Court held that

plaintiffs, especially *per se* plaintiffs, must allege antitrust injury:

> The antitrust injury requirement ensures that a plaintiff can recover
> only if the loss stems from a competition-reducing aspect of the
> defendant's behavior. The need for this showing is at least as great
> under the per se rule as under the rule of reason. Indeed, insofar as
> the per se rule permits the prohibition of efficient practices in the
> name of simplicity, the need for the antitrust injury requirement is
> underscored.

*Id.* at 344.

Omnicare also cannot state a market-wide injury in the market that it pled. In this Circuit,

courts examine the alleged harm in the context of the relevant market. *Worldwide Basketball &*

*Sport Tours, Inc. v. Nat'l Collegiate Athletic Ass'n*, 388 F.3d 955, 964 (6th Cir. 2004) (finding that it

was unable to evaluate antitrust injury where plaintiffs failed to establish relevant market) (quoting

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 538

(1983)). In its Complaint, Omnicare alleges that the proper markets "in which to evaluate the

competitive harm caused by the defendants' conspiracy" are the markets for reimbursement by

insurance companies of LTC and SNF institutional pharmacy services:

> The relevant product markets in which to evaluate the competitive
> harm caused by defendants' conspiracy are (i) the market for the
> contractual reimbursement of LTC institutional pharmacy services for
> Part D insured LTC residents and, within that market, (ii) the market
> for contractual reimbursement of SNF institutional pharmacy services
> for Part D insured SNF residents.

(Compl. ¶ 62.)  In its opposition, however, Omnicare once again attempts to focus this Court's attention on two different markets than the one pled in its Complaint.

First, Omnicare responds to United's arguments that United and PacifiCare did not compete in the alleged markets by listing the markets in which United and PacifiCare actually compete with each other.  (Opp. Br. at 35-36.)  For example, insurance companies like United and PacifiCare compete against one another in the market for signing new insureds.  The markets mentioned in Omnicare's opposition are not relevant here, however, because none is either of the markets pled by Omnicare in its Complaint.  (*Compare* Opp. Br. at 35-36 *with* Compl. ¶ 62.)  Unlike the typical buyer-cartel case, *see Kartell v. Blue Shield of Mass., Inc.*, 749 F.2d 922, 925 (1st Cir. 1984), United and PacifiCare were not competing in the alleged market for some finite good or service, deliverable only to the highest bidder.  Instead, each could simultaneously obtain access to the same pharmaceutical network as the other, and the terms of one contract with Omnicare did not affect the substance of any other contract with Omnicare.  In addition, PacifiCare was mandated by law to sign the Any Willing Provider Contract. (Compl. ¶ 46.)  United and Pacificare could not have competed, when PacifiCare allegedly had no choice but to sign its contract with Omnicare.

Omnicare also directs the Court to a second irrelevant market.  It claims that the alleged collusive scheme "eliminated Omnicare's ability to compete with other institutional pharmacies for the business of LTC facilities by being able to differentiate itself by offering the 18 patient protections." (Opp. Br. at 33.)  This market-wide harm also cannot be evaluated with respect to the markets alleged in the Complaint.[3]  Omnicare's new claim of a harm to itself outside of the alleged market fails to establish market-wide harm and in turn, fails to state an antitrust injury.

---

[3] Plaintiff's citation to *Re/Max Int'l v. Realty One, Inc.,* 173 F.3d 995, 1023 (6th Cir. 1999) is unhelpful. There the court simply found that Re/Max had stated antitrust injury where it alleged that defendant competitors conspired to reduce Re/Max's competitiveness in the alleged market. *Id.*

### D.    <u>Omnicare Is Not the Proper Plaintiff.</u>

Omnicare's opposition also does not allege facts sufficient to show that it is the proper party to enforce the antitrust laws, failing to satisfy the pleading requirements for antitrust plaintiffs. *See, e.g.*, *Leak*, 893 F. Supp. at 762 (citing *Associated Gen. Contractors*, 459 U.S. at 535 n.31). Rather than satisfy the requirements of *Leak*, Omnicare asserts that a health care provider may properly enforce the antitrust laws where the provider's interest coincides with the patient's interest, relying on *NicSand* and three other cases. (Opp. Br. at 37.) Such an assertion, however, cannot salvage Omnicare's standing, because the authority relied on is inapposite for three reasons. First, the plaintiffs and the defendants in all four of Omnicare's cited cases are direct competitors, unlike the buyer-seller relationship that Omnicare has with Defendants in this case.[4] Second, *NicSand* has nothing to do with health care providers, insurance companies, or pharmacies, and does not support Omnicare's argument that providers' and patients' interests coincide. Third, the three cases other than *NicSand* involve actual doctors and their patients. The relationship between Omnicare and United's and PacifiCare's insureds is unlike the special relationship between a doctor and her patient—where interests are aligned. Omnicare does not provide any medical treatment to anyone. Instead, Omnicare, for a profit, sells prescription drugs that are ultimately distributed to insureds. This does not make Omnicare equivalent to a doctor, and does not create a relationship comparable to the doctor-patient relationship.

