# Declaration of George M. Borababy

## Exhibit # 10

Table of Contents

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

## Form 10-K

**ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934 FOR THE FISCAL YEAR ENDED DECEMBER 31, 2002**

**Commission file number: 1-10864**

UnitedHealth Group Incorporated
(Exact name of registrant as specified in its charter)

Minnesota
(State or other jurisdiction of incorporation or organization)

41-1321939
(I.R.S. Employer Identification No.)

**UnitedHealth Group Center**
**9900 Bren Road East**
**Minnetonka, Minnesota**
**(Address of principal executive offices)**

**55343**
**(Zip Code)**

Registrant s telephone number, including area code:
**(952) 936-1300**

Securities registered pursuant to Section 12(b) of the Act:

| (Title of each class) | (Name of each exchange on which registered) |
| --- | --- |
| Common Stock, $.01 Par Value | New York Stock Exchange, Inc. |

Securities registered pursuant to Section 12(g) of the Act: None

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes No o

Indicate by checkmark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of Registrant s knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.

This Plan Statement was approved by the Board of Directors on October 30, 2001.

**UNITEDHEALTH GROUP INCORPORATED**

By:____________________________________
David J. Lubben, General Counsel and Secretary

EXHIBIT 10(s)

Amendment and Assignment

United HealthCare Insurance Company

American Association of Retired Persons

Trustees of the AARP Insurance Plan

**AARP Services, Inc.**

This ASSIGNMENT is made and entered into as of the 28th day of December, 1999, by and between the American Association of Retired Persons ("AARP"), the Trustees of the AARP Insurance Plan ("AARP Trust"), United HealthCare Insurance Company ("United"), and AARP Services, Inc. ("Services").

**WITNESSETH**

WHEREAS, AARP has made available to its members a group Medicare supplement, hospital indemnity and certain other medical insurance coverages and other products from United (the "Program"); and

WHEREAS, the Program is presently being made available pursuant to an Agreement between the parties dated as of February 26, 1997 (the "United Agreement"); and

WHEREAS, AARP is desirous of restructuring its operational structure whereby certain activities formerly conducted by AARP, including performance of quality control operations, monitoring of service providers, and granting third parties use of the AARP Mailing List, will in the future be conducted by Services and no longer be conducted by AARP; and

WHEREAS, AARP and United desire to assign certain of their respective rights and obligations relating to quality control, monitoring and the AARP Membership Information as set out in the United Agreement to Services, a wholly-owned subsidiary of AARP, which subsidiary will carry out these activities formerly carried out by AARP.

NOW THEREFORE, IT IS AGREED:

1) Attached hereto as Exhibit A is a copy of the United Agreement between AARP, the AARP Trust, and United effective as of February 26, 1997. By this Assignment, AARP assigns all of its rights, title and interests in such Agreement as they relate to quality control, monitoring and the AARP Membership Information, to Services, saving and excepting to itself those rights, title and interests contained in the Agreement relating to the exclusive right of AARP to its name, symbol, mark, logos, and acronym (the "AARP Marks") and the right of AARP to receive a royalty for the use of the AARP Marks. The Definitions as set out in Article 2 of the United Agreement are incorporated herein by reference to the extent that such Definitions are applicable. All other provisions of the United Agreement not assigned shall remain as set out in the United Agreement and shall control to the extent consistent with the terms of this Assignment.

2) The allowances determined in accordance with Section 6.1 of the United Agreement and payable in accordance with Section 6.7 of the United Agreement shall be payable under the same terms and conditions by United to AARP.

3) AARP hereby assigns and transfers to Services:

a) All of its rights, title and interests in the United Agreement as they relate to quality control and monitoring of the use by United of the AARP Marks.

(b) A license to use and sublicense the AARP names, addresses, and member identification number(s) (the "Membership Information").

c) Nothing herein shall be interpreted as AARP assigning those rights, title and interests contained in the United Agreement relating to the exclusive right of AARP to the AARP Marks and the right of AARP to receive a royalty for the use of the AARP Marks.

d) All rights, title and interests not assigned by this Assignment shall remain as set out in the United Agreement and shall control to the extent consistent with the terms of this Assignment.

4) It is intent of the parties hereto that the payment made by United to AARP pursuant to the United Agreement and referred to as an allowance is a royalty and pursuant to this Assignment and the agreement referred to in this paragraph, the royalty is to be bifurcated into a payment to AARP Services for Quality Control and monitoring and to AARP for use of the AARP Marks. AARP shall grant United an exclusive license to use the AARP Marks by separate agreement. Such separate agreement shall obligate United to compensate AARP for the use of its intangible property by the payment of a royalty. A copy of such separate agreement is attached hereto as Exhibit B.

