**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| **Long Term Care Pharmacy Alliance and** ) | |
| **American Society of Consultant Pharmacists,** ) | |
|  ) | |
| **Plaintiffs** ) | |
|  ) | |
| **v.** ) | **Case No.:  1:06-CV-01221 (ESH)** |
|  ) | |
| **UnitedHealth Group Inc.,** ) | |
|  ) | |
| **Defendant** ) | |

---

### Reply Memorandum in Support of
### Defendant's Motion to Dismiss Complaint

## I.    Introduction

Despite Plaintiffs' protests to the contrary, this lawsuit is nothing more than a suit for

money damages.  Plaintiffs, the Long Term Care Pharmacy Alliance ("LTCPA") and the

American Society of Consultant Pharmacists ("ASCP"), are seeking to recover for their members

co-payment amounts allegedly owed to their members by Prescription Drug Plans ("PDPs")

sponsored by subsidiaries of UnitedHealth Group ("UHG").[1]  Because it is well-settled that an

association does not have standing to seek damages on behalf of its members, <u>Warth v. Seldin</u>,

422 U.S. 490, 515-516 (1975), Plaintiffs attempt to disguise their damages claim by asserting

that they are seeking "only" a declaratory judgment that money is owed to their members.  (*See*

Plf.'s Opposition at p. 12; Compl. ¶ 35(a); Prayer for Relief (a)).  This is a distinction without a

difference, and Plaintiffs "may <u>not</u> circumvent [associational] standing requirements by seeking

a declaration of entitlement to money damages."  <u>Pesticide Public Policy v. Village of</u>

---

[1]    *See*, *e.g.*, Complaint ("Compl.") ¶ 6, in which Plaintiffs seek the "re-direct[ion] [of co-payment]
amounts to the entities to whom the funds are properly owed—Plaintiffs' member LTC Pharmacies."

Wauconda, Ill., 622 F. Supp. 423, 435 (N.D. Ill. 1985) (emphasis added), aff'd 826 F.2d 1068 (7th Cir. 1987).

Plaintiffs also lack standing to sue on their own behalf because they cannot establish that their alleged organizational injuries were caused by UHG, or would be redressed by a favorable decision in this lawsuit.  By Plaintiffs' own admission, the data issues attributable to the Centers for Medicare and Medicaid Services ("CMS") which underlie the issues raised in the Complaint affected "virtually every PDP" in the United States, and "many PDPs . . . *still* have not "reimbursed [long term care ("LTC")] pharmacies for the shortfall."  (*See* Compl. ¶ 22; Opposition at p. 5; *see also,* id. at p. 3).  Given the number of other PDPs who still have not reimbursed LTC pharmacies for the co-payments at issue, Plaintiffs cannot trace their purported organizational injuries to UHG, and such alleged injuries would not be redressed by a favorable decision in this action.  Accordingly, Plaintiffs lack standing to sue on their own behalf.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Nat'l Taxpayers Union, Inc. v. U.S., 68 F.3d 1428, 1433 (D.C. Cir. 1995).

Even if Plaintiffs had standing to bring this action (which they do not), as detailed below, their Opposition fails to allege any facts that establish the Court's personal jurisdiction over UHG, or which otherwise establish that they have asserted claims for which relief can be granted.

### Plaintiffs' Members Have Chosen Not to Resubmit Claims

It is critical to reiterate that UHG is not the cause of the reimbursement issue raised in the Complaint.  As discussed in UHG's Motion to Dismiss (at pp. 12-14), and as acknowledged by Plaintiffs in their Complaint and Opposition, the reimbursement issues affecting LTC pharmacies primarily have been caused by data problems involving CMS relating to the start up of Medicare

Part D, and, in particular, data problems associated with the enrollment of Medicaid beneficiaries into the Medicare Part D program.[2]

As CMS has corrected its data, PDPs sponsored by UHG subsidiaries have worked closely with CMS and LTC pharmacies to reconsider claims thereafter resubmitted by pharmacies to ensure that Medicare Part D beneficiaries and pharmacies receive any adjustments that may be due.  Although LTC pharmacies have been able to resubmit their claims for which corrected data has been received from CMS, Plaintiffs' member pharmacies have generally refused to do so, instead demanding lump-sum payments without providing the supporting data required by CMS guidance.[3]  Unwilling to follow the PDPs' procedures for reprocessing claims, and unhappy with CMS's refusal to simply require PDPs to cut a check to LTC pharmacies, Plaintiffs filed this action against UHG alone.[4]

---

[2]  *See* Compl. ¶ 22-23 (noting that LTC pharmacies were "assured by CMS that these [data] issues would be retroactively resolved," and that Plaintiffs worked with CMS to resolve the data issues); Opposition at p. 5 ("Unfortunately, due initially in part to erroneous information provided to them by CMS, Defendant's PDPs (along with other PDPs) inappropriately reduced LTC pharmacy reimbursement by withholding the co-payment amount").

[3]  For a description of CMS's requirements concerning the reimbursement of co-payments with respect to Institutionalized Dual Eligibles, see UHG's Motion to Dismiss at pp. 3-4 and 24-26.  The resubmission of claims is required so that PDPs can track prescription drug expenditures and create a trail for CMS to audit, reflecting that: (1) the Institutionalized Dual Eligible on whose behalf a claim was submitted was a resident of the LTC facility for an entire month; (2) the prescription drug was covered by Medicare Part D and otherwise available through the PDP (e.g., included on the PDP's formulary); (3) the LTC pharmacy did not collect or waive a co-payment from the Institutionalized Dual Eligible; and (4) the LTC pharmacy was carrying the co-payment on its books as a debt.

