IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Long Term Care Pharmacy Alliance and American Society of Consultant Pharmacists,** <br><br> Plaintiffs <br><br> v. <br><br> **UnitedHealth Group Inc.,** <br><br> Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No.: 1:06-CV-01221 (ESH) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**Declaration of Michele Renaud in Support of Defendant's Opposition to
Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction**

Pursuant to section 28 U.S.C. § 1746, I, Michele Renaud, declare under penalty of perjury that the following is true and correct:

1. I am over 21 years of age, and I am competent to make this Declaration.

2. I make this Declaration based on personal knowledge.

3. I am employed as Director, Pharmacy Operations of Ovations Pharmacy Solutions, a wholly owned subsidiary of UnitedHealth Group Incorporated ("UHG") which is named as a defendant in the above-captioned lawsuit. I am familiar with the claims asserted by Plaintiffs in the lawsuit.

4. My responsibilities as Director, Pharmacy Operations include overseeing the administration of the prescription drug plans offered by subsidiaries of UHG, including the claims submission and payment processes utilized by UHG subsidiaries that sponsor Medicare Part D prescription drug plans ("PDPs"). UHG-affiliated PDPs are approved by the Centers for Medicare and Medicaid Services ("CMS"), the federal

agency that administers the Medicare Part D program, and each such PDP has entered into a standardized contract with CMS.

5. I am familiar with the data required to process claims submitted by retail and long-term care ("LTC") pharmacies, and the technical issues that relate to the processing of claims submitted by LTC pharmacies with respect to "Institutionalized Dual Eligibles" and other Medicare Part D beneficiaries who are eligible for low-income subsidies available under the Medicare Part D program. The term "Institutionalized Dual Eligible" refers to an individual who is enrolled in both Medicare Part D and a state Medicaid program, and who has resided in a nursing home or other LTC facility for 30 days or more.

6. UHG is a holding company. The following wholly owned subsidiaries of UHG sponsor Medicare Part D PDPs: UnitedHeathcare Insurance Company; UnitedHealthcare of New York, Inc.; PacifiCare Life and Health Insurance Company; and PacifiCare Insurance Company. These subsidiaries do not directly contract with LTC pharmacies for purposes of providing Medicare Part D benefits. Rather, the subsidiaries contract with third parties, known as pharmacy benefit managers ("PBMs"), and the PBMs enter into contracts with retail and LTC pharmacies.

7. The co-payment reimbursement issue affecting LTC pharmacies which are at issue in the lawsuit primarily have been caused by data problems involving CMS relating to the start up of Medicare Part D, and, in particular, data problems associated with the enrollment of Medicaid beneficiaries into the Medicare Part D program.

8. Effective January 1, 2006, beneficiaries eligible for both Medicare and Medicaid—including the Institutionalized Dual Eligibles at issue in the lawsuit—began

receiving prescription drug coverage under Medicare Part D, as administered by the PDPs in which such beneficiaries were enrolled (whether voluntarily or by CMS assignment). The transition of prescription drug coverage from individual state Medicaid plans to Medicare Part D did not go smoothly, and CMS transmitted inaccurate data to PDPs regarding Medicare Part D beneficiaries' enrollment and eligibility for the low-income subsidy. As a result of CMS's inaccurate data, PDPs across the country (including those sponsored by subsidiaries of UHG) were forced to treat certain Medicare Part D beneficiaries as having co-payment obligations with respect to the prescription drugs they received, when, it later turned out, such beneficiaries should have had lesser co-payments (or none at all). When processing pharmacy claims concerning such beneficiaries, UHG-affiliated PDPs reduced the reimbursement paid to retail and LTC pharmacies to reflect co-payment obligations incorrectly reported by CMS, as required by the pharmacies' network contracts.

9. CMS has periodically provided updated data to UHG-affiliated PDPs, correcting enrollment information and retroactively correcting data regarding enrollees' eligibility for the Medicare Part D low-income subsidy, and the subsidy level—which directly impacts the amount of a co-payment (if any) for which an enrollee may be responsible. CMS has not corrected all of its data, however.

10. As CMS has corrected enrollment and low-income subsidy data, UHG-affiliated PDPs have worked closely with CMS, LTC pharmacies and the Long Term Care Pharmacy Alliance to address prescription drug claims for which reimbursement to the pharmacy was previously reduced as a result of CMS's erroneous data. Since early 2006, UHG-affiliated PDPs offered to process any claims resubmitted by pharmacies, to

ensure that Medicare Part D beneficiaries and pharmacies receive any co-payment adjustments that may be due.

