# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Long Term Care Pharmacy Alliance and American Society of Consultant Pharmacists <br><br> Plaintiffs, <br><br> v. <br><br> UnitedHealth Group Incorporated, <br><br> Defendant | )<br>)<br>)<br>)<br>)<br>) Case No.: 1:06-CV-01221 (ESH)<br>)<br>)<br>)<br>)<br>) |

### Motion to Dismiss Plaintiffs' Amended Complaint

Defendant UnitedHealth Group Incorporated, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), and for the reasons stated in the accompanying Memorandum of Points and Authorities, respectfully moves this Court to dismiss Plaintiffs' Amended Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

May 24, 2007

Respectfully submitted,

   /s/ Mark C. Nielsen
Thomas F. Fitzgerald (Bar No. 358232)
Michael J. Prame (Bar No. 451017)
Mark C. Nielsen (Bar No. 465220)
Groom Law Group, Chartered
1701 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone:    202.857.0620
Facsimile:    202.659.4503
Email:        tff@groom.com
              mjp@groom.com
              mcn@groom.com

**Counsel for Defendant**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Long Term Care Pharmacy Alliance and American Society of Consultant Pharmacists,** )<br>)<br>)<br>**Plaintiffs** )<br>)<br>**v.** )<br>)<br>**UnitedHealth Group Incorporated,** )<br>)<br>**Defendant** )<br>) | **Case No.: 1:06-CV-01221 (ESH)** |

**Memorandum of Points and Authorities in Support of
Defendant's Motion to Dismiss Amended Complaint**

Defendant UnitedHealth Group Incorporated ("UHG"), by and through its undersigned counsel, respectfully submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

I. **Introduction**

On March 29, 2007, the Court denied Plaintiffs' Motion for a temporary restraining order and a preliminary injunction, finding that Plaintiffs failed to establish the requisite irreparable injury. Transcript of Preliminary Injunction Hearing held March 29, 2007 ("Hearing Trans."), Exhibit 1 to the Declaration of Mark C. Nielsen, at 28:14-17.[1] In so holding, the Court recognized that any harm suffered by long term care ("LTC") pharmacies could be remedied by the payment of money damages. See id. at 8:8-15; 15:24-5; 24:25-25-:14; 26:1-24. The Court also noted that "to the extent there is any kind of a contract action [in Plaintiffs' complaint], there is terrible problems with [Plaintiffs'] standing and terrible problems regarding whether or not we've got the right parties, both plaintiff and the defendant." Id. at 28:2-5.

---

[1] All Exhibits refer to attachments to the accompanying Declaration of Mark C. Nielsen, and are hereinafter referenced as "Ex. __."

1

During argument, Plaintiffs' counsel advised the Court that Plaintiffs' lawsuit "is not a contract claim for damages.  No one disagrees that the associations do not have standing to bring damages claims. . . . How much, who, which pharmacies, all the details of a breach of contract case cannot be brought in this case."  Id. at 9:11-14; 20-21.  Instead, Plaintiffs' counsel stated that "[t]he purpose of the lawsuit and the injunction is to prevent [UHG] from sending . . . checks to the [Medicare Part D] beneficiaries" residing in nursing homes.  Id. at 12:12-14.

Following the Court's ruling on the preliminary injunction motion, Plaintiffs requested additional time to file an amended complaint that would clarify the nature of Plaintiffs' claim and the relief sought.  On May 4, 2007, Plaintiffs filed an Amended Complaint [ECF Docket No. 24] which, despite the Court's expressed concerns, keeps the same parties, and continues to assert, as its centerpiece, a contract claim.  See Am. Compl. ¶ 1 ("Plaintiffs bring this action to obtain declaratory judgment that [UHG] is violating . . . contracts with Plaintiffs' member LTC pharmacies;" Prayer for Relief (a)(i), seeking judgment that UHG "was not, and is not, entitled by law or contract to withhold co-payment amounts from reimbursements to LTC pharmacies . . ." (emphasis added).

In the Amended Complaint, Plaintiffs do add two additional claims, but these claims are equally flawed.  First, Plaintiffs allege that UHG breached a purported contract with the Centers for Medicare and Medicaid Services ("CMS") related to the Medicare Part D program.[2]  Am. Compl. ¶ 1 ("Plaintiffs bring this action to obtain a declaratory judgment that [UHG] is violating . . . its contract with the Federal Government"); see also Prayer for Relief (a)(i) (seeking declaration that UHG is not entitled "by law or contract" to withhold co-payments from Plaintiffs' members).  Plaintiffs bring this claim even though they admit that neither they nor

---

[2] CMS is part of the United States Department of Health and Human Services, and it is the federal agency responsible for overseeing the Medicare Part D program.

2

their members are parties to the purported UHG-CMS contract, and notwithstanding the fact that Plaintiffs' members are not third party beneficiaries of the alleged contract. And if Plaintiffs' member pharmacies are not themselves third party beneficiaries of the contract, then Plaintiffs, as trade associations, certainly cannot claim such status.

The second new claim alleges that UHG has violated a provision of the Medicare Part D statute relating to the assessment of co-payments with respect to "Institutionalized Dual Eligibles" (discussed below), and federal regulations concerning the Medicare Part D program. See Am. Compl. ¶ 1; Prayer for Relief (a)(i), and (a)(iii) (seeking declaration that UHG "violated 42 C.F.R. §§ 423.504 and 423.800(c) by paying, or causing to be paid, withheld co-payment amounts to beneficiaries . . ."). Plaintiffs cannot bring such a claim, however, since the Medicare statute does not provide them with a private cause of action against a private party such as UHG. Furthermore, Plaintiffs admit that the statutory and regulatory provisions they seek to enforce come into play only because "the contract between CMS and [UHG-affiliated prescription drug plans] provide that those Plans agree" to comply with such provisions, which reinforces that Plaintiffs are essentially bringing contract claims for which they lack standing. (Am. Compl. ¶ 14).

The heart of this dispute is whether LTC pharmacies were properly reimbursed by UHG subsidiaries under the terms of their contracts. The key issues in resolving this dispute include the terms of the LTC pharmacies' contracts with UHG-affiliated prescription drug plans, which Plaintiffs now acknowledge differ between pharmacies,[3] and the extent to which pharmacies filed timely and complete claims for reimbursement under the terms of such contracts. These

---

[3] Compare Compl. ¶ 34 ("Upon information and belief, Defendant's network contract is virtually uniform in all relevant parts"), with Am. Compl. ¶ 38 ("Defendant, directly or through its affiliates, has one or more 'network pharmacy contracts' with each of Plaintiffs' member LTC Pharmacies.").

issues can only be resolved if the actual parties to the contracts are at the table, and, as the Court previously suggested, none of the parties are at the table. In fact, at the same time Plaintiffs were filing the Amended Complaint, several of the largest members of Plaintiff Long Term Care Pharmacy Alliance—most recently Omnicare—communicated their intent to bring legal action under their contracts with UHG-affiliated prescription drug plans, independent of this lawsuit.[4] See, e.g., Ex. 2.

Accordingly, the Amended Complaint should be dismissed for the following reasons:

1.    Plaintiffs lack standing to sue on their own behalf, since they have not alleged any injury to themselves as organizations, let alone any injury that is attributable to UHG.

2.    Plaintiffs lack associational standing to maintain this action on behalf of their members, inasmuch as the Amended Complaint seeks monetary damages under a breach of contract theory for potentially hundreds (or even thousands) of LTC pharmacies, which will require individualized proof as to the nature and amount of purported injury.

