**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| **Long Term Care Pharmacy Alliance** | ) | |
| and | ) | |
| **American Society Of** | ) | |
| **Consultant Pharmacists,** | ) | |
|      **Plaintiffs,** | ) | |
|  | ) | |
|      **v.** | ) | **Case No.:  01:06-CV-01221** |
|  | ) | **(ESH)** |
| **UnitedHealth Group Incorporated,** | ) | |
|      **Defendant.** | ) | |

---

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

**INTRODUCTION**

In two recent hearings before this Court in this case, Defendant UnitedHealth Group

Incorporated ("UHG") conceded that it owes money to long-term care pharmacy members of

Plaintiffs Long Term Care Pharmacy Alliance ("LTCPA") and American Society of Consultant

Pharmacists ("ASCP"):

> MR. FITZGERALD (Defendant's counsel):  …Let me start by
> agreeing with Your Honor that United understands that monies are
> owed to the pharmacies.  That's not in dispute.  It's what moneys, for
> whom and so forth.

Transcript of Hearing, March 22, 2007, at 3:22-25 (*see* Exhibit 1 to Declaration of George M.

Borababy ("Borababy Dec.")) ("March 22 Tr.").

> MR. FITZGERALD:  We recognize and understand that we have
> contractual obligations to them [Plaintiffs' member pharmacies.]  If
> we did not fulfill those contractual obligations to them, then we will
> have financial exposure for the amount of these co-pays.

Transcript of Hearing, March 29, 2007, at 17:5-8 (*see* Exhibit 2 to Borababy Dec.) ("March 29 Tr.").

Based on these admissions, this Court observed that "Defendants don't disagree that they owe you

something," *id.* at 10:9-10, and that "the parties agree on the basic principle," *id.* at 20:7, and

suggested that Defendant consider revising its Motion To Dismiss to include a "case or

controversy" argument. *Id.* at 29:6-9.

Plaintiffs appropriately filed an Amended Complaint, which Defendant UHG has now

moved to dismiss. Yet despite this Court's expressed concern, there is noticeably lacking from

Defendant UHG's Motion To Dismiss any argument relating to "case or controversy." Just as it

earlier abandoned its argument that this Court lacks personal jurisdiction over it, UHG has now

abandoned its "lack of case or controversy" argument. Similarly lacking is any hint of UHG's oral

concessions that it owes money to Plaintiffs' member long-term care pharmacies. By failing to

mention these issues in its instant Motion, Defendant UHG has acknowledged that, in fact, there is

an actual justiciable controversy between the parties, not only as to how much is owed to whom, but

also as to whether UHG has any obligation whatsoever to reimburse Plaintiffs' members for

improperly withheld co-payment amounts. It is this latter controversy that Plaintiffs are asking this

Court to resolve.

Part of the explanation for Defendant UHG's backtracking may lie in its very recent -- and

very shocking -- pronouncement that it will no longer process *any* 2006 reimbursement claims. *See*

Amended Verified Complaint ("Am. Compl."), ¶¶ 34-35 and Exhibit 6 thereto. Significantly, in that

wholly unexpected announcement, Defendant UHG put the lie to one of its principal arguments on

this Motion To Dismiss -- that it is not a proper party to this action:

> In response to your inquiry regarding outstanding 2006 claims, please
> note that *UnitedHealth Group ("UHG") has discontinued processing 2006
> claims.*
>
> As you know, *UHG extended the deadline for readjudicating 2006 claims
> …UHG repeatedly communicated the necessary deadlines* and requirements

for re-processing 2006 claims.  Because *UHG is required to process and reconcile claims*…it can no longer re-process any 2006 claims.

*Id.*  This letter is a clear admission that Defendant UHG, not its subsidiaries or affiliates, is making the decisions that are injuring Plaintiffs and their members -- including its refusal to pay the claims at issue.  UHG could hardly have crystallized the controversy more clearly.

In its instant Motion To Dismiss, Defendant UHG, instead of arguing that there is no case or controversy, rehashes many of the same arguments it has made before.  In doing so, it misstates the law, misrepresents the facts and mischaracterizes events.  For instance, UHG harps on its contention that Plaintiffs are asserting breach of contract claims for damages.  *See, e.g.,* Defendant's Memorandum of Points and Authorities ("Def. Mem.") at 2, 4, 15, 18 (repeatedly claiming that this suit is one for damages).  In the process, it blatantly and intentionally misquotes Plaintiffs' Amended Complaint, claiming that the Amended Complaint asks for the "pay[ment] to LTC Pharmacies [of] the co-payment amounts" when, in fact, Plaintiffs have requested "judgment declaring…that Defendant UnitedHealth is obligated to pay to LTC Pharmacies the co-payment amounts…."  *Compare* Def. Mem. at 12n.12 *with* Am. Compl., Prayer for Relief, ¶ (a)(ii).  This distinction is critical, because while associations generally may not bring *damage* claims on behalf of their members, the law is clear that associations are appropriate plaintiffs to bring declaratory judgment claims, even when the disputes relate to underlying contracts.  Plaintiffs previously cited to this Court two particularly relevant cases in which such actions were permitted:  *Int'l Union, United Automobile & Agricultural Workers of America v. Brock*, 477 U.S. 274, 287-288 (1986), and *American Medical Ass'n v. United Healthcare Corp.*, 2002 WL 31413668 (S.D.N.Y. 2002).  Thus, as is further explained below, this action is unquestionably properly before this Court.

Further, UHG has a specific legal (and corresponding contractual) obligation to reimburse long term care pharmacies for improperly withheld co-payments.  Under 42 C.F.R. § 423.800, UHG is obligated to reimburse organizations that have paid co-payment amounts for dual eligible

beneficiaries who did not owe such co-payments. Although this regulation was repeatedly cited to this Court during argument in March and is highlighted in Plaintiffs' Amended Complaint (*see* Am. Compl., ¶ 33), UHG utterly fails to address it, perhaps hoping that it will disappear from the C.F.R. However, the regulation stands, and UHG's silence -- effectively conceding the regulation's effect and import here -- speaks for itself.

Plaintiffs are entitled to declaratory relief settling the controversy that exists over Defendant UHG's obligation to reimburse Plaintiffs' members for co-payment amounts that UHG has improperly retained. Plaintiffs have standing to bring this claim both on their own behalf and on behalf of their members, and have alleged facts sufficient to state a claim upon which relief can be granted. Accordingly, Defendant's Motion To Dismiss should be denied.

