Ex. # 2 to Declaration of George M. Borababy

1

1              UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF COLUMBIA

3       ------------------------------X

4    LONG TERM CARE PHARMACY

5    ALLIANCE, et. al.,              Civil Action No.

6              v.                    06-1221

7    UNITED HEALTH GROUP,            Washington, D.C.
                                     Thursday, March 29, 2007
8              Defendants,           9:35 A.M.
     ------------------------------X

9                   TRANSCRIPT OF HEARING
10        BEFORE THE HONORABLE ELLEN SEGAL HUVELLE
                UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

13   For the Plaintiffs: DAVID FARBER, ESQUIRE
                         ED GEHRES, ESQUIRE
14                       GEORGE BORABABY, ESQUIRE
                         PATTON BOGGS
15                       2550 M St., N.W.
                         Washington, D.C.  20037
16                       202-457-6000

17   For Defendant:      MARK C. NIELSEN, ESQUIRE
                         THOMAS F. FITZGERALD, ESQUIRE
18                       MICHAEL PRAME, ESQUIRE
                         GROOM LAW GROUP
19                       1701 Pennsylvania Avenue, N.W.
                         Washington, D.C.  20006
20                       202-659-4503

21   Court Reporter:     Lisa Walker Griffith, RPR
                         U.S. District Courthouse
22                       Room 6409
                         Washington, D.C.  20001
23                       (202) 354-3247

24   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
25

**P R O C E E D I N G S**

1

THE COURT:  Good morning.

THE DEPUTY CLERK:  This is Civil Action 06-1221, Long Term Care Pharmacy Alliance versus United Health Group Inc.  I would ask counsel to identify themselves for the record please.

MR. FARBER:  Your Honor, David Farber, Patton Boggs, for plaintiffs.  With me, and I will enter his appearance this afternoon formally on paper, is George Borababy and Ed Gehres, who will be moved pro hac vice this afternoon as well.  Those will be unopposed by defendant.

MR. FITZGERALD:  Good morning, Your Honor.  Tom Fitzgerald for United Health Group.  With me are Mike Prame and Mark Nielsen, who were here in the court with us last time, also Scott Neururer, who has come in from California.  He's a senior official with United.

THE COURT:  I know that the magistrate judge, he may be joining us momentarily, has tried mightily to resolve another bureaucratic basically bottleneck.  That's what we have here.  We have a problem, for which there has to be a solution, short of litigation.

Has anyone come up with any clever ideas?  Or has anyone had any conversation with CMS to get a better view of what's going on here?  I know that Magistrate Judge Facciola tried to have some rational conversations with them.

1    MR. FARBER:  Your Honor, on behalf of plaintiffs,

2  we've been trying to engage CMS in this continuously.

3  Unfortunately, there is no update on our end.  They keep on

4  saying, work it out among yourselves.

5    So we think if there is a way to order CMS to,

6  particularly administrator, acting administrator Leslie

7  Norwalk, to appear in court and help us resolve this.  There

8  are several steps that CMS could take.  I think we touched on

9  some of them in our discussions with Magistrate Judge

10  Facciola yesterday, but it's really going to need that.

11    THE COURT:  Has anyone talked to Leslie Norwalk?

12  The difficulty is they're threatening to send out these

13  checks by April 1.  I mean, let's be realistic here about

14  what you're talking about.

15    MR. FARBER:  Your Honor, several points relating to

16  that.  One, we have tried to call Ms. Norwalk.  We've called

17  everybody up and down the chain at CMS that we know of, from

18  the low level clerks all the way up to the administrator's

19  office.  And we're not getting anywhere with them.  It's

20  going to take something from the Court.

21    THE COURT:  I urge you, if you brought them in as a

22  party, it's easy to order them to do whatever.  But you

23  can't, it's not realistic to think that I can order them to

24  do something, to come here, what have you, by tomorrow.

25    MR. FARBER:  We're aware of that.  Your Honor,

1   obviously, the TRO and PI motions are pending before the

2   Court.  I think everybody would agree we'd rather not engage

3   in litigation here.

4          We've done some digging over the last two days to

5   look at some of the documentation that CMS itself has put out

6   to the plaintiffs, not to the pharmacies.  And candidly, we

7   do not believe that the timelines are quite as strict as

8   United has made them out to be.

9          Specifically, on March 6th, I believe it was, and I

10  have a copy of the CMS memo for the Court and for opposing

11  counsel, on March 6th, the CMS sent them a memo that

12  indicated that on March 15th, in other words about 10, 12

13  days ago, CMS was going to be giving every one of the

14  plaintiffs, United and everybody else, a whole new updated

15  enrollment file for all of claim year 2006.

