IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Long Term Care Pharmacy Alliance and American Society of Consultant Pharmacists,<br><br>Plaintiffs,<br><br>v.<br><br>UnitedHealth Group Incorporated,<br><br>Defendant. | Case No.: 1:06-CV-01221 (ESH) |

## SECOND DECLARATION OF PAUL BALDWIN

I, Paul Baldwin, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am over 21 years of age, and I am competent to make this Declaration.

2. I make this Declaration based on personal knowledge, except as to matters stated to be on information and belief.

3. I am the Executive Director of the Long Term Care Pharmacy Alliance ("LTCPA"), one of the Plaintiffs in this action. I am submitting this Declaration in support of Plaintiffs' Opposition to the Motion to Dismiss this action, and to supplement my earlier Declaration, dated July 6, 2006, to bring to this Court's attention additional facts about LTCPA's dispute with Defendant UnitedHealth Group Incorporated ("UHG"). As I stated in my earlier Declaration, I was directly and personally involved on behalf of LTCPA and its members in attempting to resolve the co-payment dispute with UHG throughout 2006, and remain actively engaged in working on that issue today. My earlier Declaration is attached hereto as Exhibit 1.

4868703

4. LTCPA's headquarters are located at 1776 Massachusetts Avenue, N.W. in Washington, D.C. LTCPA's core mission is, in essence, to protect and promote the profession and practice of long term care pharmacy by advocating on issues that are critical to the pharmacy needs of more than 60 percent of the nation's long term care residents. *See* Exhibit 2 hereto (web site statement of mission).

5. One of these critical issues is ensuring that pharmacy benefits claims are processed and submitted for reimbursement on behalf of frail and elderly "dual eligible" beneficiaries who receive prescription drug coverage from federal health care programs, including the Medicare "Part D" Prescription Drug Program. Because pharmacies owned by LTCPA members depend upon reimbursements from companies like UHG to cover the cost of medications they have already dispensed to patients, LTCPA regularly advocates to improve program administration and compliance with federal statutes and regulations, as well as to provide an efficient flow of information about federal health care programs affecting its members and that affect the day-to-day provision of pharmacy services.

6. Each of the three principal LTCPA member companies, Omnicare, Inc., Kindred Pharmacy Services, and Pharmerica, is owed millions of dollars by Defendant UHG and its subsidiaries for unreimbursed co-payments under the Medicare Part D program. While LTCPA is not, in this action, seeking damages for breach of contract, it is seeking injunctive relief barring UHG and its subsidiaries from sending those co-payment amounts to beneficiaries directly, and a declaration that the amounts in question are to be paid to the pharmacies to which they are owed.

7. In my attempt to resolve LTCPA members' payment difficulties arising from those improperly withheld co-payment amounts for institutionalized dual-eligible patients, I have contacted multiple officials at the Centers for Medicare and Medicaid Services (CMS) in

Washington, D.C. and Baltimore, Maryland. I have also had virtually weekly, and sometimes daily, contact with various PDP sponsor organizations, including UHG. *See* Exhibit 1.

8. I was assisted in the discussion of these PDP contract payment issues by Darrell McKigney, LTCPA's Director of Legislative Affairs. Mr. McKigney was present during most of the telephone discussions and meetings I had with representatives of UHG and officials at CMS on this issue.

9. It is my understanding that UHG has had numerous conversations with CMS in Washington and Baltimore concerning the co-payment issue. On several occasions, officials at CMS instructed me to contact UHG's Washington, DC office to discuss the co-payment issue and any concerns that LTCPA, on behalf of its members, had with UHG and its affiliated PDPs. I spoke by telephone with one representative, whose name I can no longer recall, from UHG's Washington, DC office in or about June 2006 regarding the payment problems under members' network pharmacy contracts. During this conversation, we discussed the co-payment issues that are the subject of this lawsuit. We also discussed a possible meeting at UHG's offices in Washington, DC to further address a possible resolution to the payment deficiencies resulting from the improperly withheld co-payment amounts.

10. In addition to my contacts with UHG's Washington office, I also had discussions with a number of other UHG representatives, based in Minnesota and California, among other places. These individuals were employed in various capacities by UHG and/or its subsidiaries, including Ovations, RxSolutions (sometimes called Prescription Solutions), and others. At all times, these individuals were speaking on behalf of UHG in the aggregate, meaning UHG, its subsidiaries, affiliates, and all its PDPs. Further, these individuals' decisions were implemented as to, or were to be applied to, all PDP contracts to which UHG and its subsidiaries and affiliates were parties. In other words, UHG and its subsidiaries and affiliates were dealing with this matter as one entity –

3

sometimes through the person in Minneapolis, and at other times (on other aspects) the person in California. It was clear to me that whatever decision UHG made would be binding on, and implemented by, its subsidiaries and affiliates.

11. I understand that UHG's lawyers have represented to this Court that UHG's Washington office does nothing other than monitor legislative and regulatory matters and maintain contacts with the government. I seriously doubt that to be true. My experience as a trade association executive, my involvement with UHG and the trade associations to which it belongs and my general knowledge lead me to the opposite conclusion. For example, I believe, although I have no direct knowledge, that UHG representatives from their Washington office participate in meetings with other trade associations, including the association known as Americas Health Insurance Plans ("AHIP"). I also believe, given my knowledge of the industry and how it works, that UHG representatives from its Washington office participate with others, through industry associations, in a wide range of activities, including public relations, that are not direct lobbying activities.

12. I also believe that UHG, through its Washington office, is involved in negotiating contractual arrangements (including the non-government CMS contracts related to the Part D program), engages in industry public relations campaigns, and works with AARP, with whom UHG co-brands its Part D offerings and other health insurance programs.

13. LTCPA has been forced to devote significant organizational resources to dealing with the issues arising from UHG's improper withholding of pharmacy benefit co-payments. Indeed, the day-to-day strain of tracking developments on these issues, negotiating with CMS and UHG, and otherwise seeking solutions to this dispute have taken up as much as 50 percent of my time as LTCPA's Executive Director.

14. UHG's unwillingness to cease its practice of improperly withholding co-payments from dual eligible patient reimbursements has also directly impeded the day-to-day operations of

LTCPA. Because of the time and resources spent dealing with UHG's actions, LTCPA is significantly behind in the completion and implementation of its 2007 legislative agenda, and has not been able to pursue organizational goals for membership development.

15. Specific LTCPA public policy interests have suffered because of UHG's actions as well. For example, as a result of the time and organizational resources committed to dealing with UHG's actions on the co-payment issue, LTCPA has been unable to actively pursue improved marketing guidelines governing when and how long term care pharmacies can communicate with patients about Part D program issues and their pharmacy benefit choices.

I hereby declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on February 21, 2007

_____
Paul Baldwin