IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Long Term Care Pharmacy Alliance and )
American Society of Consultant Pharmacists, )
)
    Plaintiffs, )
)
v. )    Case No.: 1:06-CV-01221 (ESH)
)
UnitedHealth Group Incorporated, )
)
    Defendant. )
)
_____)

## DECLARATION OF DARRELL MCKIGNEY

I, Darrell McKigney, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am over 21 years of age, and I am competent to make this Declaration.

2. I make this Declaration based on personal knowledge, except as to matters stated to be on information and belief.

3. I am currently the Executive Director of the Long Term Care Pharmacy Alliance ("LTCPA"), one of the Plaintiffs in this action. Prior to becoming Executive Director, I served as LTCPA's Director of Government Affairs. I am submitting this Declaration in support of Plaintiffs' Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint in this action in order to supplement the previous Declarations of my predecessor, Paul Baldwin, and to bring to this Court's attention additional facts about LTCPA's dispute with Defendant UnitedHealth Group Incorporated ("UHG"). Throughout the course of this litigation, I have been aware of, and most often participated in, discussions with both CMS and Defendant UHG regarding the dispute over Part D co-payments.

4891399

4. UHG and its subsidiaries continue to owe millions of dollars to long term care pharmacies across the country, including the three principal LTCPA member companies, for unreimbursed co-payments under the Medicare Part D program.

5. After more than six months of working to accomplish a settlement of this dispute, discussions with UHG broke down in late January 2007. Even after this breakdown, however, LTCPA continued to try engage CMS and UHG in achieving a resolution to this ongoing co-payment issue.

6. In mid-March 2007, UHG informed Plaintiffs in this case that it was withdrawing its agreement not to send co-payment reimbursement checks to Part D beneficiaries residing in long term care facilities. UHG's withdrawal of this agreement made very real the possibility that scores of poor and often cognitively impaired nursing home residents would receive multiple checks for co-payments that they had never paid in the first place, and that the long term care pharmacies would remain unreimbursed.

7. Throughout the latter part of March and all of April 2007, LTCPA attempted to work with UHG to further resolve co-payment issues. However, UHG, through both its employees and its outside counsel, gave contradictory messages about whom UHG would be willing to speak to regarding co-payment issues, if at all. For example, early in the week of April 16, 2007, Scott Neurerer, an employee of a UHG entity, directed LTCPA to coordinate the efforts of individual pharmacies in discussing 2006 claims with UHG. However, just two days later, UHG's counsel indicated that it would talk only with individual pharmacy units, and not LTCPA.

8. On April 20, 2007, UHG released a global notice to all network pharmacy participants informing them that UHG had ceased to process 2006 claims, thus eliminating the possibility of any reimbursement compromise being achieved. This global notice is attached as Exhibit 6 to the Amended Verified Complaint that I signed on LTCPA's behalf.

4. UHG and its subsidiaries continue to owe millions of dollars to long term care pharmacies across the country, including the three principal LTCPA member companies, for unreimbursed co-payments under the Medicare Part D program.

5. After more than six months of working to accomplish a settlement of this dispute, discussions with UHG broke down in late January 2007. Even after this breakdown, however, LTCPA continued to try engage CMS and UHG in achieving a resolution to this ongoing co-payment issue.

6. In mid-March 2007, UHG informed Plaintiffs in this case that it was withdrawing its agreement not to send co-payment reimbursement checks to Part D beneficiaries residing in long term care facilities. UHG's withdrawal of this agreement made very real the possibility that scores of poor and often cognitively impaired nursing home residents would receive multiple checks for co-payments that they had never paid in the first place, and that the long term care pharmacies would remain unreimbursed.

7. Throughout the latter part of March and all of April 2007, LTCPA attempted to work with UHG to further resolve co-payment issues. However, UHG, through both its employees and its outside counsel, gave contradictory messages about whom UHG would be willing to speak to regarding co-payment issues, if at all. For example, early in the week of April 16, 2007, Scott Neurerer, an employee of a UHG entity, directed LTCPA to coordinate the efforts of individual pharmacies in discussing 2006 claims with UHG. However, just two days later, UHG's counsel indicated that it would talk only with individual pharmacy units, and not LTCPA.

8. On April 20, 2007, UHG released a global notice to all network pharmacy participants informing them that UHG had ceased to process 2006 claims, thus eliminating the possibility of any reimbursement compromise being achieved. This global notice is attached as Exhibit 6 to the Amended Verified Complaint that I signed on LTCPA's behalf.

9. Throughout this entire period, LTCPA has continued to have discussions with CMS officials to try and engage the agency in crafting a compromise to the central disputes in this litigation. CMS has not provided any remedy.

10. The LTCPA continues to be forced to expend significant organizational resources to dealing with issues arising from UHG's improper conduct regarding pharmacy benefit co-payments. Further, the day-to-day strain of these issues takes up a significant percent of my time as Executive Director of LTCPA.

11. UHG's continued unwillingness to cease its practices, combined with its cessation of any processing activity for claims affected by its treatment of dual eligible beneficiary co-payments continues to interfere with the day-to-day operations of the LTCPA. Organizational functions such as the implementation of a 2007 legislative agenda and membership development continue to be significantly impacted due to the time required to deal with UHG's conduct.

12. Specific LTCPA public policy interests continue to suffer because of UHG's actions as well.

I hereby declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on June 7, 2007

_____
Darrell McKigney