**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Long Term Care Pharmacy Alliance and American Society of Consultant Pharmacists,** ) | |
| ) | |
| **Plaintiffs** ) | |
| ) | |
| **v.** ) | **Case No.: 1:06-CV-01221 (ESH)** |
| ) | |
| **UnitedHealth Group Inc.,** ) | |
| ) | |
| **Defendant.** ) | |

**Reply Memorandum in Support of
<u>Defendant's Motion to Dismiss Plaintiffs' Amended Complaint</u>**

Defendant, UnitedHealth Group, Incorporated ("UHG"), respectfully submits this reply memorandum in further support of its Motion to Dismiss Plaintiffs' Amended Complaint.

**I.    <u>Introduction</u>**

Despite Plaintiffs' protests to the contrary, this lawsuit is not about compliance with Medicare Part D.  UHG recognizes and agrees that Institutionalized Dual Eligibles are not liable for co-payments for prescription drugs that are covered under the Medicare Part D program.  UHG also recognizes and agrees that, *subject to and dependent upon the terms of their contracts* with long term care ("LTC") pharmacies, UHG-affiliated prescription drug plans ("PDPs") are responsible for reimbursing LTC pharmacies for these co-payments.  The only dispute here is whether UHG-affiliated PDPs have, in fact, properly reimbursed LTC pharmacies for these co-payments under the respective contracts.  The resolution of this dispute turns on three points:  (1) The terms of the parties' respective contracts, which Plaintiffs have belatedly acknowledged differ in

relevant part;[1] (2) The parties' actual performance under those contracts; specifically, for example, whether the pharmacies timely submitted and/or re-submitted claims, in the format, and with the content, required under the applicable contract; and (3) The facts relating to the specific claims at issue, including: (a) whether the resident of the LTC facility on whose behalf the claim was submitted satisfied the statutory criteria of an Institutionalized Dual Eligible; (b) whether the individual was covered under a UHG-affiliated PDP, as opposed to some other PDP; (c) whether the pharmacy collected or waived a co-payment from such individual and carried a corresponding debt on its books; (d) whether data from the Centers for Medicare and Medicaid Services ("CMS") had been updated to reflect such individual's status as an Institutionalized Dual Eligible; and (e) whether the prescription drug was covered by the PDP.[2]

The Court previously expressed its concern that "to the extent there is any kind of a contract action [in Plaintiffs' complaint], there [are] terrible problems with [Plaintiffs'] standing and terrible problems regarding whether or not we've got the right parties, both plaintiff and the defendant." (Transcript of Preliminary Injunction Hearing, March 29, 2007, at 28:2-5, attached as Exhibit 1 to UHG's Motion to Dismiss Plaintiffs' Amended Complaint). Notwithstanding the Court's concern, Plaintiffs' Amended Complaint retains the same parties, and continues to assert, as its centerpiece, a breach of contract claim. This contract claim cannot be resolved by the Court, given that Plaintiffs are trade

---

[1] Compare Compl. ¶ 34 ("Upon information and belief, Defendant's network contract is virtually uniform in all relevant parts") (emphasis added), *with* Am. Compl. ¶ 38 ("Defendant, directly or through its affiliates, has one or more 'network pharmacy contracts' with each of Plaintiffs' member LTC Pharmacies.").

[2] This list is not intended to be exhaustive, but merely is illustrative of the issues that must be considered by a PDP when adjudicating an LTC pharmacy claim.

associations that lack standing to bring this action, and that UHG—which is not a party to any of the contracts at issue—is not a proper defendant.[3]

## II.    <u>Summary of Argument</u>

Plaintiffs, the Long Term Care Pharmacy Association ("LTCPA") and the American Society of Consultant Pharmacists ("ASCP"), have sued UHG alleging that it breached network pharmacy contracts with Plaintiffs' members by not remitting full reimbursement for claims incurred by Institutionalized Dual Eligibles, as required by the terms of such contracts.[4] During an earlier argument in this case, Plaintiffs' counsel conceded that "associations do not have standing to bring damages claims. . . . How much, who, which pharmacies, all the details of a breach of contract case cannot be brought in this case." Transcript of Hearing, March 29, 2007, at 9:11-14, and 20-21. Notwithstanding this concession, LTCPA and ASCP have sued UHG for breach of

---

[3]  In their Opposition (at 2), Plaintiffs gloss over the Court's expressed concern that their Complaint raised no "case or controversy" by asserting that UHG has "abandoned" this argument. Plaintiffs ignore the fact that the Court itself raised the issue, and that the same problems the Court recognized are still present: this is a breach of contract action that requires the participation of Plaintiffs' members, and Plaintiffs lack standing to seek damages on behalf of their members. Plaintiffs' counsel previously conceded that "[h]ow much, who, which pharmacies, all the details of a breach of contract case cannot be brought in this case." Transcript of Hearing, March 29, 2007, at 9:20-21. As the Court observed, "if this lawsuit doesn't have anything to do with determining who are the people that are, have been improperly charged [co-payments] and how much, we have no lawsuit. There's no case and controversy, so to speak." (<u>Id.</u>, at 11:19-12:2. <u>See also</u>, <u>id.</u>, at 12:3-13:11, and 26:11-18).

[4]  Through their Opposition brief, Plaintiffs have disclaimed the Amended Complaint's request for a declaratory judgment that UHG violated its alleged contract with CMS. <u>Compare</u> Plfs' Opp., at 18 n. 10 (Plaintiffs "have not asserted a [third party beneficiary] claim" under the purported UHG-CMS contract), *with* Am. Compl. ¶ 1 ("Plaintiffs bring this action to obtain a declaratory judgment that [UHG] is violating Federal law, its contract with the Federal Government, and its contracts with Plaintiffs' members LTC pharmacies"); and Prayer for Relief (a)(i) (seeking declaration that UHG is not entitled "by law or contract" to withhold co-payments from Plaintiffs' members).

3

contract, and they seek money damages on behalf of their members as a remedy for the alleged breach. To disguise their damages claim, Plaintiffs argue that they are seeking "only" a "declaratory judgment" that money is owed to their members. *See* Plfs' Opposition at 3, 11, 13, 14; Am. Compl. Prayer for Relief (a)(ii). This is form over substance, and a distinction without a difference. Plaintiffs "may <u>not</u> circumvent [associational] standing requirements by seeking a declaration of entitlement to money damages." <u>Pesticide Public Policy Foundation v. Village of Wauconda, Ill.</u>, 622 F. Supp. 423, 435 (N.D. Ill. 1985) (emphasis added), <u>aff'd</u> 826 F.2d 1068 (7th Cir. 1987).