Even if this authority were applicable, Omnicare's interests do not coincide with those of the insureds of United and PacifiCare. For example, assuming that that the 18 patient protections touted by Omnicare were unique and desirable, then the only parties harmed by the refusal to purchase the

---

[4] Competitors of a defendant can often bring an antitrust claim. (Defts.' Br. at 26 (citing the second factor from *Southhaven Land Co. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1085 (6th Cir. 1983)).

18 patient protections would be United and PacifiCare who would presumably not have seniors select their plans or would have seniors switch away to plans that did offer Omnicare's protections.

In addition, according to the Complaint, Omnicare's consumers are United and PacifiCare, "the payors for pharmaceutical services to seniors." (Compl. ¶ 27 (cited in Defts.' Br. at 21).) The only two other consumers in this case (besides Defendants) are consumers, not of Omnicare, but of Defendants: the U.S. government and the insureds, who pay premiums, copays, and the cost of prescription drugs in the statutory gap also known as the donuthole. By negotiating lower reimbursement rates, Defendants secure lower prices for prescription drugs, lower premiums, and lower copays. The reverse is also true, exposing the inaccuracy of Omnicare's argument here: the higher the reimbursement rate, the higher the price that Defendants' consumers (their insureds and taxpayers) pay for drug coverage.

In sum, Omnicare complains that it cannot force Defendants to pay higher prices for additional services that they may not want and that possibly violate CMS regulations. Because Omnicare has failed to adequately allege market-wide anticompetitive effects and lacks standing, its antitrust claims should be dismissed.

## III.     THE COMPLAINT FAILS TO ALLEGE AN ACTIONABLE CONSPIRACY.

Assuming that the allegations in the Complaint are true, United and PacifiCare could not have conspired with one another because their economic interests had effectively merged prior to the date of consummation. Omnicare counters that this issue is a disputed question of fact and argues that Defendants' position is to "urge the Court to disregard controlling precedent of the Supreme Court and the Sixth Circuit." (Opp. Br. at 39.) Both responses lack merit. In addition, both of the intervening causes articulated by United occurred after or at the same time as the date of consummation, triggering the protections of *Copperweld*.

First, regarding controlling precedent, Omnicare refers the Court to no Supreme Court or Sixth Circuit cases that conflict with the Eighth Circuit holding in *International Travel Arrangers v. NWA, Inc.*, 991 F.2d 1389, 1398 (8th Cir. 1993). Instead, it refers to two treatises, a statement by the General Counsel of the FTC, and the fact that the FTC brought three cases of gun jumping. (Opp. Br. at 42-44.) In reality, the question of whether to extend the *Copperweld* doctrine to pre-consummation conduct is an open one in this Circuit and in every Circuit but the only one to have addressed the issue—the Eighth Circuit.[5] United asks this Court to adopt the Eighth Circuit holding, absent any Sixth Circuit or Supreme Court precedent to the contrary.

United bases this portion of its Motion on the *Copperweld* decision itself, in which the Court elevated substance over a rigid, formalistic approach that "looked to the form of an enterprise's structure and ignore[d] the reality." *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984). *Copperweld* instructs courts to focus on whether there is a "unity of purpose and interest," rather than on formalistic technicalities. (Defts.' Br. at 28-29 (citing *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 276 (8th Cir. 1988) (one of the grounds for the *International Travel Arrangers* holding, and a case never discussed by Omnicare)); *see also Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1034 (9th Cir. 2005); *Pink Supply Corp. v. Heibert, Inc.*, 788 F.2d 1313, 1317 (8th Cir. 1986) (quoting *Copperweld*, 467 U.S. at 773, n.21: "[S]eparate incorporation does not necessarily imply a capacity to conspire * * * [S]ubstance not form should determine whether a separately incorporated entity is capable of conspiring under § 1."); *Weiss v. York Hosp.*, 745 F.2d 786, 815 (3d Cir. 1984) ("Antitrust policy

---

[5] Omnicare cited to *NHL Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 470 (6th Cir. 2005) for the proposition that every time two defendants have separate corporate entities, *Copperweld* is inapplicable. (Opp. Br. at 40.) The Sixth Circuit did not reach such a sweeping conclusion, however, and the allegations in this case are quite different. The teams in the Ontario Hockey League compete against one another regularly and do not have agreements like the one alleged in the Complaint, prohibiting teams from independently contracting with third parties. Further, such a sweeping interpretation conflicts with the instruction in *Copperweld* to value substance over form.

requires the courts to seek the economic substance of an arrangement, not merely its form.");
*Century Oil Tool, Inc. v. Prod. Specialties, Inc.*, 737 F.2d 1316, 1316-17 (5th Cir. 1984).