5) The quality control, monitoring and AARP Membership Information rights and obligations set out in the United Agreement which are hereby transferred to Services are as follows:

a) Quality Control: Services shall be responsible for ensuring that United maintains all of the standards and meets all of the requirements set out in the United Agreement. Services shall be subject to the obligations of AARP contained therein. All reports required of United formerly to have been provided to AARP shall be provided by United to Services.

b) Monitoring: An activity of Quality Control consisting of the overseeing of operations as called for in the United Agreement.

c) Any and all rights of United to the AARP Membership Information are hereby transferred from AARP to Services. AARP has licensed the use of its member mailing list and Membership Information to Services by separate agreement with the right of Services to sublicense such information. Services hereby grants to United all rights to the Membership Information formerly granted to United by AARP pursuant to the United Agreement. Any and all approvals required of AARP as to the use of the Membership Information pursuant to the United Agreement shall be requested by United from Services.

d) All rights of United as to the Membership Information remain as they are set out in the United Agreement, with such rights to be provided by Services. United acknowledges Services as the successor to AARP for all purposes relating to Membership Information. Nothing in this Assignment Agreement shall grant to Services or United any rights whatsoever as to the AARP Marks.

6) United shall pay to Services the sum of the following amounts as compensation:

a) For Membership Information, during the term of this Assignment, United shall pay to Services an amount equal to eight percent (8%) of the amount computed pursuant to Article 6 of the United Agreement.

b) For Quality Control services, United shall pay to Services an amount equal to Services' costs to perform such services, plus ten percent (10%). Services shall bill United for these services and payment shall be made within thirty (30) days.

7) Notices required or appropriate to be given under this Agreement shall be given as set out in the United Agreement, with a copy of all such notices:

To Services:

AARP Services, Inc.
601 E Street, N.W.
Washington, D.C. 20049
FACSIMILE NUMBER: (202) 434-2339
Attention: Steven Zaleznick, President

8) All representations, warranties and indemnifications made by the parties to the Agreement being amended are hereby incorporated by reference with modifications as necessary to result in Services assuming those representations, warranties and indemnifications of AARP to the extent they relate to the subject matter of this Amendment and Assignment, and Services being the beneficiary of those representations, warranties and indemnifications of the service provider to the extent they relate to the subject matter of the Amendment and Assignment.

9) This Agreement shall be binding upon and shall inure to the benefit of each of the parties hereto and their respective successors and assigns.

<original-page -5- >

10) This Agreement may be executed in counterparts, each of which shall be deemed to be an original.

IN WITNESS WHEREOF, the parties have executed this Agreement this 28th day of December, 1999.

American Association of Retired Persons

By: /s/ Horace B. Deets
-----------------------------------------

Horace B. Deets, Executive Director

Trustees of the AARP Insurance Plan

By: /s/ Illegible
-----------------------------------------

United HealthCare Insurance Company

By: /s/ Illegible
-----------------------------------------

AARP Services, Inc.

By: /s/ Steven Zaleznick
-----------------------------------------
Steven Zaleznick

<original-page -6- >

**ROYALTY AGREEMENT**

United HealthCare Insurance Company
American Association of Retired Persons
Trustees of the AARP Insurance Plan

This AGREEMENT is made and entered into as of the 28th day of December, 1999, by and between the American Association of Retired Persons ("AARP"), the Trustees of the AARP Insurance Plan ("AARP Trust"), and the United HealthCare Insurance Company ("Provider").

**WITNESSETH**

WHEREAS, AARP, the AARP Trust, and Provider are parties to an agreement dated as of February 26, 1997 ("Agreement") under which AARP licenses its name, symbol, mark, logos, service marks and acronym ("AARP Marks") to Provider, and under which the Provider makes available services to AARP members. AARP receives an allowance as compensation for such licenses under the Agreement.

WHEREAS, AARP and the Provider have determined that the allowance for the licenses is in fact a royalty.

WHEREAS, AARP Services, Inc. ("Services") is a wholly-owned subsidiary of AARP that is governed and operated separately and independently from AARP.

WHEREAS, AARP, the AARP Trust, and the Provider have entered into an assignment ("Assignment") with Services, under which AARP and the Provider have assigned to Services certain of their rights, title and interests in the Agreement, and, pursuant to such Assignment, AARP has reserved unto itself all of its right, title and interest in the AARP Marks.

WHEREAS, AARP has entered into an agreement with Services ("AARP-Services Agreement"), under which Services will fulfill all of the rights and obligations of AARP as set out in the Agreement.
WHEREAS, AARP and the AARP Trust wish to enter into this royalty agreement ("Royalty Agreement") with Provider, under which AARP solely licenses the AARP Marks to Provider, and receives in return royalties solely for the use of its intangible property.