[4]  As noted in UHG's Motion to Dismiss (at p. 4, n.8), this is not the first time that LTCPA has filed suit when dissatisfied with the outcome of a regulatory process.  In Long Term Care Pharmacy Alliance v. Ferguson, 362 F.3d 50 (1st Cir. 2004), the First Circuit criticized LTCPA for suing the State of Massachusetts for a reduction in Medicaid prescription drug reimbursement rates.  In that case, LTCPA member pharmacies refused to provide the State of Massachusetts with cost data, but then sued the State after it implemented a Medicaid rate reduction that was based on the best data it had.  The First Circuit characterized LTCPA's action as "little short of remarkable." Id. at 59.  There, as here, LTCPA offered "dire predictions of disaster."  Id.  The First Circuit rejected such predictions, noting that "[i]f pharmacy interests alone were of concern, the lack of equity is so patent that an injunction would be unthinkable." Id.

II.    <u>Argument</u>

A.    **Plaintiffs' Claim for Declaratory Judgment Is Really One for Damages, and Plaintiffs Therefore Lack Standing to Sue on Behalf of Their Members.**

Plaintiffs, in their Opposition, assert that they seek only *prospective* relief in the form of an injunction and a declaratory judgment.  Opposition at p. 13.  In fact, however, the Complaint asks the Court to "re-direct [the co-payment] amounts to . . . Plaintiffs' member LTC Pharmacies" (Compl. ¶ 6), and to rule that any such amounts held by UHG are held in violation of law and contract.  (Prayer for Relief (a)).  Entry of such a judgment would require UHG to pay money to LTCPA-member pharmacies retroactively, for claims dating back to January 1, 2006, without satisfaction of PDPs' applicable claims procedures, without supporting data required by CMS, and without changing the CMS data on which PDPs relied when making the initial claims determination.  Put simply, the declaratory judgment Plaintiffs seek cannot be categorized as prospective relief, because its purpose is to compensate LTC pharmacies for the past effects of UHG's alleged violation of Medicare regulations and contracts with LTC pharmacies.  *See* <u>Pesticide Public Policy</u>, 622 F. Supp. at 434-35 (association may not circumvent associational standing requirements by seeking a declaratory judgment that would have the effect of compensating its members).

1.    **Associations Lack Standing to Sue for Damages on Behalf of Their Members.**

Notwithstanding the favorable inferences that a plaintiff receives on a motion to dismiss, the *plaintiff* bears the burden of establishing standing by a preponderance of the evidence, and in the absence of such evidence, the court must dismiss the complaint.  <u>Harrison v. Norton</u>, 429 F. Supp. 2d 83, 87 (D.D.C. 2006).  In <u>Hunt v. Washington State Apple Advertising Commission</u>, 432 U.S. 333, 343 (1977), the Supreme Court set forth the familiar three part test for

associational standing, holding that an association has standing to sue on behalf of its members

only when: (1) its members would have standing to sue in their own right; (2) the interests it

seeks to protect are germane to the association's purpose; and (3) neither the claim asserted *nor*

the relief requested requires the participation of individual members in the lawsuit.  Even if

Plaintiffs are deemed to satisfy the first two prongs of <u>Hunt's</u> associational standing test, both

ASCP and LTCPA fail the third prong because the relief they seek is not prospective in nature,

but instead would provide for monetary damages to LTC pharmacies that are not parties to this

lawsuit, and would require individualized proof of the injuries purportedly sustained by such

pharmacies.[5]

Courts "have consistently rejected association assertions of standing to seek monetary, as

distinguished from injunctive or declaratory, relief on behalf of the organization's members."

<u>Telecommunications Research & Action Center v. Allnet Communications Services, Inc.</u>, 806

F.2d 1093, 1095 (D.C. Cir. 1986) (citing cases).  In a thinly veiled attempt to circumvent the

prohibition on associations seeking monetary damages for their members, Plaintiffs nominally

allege that they are seeking declaratory and injunctive relief (Compl. ¶¶ 1, 35, Prayer for Relief

(a); Opposition at pp. 12-13).  However, the Court must look to the "substance of the remedy

sought . . . rather than the label placed on that remedy."  <u>Watkins v. Westinghouse Hanford Co.</u>,

12 F.3d 1517, 1528 n. 5 (9th Cir.1993) (citing <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248, 255

---

[5]   Plaintiffs' Opposition attempts to cure deficiencies in the Complaint related to ASCP's standing
by attaching a Declaration of ASCP's Executive Director, Thomas Clark (the "Clark Decl."), in
which he alleges—*for the first time*—that ASCP members *own* LTC pharmacies that have
received less than full reimbursement with respect to Institutionalized Dual Eligibles, and that this
lawsuit is germane to ASCP's purposes.  (Compare Clark Decl., ¶ 6 (attached to Plaintiffs'
Opposition), alleging that some ASCP members "own" LTC pharmacies, with Compl. ¶ 12,
which alleges only that ASCP members "operate" such pharmacies).  Assuming the belated and
conclusory allegations set forth in the Clark Declaration may properly be considered in the
absence of an amended complaint, ASCP still fails to establish germaneness because it does not
allege any facts demonstrating how this action is relevant to ASCP's stated goal of "promot[ing]
and improv[ing] consultant pharmacy practice."