11.   The re-submission of claims for processing is vitally important since reprocessing allows PDPs to track drug expenditures and create an audit trail for CMS. Reprocessing also allows the PDPs to track enrollees' claims data on a going-forward basis. Due to the complexity of the data issues involved and CMS rules regarding when and how reimbursements for prescription drug expenditures can be obtained, the adjustment of claims outside of the PDPs' claims processing systems could jeopardize the PDPs' ability to obtain reimbursement from CMS.

12.   In an effort to address LTC pharmacies' concern that the individual resubmission of claims would be time consuming and burdensome, UHG-affiliated PDPs offered to accept resubmitted claims on a "batch" basis, which essentially allowed LTC pharmacies to resubmit claims in bulk. UHG-affiliated PDPs have been willing and able to accept batch claims since the Summer or Fall of 2006, and LTC pharmacies have always had the option of resubmitting claims on an individual basis.

13.   In a further effort to accommodate LTC pharmacies, UHG-affiliated PDPs extended the time period (also known as the "window") for LTC pharmacies to resubmit claims for processing. Specifically, UHG-affiliated PDPs offered to keep the window for resubmission of LTC pharmacy claims open until February 21, 2007 for batch claims, and until March 16, 2007 for individual claims.

14.   The claim resubmission windows cannot be extended further, since CMS requires PDPs to process and pay 2006 prescription drug claims *and* to submit detailed reports of reimbursable "Prescription Drug Events" to CMS by May 31, 2007.

15. To accommodate CMS's deadline for the reporting of Prescription Drug Events, UHG-affiliated PDPs must process, reconcile, and synchronize a tremendous amount of data, which is a time consuming and resource-intensive process. For UHG-affiliated PDPs to submit their reports of Prescription Drug Events to CMS by the May 31, 2007 deadline, the UHG-affiliated PDPs need to begin a claims readjudication process by March 31, 2007. In the absence of resubmitted claims from LTC pharmacies with respect to such beneficiaires, UHG-affiliated PDPs must issue the reimbursement checks directly to the beneficiaries as a condition for obtaining reimbursement from CMS. Any delay issuing checks to individuals beyond this date could significantly impair the PDPs' ability to obtain reimbursement from CMS.

16. After the lawsuit was filed, UHG-affiliated PDPs voluntarily agreed to refrain from sending co-payment reimbursement checks to beneficiaries with respect to whom updated CMS data had been received reflecting changes to their low-income subsidy status. Because UHG-affiliated PDPs generally are unable to identify Institutionalized Dual Eligibles (who have no co-payment obligations) from other low-income subsidy eligible beneficiaries for whom updated CMS data had been received, the UHG-affiliated PDPs are continuing to withhold these claims from our claims readjudication process.

17. UHG-affiliated PDPs have at least 1,514,000 prescription drug claims that were submitted with respect to beneficiaires who have had changes in their low-income subsidy status, and such claims total at least $77.8 million in prescription drug costs. Because the beneficiaries on whose behalf the claims were submitted had changes to their

low-income subsidy status, co-payment adjustments with respect to such claims are owed.

18. If UHG-affiliated PDPs do not issue the co-payment reimbursements with respect to the above-referenced claims, CMS may not credit the PDPs for any portion of such claims—even though the PDPs paid the full amount of the claim less the co-payment. This is because CMS requires that claims be processed and paid in their *entirety* as a condition of reimbursement. For example, if a UHG-affiliated PDP paid $97 on a $100 drug claim due to erroneous CMS data that reflected the beneficiary as owing a $3.00 co-payment, and CMS later corrected its data to reflect the beneficiary as having no co-payment, the PDP must issue the co-payment reimbursement within the CMS's claims reporting deadline if it seeks reimbursement of <u>any</u> amount of the claim. In other words, for each claim for which a co-payment adjustment is not distributed and reported by CMS's May 31, 2007 deadline, the PDP is at risk for losing reimbursement for the <u>entire</u> claim.

19. LTC pharmacies across the country have resubmitted claims to UHG-affiliated PDPs within the claims windows, and with respect to eligible claims, the PDPs either have issued payments to the pharmacies for co-payment amounts previously withheld as a result of CMS's erroneous data, or are processing claims for such adjustment.

20. LTCPA-member pharmacies have generally refused to resubmit claims on either a batch or individual basis, however, and instead have sought lump-sum payments from UHG-affiliated PDPs.

21.    One member of LTCPA, PharMerica, has taken advantage of the extended batch reprocessing window to resubmit claims with purported co-payment reimbursement errors, and its claims are presently being processed.

Executed in Washington, DC, on March 22, 2007.

*Michele Renaud*

Michele Renaud