3.    UHG cannot be liable for breach of any network contracts between Plaintiffs' members and UHG-affiliated prescription drug plans, since it is not a party to such contracts.

4.    Plaintiffs cannot maintain an action against UHG for its alleged breach of a purported contract with CMS, since neither Plaintiffs nor their members are parties to such alleged contract, and they are not third party beneficiaries of such contract.

5.    Medicare does not provide Plaintiffs with a private right of action to sue for UHG's alleged violation of Medicare laws and regulations.

---

[4] Indeed, Omnicare's counsel (not Plaintiffs' counsel) communicated this intention directly to representatives of UHG subsidiaries, even though Omnicare had been advised in writing that all communications of this sort concerning the co-payment reimbursement matter should be directed to undersigned counsel, and notwithstanding that such communications are prohibited by Rule 4.2 of the D.C. Rules of Professional Conduct. (See Ex. 3).

6.      There is no statutory or regulatory requirement that prescription drug plans (discussed below) remit co-payments with respect to Institutionalized Dual Eligibles directly to LTC pharmacies.  While 42 U.S.C. § 1395w-114D(a)(1)(D)(i) and CMS regulation 42 C.F.R. § 423.782(a)(2)(ii) prohibit the collection of co-payments <u>from</u> Institutionalized Dual Eligibles, nothing in the statute or regulation can be read to impose an affirmative duty upon prescription drug plans to remit co-payments directly to LTC pharmacies, or to prohibit sending co-payments directly to individual enrollees.[5]  Indeed, if CMS assigned a Medicare Part D beneficiary to an incorrect income subsidy classification, the beneficiary likely would have been charged an incorrect co-payment by a pharmacy (unless the co-payment was waived), which would have to be refunded by the prescription drug plan to the beneficiary.  (42 C.F.R. § 423.800(c)).

## II.      <u>Background</u>

### A.      <u>The Regulatory Framework and Parties</u>

In 2003, Congress enacted Medicare Part D, which provides for the delivery of prescription drug benefits to certain categories of Medicare-eligible individuals through managed care networks, beginning January 1, 2006.  (Pub. L. 108-173, 117 Stat. 2066 (December 8, 2003)).  These networks operate through private-sector prescription drug plans ("PDPs") that contract with CMS, and provide the required drug coverage to the individual Medicare beneficiaries assigned to them by CMS.  (42 U.S.C. §§ 1395w-112(a)(1)-(3)(a); 42 C.F.R.

---

[5]  Although the Court must construe the Amended Complaint in Plaintiffs favor for purposes of a Motion to Dismiss, it "'need not accept inferences drawn by the [Plaintiffs] if such inferences are not supported by the facts set out it in the [C]omplaint.'"  <u>Alicke v. MCI Communications Corp.</u>, 111 F.3d 909, 912 (D.C. Cir. 1997) (<u>quoting</u> <u>Kowal v. MCI</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  Moreover, the Court need not consider conclusory legal and factual allegations.  <u>Domen v. Nat'l Rehabilitation Hosp.</u>, 925 F. Supp. 830, 837 (D.D.C. 1996) (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

§ 423.504(b)(2)). UHG is a holding company. A number of UHG's subsidiary corporations—none of which are parties to this action—sponsor Medicare Part D PDPs.[6]

Medicare PDPs contract, either directly or indirectly, with retail and LTC pharmacies that agree to dispense covered drugs at specified rates and terms. When a pharmacy fills a prescription for a beneficiary covered by a PDP with which the pharmacy has a contract, the pharmacy may submit a claim for payment to that PDP, and the PDP pays the claim pursuant to the terms of its contract with the pharmacy. The PDP, in turn, then obtains reimbursement directly from CMS – the ultimate payer under the Part D insurance program.

Plaintiffs, the Long Term Care Pharmacy Alliance ("LTCPA") and the American Society of Consultant Pharmacists ("ASCP"), allege that they are associations whose members comprise or own LTC pharmacies that have entered into network contracts with UHG concerning the provision of prescription drugs to Medicare Part D beneficiaries. (Am. Compl. ¶¶ 1, 11-12, and 38). Plaintiffs are not themselves pharmacies. Nor do Plaintiffs allege that they themselves have any form of contract with UHG or UHG subsidiaries.

**B.    Source of the Parties' Dispute**

The parties' dispute arises from errors in the Medicare beneficiary data files that CMS originally provided to Medicare Part D PDPs. The incorrect data consisted of the array of codes that are used to define the extent to which the cost of covered drugs is to be borne by the individual beneficiary through co-payments and other cost sharing mechanisms. (See generally, Am. Compl. ¶¶ 21-26).

---

[6] Specifically, the following UHG subsidiaries sponsor Medicare Part D PDPs: UnitedHeathcare Insurance Company; UnitedHealthcare of New York, Inc.; PacifiCare Life and Health Insurance Company; and PacifiCare Insurance Company.

Under Medicare Part D, beneficiaries generally are required to pay a co-payment (and other forms of cost-sharing such as deductibles) for their prescription drugs. (Am. Compl. ¶¶ 17-18; 42 C.F.R. §§ 423.104(d)(1)- (5)). However, certain low-income beneficiaries are eligible for subsidies that reduce or eliminate the cost-sharing.[7] (Am. Compl. at ¶¶ 18-20).

Among those eligible for a low-income subsidy are individuals who are covered by both Medicare and a state Medicaid program (so-called "dual eligibles") and who have continuously resided in nursing homes (or other LTC facilities) for at least one full calendar month. (See 42 U.S.C. § 1396a(q)(1)(B) (defining "Institutionalized Dual Eligible")). These Institutionalized Dual Eligibles are not required to pay any co-payments for prescription drugs covered by their PDPs. (See 42 U.S.C. § 1395w-114(a)(1)(D)(i); 42 C.F.R. § 423.782(a)(2)(ii) ("[f]ull-benefit dual eligible individuals who are institutionalized have no cost-sharing for covered Part D drugs covered under their PDP . . . ")).

CMS reports to PDPs whether Medicare Part D beneficiaries qualify for a low-income subsidy, and, if so, what co-payment (if any) is required. (42 C.F.R. § 423.800(a)). If CMS data does not indicate that a beneficiary is an Institutionalized Dual Eligible, the PDP treats such person as owing a co-payment, and reimbursement to the LTC pharmacy is reduced by the amount of the required co-payment.[8]

---

[7]  The specific provisions of the Medicare Part D low-income subsidy and its eligibility requirements are codified at 42 C.F.R. §§ 423.773-780.

[8]   A PDP is required to provide CMS with information concerning the amount of cost-sharing that is reduced with respect to individuals eligible for the low income subsidy (42 C.F.R. § 423.800(b)), and CMS may terminate its contract with a PDP if the PDP "fail[s] substantially to carry out the terms of its contract with CMS" or engages in "false, fraudulent, or abusive activities affecting the Medicare program, including submission of false or fraudulent data." 42 C.F.R. §§ 423.509(a)(1) and (4).

As a result of errors in the data CMS supplied to PDPs regarding beneficiaries' low-income subsidy status, LTCPA and ASCP allege that their member pharmacies received less than the full amount of the payments to which they are entitled under the pharmacies' network contracts with the UHG-affiliated PDPs. (Am. Compl. ¶¶ 21-23). UHG agrees that CMS made the data errors, and CMS has itself admitted to these errors. (See CMS Memorandum dated May 5, 2006, attached as Ex. 4) ("We are aware that a number of factors are contributing to the incorrect cost sharing . . . including the lags associated with the scheduled reporting of data from the State[s] to CMS, delays in Part D plans updating their systems, CMS's prior instructions to States to report only current or prospective changes to beneficiary institutional status, and confusion in the long-term care provider community regarding when an institutionalized beneficiary qualifies for a zero copayment.").