## <u>STATEMENT OF FACTS</u>

Through the prior proceedings in this case, this Court is familiar with the background of the Medicare Part D prescription drug program, the status of "institutionalized dual eligible" nursing home residents, the data problems associated with proper recognition of these beneficiaries as full benefit institutionalized duals and Defendant UHG's improper withholding of co-payment amounts from the reimbursement paid to long term care pharmacies ("LTC Pharmacies") that led to this dispute. Plaintiffs will not repeat that background here. Rather, they will summarize the salient facts as set out in their Amended Complaint, the allegations of which are, on this Motion To Dismiss, taken to be true. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

On January 1, 2006, millions of older Americans began receiving prescription drug benefits through the Federally-funded Medicare Part D prescription drug program. Participants are enrolled (or are auto-enrolled) in a Federally-regulated but privately run Prescription Drug Plan ("PDP"). Each such PDP was required to satisfy certain Federal regulatory requirements and sign a contract with the Federal Center for Medicare and Medicaid Services ("CMS"). Am. Compl., ¶ 13. *See also*

42 C.F.R. §§ 423.401 & 423.500-516.  These PDPs, in turn, entered into network services contracts with pharmacies, including Plaintiffs' member LTC Pharmacies, under which the pharmacies dispensed the drugs and submitted claims to the PDPs for reimbursement.  In general terms, the amount reimbursed to pharmacies generally consists of an agreed upon charge less a preset beneficiary co-payment amount.  Am. Compl., ¶ 17.

Certain low-income Part D beneficiaries, commonly called "institutionalized dual eligibles" because they reside in long term care facilities and qualify for both Medicare and Medicaid, are part of a Government subsidy program that eliminates their co-payment amounts.  *See* Medicare Prescription Drug Improvement and Modernization Act ("MMA"), Section 1860D-14(a)(1)(D)(i), 42 U.S.C. § 1395w-114D-14(a)(1)(D)(i); 42 C.F.R. §423.782(a)(2)(ii); Am. Compl., ¶¶ 15-20.[1]  Federal regulations state that CMS is to provide PDPs with data regarding long-term care resident eligibility for this Low Income Subsidy ("LIS").  42 C.F.R. § 423.800(a).  Utilizing this data, PDPs are supposed to eliminate co-payment amounts for eligible individuals and reimburse the pharmacies for the total agreed upon amount (*i.e.*, without a reduction for co-payment amounts) for the drugs dispensed by pharmacies.  42 C.F.R. § 423.800(b).  Federal regulations provide that if a co-payment amount is collected before the resident's LIS program status is determined, PDPs are required to repay either the beneficiary *or the organization* that *paid* the co-payment amount.  42 C.F.R. § 423.800(c).

When the Part D program went into effect on January 1, 2006, Defendant UHG, due, at least in part, to erroneous data from CMS, treated many thousands of claims for institutionalized dual-eligibles as if co-payments were required, and reimbursed LTC Pharmacies the agreed amounts less the co-payment it believed was due.  Am. Compl., ¶ 21.  Plaintiffs brought this problem to the

---

[1]    The regulatory definition of "institutionalized" found in Section 1902(q)(1)(B) of the Act and 42 C.F.R §423.772 specifically includes nursing facility residents.

attention of CMS and UHG immediately, and shortly thereafter the agency began work on the data

error problems while issuing guidance documents to aid pharmacies and PDPs such as UHG in

working together to achieve a resolution to the co-payment problem.  *Id.*, ¶ 22.

The initial guidance documents from CMS stated that LTC Pharmacies should receive a

"one time payment" for improperly withheld co-pays after submitting a "spreadsheet with claim

information to the prescription drug plan."  April 18, 2006 Tip Sheet, Ex. 1 to Am. Compl.

Understanding that "processes may vary between plans," CMS suggested that "[f]ollowing the drug

plan's directions may ensure timely reimbursements."  *Id.*  Defendant UHG, however, chose not to

comply with either the submission of a spreadsheet or the issuance of one-time repayments to LTC

Pharmacies.  Instead, it maintained that each pharmacy had to completely "reverse" each partial

reimbursement it had received and "rebill" the entire claim, just in order to receive the co-payment

amount it was owed in the first place.  Am. Compl., ¶ 27.[2]

To their dismay, Plaintiffs' members who did "reverse and rebill" their claims soon

discovered that Defendant UHG was not only failing to reimburse the improperly withheld co-

payment amount, but was rejecting a significant percentage of the resubmitted claims in their

entireties, thus leaving those LTC Pharmacies with even less than the partial payments they had

initially received from UHG.  Am. Compl., ¶ 27.  By insisting upon a process that presents Plaintiffs'

members with the Hobson's choice of either "reversing and rebilling" claims that were more likely

than not to be completely denied by UHG or simply forgoing the co-pay reimbursement entirely,

Defendant UHG manufactured a process designed to ensure that no additional co-payment

amounts would be paid out.

---

[2]     As is apparent from the language of this guidance document, and contrary to Defendant's
assertion (*see* Def. Memo. at 10), it was CMS, not Plaintiffs, who initially suggested that UHG
"cut a check" for one lump sum and accept a one-time submission of data rather than "reverse
and rebill" the entirety of each disputed claim.

In June 2006, Defendant UHG communicated to Plaintiff LTCPA that it would begin distributing checks for the improperly withheld co-payment amounts to individual beneficiaries (who had not paid those co-payments) rather than to the LTC Pharmacies. Am. Compl., ¶ 28. Along with the threat of this deadline, Defendant UHG continued to refuse any accommodation on its "reverse and rebill" scheme. Only after Plaintiffs filed the initial Complaint and a Motion for Temporary Restraining Order in this action did UHG agree to defer sending checks to beneficiaries while the parties worked to find a resolution. Am. Compl., ¶ 30.

Throughout the remainder of 2006, Plaintiffs worked diligently with CMS and with Defendant UHG to create a process by which co-payment issues could be resolved to the satisfaction of both parties. However, settlement talks collapsed in January 2007 and this litigation resumed. Declaration of Darrell McKigney ("McKigney Dec."), ¶ 5. Two months later, in March 2007, UHG once again informed Plaintiffs that, on or about April 1, 2007, it would begin to send checks to beneficiaries -- not to LTC Pharmacies -- for the improperly withheld co-payment amounts. Am. Compl., ¶ 32. UHG claimed that this course of action was necessary because its computer system would not allow for alternative methods of reimbursement. *Id.*, ¶ 36. Shortly thereafter, on April 20, 2007, UHG unexpectedly informed Plaintiffs' member LTC Pharmacies that UHG would no longer process any claims for the 2006 year. *Id.*, ¶ 34 and Exhibit 6 thereto.