16         And I presume, although I do not know, that that is

17  what motivated them to, you know, start processing and

18  figuring out who they wanted to send checks to because they

19  now have this whole new file from CMS related to --

20         THE COURT:  That tells you who really is dual

21  eligible?

22         MR. FARBER:  Both who is a dual eligible.  It tells

23  you who is in what plan.  It tells you who is

24  institutionalized.  There are specific codes for each one of

25  those things.

1          THE COURT:  We're only interested in the

2  institutionalized dual eligible?

3          MR. FARBER:  Correct, Your Honor.  But according to

4  the CMS document that we've reviewed, they should have gotten

5  the data dump 12 days ago on March 15th.

6          Now, CMS tells them in that memo, reaffirms what we

7  all know, submit your data, your claims, tells the plaintiffs

8  submit your claims to us by May 31.  But there is a whole

9  exceptions process within that memo that, when claims kick

10  out from CMS, they can be put into an exceptions file.  That

11  can be resolved over June and presumably on from there.

12          Now, I don't disagree with my co-counsel or

13  opposing counsel, excuse me, that it would be nice to have

14  CMS extend all these deadlines, particularly because

15  everybody is having these data problems.

16          THE COURT:  Well, but not everybody sued

17  apparently.

18          MR. FARBER:  Correct.

19          THE COURT:  I don't quite get what causes this case

20  to be unlike -- you're not the only pharmacies who have paid

21  institutionalized dual eligibles I assume.  And they're not

22  the only insurance company.

23          I have a very difficult time understanding what is

24  the nub of these parties' difficulties versus others.

25          MR. FARBER:  I can explain that, Your Honor.  These

1   pharmacies, the pharmacies who are members here, are roughly

2   65, 70 percent of all the long-term care pharmacies in the

3   country.  I believe only the long-term care pharmacies are

4   holding the debt at the pharmacy level for the unpaid

5   co-pays.

6          In the retail world, which is 90 percent of the

7   rest of this program, the beneficiary, someone from United

8   Plan, for example, would walk into the CVS, and CVS would say

9   either you make the co-pay now or you leave without your

10  drugs.  And that's how it works.

11         CVS is not holding debt.  The retail pharmacies are

12  not holding the debt.  The beneficiaries are.  So the

13  ambulatory beneficiaries should get the checks back because

14  they're the ones who either paid or, in a worse situation,

15  left the pharmacy without their drugs.

16         Why United?  Why is United the only defendant in

17  this case?  Because they're far and away the largest P.D.P,

18  the largest plan.  They're a third of the entire program

19  roughly.

20         THE COURT:  If your plaintiff had a contract or one

21  of the pharmacies had a contract with some other P.D.P., they

22  figured out some way to resolve this amicably?

23         MR. FARBER:  Some P.D.P.s have; some P.D.P.s

24  haven't.  Some P.D.P.s tell us it's going to be worked out in

25  the next few weeks.  It's frankly all over the lot.

7

1          THE COURT:  Okay.  You have, they did file an

2    affidavit after we were here.  The opposition, I think, came

3    in before we were here.  And you asked to have the right to

4    respond, which you're entitled to.

5          Do you have anything you want to add beyond just

6    what we've been talking about?

7          MR. FARBER:  Other than the standing arguments, the

8    TRO and the preliminary injunction --

9          THE COURT:  I don't know what you have to say on

10   standing.  I mean don't, at this stage, I don't want to try

11   to assess it, whether there is an argument that, in some

12   fashion, hurts your substantial likelihood of success on the

13   merits.  But you've responded in the motion to dismiss.

14         MR. FARBER:  Yes.  The one thing I would want to

15   add and emphasize, and it's really not made clear in our

16   papers, is if you look at the underlying statute and the

17   underlying regulation that's cited by all parties, it is

18   very, very clear, in both statute and the regulation, that

19   unless, that a full benefit dual was institutionalized is not

20   supposed to be assessed a co-pay.  And that there is no

21   requirement to pay back money to that individual unless they

22   actually made the payment.

23         The regulation is precise on this point.  It says,

24   if they actually made the payment, you have to pay back to

25   them.  Here, we all know that these beneficiaries have not

1    made the payment.  We know it and they know it.  And we have

2    attestations to that fact.

3            THE COURT:  But the biggest hurdle, if I may say,

4    for you, is that, one, if say a preliminary injunction were

5    issued, you then have to post a bond for all this money out

6    there in theory, because what happens if you win, I mean,

7    they win?

8            Alternatively, and Mr. Fitzgerald can correct me,

9    my understanding is, if you prevail, they have to step up no

10   matter who they paid, and give you money damages.  And I

11   assume it's a liquidated amount with prejudgment interest and

12   post judgment interest.  So that, I understand your argument

13   that it's confusing to the nursing home recipients, but as

14   you can well tell from last time, I am troubled by the

15   irreparable injury argument.