Plaintiffs also lack standing to sue on their own behalf because the Amended Complaint fails to allege any injury that they sustained as organizations. Although Plaintiffs attempt to cure this critical pleading deficiency through their Opposition brief, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." <u>Morgan Distrib. Co. v. Unidynamic Corp.</u>, 868 F.2d 992, 995 (8th Cir. 1989) (citation omitted). Even if the Court were to credit Plaintiffs' belated (and conclusory) allegations of organizational injury, Plaintiffs nonetheless would lack standing to sue on their own behalf. Given the number of other PDPs who still have not reimbursed LTC pharmacies for the co-payments at issue (*see* Am. Compl. ¶ 21; Plfs' Opposition to UHG's (First) Motion to Dismiss at 5), Plaintiffs cannot trace their purported organizational injuries to UHG, and such alleged injuries would not be redressed by a favorable decision in this action. Accordingly, Plaintiffs lack standing to sue on their own behalf. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992); <u>Nat'l Taxpayers Union, Inc. v. U.S.</u>, 68 F.3d 1428, 1433 (D.C. Cir. 1995).

Even if Plaintiffs had standing to bring this action (which they do not), as detailed below, their Opposition fails to establish that they have asserted claims for which relief can be granted.[5]

As UHG pointed out at the March 29, 2007 hearing, if LTC pharmacies believe that they are contractually entitled to additional reimbursement from UHG-affiliated PDPs concerning the co-payments at issue, they are free to bring contract claims against the appropriate entity. Indeed, Omnicare—the largest member of LTCPA (and on whose behalf LTCPA purportedly brought this action (Am. Compl. ¶ 5)—recently filed a demand for arbitration against a UHG-affiliated prescription benefits manager ("PBM") concerning the co-payments at issue in this case,[6] and it also filed suit against an unaffiliated PBM that contracts with a UHG-affiliated PDP, concerning these co-payments.[7]

## III.    Argument

### A.    Plaintiffs' Claims Cannot Be Resolved Without the Participation of Their Individual Members.

The Supreme Court has clearly articulated the test for associational standing. Specifically, an association has standing to sue on behalf of its members only when: (1)

---

[5] In their Amended Complaint and Opposition brief, Plaintiffs feign shock that UHG-affiliated PDPs are no longer processing 2006 claims. Plaintiffs can hardly be surprised. In February 2007, LTC pharmacies were notified that the extended windows in which to submit their 2006 claims would be closing in March 2007, and the claims submission windows were discussed in UHG's brief in Opposition to Plaintiffs' Motion for a Temporary Restraining Order and a Preliminary Injunction, and were discussed during oral argument on March 29, 2007.

[6] Omnicare, Inc. v. RxSolutions, Inc, JAMS Arbitration No. 1220036757.

[7] Omnicare, Inc. v. Walgreens Health Initiative, Inc., Civ. No. 2007-l-05503, Circuit Court of Cook County, IL.

its members would have standing to sue in their own right; (2) the interests it seeks to protect are germane to the association's purpose; and (3) *neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.* Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 343 (1977). Even if it is assumed, *arguendo*, that Plaintiffs satisfy the first two prongs of Hunt's associational standing test, both LTCPA and ASCP fail the third prong because their breach of contract claim cannot be resolved without the participation of their individual members, and the relief Plaintiffs seek is not prospective in nature, but instead would provide for monetary damages to Plaintiffs' members, and would require individualized proof of the injuries purportedly sustained by their members.

Plaintiffs argue that because their Amended Complaint seeks a purported "declaratory judgment," that alone is sufficient to establish standing to sue on behalf of their members. See Plfs' Opp. at 13 ("And the law is clear that the individual participation of members is not required when an association is seeking prospective injunctive-style or declaratory relief, even in cases involving underlying contracts."). Plaintiffs' oversimplify the associational standing requirements, and their characterization does not withstand scrutiny.

It is well-established that an association's mere assertion of a request for injunctive or declaratory relief in its complaint is not enough to satisfy the third prong of the associational standing test. An association suing on behalf of its members:

> [D]oes not . . . automatically satisf[y] the third prong of the *Hunt* test simply by requesting equitable relief rather than damages. The organization lacks standing to assert claims of injunctive relief on behalf of its members where 'the fact and extent' of the injury that gives rise to the claims for injunctive relief 'would require individualized proof,' *Warth v. Seldin*, [422 U.S. 490, 515-16 (1975)], or where the 'the relief requested

[would] require[ ] the participation of individual members in the lawsuit.'
*Hunt*, 432 U.S. at 343.

Bano v. Union Carbide Corp., 361 F.3d 696, 714 (2d Cir. 2004) (emphasis added).

Under Hunt, "representational standing is inappropriate if adjudicating the merits of an

association's claim requires the court to engage in a 'fact-intensive-individual inquiry.'"

New Hampshire Motor Transport Ass'n v. Rowe, 448 F.3d 66, 72 (1st Cir. 2006) (quoting

Penn. Psychiatric Soc. v. Green Spring Health Servs., Inc., 280 F.3d 278, 287 (3d Cir.

2002)). Accordingly, courts have dismissed lawsuits brought by associations seeking

injunctive or declaratory relief when adjudication of the merits of the underlying claim

requires the court to examine whether, and the extent to which, individual association

members have been injured. See Pharmaceutical Care Management Ass'n v. Rowe, 429

F.3d 294, 314 (1st Cir. 2005) (noting that "plenty of injunction cases [brought by

associations on behalf of their members] have been dismissed because of the need for

individualized proof.") (citing Ga. Cemetary Ass'n v. Cox, 353 F.3d 1319, 1322 (11th

Cir. 2003); Rent Stabilization Ass'n v. Dinkins, 5 F.3d 591, 596-97 (2d Cir. 1993); and

Kan. Health Care Ass'n v. Kan. Dept of Soc. & Rehab. Svcs., 958 F.2d 1018, 1022-23

(10th Cir. 1992)).

Plaintiffs acknowledge that their members' contracts with the PDPs differ in

relevant part, but they ask the Court to find that UHG has *breached* such contracts by

allegedly not reimbursing the co-payments at issue. The Court cannot resolve Plaintiffs'

breach of contract claim without examining each of the underlying, non-uniform

contracts between Plaintiffs' members and UHG-affiliated PDPs, and then examining the

parties' actual performance under the contracts. This is precisely the "'fact-intensive-

individual inquiry" that requires the participation of Plaintiffs' member pharmacies, and

which, therefore, deprives LTCPA and ASCP of standing to bring this action on their

members' behalf. New Hampshire Motor Transport Ass'n v. Rowe, 448 F.3d at 72. See

Dealer Store Owners Ass'n v. Sears, Roebuck & Co., 2006 WL 91335, at *5 (D. Minn.