Second, despite Omnicare's characterization, United does not urge the Court to decide a disputed question of fact. Rather, United merely refers to the allegations in the Complaint, which, if taken as true, allege the complete unity of United's and PacifiCare's commercial interests for the entire duration of the alleged conspiratorial conduct. (Defts.' Br. at 30-31.) Specifically, the Complaint alleges, among other relevant and similar facts, that PacifiCare had no independent authority to contract with Omnicare as of July 6, 2005. (Compl. ¶¶ 36-38.) While the facts may very well prove these allegations to be completely false, Omnicare has nevertheless alleged facts that preclude a conspiracy as a matter of law between PacifiCare and United.

Finally, Omnicare's Complaint shows that two lawful actions of the Defendants were intervening causes of the alleged harm. (*See* Part II, *supra*.) Both of these intervening causes—the merger and United's unilateral withdrawal of its plans from the WHI Agreement—occurred after or at the same time as the consummation date. In response, Omnicare refers the Court to the "basic principle that Defendants are liable as co-conspirators regardless of when the harm may have occurred." (Opp. Br. at 29.) United, however, makes no argument regarding when the *harm* occurred, as Plaintiff states. Instead, consistent with even a conservative application of *Copperweld*, United argues that the *causes* of the harm occurred after the date of consummation. Thus, even assuming that the Court chooses not to follow the law in the Eighth Circuit applying *Copperweld* to pre-consummation activity and even under a strict formulistic approach (disregarding the admonition to the contrary in *Copperweld*) the alleged harm was the result of a single corporate entity.

The antitrust conspiracy allegations raised by Omnicare reinforce the important usefulness of the *Copperweld* doctrine: courts should focus on the realities of corporate relationships, not on

formalistic technicalities. Accordingly, the Court should adopt the holdings of the Eighth Circuit in *City of Mt. Pleasant* and *International Travel Arrangers* and dismiss the Counts I and II for failure to state an actionable conspiracy.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court transfer venue to the United States District Court for the Northern District of Illinois. Should this Court choose to retain jurisdiction, however, Defendants request that it dismiss the antitrust causes of action contained in Count I and Count II of the Complaint.

DATE:  September 1, 2006.                 Respectfully Submitted,


                                          *s/Frederick M. Erny*
                                          Frederick M. Erny (90061)
                                          Mark A. Vander Laan (Admitted *Pro Hac Vice*)
                                          DINSMORE & SHOHL LLP
                                          255 E. Fifth Street, Suite 1900
                                          Cincinnati, OH  45202
                                          Phone:  513.977.8200
                                          Fax:  513.977.8141
                                          fred.erny@dinslaw.com
                                          mark.vanderlaan@dinslaw.com


                                          And

18

Michael V. Ciresi (Admitted *Pro Hac Vice*)
Thomas J. Undlin (Admitted *Pro Hac Vice*)
Bethany D. Krueger (Admitted *Pro Hac Vice*)
Jeffrey M. Bryan (Admitted *Pro Hac Vice*)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402-2015
Phone:  612.349.8595
Fax:  612.339.4181
mvciresi@rkmc.com
tjundlin@rkmc.com
bdkrueger@rkmc.com
jmbryan@rkmc.com

David A. Balto (Admitted *Pro Hac Vice*)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
1801 K Street N.W., Suite 1200
Washington, DC 2006-1307
Phone:  202.775.0725
Fax:  202.223.8604
dbalto@rkmc.com

*Attorneys for Defendants, UnitedHealth Group
Inc., PacifiCare Health Systems, LLC and
RxSolutions, Inc. d/b/a Prescription Solutions*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2006, I electronically filed the foregoing DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TRANSFER VENUE OR IN THE ALTERNATIVE TO DISMISS PLAINTIFF'S ANTITRUST CLAIMS with the Clerk of Court using the CM/ECF System, which shall send notification of such filing to the following:

| | |
|---|---|
| Aldo A. Badini | lpmco@dbllp.com |
| Harvey Kurzweil | hkurzweil@deweyballantine.com |
| Brian S. McGrath | bmcgrath@deweyballantine.com |
| William T. Robinson, III | wtr@gdm.com |
| Andrew Jonathon Schaeffer | ajs@gdm.com |
| Carrie A. Shufflebarger | cas1@gdm.com |
| Susanne P. Torpey | storpey@deweyballantine.com |

and the preceding was served via first-class mail this 1st day of September, 2006 upon the following:

> Stephen M. Axinn, Esq.
> John D. Harkrider, Esq.
> Axinn, Veltrop & Harkrider LLP
> 1370 Avenue of the Americas
> New York, NY 10019
>
> *Counsel for Plaintiff*

                                        s/Frederick M. Erny

1301095.1