**WHEREFORE, IT IS AGREED:**

1) To the extent that this Royalty Agreement modifies provisions of the Agreement, this Royalty Agreement replaces and supersedes such provisions in the Agreement relating to AARP's license to Provider of the AARP Marks, and the right of AARP to receive a royalty for such license. All other provisions of the Agreement shall remain in full force and effect. Should any provision of this Royalty Agreement conflict with a provision of the Agreement and such provision not relate to the license of the AARP Mark or payment therefore, the provision of the Agreement shall control.

2) AARP hereby grants and licenses to Provider the exclusive right to use the AARP Marks, in connection with Provider's operation of the program carried on by Provider as set forth in the Agreement.

3) The license described in par. 2 above shall be for the time period as set out in the Agreement.

4) As payment for the use of the intangible rights described in Par. 2 above, Provider shall pay AARP a royalty fee of the amount as set out in Article 6 of the Agreement as an allowance, modified as follows:

a) During the term of this Royalty Agreement, there shall be deducted by Provider from the amount due to AARP pursuant to Article 6 of the Agreement an amount equal to eight percent (8%) of such amount, plus any amount paid to

AARP Services for its quality control activities carried on to enable it to comply with its rights and obligations set out in the Assignment.

b) It is the intent of the parties to this Royalty Agreement that the amounts due to AARP under this Royalty Agreement plus the amounts paid by Provider to AARP Services to enable it to fulfill its rights and obligations under the Assignment shall equal the amount which would have been paid to AARP under the Agreement.

5) The foregoing royalty constitutes the sole and entire payment AARP is entitled to receive hereunder or otherwise from Provider for the license granted hereunder.

6) Provider shall comply with the provisions of the Assignment; shall furnish all necessary information to Services on a timely basis; and shall pay Services for Service's activities in assisting Provider to comply with the provisions of the Assignment.

7) Should the Agreement be terminated pursuant to its terms, this Royalty Agreement shall terminate at the same time.

8) Any dispute arising out of or relating to this Royalty Agreement, including, but not limited to, interpretation, validity, or breach of this Royalty Agreement shall be resolved as if this Royalty Agreement was part of the Agreement and the provisions of Article 11 of the Agreement applied.

9) Neither AARP nor Provider are now, nor shall they become or be considered as, either principal or agent of the other in connection with the program as set out in the Agreement, nor shall AARP and Provider be joint venturers or partners either in carrying out their respective duties and obligations under this Royalty Agreement or for any other purpose. AARP is not will it become or be considered, as having an ownership interest in the program as set out in the

Agreement, nor in Provider (except AARP is the sole and exclusive owner of all proprietary and other property rights in interests in and to the AARP Marks) and AARP shall not be liable or responsible in any such capacity or capacities. Accordingly, Provider shall at no time and in no medium or manner state or imply that the AARP has any such interest in or connection with, Provider or the program as set out in the Agreement except that Provider may, in promotional materials, describe or provide information about the license granted hereunder.

10) This Agreement constitutes the entire agreement among the parties with respect to the matters treated herein and supersedes and replaces any prior Agreement between the parties. Modifications or amendments to this Agreement shall be effective only if in writing and signed by the parties.

11) The parties shall keep each other reasonably informed about legal or any other developments affecting the Program, shall cooperate with one another to carry out and implement the terms and objectives of this Agreement and shall perform such further acts, execute such further documents, and enter into such further agreements as may be necessary or appropriate to these ends. Without limiting the foregoing, each shall permit the other party (and its authorized representatives) reasonable access to its files and records and shall make available to the other party (and its authorized representatives)for consultation responsible officials for the purpose of more fully carrying out the terms and objectives of this Agreement, provided that the same be requested during normal business hours and upon reasonable notice

12) Provider may from time to time propose to AARP, for its approval, additional products to include within the program.

13) Notices required or appropriate to be given under this Agreement shall be given as set out in the Agreement.

14) Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid, but if any provision of this Agreement shall be held to be prohibited or invalid, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement. No failure on the part of any party to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder by any party preclude any other or further exercise of any other right and no waiver whatever shall be valid unless in a signed writing, and then only to the extent specifically set forth in such writing. No waiver of any right hereunder shall operate as a waiver of any other or of the same or similar right on another occasion.

15) The Article and Section headings contained in this Agreement are not part of this Agreement, are for the convenience of reference only and shall not affect the meaning, construction or interpretation of this Agreement.

16) This Agreement shall be binding upon and shall inure to the benefit of each of the parties hereto and their respective successors and assigns.

17) This Agreement may be executed in counterparts, each of which shall be deemed to be an original.

IN WITNESS WHEREOF, the parties have executed this Agreement this 28th day of December, 1999.

| American Association of Retired Persons | Trustees of the AARP Insurance Plan |
| --- | --- |
| By: /s/ Horace B. Deets | By: /s/ Illegible |
| Horace B. Deets, Executive Director | Illegible |

United HealthCare Insurance Company

By:/s/ Illegible