(1993)).  *See also* <u>Black Farmers & Agriculturists Ass'n v. Veneman</u>, 2005 WL 711821, at *2

(D.D.C. March 29, 2005) (attached as Exhibit A) (dismissing claim for declaratory judgment

asserted by an association on behalf of its members, where the declaratory judgment claim could

not be distinguished from a claim for damages); <u>Pesticide Public Policy</u>, 622 F. Supp. at 434-35

(a judicial declaration sought by an association, that defendants were liable for costs and

expenses, was tantamount to a claim for damages; accordingly, the association lacked standing).

> **2.     The Complaint's Demand for Declaratory Judgment Does Not Seek
> Prospective Relief, But Instead Seeks Money Damages for Alleged
> <u>Underpayments Dating Back to January 1, 2006.</u>**

Plaintiffs' Complaint makes clear that ASCP and LTCPA seek money damages for their

members; indeed, it explicitly states that Plaintiffs want the Court to "re-direct [the co-payment]

amounts to the entities to whom the funds are properly owed—Plaintiffs' member LTC

Pharmacies."  (Compl. ¶ 6).  Regardless of how Plaintiffs try to spin it, a court order directing the

transfer of money from UHG to Plaintiffs' members for claims incurred since January 1, 2006

would not constitute prospective relief in the form of an injunction or a declaratory judgment.

<u>Pesticide Public Policy</u>, 622 F. Supp. at 435 ("In essence, [P]laintiff[s] [have] fashioned [their]

request for relief in a novel manner in order to circumvent the associational standing

requirements of <u>Warth v. Seldin</u> to assert a claim for damages. . . . *[Plaintiffs] may not*

*circumvent the standing requirements by seeking a declaration of entitlement to money*

*damages*.").  (Emphasis added).

The Complaint's Prayer for Relief further evidences that Plaintiffs seek retroactive

damages under the guise of a declaratory judgment ruling.  Specifically, Plaintiffs request "[a]

judgment declaring that the Defendant owes Plaintiffs' member LTC pharmacies and pharmacists

the co-payment amounts, *in an amount to be determined* consistent with CMS policy and

procedure . . . ." (Compl. Prayer for Relief (a) (emphasis added)).  The relief sought by Plaintiffs is indistinguishable from the form of relief that, in <u>Air Transport Ass'n v. Reno</u>, 80 F.3d 477 (D.C. Cir. 1996), the D.C. Circuit concluded would be a claim for money damages.

In <u>Air Transport</u>, the plaintiff association sought a judgment declaring the Immigration and Naturalization Service's ("INS") transit without visa policy was illegal, and "an order allowing its members to make individualized showings of damages and receive compensation for amounts they . . . expended." <u>Id</u>. at 483.  The D.C. Circuit held that the association lacked standing to assert a monetary claim on behalf of its members, since "any award of monetary compensation would require the participation of individual members in the lawsuit[.]" <u>Id</u>.

Similar to <u>Air Transport</u>, a judicial declaration that co-payment amounts are owed to LTC pharmacies would not end this matter, because the amount of money purportedly owed to each pharmacy would, by Plaintiffs' own admission, still have to be adjudicated in accordance with CMS regulations and the terms of applicable contracts with that pharmacy.  (*See* Compl. Prayer for Relief (a)).  At a minimum, such an adjudication would require—with respect to *each* claim submitted by *each* LTC pharmacy—a determination as to:  (1) whether the resident of the LTC facility on whose behalf the claim was submitted satisfied the statutory criteria of an Institutionalized Dual Eligible; (2) whether the individual was covered under a PDP sponsored by a subsidiary of UHG, as opposed to some other PDP; (3) whether the pharmacy collected or waived a co-payment from such individual and carried a corresponding debt on its books; (4) whether CMS data had been updated to reflect such individual's status as an Institutionalized Dual Eligible; (5) whether the prescription drug was covered by the PDP; and (6) whether the pharmacy re-submitted the claim within the time limit specified in the applicable contract.

As was the case in Air Transport, even if the Court were to enter the judgment Plaintiffs seek, the determination of *how much* money UHG would owe to *which* LTC pharmacies would necessarily require individualized proof from each LTC pharmacy. Warth, 422 U.S. at 515-16 ("Whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof"). Therefore, to obtain the damages Plaintiffs seek, each member LTC pharmacy must be a party to this suit. Id. ("Thus, to obtain relief in damages, each member of [the association] who claims injury as a result of [defendants'] practices must be a party to the suit, and [the association] has no standing to claim damages on his behalf").

Plaintiffs' Opposition does not even address Air Transport, which UHG discussed at length in its Motion to Dismiss. Instead, Plaintiffs rely upon Int'l Union, United Auto. Aerospace & Agric. Implement Workers of Am. v. Brock, 477 U.S. 274 (1986) for the proposition that the Court may find associational standing when a plaintiff-association seeks a declaratory judgment that may *eventually* result in association members obtaining monetary recovery. Brock is inapposite, however, since the association's lawsuit at issue in Brock "raise[d] a *pure question of law*: whether the [Secretary of Labor] properly interpreted the Trade Act's . . . eligibility provisions." 477 U.S. at 287 (emphasis added)). In Air Transport, the D.C. Circuit recognized Brock's unique posture in the associational standing context, noting:

> Once the Court granted the injunction, the Supreme Court said, it would then be up to the *individual state agencies* to calculate the amount union members were entitled to. Because there were separate entities vested with authority to assess individualized claims and ready and able to do so once the obstruction posed by the defendant agency's error of law was remanded, the matter could be *judicially* disposed of without the participation of union members. In this case, however, a judicial declaration that the INS's policies are invalid would not end the matter. The determination of what money the airlines paid, for what kinds of detention services, and for which types of aliens would be no simple administrative matter, but would instead require individualized proof from each airline.