CMS has been in the process of retroactively correcting the data supplied to PDPs. From the start, UHG-affiliated PDPs advised LTC pharmacies that, if they believed they were owed additional amounts because of CMS's prior data errors, they should resubmit the claims so that the UHG-affiliated PDPs could reprocess those claims and make any associated payment adjustments based upon corrected CMS data. (See Am. Compl. ¶ 27). Contracts between UHG-affiliated PDPs and LTC pharmacies have provisions that detail the process by which claims must be resubmitted following a partial or total denial of payment, and the time frame in which pharmacies must resubmit claims following a denial of payment, as negotiated by the parties. In the absence of such resubmission, however, the PDPs are obligated by CMS regulations to pay co-payment adjustments directly to the Medicare Part D beneficiaries. 42 C.F.R. § 423.800(c) ("The Part D sponsor offering the Part D plan must reimburse subsidy eligible individuals . . . any excess premiums and cost-sharing paid by such individual . . .") (emphasis added)).

Rather than resubmit their claims in accordance with the contractual provisions and the PDPs' procedures, Plaintiffs and their LTC pharmacy members have demanded that the PDPs simply "cut a check" in the amount claimed by the pharmacies, without regard to any updated data from CMS. Am. Compl. ¶ 25 (detailing Plaintiffs' attempts to "make arrangements to retroactively receive the 'one time' payments for claims that had been underpaid due to the failure to properly identify institutionalized dual eligibles.").

The PDPs insistence that the pharmacies resubmit their claims for processing is more than a technical formality. From the PDPs perspective, the contractual resubmission process ensures that an adequate informational or audit trail exists to support the PDPs' own request for reimbursement from CMS (which is due on May 31, 2007),[9] and it allows CMS to audit the PDPs' records. (See 42 C.F.R. § 423.509(a)(4) (providing that CMS may terminate its contract with a PDP if the PDP "fail[s] substantially to carry out the terms of its contract with CMS" or engages in "false, fraudulent, or abusive activities affecting the Medicare program, including submission of false or fraudulent data."). The resubmission process also allows the PDPs to track beneficiaries' claims data on a going-forward basis.

Rather than comply with the contractual resubmission process, LTCPA has vigorously lobbied CMS to issue an order requiring PDPs to simply cut a check to the LTC pharmacies (see Am. Compl. ¶¶ 22, 23, and 26). CMS has consistently refused to do so. In fact, CMS issued written guidance that instructed LTC pharmacies to comply with the PDPs' claims procedures,[10]

_____

[9] Plaintiffs allege that "CMS has informed the public, including [UHG] that the claims process will continue past the May 31, 2007 data submission date. (Am. Compl. ¶ 34). Plaintiffs fail to provide any support for this assertion, and it is noteworthy that LTCPA's largest member, Omnicare, recently sent a demand letter to a UHG subsidiary that specifically noted CMS's May 31, 2007 deadline. See Ex. 2.

[10] See CMS "Tip Sheet" dated April 18, 2006, a copy of which is attached as Ex. 5, and which is discussed *infra* at pp. 26-27.

and reminded such pharmacies that the reimbursement process varies among PDPs, and that

PDPs have flexibility in developing procedures for changing or updating their systems to reflect

the appropriate cost-sharing for Institutionalized Dual Eligibles.  (CMS Frequently Asked

Question regarding "Best Available Data" for PDPs to Change Computer Systems, ID Number

7346 (May 26, 2006), a copy of which is attached as Ex. 6).

> ### C.     Plaintiffs' Claims for Relief

Having failed to obtain the regulatory relief they wanted, Plaintiffs filed this lawsuit

against UHG.[11]  Although it is an industry-wide issue, Plaintiffs have not filed lawsuits against

any other companies that sponsor PDPs, and who similarly rejected Plaintiffs' demand to simply

cut checks to pharmacies.  (Am. Compl. ¶ 21 (noting that "virtually every PDP, including

Defendant . . . improperly reduced LTC Pharmacy reimbursement . . .).  See also Hearing Trans.,

Ex. 1, at 6:16-25, in which Plaintiffs' counsel stated:

> Mr. Farber:  Why United? Why is United in this case?  Because they're far
> and away the largest P.D.P., the largest plan.  They're a third of the entire
> program roughly.
>
> The Court:  If your plaintiff had a contract or one of the pharmacies had a
> contract with some other P.D.P., they figured out some way to resolve this
> amicably?

---

[11]  This is not the first time that LTCPA has filed suit when dissatisfied with the outcome of a
regulatory process.  In Long Term Care Pharmacy Alliance v. Ferguson, 362 F.3d 50 (1st Cir.
2004), the First Circuit criticized LTCPA for suing the State of Massachusetts for a reduction in
Medicaid prescription drug reimbursement rates.  In that case, LTCPA member pharmacies
refused to provide the State of Massachusetts with cost data, but then sued the State after it
implemented a Medicaid rate reduction that was based on the best data it had.  The First Circuit
characterized LTCPA's action as "little short of remarkable." Id. at 59.  There, as here, LTCPA
offered "dire predictions of disaster." Id.  The First Circuit rejected such predictions, noting that
"[i]f pharmacy interests alone were of concern, the lack of equity is so patent that an injunction
would be unthinkable." Id.

> Mr. Farber:  Some P.D.P.s have; some P.D.P.s haven't.  Some P.D.P.s tell
> us it's going to be worked out in the next few weeks.  It's frankly all over
> the lot.

In their Amended Complaint, Plaintiffs claim that their *members* are owed additional money under the terms of their PDP network contracts and under federal law.  (Am Compl. ¶¶ 1, 3, 38, and 40).  As relief, Plaintiffs purport to seek a "declaration" that: (1) "Defendant [UHG] is obligated to pay to LTC Pharmacies the co-payment amounts withheld from reimbursement to such LTC Pharmacies . . ." (Id., Prayer for Relief (a)(ii)); and (2) a declaration that UHG is violating specific Medicare laws and regulations, as well as its contract with CMS.  (Id., Prayer for Relief (a)(i) and (a)(iii)).  Plaintiffs' Amended Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and (6), for the reasons detailed below.

## III.    Argument

### A.    Plaintiffs Lack Standing to Bring This Action, and the Court Therefore Lacks Subject Matter Jurisdiction.

ASCP and LTCPA lack standing to bring this action on their own behalf, or on behalf of their members.  Lack of standing is a defect in subject matter jurisdiction requiring the Court to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1).  Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987) (concluding that when a plaintiff fails to establish standing, the complaint must be dismissed); Harrison v. Norton, 429 F. Supp. 2d 83, 87 (D.D.C. 2006) (noting that in spite of favorable inferences that a plaintiff receives on a motion to dismiss, the plaintiff bears the burden of establishing standing by a preponderance of the evidence, and that in the absence of such evidence, the court must dismiss the complaint).  As Plaintiffs' lack of standing deprives the Court of subject matter jurisdiction, the Amended Complaint must be dismissed.