This ultimate act of bad faith on the part of Defendant UHG bears out this Court's hunch that "I guess the reason why they were looking for resubmittals is they're desperately trying to stiff you." March 29 Tr. at 20:14-16. Instead of "stiffing" the LTC Pharmacies on a case-by-case basis, as this Court envisioned might occur, Defendant UHG has stiffed the LTC Pharmacy industry across-the-board. Such egregious action should not be countenanced and should be redressed by the declaratory judgment that Plaintiffs seek.

## ARGUMENT

Defendant UHG advances three general arguments for dismissal. First, it contends, in effect, that declaratory relief is not appropriate in this case. Second, it challenges Plaintiffs' standing. And third, it asserts that Plaintiffs' Amended Complaint fails to state a claim. None of these arguments has merit.

### I.    Plaintiffs Have Stated A Proper Claim For Declaratory Judgment

The declaratory judgment statute, 28 U.S.C. § 2201, " was enacted, at least in part, to 'enable [ ] litigants to narrow the issue, speed the decision, and settle the controversy before an accumulation of differences and hostility [ ] engendered a wide and general conflict, involving numerous collateral issues.'" *Nat'l Railroad Passenger Corp. v. Consolidated Rail Corporation*, 670 F. Supp. 424, 427 (D. D.C. 1987), *vacated on other grounds*, 892 F.2d 1066 (D.C. Cir. 1990) (citations omitted). Declaratory judgment is necessarily a flexible remedy that requires only independent jurisdiction (diversity in this case) and a controversy between the parties.

> Two criteria are ordinarily relied upon to determine whether a court should, it its discretion, render a declaratory judgment: (1) whether the judgment will "serve a useful purpose in clarifying the legal relations in issue" or (2) whether the judgment will "terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding.'

*Id.* at 431 (citing *President v. Vance*, 627 F.2d 353, 364 n. 76 (D.C. Cir. 1980)). As the Supreme Court recently observed: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Medimmune, Inc. v. Genentech*, __ U.S. __, 127 S.Ct. 764, 770-771 (2007)(citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The Supreme Court further reiterated that while there was previously some question whether a declaratory judgment action is itself sufficient to satisfy Article III requirements, "[w]e dispelled those doubts" in holding "that an appropriate action

for declaratory relief *can* be a case or controversy under Article III." *Id.* at 771 (internal citations omitted).

Declaratory judgments are frequently used in contract actions, to determine the validity or interpret the meaning of the contract at issue or to determine the rights and obligations of parties to the contract. For example, in *Medimmune*, the Supreme Court held that a patent licensee need not breach the relevant contract and refuse to pay claimed royalties before seeking a declaratory judgment on the relevant contract. *Id.* at 777. *See also In re Downingtown Industrial & Agricultural School*, 172 B.R. 813, 819 (E.D. Pa. 1994)(citing cases and authorities that declaratory judgment is regularly used to construe contracts); *Eva v. Midwest National Mortgage Banc*, 143 F. Supp. 2d 862, 896 (N.D. Ohio 2001)(denying motion to dismiss a declaratory judgment action regarding contract, stating: "once the plaintiff obtains either a declaration that the contract or some of its terms are invalid, or has the contract reformed to eliminate the unconscionable terms, the plaintiff can further request damages to the extent that the unconscionable terms have been enforced in the past.").

In addition, declaratory judgment actions may be brought by associations to determine issues common to their members. For instance, in *American Medical Ass'n v. United Healthcare Corp.*, 2002 WL 31413668 (S.D.N.Y. 2002) (*see* Exhibit 3 to Borababy Dec.), several associations representing medical service providers were found to have standing to bring claims regarding the obligations of the defendant health insurance plans (including another UHG program) under their contracts and governing law and regulations. *Id.* at *3. That case involved claims by medical service providers that the defendant health plans had improperly reduced health insurance reimbursements for services rendered by "out-of-network" providers by relying on flawed data as to "usual, customary and reasonable" charges. *Id.* at 1. The plaintiff medical associations sought injunctive and declaratory relief on behalf of certain of their medical provider members. *Id.* at 3. The defendants argued that the requested relief required the involvement of the individual members as to the particulars of their

claims. *Id.* The Court disagreed, stating that while it "questions whether …Plaintiffs will be able to establish their representative claims with limited individual participation, at this stage of the proceedings on a motion to dismiss for lack of standing, the Court will accept the fact that it is possible." *Id.* It therefore denied the motion to dismiss for lack of standing, and permitted the associations to proceed to the merits of their representative claims. *Id.*

Here, as in *American Medical Ass'n*, there is a justiciable case or controversy regarding the obligations imposed by contract, statute, and regulation as to which Plaintiffs seek a declaration of their members' rights. Plaintiffs have alleged that UHG improperly withheld the co-payment amounts, has refused to rectify that situation and, indeed, will process no further 2006 claims. Plaintiffs have further alleged that this conduct is contrary to the legal interests and obligations spelled out in the governing contracts, statute, and regulations, which operate in tandem. A declaration of the parties' rights and obligations by this Court will certainly "'serve a useful purpose in clarifying the legal relations in issue,'" *see Nat'l Railroad Passenger Corp.*, 670 F. Supp. at 431, and, indeed, is likely to bring about a total resolution of the overall dispute.

## II.  Each Plaintiff Possesses The Requisite Standing To Bring This Action.

Plaintiffs have the requisite standing to pursue this declaratory judgment action, both in their representational capacities and on their own behalf.

### A.  LTCPA and ASCP each satisfies the requirements for associational standing.

Under the familiar standard, an association has standing to sue on behalf of its members where (a) association members would have standing to sue in their own rights, (b) the interests that the association seeks to protect are germane to its organizational purpose, and (c) neither the claim asserted nor the relief requested requires the participation of individual association members. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). Defendant UHG does not contest that both Plaintiffs satisfy the first two elements of this calculus, and thus concedes that

they do.  As to the third, Plaintiffs' Amended Complaint clearly requests a declaratory judgment on issues that apply to Plaintiffs' members generally, and thus the individual participation of association members is not required.

> i.    Plaintiffs' members have standing to sue in their own rights, and the action is germane to Plaintiffs' organizational purposes.