16           MR. FARBER:  I understand, Your Honor, and I think

17   we've made argument as clear as we can in our papers.

18   Mr. Baldwin, who's had extensive experience in this area, you

19   have his affidavits about the harm that will be caused to the

20   nursing home community, the elderly nature of these nursing

21   home residents.

22           THE COURT:  They're really, in a way, I mean,

23   confusion, they may land up getting a few dollars, and I mean

24   only a few dollars in their pocket.  That's not right.

25   You're not going to chase after them.  You're going to win

1    the lawsuit or you're not going to win the lawsuit.  You're

2    going to get the money from the defendants, assuming standing

3    and assuming that everybody, we have the right defendant and

4    right plaintiffs.

5          MR. FARBER:  And, Your Honor, I'm sorry to

6    interrupt.  Let me make clear --

7          THE COURT:  Sorry.  I just wanted to get with

8    Magistrate Judge Facciola.  We covered a moment ago, but I

9    didn't mean to cut you off mid-sentence.  Go ahead.

10         MR. FARBER:  No problem at all.  Let me make

11   explicitly clear what I think all parties agree with.  This

12   is not a contract claim for damages.  No one disagrees that

13   the associations do not have standing to bring damages

14   claims.  We are, have a far more limited scope of relief

15   here, which is the only claim that the associations could

16   make.

17         And that is, for the injunctive relief saying to

18   United, an injunction instructing United that they have to

19   figure out a way to pay the pharmacies, not the nursing

20   homes.  How much, who, which pharmacies, all the details of

21   that breach of contract claim cannot be brought in this case.

22         We've cited some of the cases to the Court where

23   similar actions have been brought by associations, The

24   American Medical Association case, I believe, in the Southern

25   District of New York.  And there's one or two other cases

10

1    that I believe also support the kind of injunctive relief

2    here that is above and beyond the contracts, because no one

3    disputes what the contracts say.  The contract terms really

4    aren't at issue here.

5          THE COURT:  Well, then, I could bring this whole

6    entire case to an end today by saying, defendants must pay

7    plaintiffs what plaintiffs are owed.  And that gets us no

8    where in a way.

9          Defendants don't disagree that they owe you

10   something.  And the only question up for grabs, and there, I

11   think -- Mr. Fitzgerald better correct me if I'm wrong when

12   he comes up here, he doesn't dispute.  There may be disputes

13   on individual claims about whether or not somebody is really

14   a dual eligible now, given all the data runs that CMS -- and

15   CMS has caused this problem.  I understand full well.

16         The fact that we haven't been able to get Leslie

17   Norwalk to participate reflects very poorly on the federal

18   government since they created the problem.  I think that you

19   could all agree that you are entitled, to the extent that all

20   you're looking for -- and I'd have to go back to the

21   complaint.  I don't read it quite as narrowly as you read it.

22         I think that you were looking for me to say, X

23   should be paid to plaintiffs, whoever they are, but declaring

24   that defendants owe plaintiff's members the co-payment

25   amounts, an amount to be determined, and that defendant is

1    improperly retaining these amounts.  If, to the extent

2    that -- and I don't know whether you're entitled to

3    attorney's fees or anything like that, but put that aside for

4    a moment.

5         To the extent that all anybody is looking for is,

6    defendant, you've got to pay what, under the law, you owe to

7    the plaintiffs, if that's what we're talking about, we're

8    wasting a lot of time, because it is how you figure it out

9    and how much it is that's really an issue.

10        The declaration that everybody agrees that

11   co-payments that were not paid by the beneficiaries, for or

12   on behalf of legitimately classified dual eligible

13   institutionalized recipients of the Medicare prescription

14   drug plan, don't have to pay co-pays.  So, it seems to me,

15   you know, whether or not there's standing for that, that

16   issue is not contested.  It is how you figure it out and how

17   much it is and whether or not plaintiffs are the ones to

18   recover it.

19        But I feel as though we're chasing our tails on a

20   lawsuit for which there is not a disagreement that monies are

21   owed to the pharmacies.  Put aside whether it's to the

22   plaintiff's associations or alliances.  But if this lawsuit

23   doesn't have anything to do with determining who are the

24   people that are, have been improperly charged and how much,

25   we have no lawsuit.

1     There's no case and controversy, so to speak,

2     because it's the who, how much and how you go about doing it.

3     And I don't blame CMS for telling you to work it out,

4     because, if all you want from me is a declaration that you're

5     entitled to get declaratory judgment that where you have paid

6     monies for a dual eligible institutionalized individual and

7     you shouldn't have paid that co-pay because they're, they

8     should be covered, defendant should be paying you, I'm almost

9     inclined to think that everybody agrees to that.