January 12, 2006), attached as Ex. 1 to the Declaration of Mark C. Nielsen ("Nielsen

Decl.") ("Associational standing is not appropriate where a plaintiff seeks a declaration of

rights on a group of contracts that are not uniform. Thus, [plaintiff] fails to meet the third

prong of the associational standing test . . .").[8]

    **B.**    **Plaintiffs Lack Associational Standing Because They Seek Damages**

        **1.**    **A "Declaration" that UHG is Obligated to Pay Money to Plaintiffs' Members Is Tantamount to a Claim for Money Damages On Their Members' Behalf.**

Even if it is assumed that the participation of Plaintiffs' members in this action is

not required to establish "the fact and extent" of UHG's alleged breach of contract,

LTCPA and ASCP still lack standing to maintain this action because they ask the Court

---

[8] Even if an association brings an action on behalf of its members involving uniform contracts, the association lacks standing to seek declaratory relief if the allegations in the complaint do not involve a discrete legal issue of contract interpretation, and instead involve claims of breach of contract. DDFA of South Florida, Inc. v. Dunkin' Donuts, Inc., 2002 WL 1187207, at * 7 (S.D. Fla. May 22, 2002), attached as Ex. 2 to the Nielsen Decl. As explained by the court in DDFA of South Florida:

> Unlike most prior associational standing cases, this action does not challenge a statute, regulation or ordinance, but rather seeks a declaratory judgment with respect to 'uniform' franchise agreements. . . . [Plaintiffs'] allegations do not set forth a discrete legal issue. Instead, the Amended Complaint sets forth allegations of tortuous conduct and breach of contract. As such, the Amended Complaint requires individual determinations as to whether [the defendant corporation] committed various torts against certain of its [franchisees] and whether [plaintiff's] members or the [defendant] itself complied with the provisions of the franchise agreement. Accordingly, the Complaint does not raise a 'pure question of law,' which can be considered without the individual participation of [plaintiff's] members. (Id.)

to order the payment of money to their members. (See Prayer for Relief (a)(ii)). It is well-settled that an association does not have standing to seek damages on behalf of its members. Warth v. Seldin, 422 U.S. at 515-516.[9]

LTCPA and ASCP have previously acknowledged that they lack standing to bring a claim for damages on behalf of their members (Plfs' Opp. at 13, n. 5),[10] and in their Opposition, they argue that they seek only prospective relief in the form of a declaratory judgment. Pfls' Opp. at 13. The judicial "declaration" that Plaintiffs purport to seek, however, does not concern the interpretation of a contract provision, but instead is a "declaration" that UHG breached non-uniform agreements with Plaintiffs' members, and that "Defendant [UHG] is obligated to pay to LTC Pharmacies the co-payment amounts withheld from reimbursement" dating back to January 1, 2006. See Prayer for Relief (a)(ii) (emphasis added). An association's request for a "declaration" of its members' entitlement to money is no different than the association directly asserting a claim for money on behalf of its members. Although LTCPA and ASCP attempt to hide their

---

[9] In their Opposition brief, Plaintiffs state that "a request for damages does not *necessarily* destroy standing." (Plfs' Opp. at 13 (emphasis added) and 14, and they cite Air Transport Ass'n v. Reno, 80 F.3d 477, 484 (D.C. Cir. 1996) and Telecommunications Research & Action Center v. Allnet Communications Srvcs., 806 F.2d 1093, 1096 (D.C. Cir. 1986)) as support for this statement. Plaintiffs' argument is without merit. Plaintiffs fail to cite even one case in which a court has actually allowed an association to pursue damages on behalf of its members, which is hardly surprising, given that "no federal court has allowed an association standing to seek monetary relief on behalf of its members." Legal Aid Society v. City of New York, 114 F. Supp. 2d 204, 214 (S.D.N.Y. 2000) (emphasis added) (citing Allnet and collecting cases). Indeed, the Second Circuit recently stated that it "know[s] of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members." Bano v. Union Carbide, 361 F.3d at 714.

[10] As noted above, Plaintiffs' counsel advised the Court that "[n]o one disagrees that the associations do not have standing to bring damages claims. . . . How much, who, which pharmacies, all the details of a breach of contract case cannot be brought in this case." Transcript of Hearing, March 29, 2007, at 9:11-14 and 20-21.

obvious standing problems by carefully couching their Amended Complaint as one

seeking a declaratory judgment, the Amended Complaint must be dismissed because an

association "may not circumvent [associational] standing requirements by seeking a

declaration of entitlement to money damages." Pesticide Public Policy Foundation v.

Village of Wauconda, Ill., 622 F. Supp. at 435.

Plaintiffs argue that Pesticide Public Policy Foundation is inapposite because the

court there found that the plaintiff had neglected to provide any legal authority to support

the proposition that an association had standing to request a "declaration" of its members'

entitlement to money. (Plfs' Opp. at 14-15). Plaintiffs mischaracterize the basis for the

court's holding. In Pesticide Public Policy Foundation, the court first held that "a

declaration of entitlement to money cannot be categorized as prospective relief, because

its purpose is to compensate plaintiff's members for the past effects of an invalid

ordinance." 622 F. Supp. at 434 (emphasis added). After *then* noting that the plaintiff

failed to offer any authority in support of its claim for a declaration of entitlement to

money, the court stated that if it "were to issue a declaration of defendants' liability,

plaintiff's members would be in a position where they would be entitled to receive money

damages from defendants upon the production of individualized proof." Id. According

to the court, the association's request for a judicial declaration that its members were

entitled to money was tantamount to the association asserting damages on behalf of its

members. Given that the association lacked standing to maintain the latter action, it also

lacked standing to maintain the former. Id. at 434-35.[11]

---

[11] Plaintiffs also argue that Pesticide Public Policy Foundation is inapposite because the
claim there was brought under 42 U.S.C. § 1983, "a legally distinct cause of action that
has not been implicated or pled in this case." (Plfs' Opp. at 15). However, the

Plaintiffs rely upon Int'l Union, United Auto. Aerospace & Agric. Implement Workers of Am. v. Brock, 477 U.S. 274 (1986), for the proposition that the Court may find associational standing when a plaintiff-association seeks a declaratory judgment that may eventually result in association members obtaining monetary recovery. Brock is inapposite, however, since the association's lawsuit at issue in Brock "raise[d] a *pure question of law*: whether the [Secretary of Labor] properly interpreted the Trade Act's . . . eligibility provisions." 477 U.S. at 287 (emphasis added)). In Air Transport Ass'n v. Reno, 80 F.3d 477, 484 (D.C. Cir. 1996), the D.C. Circuit recognized Brock's unique posture in the associational standing context, noting:

> Once the Court granted the injunction, the Supreme Court said, it would then be up to the *individual state agencies* to calculate the amount union members were entitled to. Because there were separate entities vested with authority to assess individualized claims and ready and able to do so once the obstruction posed by the defendant agency's error of law was remanded, the matter could be *judicially* disposed of without the participation of union members. In this case, however, a judicial declaration that the [government's] policies are invalid would not end the matter. The determination of what money the airlines paid, for what kinds of detention services, and for which types of aliens would be no simple administrative matter, but would instead require individualized proof from each airline.