Air Transport, 80 F.3d at 484 (italics in original; underline added for emphasis; internal citations omitted).  In their Opposition, Plaintiffs imply that individualized proof of damages would not be required in this action since the purportedly "declaratory" relief they seek (requiring money to be paid to LTC pharmacies) would be "based upon the uniformly applied regulations and network contracts with pharmacies."  (Opposition at p. 13).  The D.C. Circuit, however, has specifically *rejected* the argument that a formulaic damage calculation excuses an association's members from participating in a lawsuit in which the association seeks damages on their behalf. Telecommunications Research & Action Center v. Allnet Communications Services, Inc., 806 F.2d 1093, 1095 (D.C. Cir. 1986) (rejecting an association's claim that because damages for its members could be calculated using a simple formula that would apply across-the-board, the association's members did not have to participate in the lawsuit).  *See also* Sanner v. Board of Trade, City of Chicago, 62 F.3d 918, 923 (7th Cir. 1995) ("Although the individual calculation of damages for each soybean farmer might be rather technical and uncomplicated, the individual participation of all members asserting a claim would nonetheless be required").

Further, contrary to Plaintiffs' assertion, their members' claims could not be resolved uniformly.  The LTC pharmacies' "damages claims are not common to the entire membership, nor shared by all in equal degree, and consequently there is simply no way the extent of harm to the [Plaintiffs'] members can be determined without individualized proof."  Air Transport, 80 F.3d at 483-84 (citing Telecommunications Research, 806 F.2d at 1095).  Therefore, ASCP and LTCPA lack associational standing to bring this action on behalf of their members.

The only other case cited in the Opposition in support of Plaintiffs' claim for associational standing is UFCW Local 751 v. Brown Group, Inc., 517 U.S. 544 (1996), in which the Supreme Court ruled that a union had standing to assert a claim for damages on behalf of its

members to redress an employer's alleged violation of the Worker Adjustment and Retraining ("WARN") Act. The Supreme Court, however, recognized the union's standing to sue only because Congress, in enacting the WARN Act, "*specifically* authorized the union to sue for its members' damages," and because "there [was] no question that Congress may abrogate" the otherwise applicable prohibition against an association suing for damages on its members' behalf. Id. at 558. Nothing in Brown Group changes the general principle that "an association's action for damages running solely to its members would be barred for want of the association's standing to sue." Id. at 546.

Accordingly, ASCP and LTCPA lack standing to maintain an action seeking additional monetary payments for their members. As Plaintiffs fail the test for associational standing, the Court lacks subject matter jurisdiction and the action should be dismissed. Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987) (lack of standing is a defect in subject matter jurisdiction requiring the Court to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1)).

**B.    ASCP and LTCPA Lack Standing to Sue On Their Own Behalf.**

As discussed in UHG's opening brief, for ASCP and LTCPA to sue on their own behalf, they must allege, at an "irreducible constitutional minimum," that: (1) they have suffered a concrete and particularized "injury in fact" which is an invasion of a legally protected interest; (2) there is a "causal connection between the injury and the conduct complained of" that is traceable to UHG; and (3) it is likely that their injury will be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. at 560-61. Plaintiffs fail all three prongs of the Lujan test.

### 1.    <u>Plaintiffs Do Not Allege a Cognizable Injury-in-Fact</u>.

As detailed in UHG's Motion to Dismiss (at pp. 15-16), the Complaint does *not* allege any definable, discernable, or specific injury to ASCP or LTCPA as organizations.  The Complaint merely states that "Part D beneficiaries, Plaintiffs and their members, all have an interest to be free from the adverse impact of co-payment refund checks distributed to Part D beneficiaries . . . ."  (Compl. ¶ 36(d)).  The Complaint does not allege or explain how remittance of co-payments to beneficiaries would injure ASCP or LTCPA *as organizations*.  Moreover, the relief sought in the Complaint would not benefit ASCP or LTCPA as organizations, but instead would (if granted) require money to be paid to individual <u>pharmacies</u>. (*See* Compl. ¶ 35, seeking the "reimbursement of copayments to <u>LTC pharmacies</u> . . .," and Prayer for Relief (a), seeking an order declaring that UHG "owes Plaintiffs' <u>member pharmacies and pharmacists</u> the co-payments amounts, in an amount to be determined . . . ."  (Emphasis added)).

In their Opposition, Plaintiffs do not cite to any provision of the Complaint in which they allege that their interests *as organizations* have been injured by UHG's alleged conduct.  Instead, the Opposition attempts to rectify the Complaint's deficiencies by arguing that UHG's alleged conduct "has interfered with the core mission of both organizations to protect and promote the profession of long term care pharmacy[,]" and "detracted from their focus on obtaining legislative and policy advances for their members."  Opposition at p. 14.[6]  Such vague

---

[6]  In an attempt to correct the Complaint's deficiencies, the Opposition attaches declarations from the Executive Directors of LTCPA and ASCP, who now allege—*for the first time*—that their organizations have been forced to devote resources to address the allegedly improper reimbursement of LTC pharmacies.  (*See* Second Declaration of Paul Baldwin ("Second Baldwin Decl."), ¶ 13, attached to Plaintiffs' Opposition; and Clark Decl., ¶ 9).  Conspicuously absent from such declarations, however, are any *facts* that would support their conclusory statements.  It is well-settled that even on a motion to dismiss, a plaintiff's conclusory legal and factual allegations need not be considered by the Court.  <u>Domen v. Nat'l Rehabilitation Hosp.</u>, 925 F. Supp. 830, 837 (D.D.C. 1996) (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

allegations of harm—unaccompanied by facts to support them—are insufficient to provide