1.    **ASCP and LTCPA Lack Standing to Sue on Their Own Behalf.**

In the opening paragraph of their Amended Complaint, Plaintiffs allege that they have brought this action "for themselves and on behalf of their members." For ASCP and LTCPA to sue on their own behalf they must allege a direct injury to themselves as organizations. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Specifically, ASCP and LTCPA must demonstrate, at an "irreducible constitutional minimum," that: (1) they have suffered a concrete and particularized "injury in fact" which is an invasion of a legally protected interest; (2) there is a "causal connection between the injury and the conduct complained of" that is attributable to the action challenged in the Complaint; and (3) there is a likelihood that their injury will be "redressed by a favorable decision." Id. (emphasis added).

Plaintiffs' Amended Complaint does not detail any definable, discernable, or specific injury to ASCP or LTCPA *as organizations*, and it fails to allege how remittance of co-payments to Medicare Part D beneficiaries injures ASCP or LTCPA *as organizations*. Indeed, the Amended Complaint is absolutely silent as to any injury that Plaintiffs themselves have suffered, and the relief they seek would not benefit ASCP or LTCPA at all, but instead would (if granted) require money to be paid to individual pharmacies.[12]

ASCP and LTCPA also fail to establish standing to sue on their own behalf because any alleged "injury" is not traceable to UHG. Plaintiffs' own pleadings make clear that the co-payment reimbursement matter at issue in this lawsuit involves many other PDPs who are not parties to this action, all of whom received incorrect data from CMS. See Am. Compl. ¶¶ 21-22 ("However, virtually every PDP failed to recognize that this special class of institutionalized

---

[12]  The remedy that Plaintiffs seek is the "pay[ment] to LTC Pharmacies [of] the co-payment amounts withheld from reimbursement to such LTC Pharmacies for medications dispensed under Medicare Part D to dual eligible institutionalized beneficiaries." (Am. Compl., Prayer for Relief (a)(ii)).

dual-eligibles had no co-payments . . . . Among others, Plaintiffs . . . immediately brought the issue to the attention of CMS, and began working with CMS and the PDPs to address this significant problem") (emphasis added)). <u>See also</u> Hearing Trans., Ex. 1, at 6:20-25 (noting that other PDPs, not affiliated with UHG, have faced (and continue to face) similar reimbursement issues with respect to Institutionalized Dual Eligibles); Plf's Opposition to Defendant's (First) Motion to Dismiss [ECF Docket No. 13] at 3 ("However, since January 1, 2006, <u>various</u> PDPs, including Defendant's PDPs, have failed to honor their contracts with Plaintiffs' member LTC pharmacies, and have been 'shorting' the reimbursement payments made to LTC pharmacies . . . ."); <u>Id.</u> at 5 ("Unfortunately . . . Defendant's PDPs (<u>along with other PDPs</u>) inappropriately reduced LTC pharmacy reimbursement by withholding the co-payment amount . . . and, even today, <u>many PDPs</u>, including Defendant's PDPs, still have not reimbursed the LTC pharmacies for the shortfall." (Emphasis added)).

Thus, by Plaintiffs' own admission, the co-payment reimbursement matter at issue in this action affected "virtually every PDP" in the United States (Am. Compl. ¶ 21), and "many PDPs . . . still have not reimbursed LTC pharmacies for the shortfall." Plf's Opposition to Defendant's (First) Motion to Dismiss at 5. Put another way, ASCP and LTCPA would have experienced the same purported "injuries" *regardless* of UHG's alleged conduct, and, as such, Plaintiffs lack standing to bring this action on their own behalf. <u>Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach</u>, 469 F.3d 129, 133 (D.C. Cir. 2006) ("For standing to be based upon an injury to the organization's activities, there must still be a direct conflict between the defendant's conduct and the organization's mission") (citing <u>Nat'l Treasury Employees Union v. U.S.</u>, 101 F.3d 1423, 1430 (D.C. Cir. 1996)); <u>Nat'l Fair Housing Alliance v. Prudential</u>, 208 F. Supp. 2d 46, 52 (D.D.C. 2002) ("The injury must be fairly traceable to the challenged conduct of

the defendants and it must be likely that the injury will be 'redressed by a favorable judicial decision'") (quoting Lujan, 504 U.S. at 560-61)).

Likewise, Plaintiffs lack standing to sue on their own behalf because any purported organizational injuries would not be *redressed* by a favorable decision in this action. As noted above, Plaintiffs' Amended Complaint avers that "virtually every PDP" in the United States encountered data problems that allegedly caused them to erroneously reimburse LTC pharmacies (Am. Compl. ¶ 21), and Plaintiffs have admitted that PDPs unrelated to UHG *still* have not paid the co-payments at issue directly to their members' pharmacies. Hearing Trans., Ex. 1, at 6:20-25; Plf's Opposition to Defendant's (First) Motion to Dismiss at 5. Accordingly, even if Plaintiffs obtained the relief they seek in this action, they would continue to experience the same alleged organizational injuries that they purportedly experience now, since other PDPs unrelated to UHG still would not have reimbursed their members.    Nat'l Fair Housing Alliance, 208 F. Supp. 2d at 52 ("The injury must be fairly traceable to the challenged conduct of the defendants *and* it must be likely that the injury will be 'redressed by a favorable judicial decision'") (emphasis added) (quoting Lujan, 504 U.S. at 560-61)).

**2.    Plaintiffs' Claim for Declaratory Judgment Is Really One for Damages, and Plaintiffs Therefore Lack Standing to Sue on Behalf of Their Members.**

An association has standing to sue on behalf of its members only when: (1) its members would have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted *nor the relief requested* requires the participation of individual members in the lawsuit. Friends of the Earth, Inc. v. Laidlaw Envtl. Services, 528 U.S. 167, 181 (2000); Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 343 (1977). As detailed below, Plaintiffs lack associational standing to sue on behalf of their members.

14

a.    **Associations Lack Standing to Sue for Damages on Behalf of Their Members.**

Even if it is assumed that Plaintiffs satisfy the first two prongs of the associational standing test, both ASCP and LTCPA fail the third prong because they seek monetary relief for LTC pharmacies that are not parties to this lawsuit, which will require individualized proof of injuries purportedly sustained by such pharmacies. Because it is well-settled that an association does not have standing to seek damages on behalf of its members, <u>Warth v. Seldin</u>, 422 U.S. 490, 515-516 (1975), Plaintiffs attempt to disguise their damages claim by asserting that they are seeking "only" a declaratory judgment that money is owed to their members. Am. Compl. ¶ 3; Prayer for Relief (a)(ii) (seeking declaration "that Defendant [UHG] is obligated <u>to pay</u> to LTC Pharmacies the co-payments amounts withheld from reimbursement") (emphasis added). This is a distinction without a difference, and Plaintiffs "may <u>not</u> circumvent [associational] standing requirements by seeking a declaration of entitlement to money damages." <u>Pesticide Public Policy v. Village of Wauconda, Ill.</u>, 622 F. Supp. 423, 435 (N.D. Ill. 1985) (emphasis added), <u>aff'd</u> 826 F.2d 1068 (7th Cir. 1987).