An association satisfies the first element of the associational standing test when a defendant's improper conduct has caused "traceable 'concrete and particularized' harm" to its members that is "'actual or imminent'" and that will be redressed by a favorable result.  *See Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002).  The Amended Complaint alleges that Plaintiffs' member LTC Pharmacies have been adversely affected by Defendant's improper conduct.  *See, e.g.,* Am. Compl., ¶¶ 11, 27, 29.  *See also* Second Declaration of Paul Baldwin ("Baldwin Sec. Dec."), ¶ 6; Declaration of Thomas Clark ("Clark Dec."), ¶ 6.[3]  Plaintiffs have alleged the real and present injury to their members of non-payment, wrongful reimbursement of individual beneficiaries, the unwarranted and bad faith cessation of any effort by UHG to resolve the co-payment issues, and the violation of contracts, statute, and regulations.  Am. Compl., ¶¶ 32-36.  Each of these directly impacts Plaintiffs' member LTC Pharmacies and would give them standing to sue in their own right.[4]

---

[3]    Since Defendant poses a Rule 12(b)(1) challenge in its Motion To Dismiss, this Court has broad discretion to "rely on documents beyond the pleadings to assure that it has jurisdiction." *Hudert v. Alion Science & Technology Corp.*, 429 F. Supp. 2d 99, 105 (D.D.C. 2006); *Haase v. Sessions*, 835 F.2d 902, 906 (D.D.C. 1987).  While Plaintiffs believe that the allegations of the Amended Complaint are sufficient to support standing in this matter, they are submitting these Declarations as additional support.  Both the Second Baldwin Declaration and the Clark Declaration were previously submitted to this Court in opposition to Defendant's Motion To Dismiss Plaintiffs' original Complaint.

[4]    It is Plaintiffs' understanding that at least one LTC Pharmacy company recently instituted legal action against the Pharmacy Benefits Managers that service UHG's PDPs.  However, UHG's conduct with regard to its network pharmacy contracts and applicable regulations is ongoing and co-payments continue to be improperly withheld.  McKigney Dec. ¶ 4.  Therefore, the need for broader declaratory relief remains.

There is also no dispute that this case is germane to each Plaintiffs' purpose, consistent with applicable law.  *See Humane Society of the United States v. Hodel*, 840 F.2d 45, 56 (D.C. Cir. 1988) (germaneness requirement requires only "that an organization's litigation goals be <u>pertinent to its special expertise and the grounds that bring its membership together</u>." (emphasis added)).  *See also American Insurance Association v. Selby*, 624 F. Supp. 267, 271 (D.D.C. 1985) (holding that "[a]n association's litigation interests must be truly unrelated to its organizational objectives before a court will declare that those interests are not germane").  Plaintiffs meet this requirement in numerous respects.  For example, each organization holds as a prime objective advancing the practice of senior care pharmacy, which includes serving the large population of institutionalized dual eligible senior citizens and chronically ill patients served by Medicare Part D.  *See* Am. Compl., ¶¶ 8-9; Clark Dec., ¶ 7; Baldwin Sec. Dec., ¶ 4.  In addition, matters concerning the administration and integrity of the Part D prescription benefit program are an important part of the everyday work of individual pharmacists and institutional LTC Pharmacies.  Clark Dec., ¶ 8; Baldwin Sec. Dec., ¶ 5.  UHG's failure to reimburse LTC Pharmacies and its refusal to process further 2006 claims strike at the very heart of the Medicare Part D program and threaten the efficient provision of essential pharmacy services to the fragile institutionalized dual-eligible population.

    ii. <u>Participation of Plaintiffs' individual members is not required here</u>.

Defendant UHG argues that Plaintiffs do not satisfy the third prong of the standing test, claiming that this case is one for damages and that the participation of individual members is therefore necessary.  Def. Memo. at 15.  In making that claim, however, UHG misrepresents the true nature of the relief sought by Plaintiffs while urging this Court to pre-judge whether the evidence will ultimately prove to be sufficient -- a function reserved for summary judgment or adjudication on the merits.

Plaintiffs have amended their Complaint to make it clear that they do not seek damages.[5]
And the law is clear that the individual participation of members is not required when an association
is seeking prospective injunctive-style or declaratory relief, even in cases involving underlying
contracts. *See Union Food & Commercial Workers Union Local 751 v. Brown Group*, 517 U.S. 544, 546-47
(1996); *Int'l Union, United Automobile & Agricultural Workers of America v. Brock*, 477 U.S. 274, 287-288
(1986). In *Brock*, the Supreme Court held that it could determine certain entitlements and
obligations regarding benefits owed to workers, even though the workers would subsequently need
to prove facts as to individual liability and amount through a separate proceeding. *See* 477 U.S. at
287-288. *See also American Medical Ass'n,* 2002 WL 31413668, *supra.* The same is true here. Indeed,
in this case, a declaration of the parties' rights and obligations may in and of itself precipitate the
necessary final resolution. UHG's repeated argument that Plaintiffs' requested relief is purely for
damages is baseless and should be disregarded.

Beyond Defendant's mischaracterization of Plaintiffs' claim, UHG cites authority that is
inapposite to the pertinent legal issues. Defendant relies heavily on *Air Transport Ass'n v. Reno*, 80
F.3d 477 (D.C. Cir. 1996), which did not hold, as Defendant UHG maintains (*see* Def. Memo. at 16),
that a request for damages necessarily destroys standing: "[w]hile we acknowledge that *a request for
monetary relief by an association does not absolutely preclude standing in all cases,* the question in each case is
whether the monetary relief can be awarded without 'individualized proof.'" *Id.* at 484 (emphasis

---

[5]    Plaintiffs have always maintained without qualification that they are not seeking an award of
damages from this Court. *See, e.g.,* March 29 Tr. at 9:11-12. (Mr. Farber: "This is not a contract
claim for damages."). Rather, Plaintiffs seek a declaration that: (1) UHG was not entitled to
withhold co-payment amounts; (2) UHG has an obligation to pay LTC Pharmacies amounts that
were improperly withheld from UHG's reimbursements for dispensed prescriptions; (3) UHG
violated Federal regulations governing the function of the LIS subsidy program by paying
beneficiaries rather than LTC Pharmacies; (4) any payment made to individual beneficiaries does
not relieve UHG of its obligation to pay LTC Pharmacies; and (5) UHG is obligated to continue
to process all claims for such withheld co-payment amounts. Am. Compl., Prayer for Relief,
¶ (a)(i)-(v).

added).  Thus, even if Plaintiffs were asking this Court to award monetary relief (which they are not),
Defendant's argument is not borne out by the very case it cites.[6]