10          MR. FARBER:  I think everybody does agree to that,

11    Your Honor.  But that's not the purpose of the lawsuit or the

12    injunction that's before us today.  The purpose of the

13    lawsuit and the injunction is to prevent them from sending

14    the checks to the beneficiaries.  And that's a real case of

15    controversy, I believe, because they're threatening to do it

16    starting Sunday.

17          THE COURT:  Yeah, but, go back a minute.  This is

18    exactly the issue.  If they send the money to the

19    beneficiaries, the dual eligibles, and they shouldn't have,

20    and they should have paid you because now they're going to be

21    paying the dual eligibles basically -- and let's be

22    realistic, they're not going after these nursing home

23    residents for the $5 they may send them either, but that's

24    their business.

25          They're already standing up and saying we'll pay

1    twice.  How stupid can you be, but in a way, but they're

2    recognizing.  So, the lawsuit isn't about preventing them

3    from sending the checks.  I think we better hear from Mr.

4    Fitzgerald.  I'm working on a premise that we all agree.

5    It's the who, how and how do you get there that is in

6    dispute.  And you're not asking me to resolve that.

7            You're not asking for any individualized assessment

8    of what's owed.  Or if you're not asking for any kind of,

9    quote, damages but only don't send the checks and pay us, not

10   to be flip, but we could be doing other things.  You could be

11   off on your trip and I could do other things.

12           Okay.  Let's hear from Mr. Fitzgerald.  I'm sorry,

13   but I'd like to ask the magistrate judge to fill us in on

14   your efforts with the Federal Government.  They've created a

15   bureaucratic bottleneck that's causing us an enormous

16   migraine headache.

17           MAGISTRATE JUDGE FACCIOLA:  It was explained to me

18   that controversies, such as the one before the Court today,

19   are common in this industry.  And it is the preference of CMS

20   to have them, the parties, work them out.  And, to that end,

21   they've issued directives that I have seen, I'm sure they

22   have seen, indicating the same thing.

23           THE COURT:  So figure it out.

24           MAGISTRATE JUDGE FACCIOLA:  CMS says that they

25   would be glad to work with them as they see fit.  But they

1    don't see any reason why they should intervene in this matter

2    until these parties have reached agreement.

3            THE COURT:  Well, the problem, they're causing the

4    problem by producing lousy data.  Then they're causing a

5    problem because, and I'd have to say the affidavit in this

6    regard is not exactly overwhelming, Mr. Fitzgerald.  They

7    may, the defendant is operating under two premises that are

8    causing us the headache.  One is that they've got a deadline

9    that they have to submit their paperwork to show they've

10   paid.

11           They claim maybe that, if they don't get it all out

12   there, they're not going to get either the co-pay or the

13   original payments so that they stand to lose $100 instead of

14   $5.  And that has to all be done by the end of May.

15           The other thing that they, well, it's the timing

16   and the fact that they stand to lose more than just the

17   co-pay that motivates them.  But they say CMS may not credit

18   the P.D.P.s for any portion under the claim.  So those two

19   sort of horrors are motivating this TRO/PI.

20           MAGISTRATE JUDGE FACCIOLA:  One gentleman I spoke

21   to --

22           THE COURT:  Who was that?

23           MAGISTRATE JUDGE FACCIOLA:  Mr. Crist, Marcus

24   Crist, he said that, in a sense, it was a red herring because

25   he felt that the CMS would make payments and would not be as

1    intense in its review of the situation as others might think

2    they would be.

3         He didn't commit the agency to not paying, but he

4    used the word red herring to describe the potential horror of

5    Mr. Fitzgerald's clients making the payment but then not

6    being able to secure payment in turn from CMS, because there

7    is an inadequate audit trail for what they've paid.

8         I could not get a commitment from anyone that the

9    deadline would be extended.  Apparently, that deadline speaks

10   to a lot of different things that went wrong when the program

11   came in.  But I was led to believe there is pressure to

12   change, whether there will be Congressional intervention to

13   change it remains to be seen.

14        THE COURT:  Okay.  Well, Mr. Fitzgerald, let's

15   start with the relief requested.  They want an injunction

16   declaring that you owe their members and the pharmacists

17   co-payment amounts that were improperly withheld.  We all

18   agree that there are at least a fair amount of those.

19        MR. FITZGERALD:  Your Honor, my understanding, as

20   to the relief they're requesting in the preliminary

21   injunction is that it's far narrower than that.  They're only

22   asking you today to enjoin us from sending checks to

23   individuals.