(Italics in original; underline added for emphasis; internal citations omitted). See also Bano v. Union Carbide Corp., 361 F.3d at 714 (Brock allowed the union to sue on behalf of its members only "because [the lawsuit] raise[d] a pure question of law," and finding that the plaintiff-association's claim in Bano, for harm suffered by individuals and their property, necessarily required the participation of individual members to prove their

_____

associational standing requirements applicable to § 1983 claims are the same as are applicable in this action. See, e.g., Rhode Island B'hood of Corrections Officers v. Rhode Island, 357 F.3d 42, 48 (1st Cir. 2004) (recognizing that an association of corrections officers had standing to assert a § 1983 claim, citing Warth).

claims). Unlike <u>Brock</u>, this action does not involve a pure question of law; it involves the language of non-uniform contracts between Plaintiffs' members and UHG-affiliated PDPs, and the parties' actual performance under such contracts.

Plaintiffs' reliance on <u>UFCW Local 751 v. Brown Group, Inc.</u>, 517 U.S. 544 (1996), is similarly misplaced. In <u>Brown Group</u>, the Supreme Court ruled that a union had standing to assert a claim for damages on behalf of its members to redress an employer's alleged violation of the Worker Adjustment and Retraining ("WARN") Act. The Court, however, recognized the union's standing to sue <u>only</u> because Congress, in enacting the WARN Act, "*specifically* authorized the union to sue for its members' damages," and because "there [was] no question that Congress may abrogate" the otherwise applicable prohibition against an association suing for damages on its members' behalf. <u>Id.</u> at 558 (emphasis added). <u>Brown Group</u> therefore allows unions to sue for damages under the WARN Act on behalf of its members; it does not otherwise change the general principle that "an association's action for damages running solely to its members would be barred for want of the association's standing to sue." <u>Id.</u> at 546.

2. **The Relief Plaintiffs Seek Requires Individualized Proof of Loss**

Just as the plaintiff in <u>Pesticide Public Policy Foundation</u> lacked standing to seek a declaration of its members' entitlement to money, so too do LTCPA and ASCP. The sole purpose of the alleged "declaration" that Plaintiffs seek is to compensate their member pharmacies for the alleged violation of the contracts between UHG-affiliated PDPs and LTC pharmacies. This can hardly be characterized as "prospective" relief. Entry of such a judgment would require UHG (the sole defendant in this action) to pay

money to LTCPA-member pharmacies retroactively, for claims dating back to January 1, 2006.

As discussed in UHG's opening brief (at 16-17), the relief sought by LTCPA and ASCP is indistinguishable from the relief sought in <u>Air Transit Ass'n v. Reno</u>, 80 F.3d 477 (D.C. Cir. 1996). The plaintiff association in <u>Air Transport</u> sought a declaratory judgment that an Immigration and Naturalization Service policy was illegal, and "an order allowing its members to make individualized showings of damages and receive compensation for amounts they . . . expended." <u>Id</u>. at 483. The D.C. Circuit held that the association lacked standing to assert a monetary claim on behalf of its members, since "any award of monetary compensation would 'require[ ] the participation of individual members in the lawsuit[.]'" <u>Id.</u> LTCPA and ASCP, in one sentence of a footnote, argue that <u>Air Transport</u> is not applicable because "[n]o such individualized proof is required in order for this Court to issue the more general declaratory relief that Plaintiffs seek." (Plfs' Opp. at 14, n. 6). Plaintiffs, however, fail to explain why such individualized proof of loss would not be required, and their argument cannot be squared with the fact that establishing the amount payable to LTC pharmacies under the order Plaintiffs seek would require the Court to analyze the language of each non-uniform contract between Plaintiffs' members and UHG-affiliated PDPs, and the parties' actual performance under such contracts.[12]

---

[12] The difficulty of establishing the amount owed under the "declaration" that Plaintiffs purportedly seek is compounded by the fact that the contracts between Plaintiffs' members and UHG-affiliated PDPs are not uniform, as Plaintiffs acknowledge. Even in the case of standardized contracts, however, courts have rejected damages claims asserted by associations. <u>See</u> <u>Telecommunications Research & Action Center v. Allnet Communications Services, Inc.</u>, 806 F.2d 1093, 1095 (D.C. Cir. 1986) (rejecting an association's claim that because damages for its members could be calculated using a

Plaintiffs argue that American Med. Ass'n v. United Healthcare Corp., 2002 WL 31413668, at *3 (S.D.N.Y. October 23, 2002) (Ex. 3 to the Nielsen Decl.), supports their claim of associational standing to bring this action, but the court there noted that the association could "proceed with its representation of its particular member[s] . . . insofar as it relates to claims for injunctive or declaratory relief *only*." Id. (emphasis added). American Med. Ass'n did not address the issue present here, in which the plaintiff association seeks a declaration that the defendant "is obligated to pay [its members] the . . . amounts withheld from reimbursement" retroactive to the date the contract commenced. See Am. Compl., Prayer for Relief (a)(ii) (emphasis added). In fact, the court in American Med. Ass'n specifically noted that an association lacked standing to bring "a damages claim that would require individualized proof of both the fact and extent of injury of each individual member's claim," id. at *3, which is precisely what would be required under Plaintiffs' Prayer for Relief.