ASCP and LTCPA with organizational standing, since the D.C. Circuit has ruled that a

cognizable injury must "'constitute . . . more than simply a setback to the organization's abstract

social interests.'" Nat'l Taxpayers Union, Inc. v. U.S., 68 F.3d 1428, 1433 (D.C. Cir. 1995)

(quoting Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982)).  The mere fact that ASCP

and LTCPA have allegedly been "frustrated [in their] objectives is the type of abstract concern

that does not impart standing."  Id. (quoting Simon v. Eastern Ky. Welfare Rights Organization,

426 U.S. 26, 39-40 (1976)).

## 2.    Plaintiffs' Purported Injuries Are Not Traceable to UHG and Their Injuries Would Not Be Redressed by a Favorable Decision.

Even if Plaintiffs' belated and vague allegations of organizational injury are credited by

the Court, Plaintiffs fail to establish standing because their alleged "injury" is not traceable to

UHG.  To the contrary, Plaintiffs' own pleadings make clear that the co-payment reimbursement

matter at issue in the Complaint involves many other PDPs who are not parties to this lawsuit, all

of whom received incorrect data from CMS.  See Compl. ¶¶ 22-23 ("However, virtually every

PDP failed to recognize that this special class of institutionalized dual-eligibles had no co-

payments . . . . Among others, Plaintiffs . . . immediately brought the issue to the attention of

CMS, and began working with CMS and the PDPs to address this significant problem");

Opposition at p. 3 ("However, since January 1, 2006, various PDPs, including Defendant's PDPs,

have failed to honor their contracts with Plaintiffs' member LTC pharmacies, and have been

'shorting' the reimbursement payments made to LTC pharmacies . . . ."); Opposition at p. 5

("Unfortunately . . . Defendant's PDPs (along with other PDPs) inappropriately reduced LTC

pharmacy reimbursement by withholding the co-payment amount . . . and, even today, many

PDPs, including Defendant's PDPs, still have not reimbursed the LTC pharmacies for the

shortfall." (Emphasis added)). By Plaintiffs' own admission, the co-payment reimbursement matter at issue in the Complaint affected "virtually every PDP" in the United States, and "many PDPs ... *still* have not reimbursed LTC pharmacies for the shortfall." (Opposition at p. 5 (emphasis added)).

Plaintiffs' purported "injuries"—in the form of allegedly diverted resources and the frustration of organizational efforts—are not traceable to UHG's alleged conduct, but instead are traceable to CMS's incorrect data. Put simply, ASCP and LTCPA would have experienced the same purported "injuries" *regardless* of UHG's alleged conduct. In their Opposition (at pp. 13-15), Plaintiffs cite two cases in support of their standing to sue on their own behalf: Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach, 469 F.3d 129 (D.C. Cir. 2006) and Nat'l Fair Housing Alliance v. Prudential, 208 F. Supp. 2d 46 (D.D.C. 2002). Rather than supporting Plaintiffs' position, however, these cases underscore why the Complaint should be dismissed. Abigail Alliance and Nat'l Fair Housing Alliance make clear that an association has standing to sue on its own behalf only if its alleged injury is directly attributable to the defendant's conduct. Abigail Alliance, 469 F.3d at 133 ("For standing to be based upon an injury to the organization's activities, there must still be a direct conflict between the defendant's conduct and the organization's mission") (citing Nat'l Treasury Employees Union v. U.S., 101 F.3d 1423, 1430 (D.C. Cir. 1996)); Nat'l Fair Housing Alliance, 208 F. Supp. 2d at 52 ("The injury must be fairly traceable to the challenged conduct of the defendants and it must be likely that the injury will be 'redressed by a favorable judicial decision'") (quoting Lujan, 504 U.S. at 560-61)). Given that Plaintiffs cannot establish that their alleged expenditure of resources was caused by UHG's particular conduct, they lack standing to bring this action on their own behalf.

Plaintiffs also lack standing to sue on their own behalf because their purported organizational injuries would not be redressed by a favorable decision in this action.  As noted above, Plaintiffs' own pleadings aver that "virtually every PDP" in the United States encountered data problems that allegedly caused them to erroneously reimburse LTC pharmacies (Compl. ¶¶ 22-23), and Plaintiffs' Opposition states that "many PDPs" unrelated to UHG "still" have not issued corrected reimbursements.  (Opposition at p. 5).  Given the number of other PDPs which Plaintiffs allege have not reimbursed LTC pharmacies for the co-payments at issue, a favorable decision in this action would *not* remedy Plaintiffs' purported organizational injuries, thus depriving them of standing to bring this action on their own behalf.  Nat'l Fair Housing Alliance 208 F. Supp. 2d at 52 ("The injury must be fairly traceable to the challenged conduct of the defendants *and* it must be likely that the injury will be 'redressed by a favorable judicial decision'") (emphasis added) (*quoting* Lujan, 504 U.S. at 560-61)).