Courts "have consistently rejected association assertions of standing to seek monetary, as distinguished from injunctive or declaratory, relief on behalf of the organization's members." <u>Telecommunications Research & Action Center v. Allnet Communications Services, Inc.</u>, 806 F.2d 1093, 1095 (D.C. Cir. 1986) (citing cases). In a thinly veiled attempt to circumvent the prohibition on associations seeking monetary damages for their members, Plaintiffs nominally allege that they are seeking declaratory relief (Am. Compl. ¶¶ 1, 3, Prayer for Relief (a)(ii)). However, the Court must look to the "substance of the remedy sought . . . rather than the label placed on that remedy." <u>Watkins v. Westinghouse Hanford Co.</u>, 12 F.3d 1517, 1528 n. 5 (9th Cir.1993) (citing <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248, 255 (1993)). *See also* <u>Black Farmers</u>

15

& Agriculturists Ass'n v. Veneman, 2005 WL 711821, at *2 (D.D.C. March 29, 2005) (attached as Ex. 7) (dismissing claim for declaratory judgment asserted by an association on behalf of its members, where the declaratory judgment claim could not be distinguished from a claim for damages); Pesticide Public Policy, 622 F. Supp. at 434-35 (a judicial declaration sought by an association, that defendants were liable for costs and expenses, was tantamount to a claim for damages; accordingly, the association lacked standing).

> **b.**    **Plaintiffs Cannot Seek a Declaration Asserting Entitlement to Money.**

Plaintiffs' Amended Complaint makes clear that ASCP and LTCPA seek money damages for their members; indeed, it explicitly states that Plaintiffs want the Court to issue an order declaring that "Defendant [UHG] is obligated to pay to LTC Pharmacies the co-payment amounts withheld from reimbursement . . . " See Prayer for Relief (a)(ii).  Regardless of how Plaintiffs try to spin it, a court order directing the transfer of money from UHG to Plaintiffs' members for claims incurred since January 1, 2006 would not constitute prospective relief in the form of a declaratory judgment.  Pesticide Public Policy, 622 F. Supp. at 435 ("In essence, [P]laintiff[s] [have] fashioned [their] request for relief in a novel manner in order to circumvent the associational standing requirements of Warth v. Seldin to assert a claim for damages. . . . *[Plaintiffs] may not circumvent the standing requirements by seeking a declaration of entitlement to money damages*.").  (Emphasis added).

The relief sought by Plaintiffs is indistinguishable from the form of relief that, in Air Transport Ass'n v. Reno, 80 F.3d 477 (D.C. Cir. 1996), the D.C. Circuit concluded would be a claim for money damages.  In Air Transport, the plaintiff association sought a judgment declaring the Immigration and Naturalization Service's ("INS") transit without visa policy was illegal, and "an order allowing its members to make individualized showings of damages and

receive compensation for amounts they . . . expended." Id. at 483. The D.C. Circuit held that the association lacked standing to assert a monetary claim on behalf of its members, since "any award of monetary compensation would require the participation of individual members in the lawsuit[.]" Id.

Similar to Air Transport, a judicial declaration that co-payment amounts are owed to LTC pharmacies would not end this matter, because the amount of money purportedly owed to each pharmacy would still have to be adjudicated in accordance with the terms of applicable contracts with that pharmacy. Indeed, the Court already recognized that this was the core claim asserted in Plaintiffs' initial complaint, and that the claim raised serious standing problems. Hearing Trans., Ex. 1, at 20:8-11 ("Where the fight is going to be is exactly where the fight has been all along, over which apparently I'm going to have arguably no jurisdiction. That is, does pharmacy A, is it really entitled to X?"). At a minimum, such an adjudication would require—with respect to *each* claim submitted by *each* LTC pharmacy—a determination as to: (1) whether the resident of the LTC facility on whose behalf the claim was submitted satisfied the statutory criteria of an Institutionalized Dual Eligible; (2) whether the individual was covered under a PDP sponsored by a subsidiary of UHG, as opposed to some other PDP; (3) whether the pharmacy collected or waived a co-payment from such individual and carried a corresponding debt on its books; (4) whether CMS data had been updated to reflect such individual's status as an Institutionalized Dual Eligible; (5) whether the prescription drug was covered by the PDP; and (6) whether the pharmacy re-submitted the claim within the time limit specified in the applicable contract, and in accordance with other contractual requirements.

As was the case in Air Transport, even if the Court were to enter the judgment Plaintiffs seek, the determination of *how much* money UHG would owe to *which* LTC pharmacies would

necessarily require individualized proof from each LTC pharmacy. Warth, 422 U.S. at 515-16 ("Whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof"). Therefore, to obtain the damages Plaintiffs seek, each member LTC pharmacy must be a party to this suit. Id. ("Thus, to obtain relief in damages, each member of [the association] who claims injury as a result of [defendants'] practices must be a party to the suit, and [the association] has no standing to claim damages on his behalf").

Further, there is no basis to infer that Plaintiffs-members' claims could be resolved uniformly. It is critical to note that unlike their original Complaint, in which Plaintiffs asserted that the alleged "network contracts" between its members and UHG were "virtually uniform in all relevant parts" (Compl. ¶ 34), the Amended Complaint makes no such allegation of uniformity. See Am. Compl. ¶ 38 (which merely provides that "Defendant . . . has one or more 'network pharmacy contracts' with each of Plaintiffs' member LTC Pharmacies"). Given that Plaintiffs cannot even aver that the network contracts pursuant to which its members are purportedly entitled to reimbursement are uniform in relevant respects, the LTC pharmacies' damages claims cannot be deemed "common to the entire membership, nor shared by all in equal degree[;] consequently there is simply no way the extent of harm to the [Plaintiffs'] members can be determined without individualized proof." Air Transport, 80 F.3d at 483-84 (citing Telecommunications Research, 806 F.2d at 1095).

Accordingly, ASCP and LTCPA lack standing to maintain an action seeking additional monetary payments for their members. As Plaintiffs fail the test for associational standing, the Court lacks subject matter jurisdiction and the action should be dismissed. Haase v. Sessions,

835 F.2d 902, 906 (D.C. Cir. 1987) (lack of standing is a defect in subject matter jurisdiction

requiring the Court to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1)).

    **B.**    <u>The Complaint Fails To State A Claim Upon Which Relief Can Be Granted</u>.

        **1.**    **UHG Is Not a Party to Contracts With LTC Pharmacies, and**
              **<u>Thus Cannot Be Liable for an Alleged Breach of Contract.</u>**

Plaintiffs, in Am. Complaint ¶ 38, allege that UHG "has a 'network pharmacy contract'

with each of Plaintiffs' members . . .," and that UHG has violated "its contractual obligations" to

LTC pharmacies by not directly reimbursing such pharmacies for the co-payments at issue.  In

Am. Complaint ¶ 40, Plaintiffs seek a declaration that UHG must remit the co-payments at issue

to Plaintiffs' member pharmacies "consistent with . . . its network contracts" and that UHG must

continue to process claims incurred in 2006 notwithstanding any provisions in such contracts that

set forth limits on when such claims must be submitted.  See also <u>id.</u>, Prayer for Relief (a)(iv)-

(v).

Plaintiffs do not cite any provisions of the "network contracts" in support of their

allegations, and they do not attach copies of the contracts to their Complaint, despite repeated

references to them.  Such an omission might otherwise be curious, but in Plaintiffs' case, it was

necessary, since UHG is <u>not</u> a party to any contract with any LTC pharmacy.  Nor is UHG a

party to contracts with individual pharmacists represented by ASCP.  Indeed, Plaintiffs'

Amended Complaint (¶ 38) concedes that UHG is not a party to the alleged network contracts,

noting that "[UHG], directly <u>or through its affiliates</u>, has one or more 'network pharmacy

contracts' with each of Plaintiffs' member LTC pharmacies."  Inexplicably, however, Plaintiffs

have chosen to file suit solely against UHG—a holding company—rather than the subsidiary

companies that actually are parties to the network contracts at issue.[13]

Although UHG owns subsidiaries that sponsor PDPs, the contractual obligations of such

subsidiaries are not attributable to UHG.  It is well-established that "under ordinary

circumstances a contract in terms and in name with one corporation cannot be treated as that of

[another], and a parent will not be liable for the obligations of its subsidiaries."  T & S Products,

Inc. v. U.S., 48 Fed. Cl. 100, 111 (Ct. Clms. 2000) (quoting BLH, Inc. v. U.S., 13 Cl. Ct. 265,

272 (1987)).  See also, U.S. v. Bestfoods, 524 U.S. 51, 61 (1998) ("It is a general principle of

corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-

called because of control through ownership of another corporation's stock) is not liable for the

acts of its subsidiaries"); Tennessee Valley Auth. v. Exxon Nuclear Co., Inc., 753 F.2d 493, 497

(6th Cir. 1985) (under ordinary circumstances, a parent corporation is not liable for the

contractual obligations of its subsidiaries) (citing 1 *W. Fletcher Cyclopedia Corporations*, § 43

(1983)).