Defendant is similarly misleading in contending that *Telecommunications Research & Action
Center v. Allnet Communications Services, Inc.*, 806 F.2d 1093 (D.C. Cir. 1986), is directly analogous to
this case.  *See* Def. Memo. at 15.  The *Allnet* case involved an association directly seeking damages
for the defendant's allegedly overcharging the plaintiff's members for telephone fees.  *Id.*  Further, as
in *Air Transport*, the Court of Appeals in *Allnet* went out of its way to reject the defendant's
contention that a request for damages necessarily destroys associational standing.  "[W]e reiterate that
our decision establishes no *per se* rule that associations may never represent their members when
monetary relief is immediately at stake.  We do not confront in this case a situation in which the
monetary relief is sought merely ancillary to prospective injunctive or declaratory relief."  *Id.* at
1096.[7]

Finally, *Pesticide Public Policy Foundation v. Village of Wauconda, Ill.*, 622 F. Supp. 423 (N.D. Ill.
1985), does not help Defendant.  The plaintiff there sought damages on behalf of individual
members for costs incurred in complying with restrictions regarding the use and application of
pesticides.  *Id.* at 426.  The Court very clearly noted that "[p]laintiff has cited no authority under

---

[6]    Further, the association plaintiffs in *Air Transport* were seeking damages for costs their members
had been forced to pay to the Immigration and Naturalization Service  for the care and housing
of passengers who were seeking asylum  and were then detained under policies covering
stowaways and travelers without visas.  *Id.* at 477.  The Court held that to award damages would
require highly individualized proofs regarding the amount of money paid, the numerous types of
services paid for, and the types of aliens at issue.  *Id.* at 484.  No such individualized proof is
required in order for this Court to issue the more general declaratory relief that Plaintiffs seek.

[7]    Defendant's reliance on *Black Farmers and Agriculturalist Assoc. v. Veneman*, 2005 WL 711821
(D.D.C. 2005) (cited in Def. Memo. at 14), is also misplaced.  That case involved the procedural
oddity of an unopposed motion to dismiss.  *Id.* at *1.  The Court treated the motion as conceded
and, referring to the poorly worded complaint, stated that "the Court is unwilling to interpret
plaintiff's vague claims requesting declaratory relief which is fully segregable from plaintiff's
claims for damages."  *Id.* at 2.  The *Black Farmers* case is both factually and legally distinct from
the instant case.

Illinois law to support its request for damages, and insofar as this Court is aware, none exists. Plaintiff asserts only that defendants are liable for damages under 42 U.S.C. § 1983." *Id.* at 432. Section 1983 is a legally distinct cause of action that has not been implicated or pled in this case. Thus, that case is of no help to UHG, and in no way undercuts Plaintiffs' associational standing here.

**B.    ASCP and LTCPA have standing to sue in their own rights.**

In addition to vindicating the rights of their members, both ASCP and LTCPA have suffered concrete and particularized injuries as a result of Defendant UHG's wrongful withholding of co-payment amounts. An association has standing to pursue an action in its own right when it demonstrates a "concrete and particularized injury" that is fairly "traceable to the challenged act" and potentially "redressable by the court." *See Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 132-33 (D.C. Cir. 2006); *Nat'l Fair Housing Alliance v. Prudential*, 208 F. Supp. 2d at 46, 52-53 (D.D.C. 2002). Each Plaintiff in this case satisfies this test.

A plaintiff association can show injury-in-fact if it can demonstrate that a defendant's conduct conflicts directly with its organizational activities, such as advocacy and educational services, and has caused the association to divert resources from existing programs to defend against the conduct. *See Abigail's Alliance*, 469 F.3d at 133. Here, Defendant's conduct has interfered with the core mission of both Plaintiffs to protect and promote the profession of long term care pharmacy.[8] Both associations regularly advocate to improve Federal statutes and regulations as well as to ensure the efficient flow of information essential to the day-to-day provision of long term care pharmacy

---

[8]    ASCP's web site contains the organization's mission statement that it "provides leadership, education, advocacy, and resources to advance the practice of consultant and senior care pharmacy." *See* www.ascp.com/about (last accessed February 21, 2007). The mission statement found on the LTCPA web site notes that "LTCPA advocates for the interests of the long-term care pharmacy community" and that the organization "highlights the critical issues of concern surrounding the pharmacy needs for more than 60 percent of the nation's long term care residents." *See* www.ltcpa.org/mission/default.asp (last accessed on February 21, 2007).

services.  *See* Clark Dec., ¶ 8; Baldwin Sec. Dec., ¶ 5.  UHG's conduct has impeded, and is continuing to impede, progress in these areas, as both associations have found themselves in a more than year-long struggle with UHG that has detracted from their focus on obtaining legislative and policy advances for their members.[9]

In short, combating UHG's ongoing refusal to reimburse co-payment amounts to LTCPA and ASCP members is draining financial, staff and programmatic resources from both associations -- an injury-in-fact that is sufficient to establish direct standing.  *See Abigail Alliance,* 469 F.3d at 132-33; *Nat'l Fair Housing Alliance,* 208 F. Supp. 2d at 53.

Defendant poses straw men in arguing that the harm alleged by Plaintiffs is neither "traceable" to UHG's actions nor potentially "redressable" by this Court's grant of declaratory relief. For example, the fact that other PDPs may still be in the process of working out their own reimbursement issues does not render the harm caused by UHG untraceable or incapable of being remedied by the relief requested in this case.  *See* Def. Mem. at 13-14.  The legal test for standing requires only that the relief sought "redress the injury *in whole or in part and thus confer a material benefit on him..*"  *Brueggeman v. Blagojevich*, 324 F.3d 906, 909 (7th Cir. 2003) (emphasis added).  *See also Int'l Ladies Garment Workers Union v. Donovan*, 722 F.2d 795, 812 n. 27 (D.C. Cir. 1983) (holding that

---

[9]    LTCPA staff has devoted significant time and resources to co-payment issues arising out UHG's conduct -- time and resources that would otherwise have been devoted to pursuing specific policy objectives such as addressing how pharmacy providers communicate with long term care beneficiaries about plan and network selections.  *See* Baldwin Sec. Dec. ¶¶ 13-14; McKigney Dec., ¶¶ 10-12.  Moreover, LTCPA's organizational and political goals, such as finalizing and implementing a comprehensive 2007 legislative agenda, grassroots organizing among pharmacy entities, and membership development have suffered measurably under the strain of negotiating and fighting for an end to UHG's withholding.  Baldwin Sec. Dec., ¶¶ 13-14.