24        THE COURT:  Right.  But I understand that, but I'm

25   looking at the complaint for a moment, which asks me -- and

16

1    by way, the complaint says improperly retaining those amounts

2    in violation of law and contract.  As soon as you say the

3    word contract, I suppose suggests in violation of some law,

4    you're immediately talking about a contract action.  It's

5    right here.  You can't have it both ways.

6            But, be that as it may, I mean, you wouldn't agree

7    necessarily you're withholding it in violation of contract.

8    But, if, in fact, you say that, let's just say they were to

9    win their injunction today, quickly, not for sending the

10   checks, the case, underlying case, says you all owe money

11   because they paid co-pays when they didn't have to and

12   shouldn't have.  And we all understand that the reason was

13   not for anybody's being malicious but rather the CMS provided

14   faulty data.

15           You agree, everybody agrees that you all owe them

16   something.  How you get there and how much is what's at

17   issue?  So, the underlying, bottom line relief here is not in

18   dispute if we're not talking about individual damages, how

19   much or anything else.

20           That's why this lawsuit, putting aside the sending

21   of the checks out, today, tomorrow, or whenever it is, are we

22   correct in understanding your position that, if you send out

23   a million dollars tomorrow, and they're owed a million

24   dollars because those co-pays were all for dual eligibles who

25   shouldn't pay a co-pay, you're going to owe them and will pay

17

1    them a million dollars?

2        MR. FITZGERALD:  Your Honor, correct.  But if I

3    could restate that to be very precise.

4        THE COURT:  Yes.

5        MR. FITZGERALD:  We recognize and understand that

6    we have contractual obligations to them.  If we did not

7    fulfill those contractual obligations to them, then we will

8    have financial exposure for the amount of those co-pays.  We

9    think that, whether we owe them that money or not, it's

10   completely unaffected by our sending these checks out to

11   these individuals.  I think that's the point that Your Honor

12   has been making here.

13       THE COURT:  But I don't want to lose the first

14   point, because I don't know whether I'm getting lost in

15   words.

16       You say, you have more than a contractual

17   obligation.  No one has ever given me the contract.  Put

18   aside the contract, because then you're going to come back

19   later on and say, well, it's not contract.  It's something.

20   The contract doesn't say this.

21       I want to focus on the law for a minute, because

22   that's really their basis.  Now they're claiming it's not a

23   contract action.  If it's a contract action, they're in

24   trouble, and they don't want to talk about contracts.

25       I understand the law to say that certain people,

1    dual eligible institutionalized people in a nursing home, do

2    not pay co-pay.  And therefore, you have collected a co-pay

3    improperly, not maliciously, but improperly from the

4    pharmacists.  You have to pay back the co-pay to them, as

5    long as the people are really qualified under Plan D.

6              MR. FITZGERALD:  That is correct to a point, Your

7    Honor, and that point is this.  The dispute, if we move

8    forward with litigation under the contracts of them, will be

9    whether or not they adequately or properly or appropriately

10   resubmitted those claims to us within the timelines provided

11   by the contracts and by the extensions, the multiple

12   extensions we've given to those contracts.

13             They have not resubmitted them as we have been

14   requesting all these months.  They have their reasons for not

15   doing that.  I don't disparage them.  We have our reasons for

16   insisting that it be done the way that we've requested that

17   it be done.  That will be the nature of the contractual

18   dispute as to whether we owe them money or not, assuming --

19             THE COURT:  You see, you are now trying to, you

20   invited this, the plaintiffs invited it.  He's now making

21   this big contract action.  If it's a contract action, the

22   government has nothing to do with it frankly, absolutely

23   nothing.  The point is that the relief they're seeking, if I

24   take Mr. Farber at his word, has nothing to do with the

25   contract, has nothing to do with this, you know, submission

19

1    problem.  They're going to have a host of contract defenses

2    here, Mr. Farber.  They aren't going to be in front of me.

3    And that's the point.

4            The law says you can't have co-pays paid by the

5    pharmacy where there are dual eligibles.  You agree, the

6    problem comes from all this other stuff.  And I don't see

7    that this complaint raises all the other stuff because you

8    get into the individual pharmacies where you're going to lose

9    standing potentially.

10           They're going to be the individual pharmacy, and

11   they're going to raise, for lack of a better word, every

12   insurance company does.  They're going to try to make sure

13   they pay as little as they possibly can.  That's not going to

14   be before me based on the way you're framing this complaint.

15   So, the complaint doesn't serve anybody's purposes.  If I

16   say, you can go send out your checks whenever you want to

17   send out your checks, and you pay --

18           MR. FITZGERALD:  Then we're at risk.

19           THE COURT:  You're at risk.

20           MR. FITZGERALD:  Yes.

21           THE COURT:  You acknowledge, let us take the

22   following assumption.  There is a person for whom a co-pay

23   should not have been covered by the pharmacy.  There is

24   adequate documentation.  And you have no conceivable defense

25   to it.  You pay, right?