Even assuming, *arguendo*, that Plaintiffs' demand for a declaration of their members' entitlement to co-payments is not the same as a demand for money damages, LTCPA and ASCP would still lack standing to bring this action because, as noted supra, the court cannot adjudicate this action without examining the non-uniform contracts between Plaintiffs' members and UHG-affiliated PDPs, and the parties' actual performance under such contracts. Given that the Court would have to examine the facts and extent of the pharmacies' alleged injuries, LTCPA and ASCP lack associational

---

simple formula that would apply across-the-board, the association's members did not have to participate in the lawsuit); Sanner v. Board of Trade, City of Chicago, 62 F.3d 918, 923 (7th Cir. 1995) ("Although the individual calculation of damages for each soybean farmer might be rather technical and uncomplicated, the individual participation of all members asserting a claim would nonetheless be required.").

standing. <u>Sherwin-Williams Co. v. Spitzer</u>, 2005 WL 2128938, at *8 (N.D.N.Y. August 24, 2005) (Ex. 4 to the Nielsen Decl.) ("Even if the lawsuit does not pursue damages, should the 'facts and the extent' of the injury asserted require consideration of the unique and peculiar circumstances of individual members and the court has to engage in *ad hoc* inquiries therein, the association would not be permitted standing solely to bring this action.") (quoting <u>Bano v. Union Carbide</u>, 361 F.3d at 714-15, and citing <u>Presbyterian Church of Sudan v. Tailsman Energy, Inc.</u>, 2005 WL 1060353, at * 1 (S.D.N.Y. May 6, 2005), and <u>In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.</u>, 2005 WL 1500893, at *4 (S.D.N.Y. June 24, 2005)). <u>See also</u> <u>Pennsylvania Psychiatric Society</u>, 280 F.3d at 286 (noting that "conferring associational standing would be improper for claims requiring a fact-intensive-individual inquiry.").

### C.    <u>LTCPA and ASCP Lack Standing to Sue On Their Own Behalf.</u>

In their Opposition brief, LTCPA and ASCP argue that they have standing to sue on their own behalf because they "have suffered concrete and particularized injuries as a result of Defendant UHG's wrongful withholding of co-payment amounts." (Plfs' Opp. at 15). Plaintiffs, however, fail to establish any of the three factors required for an association to sue on its own behalf. For an association to sue on its own behalf, it must establish, at an "irreducible constitutional minimum," that: (1) it suffered a concrete and particularized "injury in fact" which is an invasion of a legally protected interest; (2) there is a "causal connection between the injury and the conduct complained of" that is attributable to the action challenged in the Complaint; and (3) there is a likelihood that its injury will be "redressed by a favorable decision." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. at 560-61.

1.    **The Amended Complaint Does Not Allege Any Injury in Fact.**

As detailed in UHG's opening brief (at 12-13), Plaintiffs' Amended Complaint is absolutely silent as to *any* definable, discernable, or specific injury to LTCPA or ASCP as organizations. This alone is fatal to Plaintiffs' claim that they have standing to sue on their own behalf, since they fail the first prong of the <u>Lujan</u> test. As reflected by the very case cited by Plaintiffs in their Opposition brief, courts have dismissed claims of organizational injury even where an association has pled more than LTCPA and ASCP. In <u>American Med. Ass'n v. United Healthcare Corp.</u>, 2002 WL 31413668, cited repeatedly by Plaintiffs' Opposition (at pp. 9, 10, 13), the court dismissed, with prejudice, claims brought by a medical association on its own behalf against a health insurer. The association alleged that it suffered a direct organizational injury in the form of diverted resources that was attributable to the defendant's conduct. The court held that such a conclusory allegation was not enough to survive the defendant's motion to dismiss, finding that the allegation failed to "show actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." <u>Id.</u> at * 4. Unlike <u>American Medical Ass'n</u>, LTCPA and ASCP make <u>no</u> allegations of organizational injury anywhere in their Amended Complaint. Accordingly, they lack standing to maintain this action on their own behalf. <u>Lujan</u>, 504 U.S. at 560-61.

Plaintiffs' Opposition brief attempts to cure the Amended Complaint's deficiencies by arguing that UHG's alleged conduct "has interfered with the core mission of both Plaintiffs to protect and promote the profession of long term care pharmacy[,]" and "detracted from their focus on obtaining legislative and policy advances for their members." Plfs' Opp. at 15-16. In support of these claims, the Opposition attaches

declarations from the Executive Directors of LTCPA and ASCP, which allege that the respective organizations have been forced to devote resources to address the allegedly improper reimbursement of LTC pharmacies.  (See Second Declaration of Paul Baldwin ("Second Baldwin Decl."), ¶ 13, Declaration of Thomas Clark ("Clark Decl."), ¶ 9; and Declaration of Darrell McKigney ("McKigney Decl."), ¶ 12, all attached to Plaintiffs' Opposition).  These allegations are insufficient to survive UHG's motion to dismiss.

First, as noted above, neither LTCPA nor ASCP alleged any organizational injury in their Amended Complaint, and "'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'"  Morgan Distrib. Co. v. Unidynamic Corp., 868 F.2d at 995 (citation omitted).  See also Jojola v. Chavez, 55 F.3d 488, 494 (10th Cir. 1995) ("'It is well-established . . . that . . . [courts] are limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint.'") (quoting district court).  Second, conspicuously absent from the Baldwin, Clark, and McKigney Declarations are any *facts* that would support their conclusory allegations.  It is settled that even on a motion to dismiss, a plaintiff's conclusory legal and factual allegations need not be considered by the Court.  Domen v. Nat'l Rehabilitation Hosp., 925 F. Supp. 830, 837 (D.D.C. 1996) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Moreover, such vague allegations of harm—unaccompanied by facts to support them—are insufficient to provide LTCPA and ASCP with organizational standing, since the D.C. Circuit has ruled that a cognizable injury must "'constitute . . . more than simply a setback to the organization's abstract social interests.'"  Nat'l Taxpayers Union, Inc. v. U.S., 68 F.3d 1428, 1433 (D.C. Cir. 1995) (quoting Havens Realty Corp. v. Coleman,

455 U.S. 363, 379 (1982)). Accordingly, the mere fact that LTCPA and ASCP have allegedly been "frustrated [in their] objectives is the type of abstract concern that does not impart standing." Nat'l Taxpayers Union, Inc., 68 F.3d at 1433 (quoting Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41-42 (1976)). See also, American Medical Ass'n, 2002 WL 31413668, at *4 (association did not establish a concrete injury by alleging that it hired staff to respond to the defendant's action; the association volunteered to assist its own members).