**C.**     **The Court Lacks Personal Jurisdiction Over UHG.**

As described in UHG's Motion to Dismiss (at pp. 20-21), and the accompanying Declaration of Juanita Luis (the "Luis Decl.," attached as Exhibit 8 in support of the Motion), UHG does not conduct business in the District of Columbia.  (Luis Decl. ¶ 7).[7]  Rather, UHG is a Minnesota holding company that is licensed to do business (and operates) only in Minnesota. Id. at ¶¶ 5-6).  Therefore, the Court lacks personal jurisdiction as to UHG.  Plaintiffs argue that:

---

[7]   Ms. Luis is the Associate General Counsel for United HealthCare Services, Inc., a wholly owned subsidiary of UHG.  In such capacity, she maintains the corporate organization charts for UHG and its affiliates, and she is familiar with where UHG and its affiliates are incorporated and qualified to do business.  Luis Decl. ¶ 5.  Contrary to Plaintiffs' assertion that Ms. Luis's Declaration contains "conclusory statements," Opposition at p. 28, Ms. Luis's statements are factual, and are based on her personal knowledge.

(1) UHG has waived its objection to personal jurisdiction; (2) UHG does business in the District of Columbia; and (3) UHG's subsidiaries operate in the District of Columbia. As discussed below, Plaintiffs' arguments are devoid of merit.

### 1. UHG Has Not Waived Objection to the Court's Personal Jurisdiction.

Plaintiffs argue (at pp. 27-28 of the Opposition) that UHG has subjected itself to the Court's personal jurisdiction by allegedly submitting to such jurisdiction in an antitrust matter before Judge Urbina that was brought by the Department of Justice, captioned *U.S. v. UnitedHealth Group, Inc.*, 05-cv-02436, 2006 U.S. Dist. LEXIS 45938 (D.D.C. May 23, 2006) (attached to Plaintiffs' Opposition, as Exhibit 5 to the Declaration of George M. Borababy). As a threshold matter, Plaintiffs erroneously state that "UHG agreed before Judge Urbina that it is 'a corporation that transacts business and is found in the District of Columbia's and that personal jurisdiction and venue were proper in this District." Id. Plaintiffs' selectively quote from the complaint filed against UHG in that case, and try to pass off the quotation as if it was part of the judgment entered by the Court. And, the Final Judgment entered by Judge Urbina specifically notes that it was entered "*without* trial or adjudication of *any* issue of fact or law, and *without* this Final Judgment constituting any evidence against or admission by any party regarding *any* issue of fact or law." 2006 U.S. Dist. LEXIS 45938, at *1 (emphasis added).

In any event, as a matter of law, UHG's alleged "submission" to the Court's jurisdiction in the antitrust matter does not equate to its consent to personal jurisdiction in this action. Indeed, "defense on the merits in a suit brought by one party cannot constitute consent to suit as a

defendant brought by different parties." Dow Chemical Co. v. Calderon, 422 F.3d 827, 835 (9th Cir. 2005) (emphasis added).[8]

**2.    Plaintiffs Offer No Facts to Establish that UHG Transacts Business in the District of Columbia.**

Plaintiffs next argue that UHG is subject to the Court's personal jurisdiction because it has an office in the District of Columbia at which it "likely" conducts business. (Opposition at pp. 26, 30-31). However, Plaintiffs' offer no factual evidence to support their argument, and simply claim they "have reason to believe" it to be so. (Opposition at pp. 30 and 32). Given that Plaintiffs' bear the burden of establishing the Court's jurisdiction, Lott v. Burning Tree Club, Inc., 516 F. Supp. 913, 918 (D.D.C. 1980), Plaintiffs' mere supposition is not enough to withstand dismissal.

In its Motion to Dismiss, UHG advised the Court that it has a government affairs office in the District of Columbia, (Motion at p. 20, n.20), and noted that a nonresident corporate defendant is not subject to the Court's personal jurisdiction simply because it has an office in the District for the purpose of monitoring legislative and regulatory matters and maintaining official contacts with Congress and the executive branch. Id. (citing Fandel v. Arabian Am. Oil Co., 345 F.2d 87, 89 (D.C. Cir. 1965); AGS Int'l Services v. Newmont USA Limited, 346 F. Supp. 2d 64, 75-76 (D.D.C. 2004)).

Plaintiffs argue that the Court should disregard the "government contacts exception" to personal jurisdiction since they "believe" that it is "likely" that UHG's D.C. office is used to

---

[8]   The Opposition's reference (at pp. 28-29) to lawsuits filed against UHG in jurisdictions other than the District of Columbia are irrelevant to the issue of whether this Court has personal jurisdiction over UHG. Further, contrary to Plaintiffs' argument (Opposition at pp. 7 and 28), the fact that UHG obtained a change in venue from the Eastern District of Kentucky to the Northern District of Illinois in an antitrust action filed by Omnicare does not indicate that UHG is doing business in states other than Minnesota, but instead reflects (as the Eastern District of Kentucky found) that UHG was a third party beneficiary of the specific contract at issue, and was therefore entitled to enforce the contract's choice of venue provision.

16

conduct commercial transactions on behalf of UHG's wholly owned subsidiaries that operate in the District, and which transact business with the federal government and within the District. (*See* Opposition at pp. 26, 30, 31, and 32).  All that Plaintiffs cite in support of their "belief" that UHG's D.C. office is used to conduct commercial transactions are paragraphs 11 and 12 of the Second Declaration of LTCPA's Executive Director, Paul Baldwin.  In those paragraphs, Mr. Baldwin states that "although [he] has no direct knowledge," he "believe[s]" that UHG employees in Washington, DC negotiate commercial arrangements with CMS, engage in public relations campaigns, and participate in trade associations.  Mr. Baldwin is not competent to offer evidence, however, since he *admits* he does *not* have personal knowledge of the activities conducted at UHG's D.C. office.[9]  Because Plaintiffs lack any factual basis with which to refute the evidence offered by UHG in its Motion to Dismiss, they have failed to satisfy their burden of establishing the Court's jurisdiction.  United States v. Philip Morris, Inc., 116 F. Supp. 2d 116, 120, n. 4 (D.D.C.2000) (a court need not treat a plaintiff's allegations as true when determining whether personal jurisdiction exists.  Instead, the court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts.") (Citing 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1351 (1990)).