Even if it is assumed, *arguendo*, that UHG-affiliated PDPs breached their contracts with

LTC pharmacies with respect to the reimbursement of co-payments for Institutionalized Dual

Eligibles, Plaintiffs have not alleged any facts that would support holding UHG—the parent

company—liable for the actions of its subsidiaries.  "The law in the District of Columbia is that

'the acts and obligations of the corporate entity will not be recognized as those of [another] until

---

[13]  As noted above, the following UHG subsidiaries sponsor Medicare Part D PDPs:
UnitedHeathcare Insurance Company; UnitedHealthcare of New York, Inc.; PacifiCare Life and
Health Insurance Company; and PacifiCare Insurance Company.  Even these subsidiaries do not
directly contract with LTC pharmacies for purposes of providing Medicare Part D benefits.
Rather, the subsidiaries contract with prescription benefit managers ("PBMs"), and the PBMs
enter into contracts with LTC pharmacies.

the person seeking to disregard the corporate entity has proved by affirmative evidence that there

is (1) unity of ownership and interest <u>and</u> (2) use of the corporate form to perpetrate fraud or

wrong." <u>Smith v. Washington Sheraton Corp.</u>, 135 F.3d 779, 786 (D.C. Cir. 1998) (emphasis

added) (holding that a parent company could not be held liable for harm caused by a condition

on a subsidiary's property) (quoting <u>Vuitch v. Furr</u>, 482 A.2d 811, 815 (D.C. 1984)).  Plaintiffs

have not, and cannot, allege the subsidiaries with whom LTC pharmacies entered into network

contracts were mere instrumentalities of UHG, and that they were established or maintained to

perpetrate fraud or wrongdoing against LTC pharmacies.  Accordingly, Plaintiffs fail to state a

claim for which relief can be granted.  <u>See  Moeckel v. Caremark Rx Inc.</u>, 385 F. Supp. 2d 668,

674 (M.D. Tenn. 2005) (when a parent corporation is not party to a contract, dismissal of the

parent from a breach of contract lawsuit is warranted).

      **2.**        **<u>Plaintiffs Cannot Sue to Enforce the Alleged UHG-CMS Contract</u>.**

In their Amended Complaint, Plaintiffs assert yet another contract claim, seeking a

declaration that UHG has breached the terms of an alleged contract between UHG and CMS

(Am. Compl. ¶ 1).[14]  However, Plaintiffs cannot maintain such a claim since they admit that

neither they, nor their members, are parties to the alleged contract.  <u>See</u> Am. Compl. ¶ 14 ("the

---

[14]  Plaintiffs attach a "form" contract as Exhibit 5 to their Amended Complaint, but such exhibit
does not identify any PDP that is a party to the (unsigned) contract.  Plaintiffs nonetheless assert
that UHG signed an identical agreement that requires UHG to comply with all applicable
"statutes, regulations, and policies" that govern the Medicare Part D Plan.  (Am. Compl. ¶ 14;
Ex. 5 to Am. Compl., Article IA).  Plaintiffs are simply incorrect when they assert, in Am.
Compl. ¶ 14, that UHG sponsors PDPs that have contracted with CMS to provide services under
the Medicare Part D program.  UHG is a holding company; it does not sponsor any PDPs and it
is not a party to any agreement with CMS concerning Medicare Part D.  Rather, subsidiaries of
UHG—which are <u>not</u> parties to this action—sponsor PDPs that have entered into agreements
with CMS.

contract between <u>CMS</u> and <u>Defendants' Plans</u> provides that those Plans agree . . .") (emphasis added)).

Moreover, neither Plaintiffs nor their members are third party beneficiaries of the alleged UHG-CMS contract.  To maintain an action based on a contract to which it is not a party, Plaintiffs "'<u>must</u> demonstrate that [they are the] intended third-party beneficiar[ies], as evidenced by the intent or words of the contract.'"  <u>Bowhead Info. Technology Services, LLC v. Catapult Tech., Ltd.</u>, 377 F. Supp. 2d 166, 171 (D.D.C. 2005) (emphasis added) (contractor for Department of Transportation ("DOT") lacked standing to sue for declaratory judgment to enforce a continuity of services provision in an agreement between DOT and a previous contractor, which obligated the previous contractor to cooperate with its successor and to make personnel available to complete the job requirements) (quoting <u>Sallee v. U.S.</u>, 41 Fed. Cl. 509, 514 (1998)).  While a plaintiff need not be named expressly in the contract as a third party beneficiary, the parties to the contract must "'*directly and unequivocally* intend to benefit a third-party in order for that third-party to be considered the intended beneficiary.'"  <u>Id.</u> (quoting <u>Barnstead Broadcasting Corp. v. Offshore</u>, 886 F. Supp. 874, 879 (D.D.C. 1995) (emphasis added)).

Here, neither Plaintiffs nor their members are expressly identified in any contract between UHG and CMS.  Moreover, Plaintiffs do not allege that any provision of the purported UHG-CMS agreement was intended to directly and unequivocally benefit their member pharmacies in any way.  Plaintiffs merely assert that Article IA of the purported contract requires UHG's compliance with Medicare laws and regulations (Am. Compl. ¶ 14).  The Court can hardly infer from this allegation that Plaintiffs' members are the intended third-party beneficiaries of the purported contract.  Indeed, if anything, the language of Article IA

demonstrates an intent to benefit CMS exclusively.  The mere fact that LTC pharmacies may *incidentally* benefit from the contractual provision at issue is insufficient to confer standing upon them—or Plaintiffs as trade associations—to enforce UHG's alleged contract with CMS. Bowhead Info. Technology Services, LLC, 227 F. Supp. 2d at 172 ("[M]ere incidental beneficiaries do not have standing to enforce the terms of a contract.  To bring suit on a contract, a third-party to a contract must be an *intended* beneficiary of the contract") (emphasis in original)).  See also Restatement (Second) of Contracts § 302(2) and cmt. e (1981) (noting that performance of a contract will often benefit a third party, but that unless the third party is an intended beneficiary, such person is a mere "incidental beneficiary" to whom no duty is owed under the contract, and who cannot recover in the event of a party's breach).  Accordingly, Plaintiffs' claim that UHG has breached its contract with CMS must be dismissed for failure to state a claim for which relief can be granted.

### 3.    Plaintiffs Do Not Have a Private Cause of Action to Enforce UHG's Compliance with Medicare Laws and Regulations.