Similarly, ASCP has seen its operations adversely impacted in specific ways.  For example, advocacy efforts related to Medicare Part B payments for medication therapy management in clinical situations have been largely sidelined to allow more time to deal with UHG's improper withholding of co-payments.  *See* Clark Dec., ¶ 9.  And, like LTCPA, ASCP has been distracted from pursuing its legislative goals.  *Id.*, ¶¶ 9-10.

standing is established even if requested relief "would only significantly - rather than completely - redress the appellants' injuries …").  Defendant UHG cites no authority for its contrary assertion.

Furthermore, UHG is the largest PDP that has categorically stopped processing 2006 claims for wrongfully withheld co-pays.  Am. Compl., ¶ 7.  In addition, UHG is the most significant PDP to have begun a systematic program of repaying individual beneficiaries even though CMS has provided updated data establishing which beneficiaries are eligible for co-payment subsidies.  Finally, UHG is the largest PDP sponsor to issue a unilateral mandate that pharmacies <u>absolutely must</u> participate in its "reverse and rebill" scheme before it will even consider refunding co-payments.

Moreover, under the legal standing test, the alleged injury need only "be *fairly traceable* to the challenged action of the defendant…"  *Lepelletier v. Federal Deposit Insurance Corp.*, 164 F.3d 37, 42 (D.C. Cir. 1999)(emphasis added).  Whether other PDPs may be engaging in similar conduct or not, it is abundantly clear from the pleadings that the harm complained of does not result from the independent action of any other third party, but rather from UHG's direct and pointed actions.  Thus, Plaintiffs' members' injuries are not merely "fairly traceable" to UHG -- they are directly caused by UHG.

Finally, the redressability requirement is satisfied when it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1977).  Since Defendant is the leading PDP to have taken such drastic and harmful positions with regard to this dispute, and because UHG is the single largest sponsor of Part D PDPs, the harm to Plaintiff associations will be significantly redressed by this Court's grant of relief.  *See Lepelletier*, 164 F.3d at 43 (holding that the possibility that the Court might grant relief sufficient to alleviate plaintiff's harm was sufficient to satisfy redressability for standing).

Defendant's notion that Plaintiffs lack standing, either on behalf of their members or on their own, is contrary to both the facts alleged and the governing legal authority. UHG's Motion To Dismiss the Amended Complaint on standing grounds should thus be denied.

## III. Defendant's Motion To Dismiss For Failure To State A Claim Should Be Denied.

Defendant UHG also contends that the Amended Complaint fails to state a claim. More specifically, UHG advances four arguments: first, it claims that Plaintiffs have sued the wrong defendant, arguing that, while certain of its wholly-owned subsidiaries have network contracts with Plaintiffs' members, UHG is merely a "holding company" that is not itself a party to these contracts. *See* Def. Mem. at 19-21 . Second, UHG claims that Plaintiffs cannot seek to enforce, either directly or as third-party beneficiaries, the Part D participation contract between CMS and UHG. *Id.* at 21-23.[10] Third, UHG contends that Plaintiffs cannot seek a declaration that Defendant violated the duties imposed on it by the Part D statutes and regulations because none of these statutes creates a private right of action. *Id.* at 23-25. And fourth, UHG argues that the Medicare Part D statutes, regulations and guidelines "permit," but do not "require," that PDPs reimburse LTC Pharmacies directly. *Id.* at 25-30.

---

[10] Defendant attempts to further distract from the central issue of its illegal conduct by falsely claiming that Plaintiffs have asserted a contract claim as third-party beneficiaries to its PDP Plan Sponsor contract with CMS. *See* Def. Mem., 21-23. Even a cursory review of Plaintiffs' Amended Complaint would reveal that Plaintiffs have not asserted such a claim and that Defendant's argument is a needless red herring. Facts concerning the CMS-Plan Sponsor contract were alleged in the Amended Complaint because the contract requires total compliance with Part D regulations, including those that Plaintiffs allege Defendant has violated, and is further proof of the obligations that UHG has been avoiding. Am. Compl., ¶ 14. Nonetheless, although not pled by Plaintiffs, Plaintiffs' members may well be third-party beneficiaries of the CMS-Plan Sponsor contract. Pharmacies are a defined term under the very regulations that UHG agrees to follow in its CMS contract, and both the CMS contract and the regulations require PDPs to establish network agreements with pharmacies. Taken as a whole, there is a good argument that both Part D beneficiaries and pharmacy providers are intended third-party beneficiaries.

In making these arguments, Defendant UHG loses sight of the fact that a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the allegations of the Complaint and is not an adjudication on the merits. *Browning v. Clinton*, 292 F.3d at 242. When deciding a Rule 12(b)(6) motion, the Court must accept Plaintiffs' factual allegations as true and construe the Complaint liberally, granting Plaintiffs the benefit of all inferences that can be derived from the facts alleged. *Id.* As the Supreme Court has repeatedly noted, the Federal Rules of Civil Procedure require only that a complaint provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Swierkiwicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley*).

Plaintiffs have sufficiently alleged facts that would entitle them to relief. The Amended Complaint alleges that Defendant UHG made the decisions not to reimburse, and to continue to withhold, the improperly deducted co-payments, and that, in doing so, it is flouting the LTC Pharmacies' contracts as well as related Federal law and CMS' clear guidance to the contrary. Am. Compl., ¶¶ 1-3, 21-36, 38. Plaintiffs have further alleged that UHG caused the co-payment amounts to be wrongfully withheld, *id.*, ¶ 1, and that it has caused its affiliates to reimburse the co-payments to beneficiaries rather than to the LTC Pharmacies. *Id.*, ¶ 38. Further, Defendants ignore the very nature of declaratory judgment actions in contending that this Court may not consider a declaratory judgment action simply because it involves, however collaterally, violations of Federal regulation as to which there may be no private right of action. Defendant's Motion should therefore be denied.

A.    **UHG is the proper defendant here, since it is responsible for the breach of the network pharmacy contracts with Plaintiffs' members.**

The Amended Complaint sufficiently alleges that Defendant UHG -- not its subsidiaries or affiliates -- has been the actor that has refused to permit pharmacy co-payment reimbursements. *See e.g.,* Am. Compl., ¶¶ 1-3, 38. Indeed, UHG itself has stated: "UnitedHealth Group ("UHG") has

discontinued processing 2006 claims." Am. Compl., ¶ 34 and Exhibit 6 thereto. UHG's own actions and letter speak louder than its counsel's unsupported words.[11] UHG is refusing to reimburse the LTC Pharmacies for the co-payments despite the Part D statute and regulations, its contract with CMS and its network pharmacy contracts, all of which require it to do so. The Amended Complaint is clear on this point.