20

1        MR. FITZGERALD:  Correct.

2        THE COURT:  And you pay a plaintiff pharmacy.

3        I'm very troubled by what's going on in this

4    lawsuit.  Because if you lose, Mr. Farber, the preliminary

5    injunction on the grounds that there is no irreparable

6    injury, there is no lawsuit here, I don't see.

7        I mean, the parties agree on the basic principle.

8    Where the fight is going to be is exactly where the fight has

9    been all along, over which apparently I'm going to have

10   arguably no jurisdiction.  That is, does pharmacy A, is it

11   really entitled to X?  And they are going to, you know, fight

12   tooth and nail.  It's going to be very unpleasant.  I would

13   not be pleased.

14       You know, the government caused the problem.  But

15   that's I guess the reason why they were looking for

16   resubmittals is they're desperately trying to stiff you.  But

17   that's a contract matter between the individual pharmacy

18   unfortunately and them.  It's not for me, the federal court,

19   to figure that one out in the context of this lawsuit.

20       So I'm really, I'm absolutely lost at what we're

21   doing here.  If I may say, Mr. Fitzgerald, what am I doing?

22       MR. FITZGERALD:  Your Honor, could I speak to one

23   more point that Mr. Farber raised, and that is, the

24   legitimacy of the deadline that we've talked about.  Your

25   Honor, United has absolutely no incentive to cry wolf here,

1    none whatsoever.

2            By paying individuals rather than the pharmacies,

3    we're putting ourselves at legal and financial risk to these

4    pharmacies.  So, we've worked with them for nine months.  We

5    would work with them for another nine months if we had the

6    time.

7            The problem is this, Your Honor.  It's not just the

8    individuals who are dual eligible that are going to be

9    affected by an order that the Court might enter.  There are

10   approximately a million and a half claims that have been

11   pended as a result of our not sending checks out to

12   individuals where there was a LIC status change by CMS.

13           THE COURT:  A what?

14           MR. FITZGERALD:  CMS --

15           THE COURT:  I didn't hear the word.

16           MR. FITZGERALD:  LIC, L-I-C, low income status,

17   that's what CMS puts out that says this person doesn't owe

18   the full co-pay.  They may owe zero or they may owe something

19   else.  Where there is a LIC status change, United is

20   obligated to pay the participant unless it has received a

21   resubmittal of the claim from the pharmacy.

22           Now, we can't distinguish that United, between

23   those LIC status changes that involve dual eligibles as

24   opposed to other LIC status changes.  So I'm going to give

25   you some rough numbers here, Your Honor.  But the concept is

1    what I'm trying to get at.

2           There's a million and a half claims out there that

3    United is waiting to send checks to people that we can't

4    because of our voluntary agreement to hold back.  Only a

5    small percentage of those are the dual eligibles that we're

6    talking about here that they're contesting.  So --

7           THE COURT:  What are we talking about?  How much in

8    dollars, the percentage that are dual eligibles?

9           MR. FITZGERALD:  Your Honor, I've been told that

10   it's probably no more than ten percent.  Mr. Farber thinks

11   it's only five percent perhaps of this population.

12          THE COURT:  Well, who are the other 90 percent?

13          MR. FITZGERALD:  Your Honor, there are multiple

14   categories of low income people, who are not required to pay

15   full co-pay.  Persons confined in a nursing home are among

16   those people.  They happen to have no co-pay.  But there are

17   other low income people who have a $2 co-pay instead of a $5

18   co-pay.  So, it's a big world out there.  It's not just in

19   this program, dual eligible, confined individuals.

20          When CMS sends out a LIC status change, we've got

21   to either pay the pharmacy or pay the participant, because

22   somebody, either there's a co-pay issue out there when that

23   happens because we owe somebody some money back.

24          If the pharmacies have resubmitted the claims, then

25   we pay them.  But if not, we're required to pay the

23

1    participants.

2         THE COURT:  What's going to happen to these

3    90 percent?  You may or may not recover for them because

4    that's not a pharmacy problem, or is it?

5         MR. FITZGERALD:  Your Honor, it's not their fault.

6    It's our systems.  But if you enjoin us, as they're

7    requesting today, not only will we not be able to send out

8    checks to the ten percent who are dual eligibles here, we

9    can't send out checks to any of these people.  And the reason

10   is, is that we're not able to distinguish at this time, until

11   a claim comes through, whether somebody is a dual eligible or

12   not.

13        Now, Mr. Farber is ready to jump out of his seat

14   and say that's not his problem.  It's not.  It's our

15   system's, but it's a fact.  That's the way the systems work.