### 2.    Plaintiffs' Purported Injuries Are Not Traceable to UHG and Would Not Be Redressed by a Favorable Decision.

Even if Plaintiffs' belated and vague allegations of organizational injury are credible, Plaintiffs still lack standing because their alleged organizational "injury" is not traceable to UHG, or redressable by a favorable decision in this action. As discussed in UHG's opening brief, at 12-14, Plaintiffs' pleadings make clear that the co-payment reimbursement matter at issue in the Amended Complaint involves many other PDPs that are not parties to this lawsuit that received incorrect data from CMS, and which still have not remitted co-payments to Plaintiffs' member pharmacies in the manner demanded by LTCPA and ASCP. In their Opposition brief, Plaintiffs state that their alleged organizational injuries are nonetheless directly traceable to UHG, and redressable by the Court, because UHG is the "most significant PDP" in the industry. Plfs' Opp. at 17.

Putting aside the uncontested fact that UHG is a holding company and not a PDP, Plaintiffs' novel theory of standing—by which injuries attributable to multiple parties not before the Court can be shifted to one defendant of plaintiff's choice—lacks foundation. Plaintiffs argue that to satisfy Lujan's "traceability" prong of organizational standing, their injuries "need only 'be *fairly traceable* to the challenged action of the defendant

. . . .'" Plfs' Opp. at 17 (emphasis and ellipses in original) (quoting Lepelletier v. F.D.I.C.,

164 F.3d 37, 42 (D.C. 1999)).  Plaintiffs' contention is based on a selective reading of

Lepelletier that ignores critically important antecedent and subsequent clauses of the

same sentence which establish a far more stringent test than Plaintiffs claim.

Specifically, Lepelletier holds that to establish standing:

> [T]here must be a causal connection between the injury and the conduct
> complained of—the injury has to be fairly traceable to the challenged
> action of the defendant, and not the result of the independent action of
> some third party not before the court."

> Id. (emphasis added) (quoting Lujan, 540 U.S. at 560-61).

Given that Plaintiffs have acknowledged that the co-payment matter at issue was

not caused by UHG, and that many other PDPs still have not reimbursed their member

pharmacies for the co-payments at issue, their purported organizational injuries are not

causally connected to UHG, but are attributable to the actions of independent third parties

that are not before the Court.  Accordingly, LTCPA and ASCP cannot establish that their

alleged injuries are traceable to UHG, and they therefore lack standing to bring this

action on their own behalf.  Lujan, 540 U.S. at 560-61.

Further, as described in UHG's opening brief (at 14), Plaintiffs fail to establish

that their purported organizational injuries would be redressed by a favorable decision in

this action, thus depriving them of standing to sue on their own behalf.  Plaintiffs'

Opposition cites Brueggman v. Blagojevich, 324 F.3d 906, 909 (7th Cir. 2003), for the

proposition that a plaintiff need only establish that "the relief sought [will] 'redress the

injury in whole or in part, and thus confer a material benefit on the [plaintiff].'"  (Plfs'

Opp. at 16, quoting Brueggman).  Brueggman, however, did not involve an association

asserting a claim on its own behalf.  Moreover, it did not involve a situation in which

third parties—not involved in the lawsuit—were also at least partly responsible for the plaintiff's alleged injuries, and where the alleged injuries would continue even *after* entry of judgment against the defendant.  Similarly, Plaintiffs' reliance on Int'l Ladies Garment Workers Union v. Donovan, 722 F.2d 795, 812 n. 27 (D.C. Cir. 1983), is misplaced because the plaintiff's injuries in that case were directly redressable by an injunction. ("[T]he relief sought by [plaintiffs] would make the injurious conduct complained of in this case illegal; only by taking extraordinary measures—*i.e.*, violating the law or starting new businesses overseas—could third parties prevent redress of the appellant's injuries." Id. at 811).

Given the number of other PDPs which Plaintiffs allege still have not reimbursed LTC pharmacies for the co-payments at issue, a favorable decision in this action would *not* remedy Plaintiffs' purported organizational injuries:  LTCPA and ASCP would still have to divert the same organizational resources to work with other PDPs and CMS to obtain reimbursement of co-payments withheld due to CMS's erroneous data. Accordingly, a favorable ruling in this action would not redress Plaintiffs' alleged injuries, and they therefore lack standing.  Lujan, 504 U.S. at 570 (environmental association's alleged injuries could not be redressed by a favorable decision because "the District Court could afford relief only against the Secretary [of the Interior] . . . . [But] resolution by the District Court would not have remedied [the association's] alleged injury . . . because it would not have been binding upon the [funding] agencies.  They were not parties to the suit, and there is no reason they should be obliged to honor an incidental legal determination the suit produced."

**D.    The Complaint Fails to State a Claim Upon Which Relief Can Be Granted.**

As discussed in UHG's Motion to Dismiss, Plaintiffs' Complaint should be dismissed not only for lack of standing, but also for failure to state a claim. Recognizing the deficiencies in their Complaint, Plaintiffs' Opposition attempts to once again re-plead the Amended Complaint by asserting new allegations against UHG, and mischaracterizes CMS's guidance.

**1.    UHG Is Not a Party to Contracts with LTC Pharmacies.**

Plaintiffs have sued UHG for breach of contract even though the Amended Complaint nowhere alleges that UHG is actually a party to any contract with any LTC pharmacy. Indeed, Plaintiffs' Amended Complaint (¶ 38) concedes that UHG is not a party to the alleged network contracts, noting that "[UHG], directly or through its affiliates, has one or more 'network pharmacy contracts' with each of Plaintiffs' member LTC pharmacies." For some reason though, Plaintiffs have chosen only to sue UHG, the parent company of PDPs that actually contract with LTC pharmacies.[13] In their Opposition (at 20), Plaintiffs attempt to circumvent their pleading deficiency by arguing that "the absence of a direct contract with a parent company is not automatically fatal to an action against a parent for breach of contract." In support of this argument, Plaintiffs extensively quote Satellite Broadcasting Cable, Inc. v. Telefonica de Espana, 786 F. Supp. 1089, 1100 (D.P.R. 1992). Plaintiff's reliance is misplaced, however, since "the

---

[13] As noted in UHG's opening brief, the following UHG subsidiaries sponsor Medicare Part D PDPs: UnitedHeathcare Insurance Company; UnitedHealthcare of New York, Inc.; PacifiCare Life and Health Insurance Company; and PacifiCare Insurance Company. Even these subsidiaries do not directly contract with LTC pharmacies for purposes of providing Medicare Part D benefits. Rather, the subsidiaries contract with prescription benefit managers ("PBMs"), and the PBMs enter into contracts with LTC pharmacies.

Court merely [held] that where the pleadings allege that all negotiations [of a contract] were conducted with a parent corporation, but the agreement is signed by its subsidiary, sufficient facts have been plead to defeat a motion to dismiss by the parent." Id. Given that Plaintiffs *nowhere* allege that its member pharmacies negotiated their contracts with UHG, Satellite Broadcasting Cable requires dismissal of Plaintiffs' breach of contract claim against UHG.