Moreover, the cases cited by Plaintiffs in their Opposition with respect to limits to the government contacts exception are inapposite to the facts at issue.  Plaintiffs cite Chrysler Corp. v. General Motors Corp., 589 F. Supp. 1182 (D.D.C. 1984) and Dooley v. United Technologies

---

[9]  Mr. Baldwin's Second Declaration alleges that he had a telephone conversation with a UHG representative regarding the co-payments that are at issue in this lawsuit, although he cannot remember the name of the person with whom he spoke.  (Second Baldwin Decl. ¶ 9).  In addition to the person's name, Mr. Baldwin's Declaration also omits any reference to such alleged person's position with UHG or the substance or length of the conversation.  Further, his assertion stands in sharp contrast with his later representation that *all* his other discussions with employees of "UHG and/or its subsidiaries" involved individuals in Minnesota, California, and other places.  Second Baldwin Decl. ¶ 10 (emphasis added).

Corp., 786 F. Supp. 65 (D.D.C. 1992) for the unremarkable proposition that the government contacts exception will not bar the Court from exercising personal jurisdiction over a non-resident company when *facts* establish that the company's District of Columbia office is used for more than contacts with government agencies, and instead includes operations that are customarily associated with strictly commercial operations.  (Opposition at pp. 31-32).  Plaintiffs fail, however, to establish any *facts* indicating that UHG's office in the District is used for commercial purposes.  All Plaintiffs offer is Mr. Baldwin's guesswork and supposition, which, even Mr. Baldwin admits, is not based upon any personal knowledge.  (Second Baldwin Decl. ¶ 11).

> **3.    The Presence of UHG's Subsidiaries in the District of Columbia Does Not Establish Personal Jurisdiction over UHG.**

Plaintiffs spend great effort to detail the presence of UHG subsidiaries in the District of Columbia (*see*, *e.g.*, Opposition at pp. 25-26, 30).  Plaintiffs treat the presence of such subsidiaries in the District of Columbia as somehow determinative of the Court's jurisdiction over UHG itself, even though UHG does not do business in the District (Luis Decl. ¶ 7).  However, a subsidiary's presence in the District of Columbia *cannot* be attributed to the parent for purposes of establishing personal jurisdiction over the parent.  Martin-Trigona v. Acton Corp., 600 F. Supp. 1193, 1197-98, aff'd 818 F.2d 95 (table decision), 1987 U.S. App. LEXIS 9492, at *4 (D.C. Cir. May 20, 1987); Diamond Chemical Co., Inc. v. Atofina Chemicals, Inc., 268 F. Supp. 2d 1, 7 (D.D.C. 2003).  Given that Plaintiffs have failed to offer facts demonstrating that UHG has consented to personal jurisdiction in this action or is conducting business in the District of Columbia, the Court lacks personal jurisdiction over UHG, and this action should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

**D.**    **The Complaint Fails to State a Claim Upon Which Relief Can Be Granted.**

As discussed in UHG's Motion to Dismiss, Plaintiffs' Complaint should be dismissed not only for lack of standing and personal jurisdiction, but also for failure to state a claim. Recognizing the deficiencies in their Complaint, Plaintiffs' Opposition attempts to re-plead the Complaint by asserting new allegations against UHG, and by mischaracterizing CMS's guidance.

**1.**    **UHG Is Not a Proper Defendant, Since It Is Not a Party to Network Contracts with LTC Pharmacies.**

Plaintiffs, in Complaint ¶ 34, allege that UHG "has a 'network pharmacy contract' with each of Plaintiffs' members . . .," and that UHG has violated "[its] contractual obligations" by not directly reimbursing LTC pharmacies for the co-payments at issue. (Emphasis added). In its Motion to Dismiss, UHG explained that Plaintiffs—in their rush to the courthouse—sued the wrong party, since UHG "is not a party to *any* contract with *any* LTC pharmacy. Nor is UHG a party to contracts with individual pharmacists represented by ASCP." (Motion to Dismiss, at p. 26 (emphasis added)). Rather, the contracts are between the LTC pharmacies and certain subsidiaries of UHG.[10]

In their Opposition, ASCP and LTCPA concede that UHG is not a party to contracts with their members, by arguing (for the first time) that "the absence of a direct contract with a parent corporation is not automatically fatal to an action against the parent for breach of contract." (Opposition at p. 17). Plaintiffs thus argue that they may pierce the corporate veil so that UHG may be sued (and potentially held liable) for the alleged conduct of its subsidiaries (who are *not* parties to this action).

---

[10]    As detailed in UHG's Motion to Dismiss at pp. 26-27, UHG owns the following subsidiaries that sponsor PDPs: UnitedHeathcare Insurance Company; UnitedHealthcare of New York, Inc.; PacifiCare Life and Health Insurance Company; and PacifiCare Insurance Company.