Plaintiffs assert that they "bring this action to obtain a declaratory judgment that [UHG] is violating Federal law . . ." Am. Compl. ¶ 1; see also Prayer for Relief (a)(i) (seeking declaration that UHG "was not, and is not, entitled by law or contract to withhold co-payment amounts from reimbursements to LTC Pharmacies . . ."); id. at (a)(iii) (seeking declaration that UHG "violated 42 C.F.R. § 423.504 and § 423.800(c) by paying, or causing to be paid, withheld co-payment amounts to beneficiaries . . .").  Plaintiffs' claim for a declaratory judgment that UHG has violated Medicare Part D and certain implementing regulations must be dismissed, because Medicare Part D does not provide Plaintiffs with a private cause of action.

The only statutory provision that Plaintiffs allege UHG violated, 42 U.S.C. § 1395w-114D-14(a)(1)(D)(i), simply provides for the elimination of co-payments that would otherwise

be assessed upon an Institutionalized Dual Eligible; it does <u>not</u> provide a judicially enforceable cause of action by which *pharmacies* (or other private parties) may sue to compel higher reimbursement from a PDP. Indeed, the D.C. Circuit has recognized that "Medicare Part D contains its own . . . narrowly-tailored provision for judicial review," set forth at 42 U.S.C. § 1395w-104(h)(1), which, by cross-reference to other provisions of the Medicare Act, generally requires a PDP to provide an internal appeal process by which Medicare Part D beneficiaries may challenge a PDP's coverage determination, which is then subject to judicial review if the amount in controversy exceeds a specified threshold amount. <u>See</u> <u>Action Alliance of Senior Citizens v. Leavitt</u>, -- F.3d --, 2007 WL 1119646, at *7 (D.C. Cir. April 17, 2007), Ex. 8. Importantly, this "narrowly-tailored provision for judicial review," 42 U.S.C. § 1395w-104(h)(1), expressly provides that "<u>only</u> the Part D eligible individual shall be entitled to bring such an appeal." (Emphasis added). This provision "clearly indicates that Congress did not intend to allow requests for relief by associations" on behalf of individual beneficiaries. <u>N.Y. Statewide Senior Action Council v. Leavitt</u>, 409 F. Supp. 2d 325, 330 (S.D.N.Y. 2005). Given that Plaintiffs bring this action only on behalf of themselves and their LTC pharmacy members, they are even further removed from having a private cause of action to enforce the statutory provision at issue.

Moreover, courts have recognized that because Medicare is a "typical funding statute," private causes of action generally should not be implied. <u>Brogdon v. Nat'l Healthcare Corp.</u>, 103 F. Supp. 2d 1322, 1332 (N.D. Ga. 2000) (citing <u>Penhurst v. Halderman</u>, 451 U.S. 1, 22 (1981)). Finally, it is axiomatic that "federal regulations," like those cited by Plaintiffs, "cannot themselves create a cause of action; [that] is a job for the legislature." <u>Stewart v. Bernstein</u>, 769 F.2d 1088, 1093 n.6 (5th Cir. 1985) (citing <u>Marshall v. Gibson's Prods., Inc. of Plano</u>, 584 F.2d

668, 677 (5th Cir. 1979)).  Given that none of the provisions of the Medicare Modernization Act or regulations that Plaintiffs cite invest them with authority to sue for UHG's alleged violations, Plaintiffs' claim must be dismissed.

### 4.    Plaintiffs Misconstrue the Statute and CMS Regulations.

Contrary to Plaintiffs' assertions, neither the Medicare Modernization Act (the "MMA") (Pub. L. 108-173, 117 Stat. 2066 (December 8, 2003)) nor regulations issued by CMS require PDPs to remit co-payments directly to LTC pharmacies with respect to Institutionalized Dual Eligibles.  The provisions of the MMA and Medicare Part D regulations cited in the Amended Complaint only address *whether* Institutionalized Dual Eligibles can be charged co-insurance or co-payments; they do not address to whom the PDPs must pay co-payment amounts (i.e., to an Institutionalized Dual Eligible or a LTC pharmacy).  As there is no affirmative requirement to pay LTC pharmacies directly, the Amended Complaint fails as a matter of law, warranting its dismissal for failure to state a claim upon which relief can be granted.

### a.    The Medicare Statute Does Not Require Direct Payment to LTC Pharmacies.

The only provision of the MMA cited in Plaintiffs' Complaint (42 U.S.C. § 1395w-114(a)(1)(D)(i)) provides that individuals with incomes below 135 percent of the federal poverty level are entitled to specific subsidies, including:

> In the case of an individual who is a full-benefit dual eligible individual and who is an institutionalized individual or couple (as defined in section 1396a(q)(1)(B) of this title), the elimination of any beneficiary coinsurance described in section 1395w-102(b)(2) of this title (for all amounts through the total amount of expenditures at which benefits are available under section 1395w-102(b)(4) of this tile).

Nothing in this section—or in any other provision of the MMA—provides that co-payments with respect to Institutionalized Dual Eligibles must be remitted directly to LTC

pharmacies. Nor does this section prohibit PDPs from remitting the co-payments at issue directly to Institutionalized Dual Eligibles. Indeed, as noted above, CMS regulations (42 C.F.R. § 423.800(c)) require PDPs to reimburse <u>beneficiaries</u> for co-payments that are incorrectly assessed. As the statute does not require direct payment to LTC pharmacies, the statutory claim asserted by Plaintiffs fails as a matter of law.

**b.**     **CMS Regulations and Guidance Do Not Require Direct Payment to LTC Pharmacies, and Only Permit Such Payments <u>Upon Submission of Appropriate Data.</u>**

The Complaint's assertion that UHG violated CMS regulations similarly fails to state a claim upon which relief can be granted. Neither the Medicare Part D regulations nor the informal guidance issued by CMS requires PDPs to remit co-payments with respect to Institutionalized Dual Eligibles directly to LTC pharmacies.

CMS's regulations simply provide that "full benefit dual eligibles who are institutionalized have no cost sharing for covered Part D drugs covered under their PDP . . . " (42 C.F.R. § 423.782(a)(2)(ii)). The plain language of the regulation does not impose an affirmative duty upon PDPs to remit co-payment amounts associated with Institutionalized Dual Eligibles directly to LTC pharmacies. Plaintiffs instead ask the Court to "read into" the regulation such a duty, based on informal guidance issued by CMS. (<u>See</u> Am. Compl. ¶¶ 23-26, 31, 38). As shown below, however, CMS's informal guidance does not require the remittance of co-payments directly to LTC pharmacies when such pharmacies fail to submit claims in accordance with the PDPs' claims procedures, as many of Plaintiffs' members have failed to do.

Specifically, CMS has issued four pieces of related guidance in which it attempted to address the concerns of LTC pharmacies, with each piece of subsequent guidance more specific

26

as to the reimbursement process. When read together, it is clear that CMS does not require PDPs simply to cut checks to LTC pharmacies upon the submission of spreadsheets.

### i.     CMS's "Tip Sheet"

In Am. Complaint ¶ 23, Plaintiffs quote a "Tip Sheet" issued by CMS on April 18, 2006, which, Plaintiffs assert, require PDPs to remit co-payments to LTC pharmacies in a single lump-sum payment. The Tip Sheet, attached as Ex. 5, provides, in pertinent part, that:

> Dual eligibles who reside in [LTC] facilities *may* not have to pay co-payments for their prescription drugs. Pharmacies will receive a one-time payment for the amount of any <u>uncollected</u> co-payments for the people who were mistakenly identified as having to pay co-payment amounts. The pharmacy will need to submit a spreadsheet with claim information to the prescription drug plan.
>
> **Note:** <u>Processes may vary between plans. Following the drug plan's directions may ensure timely reimbursements</u>. (Emphasis added).