In such a circumstance, the absence of a direct contract with a parent corporation is not automatically fatal to an action against the parent for breach of contract. Where the behavior of the parent corporation is so entwined with that of its subsidiary, the usual separation enjoyed by a parent and its subsidiary no longer applies. *See, e.g., Penick v. Frank E. Basil, Inc. of Delaware,* 579 F. Supp. 160, 165 (D.D.C. 1984)(noting that in some circumstances a corporation can be held liable for a contract made by its subsidiary); *Scandinavian Satellite System v. Prime TV Limited*, 291 F.3d 839, 846 (D.C. Cir. 2002)(explaining that a court may disregard the separate corporate forms of a parent and subsidiary to hold one accountable for the acts of the other). As the Court explained in *Satellite Broadcasting Cable, Inc. v. Telefonica De Espana*, 786 F. Supp. 1089 (Dist. P.R. 1992), the

> Court is not concerned with who may ultimately bear the burden of proof, nor is it preoccupied with the evidence that must be established at trial…This Court merely determines whether, at this point in the litigation and based on the allegations in the complaint, plaintiffs are unable to establish any set of facts that may entitle them to relief.

*Id.* at 1100. In that case, the plaintiff asserted a claim against a parent corporation under a contract that was signed by the corporation's subsidiary. The plaintiff alleged that because the contract had been negotiated directly with the parent corporation, the parent's behavior was such that the Court

---

[11] Notably, UHG has provided no affidavit or documentary support for any of the factual assertions in its Motion To Dismiss, including its position that its subsidiaries or affiliates, rather than it, exclusively provided the benefits here and were the entities in contractual relationships with the pharmacies. Instead, it has relied entirely on argument. As such, this Court should give no weight to these unsupported contentions.

could subject the parent corporation to the obligations of the contract. *Id.* at 1098-1100. The Court denied the defendant's motion to dismiss under Rule 12(b)(6), explaining that "where pleadings allege that all negotiations leading to a[n]…agreement are carried on with a parent corporation, but the agreement is signed by a subsidiary, sufficient facts are alleged to defeat a motion to dismiss by the parent." *Id.* at 1100.

Plaintiffs have clearly alleged facts that, when proven, will obligate UHG to fulfill, and to cause its subsidiaries to fulfill, the responsibilities set forth in the network pharmacy contracts and subsequent CMS guidance on this issue. Plaintiffs' Amended Complaint alleges that Defendant UHG made the decision to withhold the amounts at issue, that UHG decided not to reimburse Plaintiffs' members, that UHG caused the co-payments to be withheld, that UHG has stopped processing 2006 claims and that UHG has violated CMS guidance and the network contracts. Since Defendant UHG is clearly calling the shots in this matter -- as its April 20, 2007 letter confirms -- the declaratory and injunctive relief Plaintiffs seek is most appropriately directed toward it.[12]

**B. Plaintiffs have stated a claim for a declaratory judgment that Medicare statutes, regulations, and guidance mandate the direct reimbursement to LTC Pharmacies of the improperly withheld co-payments.**

Defendant also fundamentally misstates the nature of Plaintiffs' claims in arguing that a private right of action must exist before declaratory judgment can be sought as to UHG's duties under the statutory and regulatory schemes bearing on this Part D dispute. Plaintiffs have not brought a direct action under the MMA, and have not asserted Federal question jurisdiction in this

---

[12] The Amended Complaint also states (and UHG does not dispute) that UHG "directly and through its subsidiaries, owns and operates" the largest PDP (and other PDPs) providing prescription drugs to tens of thousands of full benefit, dual eligible beneficiaries. Am. Compl., ¶ 7. The Amended Complaint alleges that Plaintiffs' discussions regarding the co-payment reimbursement issue were held with UHG representatives. *Id.*, ¶¶ 25, 28-29. *See also* McKigney Dec., ¶¶ 6-8. And Plaintiffs allege that it was UHG that informed Plaintiff LTCPA that reimbursement checks would be sent directly to beneficiaries. *Id.*, ¶ 31. If UHG disputes any of these allegations, it can litigate those matters following discovery on the merits. It cannot, however, resolve them at this motion to dismiss stage.

case, thus negating UHG's argument altogether.  Furthermore, where Federal statutes or regulations are intertwined with and inform the function of Federal Government program contracts, it is well within a Court's authority to determine whether violations of those statutes and regulations have occurred in the context of adjudicating the parties' rights and obligations under such contracts.  *See, e.g., College Loan Corp. v. SLM Corp.,* 396 F.3d 588, 599-600 (4th Cir. 2005).

In *College Loan Corp.,* the plaintiff alleged multiple counts, including breach of contract and declaratory judgment counts that relied significantly upon proving that the defendant had mis-interpreted and violated a Federal regulation that bore upon the contract at issue.  *Id.* at 593-94.  The defendant filed a motion to dismiss on grounds that the plaintiff's claims "constituted an impermissible effort to assert private rights of action" under the Higher Education Act, which did not provide a private right of action for lenders to contest a violation of this regulation.  *Id.* at 593. The Fourth Circuit found this argument unconvincing, holding that: "the lack of a statutory private right of action does not, in and of itself, bar a plaintiff from relying on violations of that statute as evidence supporting a state law claim."  *Id.* at 599 n. 9.  The Court further stated that the regulations at issue were "intertwined with the questions being litigated here" and that because plaintiff alleged contract and tort claims "supported by violations" of the regulations, the defendant's "private right of action rationale is not applicable."  *Id.*  Thus, the Fourth Circuit vacated the District Court's rulings restricting the litigation of the defendant's regulatory violations, and remanded so that they could be fully considered in light of the claims pled.  *Id.* at 600.

In contrast, the cases cited by Defendant, *Action Alliance of Senior Citizens v. Leavitt,* __ F.3d __, 2007 WL 1119646 (D.C. Cir. April 17, 2007), and *N.Y. Statewide Senior Action Council v. Leavitt,* 409 F.Supp. 2d 325 (S.D.N.Y. 2005), both involve completely different circumstances regarding the narrow right of judicial review and the need for administrative exhaustion before Part D program beneficiaries may seek review of the Government's own interpretation and action on reimbursement

issues. The case at bar does not directly involve claims against CMS regarding any Part D interpretations or claims pertaining to individual beneficiaries.[13]

In this case, the statutes, regulations, agency guidance and network pharmacy contracts are all intertwined and inform one another in their application and interpretation. In essence, the Amended Complaint demonstrates that the clearest picture of what is legally required of parties participating in the Part D program can be found by considering these elements together. Taken as a whole, these materials resolve the controversy over what UHG should do and how it should be done regarding this co-pay dispute.