16   These are enormous programs.

17        THE COURT:  Right.  Any injunction would apply only

18   to the people who are dual eligibles institutionalized who

19   shouldn't be paying a co-payment.

20        MR. FITZGERALD:  But the impact of the injunction,

21   Your Honor.

22        THE COURT:  You can't figure it out.

23        MR. FITZGERALD:  It's not possible to do.

24   Mr. Farber is a brilliant lawyer, but his pronouncements

25   about what United Systems can and cannot do, we've brought

24

1    Mr. Neururer in from California to speak to any of those

2    issues that Your Honor would like to hear from directly.

3            THE COURT:  Okay.

4            MR. FITZGERALD:  Your Honor, one other -- no, I was

5    going to speak to another issue, but I'll rest.

6            MR. FARBER:  A moment, Your Honor?

7            THE COURT:  Yes, sure.

8            MR. FARBER:  I think Mr. Fitzgerald said it best on

9    this last point about I think he has tried to up the stakes,

10   saying, hey, it's not just the nursing home residents that

11   are here, but if you issue the injunction, you're going to

12   affect all these other people.  I cannot believe that United

13   is representing to the Court today that they can't figure out

14   the difference between a nursing home resident and an

15   ambulatory beneficiary.

16           THE COURT:  Well, you know, the problem,

17   Mr. Farber, with your argument is that the defendant is

18   proceeding at their own risk.  It seems very fool-hardy.  It

19   seems like, if I were they, I'd be working very hard with CMS

20   or whomever to make sure that I don't have to pay twice.  And

21   Mr. Farber did not contradict me, and I'm going to say it

22   once more, Mr. Farber.

23           MR. FARBER:  Mr. Fitzgerald.

24           THE COURT:  I'm sorry.  Mr. Fitzgerald.

25           My understanding is, if money is legitimately owed

1    to plaintiff -- and that's a big how you define that.  I

2    understand that.  There is definitional problems about who

3    really qualifies, but that's a contract matter.  That is not,

4    Mr. Farber can disagree, it's not covered by this lawsuit.

5    Right?

6              MR. FARBER:  Right.

7              THE COURT:  Whether or not defendant owes $20 to

8    the pharmacy in Ohio, that's not what we're all about here.

9    They have acknowledged that, if they do owe the $20 to the

10   pharmacy in Ohio, they're liable.  And if they pay a nursing

11   home dual eligible person $20 to cover the co-pay, they're

12   going to be paying 40.

13             Is that correct, Mr. Fitzgerald?

14             MR. FITZGERALD:  Absolutely correct, Your Honor.

15             MR. FARBER:  Okay.  Then I'm halfway there.  Then

16   I've won half my lawsuit right here.  Now I need the other

17   half, which is don't -- and that's the purpose of the

18   injunction today.  It's part of our requested relief.  Based

19   upon the statute, they should not send checks to nursing

20   homes.  As fool-hardy as it is, and I totally agree with the

21   Court, it's fool-hardy.  But the statute and the regulations

22   say, they only send checks to beneficiaries.  I'll read out

23   of the regulations --

24             THE COURT:  No, no.  I don't need you to read any

25   longer.

1        But, Mr. Farber, I have to say, you know and I know

2   that a critical factor -- and it's not just substantial

3   likelihood of success on the merits.  The critical factor is

4   irreparable injury, whether or not damages will cover your

5   losses.  Now, I have no idea what your losses might be here

6   because that's contractual.  That depends on your

7   individuals.

8        The notion, your lawsuit raises substantial case in

9   controversy issues.  And I don't have a case on point, but

10  the defendants will provide it at some point.

11       The Court's injunctive powers are not say, and you

12  can't say do what you're supposed to do under the law, and

13  that's your injunction.  They're supposed to do what they're

14  supposed to do under the law.  Under the law here, the whole

15  lawsuit is exactly what does that mean in terms of paying,

16  who, when, what, and how much, and how do you get there?

17  You're not asking for that.  So I have a substantial concern

18  regarding the merits of the lawsuit.

19       But without irreparable injury and with the

20  concession that money damages here will satisfy the

21  individual pharmacies if, in fact, they have violated the

22  law, I won't be able to tell whether they've violated the law

23  insofar as there's a claim process required.  How you define

24  that is beyond me.

25       But without irreparable injuries, sir, I cannot

1   enjoin them sending the checks.  That's the difficulty that

2   you face.  I can't say that there is no evidence to me that

3   it will cause bankruptcy.  There is no evidence before me

4   that you will never get the money.