      In their Opposition (at 2-3 and 20-21), Plaintiffs argue that a letter dated April 20, 2007 on UHG letterhead concerning the processing of LTC pharmacy claims proves that UHG, the holding company, is making the reimbursement decisions for its subsidiaries, and is thus the proper party to this action. Plaintiffs cite no authority for the proposition that one public announcement on holding company letterhead concerning a matter that affects *multiple* subsidiaries causes the holding company to so control or so completely dominate its subsidiaries that the Court may disregard corporate forms and pierce the corporate veil. Given that Plaintiffs nowhere allege interlocking directorates, overlapping officers and departments, the sharing of office space, unity of ownership, or other factors commonly referenced by courts when they consider piercing the corporate veil, it can hardly be said that the April 20, 2007 letter will suffice, by itself, to pierce the corporate veil, or that it is even adequate to state a claim under liberal notice-pleading rules. See Diamond Chemical Co. v. Atofina Chemicals, Inc., 268 F. Supp. 2d 1, 7-9 (D.D.C. 2003) (describing factors to be consider when a plaintiff seeks to pierce the corporate veil); In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385, 416 (S.D.N.Y. 2003) ("[p]urely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard.").

Indeed, as noted in UHG's opening brief (at 20-21), "[t]he law in the District of Columbia is that 'the acts and obligations of the corporate entity will <u>not</u> be recognized as those of [another] until the person seeking to disregard the corporate entity has proved by affirmative evidence that there is (1) unity of ownership and interest <u>and</u> (2) <u>use of the corporate form to perpetrate fraud or wrong</u>." <u>Smith v. Washington Sheraton Corp.</u>, 135 F.3d 779, 786 (D.C. Cir. 1998) (emphasis added) (holding that a parent company could not be held liable for harm caused by a condition on a subsidiary's property) (quoting <u>Vuitch v. Furr</u>, 482 A.2d 811, 815 (D.C. 1984)).  While Plaintiffs' Opposition (at 20-21) argues that UHG is dictating the co-payment reimbursement policy of its subsidiaries, such allegations are nowhere to be found in the Amended Complaint, and they would, in any event, hardly satisfy the criteria necessary to even *allege* entitlement to pierce the corporate veil.  <u>See</u> <u>De Jesus v. Sears, Roebuck & Co., Inc.</u>, 87 F.3d 65, 70 (2d Cir. 1996) ("To overcome the 'presumption of separateness' afforded to related corporations, [p]laintiffs must come forward with the showing of actual domination required to pierce the corporate veil.  Plaintiffs assert that the fraudulent actions taken by Allstate were 'caused by, known to, and ratified by Sears.'  However, the pleadings are devoid of any specific facts or circumstances supporting this assertion.  A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)") (internal citation and quotation omitted); <u>Skidmore Energy, Inc. v. KPMG</u>, 2004 WL 3019097, at * 5 (N.D. Tex. December 28, 2004) (Ex. 5 to the Nielsen Decl.) ("In response to KPMG's motion to dismiss, the [p]laintiffs . . . assert, for the first time in their [r]esponse brief, an alter ego theory . . . [I]t is well established that the

[p]laintiffs may not amend their [c]omplaint through briefs submitted in response to KPMG's motion to dismiss.").

The very case cited by Plaintiffs makes clear that to pierce UHG's corporate veil, Plaintiffs must not only allege (and establish) that UHG "exercise[d] such control over the subsidiar[ies] that the subsidiar[ies] ha[ve] become mere instrumentalit[ies]," but <u>also</u> that the subsidiaries "[were] created or used *for the purpose* of perpetrating fraud or wrongdoing." <u>Penick v. Frank E. Basil, Inc. of Delaware</u>, 579 F. Supp. 160, 165 (D.D.C. 1984). Plaintiffs do not, and cannot, allege that the subsidiaries with whom LTC pharmacies entered into network contracts were mere instrumentalities of UHG, or that they were established or maintained to perpetrate fraud or wrongdoing against LTC pharmacies. Accordingly, Plaintiffs' contractual claim against UHG must be dismissed for failure to state a claim.

2.    **Plaintiffs Do Not Have a Private Cause of Action to Seek a Declaratory Judgment as to Medicare Part D's Requirements <u>With Respect to the Co-payments at Issue.</u>**

In their Opposition (at 21-22), Plaintiffs state that they "have not brought a direct action under the [Medicare Modernization Act (the "MMA")], and have not asserted Federal question jurisdiction in this case." Plaintiffs nonetheless maintain that they may seek a declaratory judgment that UHG is violating Medicare Part D by not remitting the co-payments at issue directly to its member pharmacies, although Plaintiffs fail to articulate the basis for such relief. As detailed in UHG's opening brief (at 23-25), Plaintiffs' demand must be dismissed.

Plaintiffs do not challenge—and thus concede—that they do not have a private cause of action to enforce federal Medicare laws and their implementing regulations.

Instead, Plaintiffs argue that "where Federal statutes or regulations are intertwined with and inform the function of Federal Government program contracts, it is well within the Court's authority to determine whether violations of these statutes and regulations have occurred in the context of adjudicating the parties' rights and obligations under such contracts." Plfs' Opp. at 22, citing College Loan Corp. v. SLM Corp., 396 F.3d 588, 599-600 (4th Cir. 2005). Plaintiff's argument is devoid of merit.

As a preliminary matter, Plaintiffs erroneously argue that the Court must interpret Medicare Part D and implementing CMS regulations to determine whether the co-payments at issue are owed to Plaintiffs' members. As stated above, there is no dispute that under Medicare Part D, Institutionalized Dual Eligibles are not liable for co-payments for prescription drugs that are covered under the Medicare Part D program and the terms of the PDP's plan of benefits. The only dispute is a contractual one. Thus, the Court need not even consider Medicare Part D to resolve this action.

Further, contrary to the implication set forth in Plaintiff's Opposition brief (at p. 22), the contracts at issue are not "Federal Government program contracts;" they are contracts between private entities—LTC pharmacies and UHG-affiliated PDPs. CMS is not a party to such contracts.