It is well-established that "under ordinary circumstances a contract in terms and in name with one corporation cannot be treated as that of [another], and a parent will not be liable for the obligations of its subsidiaries.'" T & S Products, Inc. v. U.S., 48 Fed. Cl. 100, 111 (Ct. Clms. 2000) (quoting BLH, Inc. v. U.S., 13 Cl. Ct. 265, 272 (1987)).  "The law in the District of Columbia is that 'the acts and obligations of the corporate entity will not be recognized as those of [another] until the person seeking to disregard the corporate entity has proved by affirmative evidence that there is (1) unity of ownership and interest and (2) use of the corporate form to perpetrate fraud or wrong." Smith v. Washington Sheraton Corp., 135 F.3d 779, 786 (D.C. Cir. 1998) (emphasis added) (holding that a parent company could not be held liable for harm caused by a condition on a subsidiary's property) (quoting Vuitch v. Furr, 482 A.2d 811, 815 (D.C. 1984)).

While Plaintiffs' Opposition (at pp. 17-18) argues—again, for the first time—that UHG is dictating the co-payment reimbursement policy of its subsidiaries, this assertion hardly suffices to satisfy the criteria necessary to even *allege* entitlement to pierce the corporate veil.  The very case cited by Plaintiffs makes clear that to pierce UHG's corporate veil, Plaintiffs must not only allege (and establish) that UHG "exercise[d] such control over the subsidiar[ies] that the subsidiar[ies] ha[ve] become mere instrumentalit[ies]," but also that the subsidiaries "[were] created or used *for the purpose* of perpetrating fraud or wrongdoing." Penick v. Frank E. Basil, Inc. of Delaware, 579 F. Supp. 160, 165 (D.D.C. 1984).  Plaintiffs have not, and cannot, allege the subsidiaries with whom LTC pharmacies entered into network contracts were mere instrumentalities of UHG, or that they were established or maintained to perpetrate fraud or wrongdoing against LTC pharmacies.  Accordingly, their argument that UHG can be held liable

for contracts entered into by its subsidiaries is without merit, and their contractual claim against

UHG must be dismissed for failure to state a claim.

2.    **Plaintiffs Misconstrue the Statute and CMS Regulations**.

As detailed in UHG's Motion to Dismiss, neither the Medicare Modernization Act (the

"MMA") nor regulations issued by CMS require PDPs to remit co-payments directly to LTC

pharmacies with respect to Institutionalized Dual Eligibles.  (*See* Motion to Dismiss at pp. 22-

24).  Rather, the provisions of the MMA and Medicare Part D regulations cited in the Complaint

only address *whether* Institutionalized Dual Eligibles can be charged co-insurance or co-

payments; they do not address to whom the PDPs must pay the co-insurance or co-payment

amounts (i.e., to an Institutionalized Dual Eligible or a LTC pharmacy).

In discussing the MMA, Medicare Part D regulations, and guidance issued by CMS in

2006 regarding the reimbursement of co-payments with respect to Institutionalized Dual

Eligibles, Plaintiffs (at pp. 20-24 of their Opposition) simply repackage the erroneous legal

conclusions set forth in the Complaint, and ask the Court to "read into" CMS's guidance an

affirmative duty to remit co-payments to LTC pharmacies *regardless* of whether such

pharmacies satisfy the PDPs' claims procedures and provide the data required by PDPs and

CMS.  As detailed in UHG's Motion to Dismiss (at pp. 24-26), however, CMS's guidance does

not require the remittance of co-payments directly to LTC pharmacies, but instead provides only

that PDPs are permitted to remit co-payments to LTC pharmacies *if* such pharmacies re-submit

claims as the CMS data is corrected.  As noted above, UHG subsidiaries that sponsor PDPs have

been working with LTC pharmacies to process resubmitted claims as corrected data is received

from CMS, and to make any reimbursement adjustments that may be due, but Plaintiffs'

members have generally refused to resubmit their claims, instead demanding lump-sum

payments without providing the supporting data required by CMS guidance.

Given that Plaintiffs' reading of CMS's guidance is contrary to its plain terms, and since

Plaintiffs' member pharmacies have generally refused to resubmit their claims to PDPs

sponsored by subsidiaries of UHG, Plaintiffs' asserted violations of the MMA and CMS

guidance fail, and should be dismissed.

**III.    Conclusion**

For the foregoing reasons, UHG respectfully submits that the Court should dismiss

Plaintiffs' Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and

failure to state a claim upon which relief can be granted.


March 7, 2007                                    Respectfully submitted,

                                                  /s/ Mark C. Nielsen
                                    Thomas F. Fitzgerald (Bar No. 358232)
Michael J. Prame (Bar No. 451017)
Mark C. Nielsen (Bar No. 465220)
Groom Law Group, Chartered
1701 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone:    202.857.0620
Facsimile:    202.659.4503
Email:        tff@groom.com
              mjp@groom.com
              mcn@groom.com

**Attorneys for Defendant**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of UnitedHealth Group Incorporated's Reply Memorandum in Support of Defendant's Motion to Dismiss was served, via electronic delivery, on the 7th day of March 2007, upon the following:

David Farber, Esq.
Harry Silver, Esq.
Patton Boggs
2550 M Street, NW
Washington, DC  20037
dfarber@pattonboggs.com
hsilver@pattonboggs.com

Counsel for Plaintiffs

March 7, 2007

_____/s/ Mark C. Nielsen_____
Mark C. Nielsen (Bar No. 465220)
Groom Law Group, Chartered
1701 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone:     202.857.0620
Facsimile:      202.659.4503
Email:          mcn@groom.com

**Counsel for Defendant**

H:\008040\00077\REPLY IN SUPPORT OF MOTION TO DISMISS-
V03.DOC