Plaintiffs' Amended Complaint omits the above-emphasized paragraph, which clearly reflects CMS's recognition that the processes by which reimbursements (if any) are to be made depends upon the PDP with whom the LTC pharmacy is dealing.[15] Thus, rather than supporting Plaintiffs' argument, the CMS Tip Sheet makes clear that PDPs are not required to remit co-payments directly to LTC pharmacies unless such pharmacies comply with the PDPs claims procedures.

---

[15] The Amended Complaint suggests that all Institutionalized Dual Eligibles are exempt from co-payments, but such individuals are exempt from co-payments <u>only</u> if they reside in a LTC facility for a full calendar month under a covered Medicaid stay. <u>See</u> 42 C.F.R. § 423.782(a)(2)(ii). CMS's regulation defines an institutionalized full-benefit dual eligible individual as an "individual who is an inpatient in a medical institution or nursing facility for which payment is made under Medicaid <u>throughout a month</u> . . . ." 42 C.F.R. § 423.772 (emphasis added). Until a PDP receives confirmation that an individual qualifies as an Institutionalized Dual Eligible residing at a LTC facility for a full month, there is no basis to waive Part D's otherwise applicable co-insurance or co-payment.

### ii.    CMS's April 20, 2006 FAQ

In Am. Complaint ¶ 24, Plaintiffs quote CMS's April 20, 2006 response to a "Frequently

Asked Question" ("FAQ"), which provides only that, when implementing retroactive subsidy

level changes for Institutionalized Dual Eligibles *based upon PDPs receiving corrected data*

*from CMS*:

> [PDPs] should not <u>automatically</u> reimburse beneficiaries residing in [LTC]
> facilities.  In such situations, it is <u>unlikely</u> that LTC pharmacies have collected the
> applicable cost-sharing from beneficiaries due to the <u>expectation</u> that the plan
> eventually would reimburse the pharmacy retroactively for such amounts.  In such
> situations, Part D plans should work with their pharmacies to provide them with
> direct reimbursement for any cost-sharing amount <u>not collected from</u>
> <u>institutionalized individuals</u>. . . . Providing direct reimbursements to LTC
> pharmacies for excess cost sharing charges <u>that have not been paid by Part D</u>
> <u>enrollees or waived by the pharmacy</u> does not conflict with [the PDP's obligation
> to reimburse Institutionalized Dual Eligibles for incorrectly assessed co-
> payments].

(CMS Frequently Asked Question, "Reimbursement to LTC Pharmacies, for Retroactive
Subsidy-level Cost Sharing Changes," ID Number 7043 (April 20, 2006), a copy of which is
attached as Ex. 9, (emphasis added)).

Plaintiffs, in their Amended Complaint, simply gloss over (or ignore) the above-

emphasized caveats in the FAQ, which make clear that that remittance of co-payments directly to

a LTC pharmacy is permissible (but not required), provided that the pharmacy did not:

(1) collect co-payments from Institutionalized Dual Eligibles, or (2) waive the co-payments.

### iii.    CMS's May 5, 2006 Guidance

In Complaint ¶ 26, Plaintiffs refer to guidance issued by CMS on May 5, 2006, which

simply provides, in pertinent part, that:

> Part D plans are <u>encouraged</u> to reimburse LTC pharmacies directly when
> implementing retroactive subsidy level changes.  Plans should not <u>automatically</u>
> reimburse beneficiaries residing in LTC facilities because it is <u>unlikely</u> that the
> LTC pharmacies have billed the beneficiaries for their copayments."

(Ex. 4, (emphasis added)). The plain language of the Memorandum indicates, similar to previous CMS guidance, that direct payments to LTC pharmacies is an option, not an affirmative obligation. Accordingly, neither the MMA, CMS regulations, nor CMS's regulatory guidance requires remittance of co-payments with respect to Institutionalized Dual Eligibles directly to LTC pharmacies.

### iv.     CMS's December 22, 2006 Guidance

In Am. Compl. ¶ 31, Plaintiffs cite CMS guidance issued on December 22, 2006, attached as Ex. 10, which essentially repeats CMS's earlier guidance, and provides, in pertinent part, that:

> In accordance with our rules at 42 CFR 423.800(c), plan sponsors have an obligation to make the [low-income subsidy]-eligible individual whole by refunding any improperly collected cost sharing. . . . [However,] [m]any LTC pharmacies did not collect the cost sharing amounts that were incorrectly charged. As many LTC pharmacies continue to hold receivable balances for cost sharing amounts that should have been subsidized by the plan, Part D plan sponsors need to work with them to ensure appropriate reconciliation of amounts owed. . . . Before reimbursement is made directly to LTC pharmacies, plan sponsors need to ensure that the pharmacies in question have not collected or otherwise waived the cost sharing charges, and, in fact, are carrying a debt for the amounts owed. Plan sponsors may accomplish this by working with their network LTC pharmacies to ensure appropriate documentation and attestations are provided to justify payment to the LTC pharmacy for excess cost sharing amounts that should have been paid by the plan under the low income subsidy. (Emphasis added).

Under CMS's December 2006 guidance, a PDP is allowed to reimburse a LTC pharmacy only if the pharmacy has provided "appropriate documentation and attestations" establishing that the LTC pharmacy: (1) did not collect the cost sharing amounts; (2) did not waive the cost sharing charges, and (3) is carrying a debt on its books for the cost sharing amounts. Plaintiffs' member pharmacies have generally refused to provide UHG-affiliated PDPs with the information required by the PDPs to satisfy CMS. Accordingly, Plaintiffs' assertion that UHG

has violated CMS guidance is without merit, and fails to state a claim for which relief can be

granted.

**IV.    Conclusion**

For the foregoing reasons, UHG respectfully moves the Court to dismiss Plaintiffs'

Complaint for lack of subject matter jurisdiction, and failure to state a claim upon which relief

can be granted.

May 24, 2007                                    Respectfully submitted,

                                                _____/s/ Mark C. Nielsen_____
                                                Thomas F. Fitzgerald (Bar No. 358232)
                                                Michael J. Prame (Bar No. 451017)
                                                Mark C. Nielsen (Bar No. 465220)
                                                Groom Law Group, Chartered
                                                1701 Pennsylvania Avenue, NW
                                                Washington, DC  20006
                                                Telephone:    202.857.0620
                                                Facsimile:    202.659.4503
                                                Email:        tff@groom.com
                                                              mjp@groom.com
                                                              mcn@groom.com


                                                **Attorneys for Defendant**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of UnitedHealth Group Incorporated's Motion to Dismiss Plaintiffs' Amended Complaint (the "Motion to Dismiss"), Memorandum of Points and Authorities in Support of the Motion to Dismiss, and Proposed Order was served electronically, via the Court's ECF system, on the 24th day of May 2007, upon the following:

    David Farber, Esq.
    Harry Silver, Esq.
    Patton Boggs
    2550 M Street, NW
    Washington, DC  20037
    dfarber@pattonboggs.com
    hsilver@pattonboggs.com

    Counsel for Plaintiffs


May 24, 2007
                                          _/s/ Mark C. Nielsen_
                                          Mark C. Nielsen (Bar No. 465220)
                                          Groom Law Group, Chartered
                                          1701 Pennsylvania Avenue, NW
                                          Washington, DC  20006
                                          Telephone:    202.857.0620
                                          Facsimile:     202.659.4503
                                          Email:          mcn@groom.com

                                          **Counsel for Defendant**

31