Nor does a review of the governing Part D statutes, regulations and guidance support Defendant UHG's argument that it is not required to reimburse LTC Pharmacies directly.

1.    Medicare Statute and Regulations

There is no dispute that the relevant section of the Medicare statute, 42 U.S.C. § 1395w-114D-14(a)(1)(D)(i), and its implementing regulations, 42 C.F.R. § 423.782(a)(2)(ii), mandate that full benefit, dual eligible beneficiaries residing in LTC facilities for at least one month should not have any cost sharing obligations under the Medicare Part D program. Further implementing this mandate are the regulations at 42 C.F.R. § 423.800(a)-(c). Specifically, subparts (a) and (b) provide, respectively, that CMS must provide the data regarding who is eligible for the elimination of co-payment amounts and that PDPs shall use that data to ensure that they do not collect a co-payment. Most important, § 423.800(c) states:

---

[13]    As this Court previously observed, CMS' presence before this Court is important if all parties are to fully remedy the problems with the withheld PDP payments. "I want the U.S. Government, CMS, to help out here." March 22 Tr. at 10:15-16. "I'm happy to issue an order to bring in CMS to get you either more time or we can have a little way to construct this so that they're satisfied about your reimbursement." *Id.* at 14:11-13. "It needs the Federal Government to help out." March 29 Tr. at 29:1-2. Accordingly, LTCPA advises this Court that it intends to file a complementary complaint against CMS pursuant to 28 U.S.C. § 1361 and the All Writs Act seeking to require CMS to comply with its statutory and regulatory responsibilities.

(c) *Reimbursement for cost-sharing paid before notification of eligibility for low-income subsidy.* The Part D sponsor offering the Part D plan *must* reimburse subsidy eligible individuals, *and organizations paying cost-sharing on behalf of such individuals*, any excess premiums and cost-sharing *paid* by such individual or organization after the effective date of the individual's eligibility for a subsidy under this subpart. (emphasis added).

Plaintiffs' member LTC Pharmacies are organizations that, in effect, paid the co-payments at issue in this dispute. In contravention of these provisions, Defendant UHG improperly withheld co-payment amounts from the reimbursements made to Plaintiffs' members with whom it has network pharmacy contracts. After initially backing off of its June 2006 threats to violate these regulations by sending reimbursement checks to individuals who did not actually pay the co-payments, Defendant UHG has again threatened to send out those checks, and has summarily ceased to process 2006 co-payment claims.[14]

　　　2.　　CMS Guidance

　　　Beyond the clear direction of these implementing regulations, Defendant has continued to flatly ignore the comprehensive program guidance provided by CMS by first requiring (without any authority) that Plaintiffs' members "reverse and rebill" each and every claim completely, and by later ceasing to process 2006 claims. Plaintiffs have alleged sufficient facts concerning Defendant's violation of the express guidance provided by these CMS documents. Am. Compl., ¶¶ 23-33.

- **CMS "Tip Sheet" of April 18, 2006:** CMS' initial guidance on this co-payment dispute provides expressly that pharmacies "will need to submit a spreadsheet with claim information to the prescription drug plan" so that they can "receive a one-time payment for the amount of any uncollected co-payments for people who were mistakenly identified as having co-payment amounts." *See* Am.Compl., ¶ 23 and Exhibit 1 thereto. While CMS suggests that "[f]ollowing the drug plan's directions may ensure timely reimbursements," the above language concerning a single spreadsheet submission and one-time payment expressly contradict Defendant's repeated assertion that pharmacies are required to "reverse and rebill" the entirety of each claim involved.

---

[14]　Plaintiffs do not know, and Defendant has not indicated in its Motion papers, whether checks have actually been sent to beneficiaries.

- **CMS FAQ of April 20, 2000:** While Defendant alleges that Plaintiffs "gloss over" portions of this FAQ, *see* Def. Mem. at 28, Defendant does not dispute its clear statement that PDPs "should work with their pharmacies to provide them with direct reimbursement for any cost sharing amount not collected from institutionalized individuals."  Am.Compl., ¶ 24 and Exhibit 2 thereto.

- **CMS Guidance of May 5, 2006**: Following up on the directive in its April 20, 2006 FAQ Guidance document, CMS provided further warning to PDPs that "plans should not automatically reimburse beneficiaries residing in LTC facilities because it is unlikely that the LTC pharmacies have billed the beneficiaries for their co-payments" but rather "are encouraged to reimburse LTC pharmacies directly…." Am. Compl., ¶ 26 and Exhibit 3 thereto.

- **CMS Guidance of December 22, 2006:**  In an additional guidance issued on December 22, 2006, CMS stated that "Part D plans need to work with [LTC pharmacies] to ensure appropriate reconciliation of amounts owed….[P]lan sponsors should not automatically reimburse beneficiaries for cost sharing amounts that were not collected by their LTC pharmacies.  Rather, *plan sponsors need to work with their network pharmacies to provide them with direct reimbursement for any cost sharing amounts that were not collected from [low income subsidy]-eligible beneficiaries.*"  Am. Compl., ¶ 31 and Exhibit 4 thereto (emphasis added).

As alleged in the Amended Complaint, Defendant UHG has violated these statutory and regulatory requirements by failing to reimburse LTC Pharmacies directly.  As such, Plaintiffs have made out a sufficient claim for which declaratory relief can be issued.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiffs LTCPA and ASCP respectfully request that this Court deny Defendant's Motion To Dismiss Complaint, award Plaintiffs their fees, costs and expenses, and grant such other and further relief as this Court may deem just and proper.

Respectfully submitted,


_____/s/ David Farber_____
David Farber (D.C. Bar No. 415899)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Dated: June 7, 2007

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of June, 2007, a true and correct copy of Long Term Care Pharmacy Alliance and American Society of Consultant Pharmacists' Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint was served via electronic delivery and first class mail upon:

> Thomas F. Fitzgerald, Esq.
> Mark C. Nielson, Esq.
> GROOM LAW GROUP, CHARTERED
> 1701 Pennsylvania Avenue, NW
> Washington, D.C. 20006
> Telephone:  (202) 857-0620
> Facsimile:  (202) 659-4503
> Email:  mcn@groom.com
>           tff@groom.com

>     /s/  Edward D. Gehres, III
> Edward D. Gehres, III

Dated June 7, 2007