5          United is obviously not a flimsy operation.  The

6   problem is how much is owed.  And if you're not asking me to

7   adjudicate that, to say, I want injunctive relief, I want

8   them to do what they're supposed to do, they agree that

9   they're supposed to pay you, they, for their own purposes to

10  satisfy CMS, are willing to take the risk.  And they'll fight

11  you tooth and nail on the individual contract claims.

12         But if I don't have a contract claim in front of

13  me, I don't know where we are in the case.  But I have to

14  deny the preliminary injunction.  Without any kind of

15  irreparable injury, I don't believe -- the law is quite

16  clear, I can't exercise my equitable powers.  I think the

17  parties are all anxious to figure out a way to resolve this

18  that doesn't expose them to twice liability, plus interest,

19  et cetera, et cetera, however the contract is.

20         Your folks want to obviously get the money.  This

21  vehicle, if really what this vehicle is all about is

22  enjoining the mailing of checks, I have to deny the

23  preliminary injunction.

24         Also the complaint doesn't ask for damages insofar

25  as it asks for contract relief.  Or it certainly references

1    it.   Maybe you're trying to make sure I don't focus on that.

2    But to the extent that there is any kind of contract action

3    here, there is terrible problems with standing and terrible

4    problems regarding whether or not we've got the right

5    parties, both plaintiff and the defendant.

6          So, I've now considered this long and hard, and I

7    wanted it to be resolved and I wanted the federal government

8    to help out.   But frankly, the people that are proceeding at

9    the most risk are the defendants.   You're getting, obviously

10   you're not getting your money.   But you're not asking me for

11   money.   You're just asking me to tell them to do what they're

12   supposed to do under the law.   I wouldn't be telling them

13   anything new under that.

14         So, to the extent that I have no choice, I'm afraid

15   that the plaintiff's motion for temporary restraining order

16   and preliminary injunction are denied on the grounds that

17   there is no showing of irreparable injury.   I don't find that

18   the argument of the people in the nursing home will be

19   confused by the receipt of money.   I think I could be more

20   sympathetic to that argument if somebody was taking money

21   away from them.   But United, Mr. Fitzgerald is not going

22   after these people to fork back up the money, right?

23         MR. FITZGERALD:   Correct, Your Honor.

24         THE COURT:   All right.

25         I would ask the magistrate judge to continue to

1   work with you.  I think this suit needs resolution.  It needs

2   the Federal Government to help out.

3        I don't think, when push comes to shove, and I'd

4   like the parties to think about the motion to dismiss

5   because, in the context that I now understand what you're

6   telling me, Mr. Farber, the motion to dismiss maybe needs to

7   be expanded, because I think that the case is taking on a

8   construct that really, I'm not sure whether you call it moot

9   or it's not a case of controversy.  But I'm concerned my

10  jurisdiction is not properly being invoked here at this

11  point.  So I'd like the parties to consult and give chambers

12  a call in one week.

13        Well, you're going away first of the month?

14        MR. FARBER:  I'm reachable.

15        THE COURT:  Let's see where we stand.  Maybe they

16  won't send out the checks because it seems kind of stupid and

17  fool-hardy.

18        Could you call chambers on the 10th some time

19  towards the end of the morning and let us know where we stand

20  on April 10th?  Tuesday, is that okay?

21        MR. FARBER:  Should be, Your Honor.  We'll work it

22  out.

23        THE COURT:  Call us about noon to find out where we

24  are.  If you need the assistance of our magistrate judge,

25  he's as good as anybody with dealing with the Federal

30

1  Government.  But, to me, they're not a party.  I don't have

2  jurisdiction to be ordering them to do X or Y precisely.

3       And defendant here is sort of proceeding at their

4  own risk.  So if they improperly pay a million dollars,

5  they're going to pay you plus interest and all the rest.

6  Okay.  The Court will enter a minute order.  For the reasons

7  stated in open court, I deny the motion for TRO and

8  preliminary injunction on the grounds there's no irreparable

9  injury.

10       MR. FARBER:  Thank you, Your Honor.

11       THE COURT:  Thank you.  Anything we can do, if you

12  need to chat with the magistrate judge, he is available.  He

13  might be able to help.  Maybe this will move things along and

14  tell the Federal Government you haven't worked it out yet.

15  Thank you.

16       MR. FARBER:  Thank you.

17       (Whereupon, at 10:15 A.M. the judge adjourned.)

18

19

20

21

22

23

24

25

31

1

2

3

4                    **CERTIFICATE OF REPORTER**

5          I, Lisa Walker Griffith, certify that the

6    foregoing is a correct transcript from the record of

7    proceedings in the above-entitled matter.

8

9

10

11    _____          4-5-07

12    Lisa Walker Griffith, RPR

13

14

15

16

17

18

19

20

21

22

23

24

25