Additionally, even if Plaintiffs were correct that the Court may take into account Medicare laws and regulations in evaluating the LTC pharmacies' rights under their respective contracts with UHG-affiliated PDPs (Plfs' Opp. at 22), this would not, *ipso facto*, invest the Court with authority to issue a declaratory judgment as to UHG's obligations under Medicare Part D. The Court could only issue a declaratory judgment as to Medicare Part D if Plaintiffs first had a cause of action to seek such relief, which they

25

do not. "It is well established that the Declaratory Judgment Act 'enlarged the range of remedies available in the federal courts but did not extend their jurisdiction.'" <u>Utah Animal Rights Coalition v. Salt Lake City Corp.</u>, 371 F.3d 1248, 1265 (10th Cir.2004) (quoting <u>Skelly Oil Co. v. Phillips Petroleum Co.</u>, 339 U.S. 667, 671 (1950)). There must be an independent basis for jurisdiction in order to obtain the remedy provided by the Declaratory Judgment Act. As noted in UHG's opening brief, courts have held that with certain exceptions not applicable to the facts at issue, "the Medicare and Medicaid Acts do not authorize private causes of action" against providers of services for which Medicare or Medicaid provides reimbursement. <u>Brogdon v. Nat'l Healthcare Corp.</u>, 103 F. Supp. 2d 1322, 1330 (N.D. Ga. 2000) (collecting cases). Further, a private cause of action may not be implied under either the Medicare or Medicaid Act, given that they are "typical funding statute[s]" for which a private cause of action may not be implied. <u>Id.</u> at 1332.

Finally, Plaintiffs' reliance on <u>College Loan Corp.</u> is misplaced, since that case involved a state-law contractual dispute concerning the federal student loan program, and whether the federal Higher Education Act (the "HEA") preempted the plaintiff's claim. The Fourth Circuit ruled that the defendant could not assert preemption as a defense to the plaintiff's state law claims. The court's ruling was predicated on the parties' <u>express</u> mutual agreement to comply with federal standards interpreting the HEA, and the court emphasized the narrowness of its ruling:

> As parties to the Agreement, College Loan and Sallie Mae . . . voluntarily included federal standards (the HEA) in their bargained-for private contractual arrangement. Both *expressly agreed* to comply with the HEA. In this context, Sallie Mae's argument that enforcement of the Agreement's terms is preempted by the HEA boils down to a contention that it was free to enter into a contract that invoked a federal standard as the indicator of

> compliance, then to proceed to breach its duties thereunder and to shield
> its breach by pleading preemption. <u>In this case at least</u>, federal supremacy
> does not mandate such a result.

396 F.3d at 598 (italics in original; underline added for emphasis). LTCPA and

ASCP nowhere allege that their members entered into contracts with UHG-

affiliated PDPs by which the parties mutually agreed to use Medicare Part D and

CMS regulations as the indicator of contractual compliance. Accordingly,

<u>College Loan Corp.</u> is inapposite. <u>See also</u> <u>Wells Fargo Home Mortgage, Inc. v.</u>

<u>Neal</u>, --A.2d--, 2007 WL 1310141, at * 5 (Ct. App. Md., May 7, 2007) (Ex. 6 to

the Nielsen Decl.) (noting the narrowness of the holding in <u>College Loan Corp.</u>,

and ruling that in the absence of a bargained for contractual provision by which

the parties agree to be bound by federal regulations, a defendant's alleged breach

of such regulations will not support a breach of contract claim under state law).

Given that Plaintiffs admit that they do not have a private cause of action

to enforce Medicare Part D, and nowhere allege that the their members and UHG-

affiliated PDPs mutually agreed to use CMS regulations are indicators of the

parties' contractual compliance, Plaintiffs' demand for a declaratory judgment that

UHG has violated Medicare Part D and its implementing regulations must be

dismissed.

### 3.    Medicare Part D and CMS Regulations Do Not Support Plaintiffs' Claim that Co-payments Must be Remitted Directly to LTC Pharmacies.

As detailed in UHG's opening brief (at 25-30), the provisions of the Medicare

Modernization Act (the "MMA") and Medicare Part D regulations cited in the Amended

Complaint only address *whether* Institutionalized Dual Eligibles can be charged co-

insurance or co-payments; they do not address whether, and when, co-payments must be remitted to a LTC pharmacy.

In discussing the MMA, Medicare Part D regulations, and guidance issued by CMS in 2006 regarding the reimbursement of co-payments with respect to Institutionalized Dual Eligibles, Plaintiffs (at 23-25 of their Opposition) simply repackage the same erroneous legal conclusions set forth in the Complaint, and ask the Court to "read into" CMS's guidance an affirmative duty to remit co-payments to LTC pharmacies *regardless* of whether such pharmacies satisfy their contractual obligations to submit claims in accordance with the PDPs' claims and appeal procedures.  As detailed in UHG's Motion to Dismiss (at 26-30) however, CMS's guidance does not require the remittance of co-payments directly to LTC pharmacies, but instead provides only that PDPs are permitted to remit co-payments to LTC pharmacies *if* such pharmacies re-submit claims as the CMS data is corrected.  As detailed in UHG's opening brief, and as the Court is well-aware, Plaintiffs' members have generally refused to resubmit their claims, instead demanding lump-sum payments without providing the supporting data required by CMS guidance.

Given that Plaintiffs' reading of CMS's guidance is contrary to its plain terms, and since Plaintiffs' member pharmacies have generally refused to resubmit their claims to UHG-affiliated PDPs, Plaintiffs' asserted violations of the MMA and CMS guidance fail, and should be dismissed.

IV.    <u>**Conclusion**</u>

For the foregoing reasons, UHG respectfully submits that the Court should dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.


June 18, 2007                                    Respectfully submitted,

                                                     /s/ Mark C. Nielsen
                                                Thomas F. Fitzgerald (Bar No. 58232)
                                                Michael J. Prame (Bar No. 451017)
                                                Mark C. Nielsen (Bar No. 465220)
                                                Groom Law Group, Chartered
                                                1701 Pennsylvania Avenue, NW
                                                Washington, DC  20006
                                                Telephone:  202.857.0620
                                                Facsimile:   202.659.4503
                                                Email: tff@groom.com
                                                         mjp@groom.com
                                                         mcn@groom.com

                                                **Attorneys for Defendant**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of UnitedHealth Group Incorporated's Reply

Memorandum in Support of Defendant's Motion to Dismiss was served, via electronic

delivery, on the 18th day of June 2007, upon the following:

David Farber, Esq.
Harry Silver, Esq.
Patton Boggs
2550 M Street, NW
Washington, DC  20037
dfarber@pattonboggs.com
hsilver@pattonboggs.com

Counsel for Plaintiffs

June 18, 2007

_/s/ Mark C. Nielsen_
Mark C. Nielsen (Bar No. 465220)
Groom Law Group, Chartered
1701 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone:    202.857.0620
Facsimile:    202.659.4503
Email:        mcn@groom.com

**Counsel for Defendant**