Exhibit 3

Westlaw.

Not Reported in F.Supp.2d                                                                                              Page 1

Not Reported in F.Supp.2d, 2002 WL 31413668 (S.D.N.Y.), 29 Employee Benefits Cas. 1488
**(Cite as: Not Reported in F.Supp.2d)**

▷
American Medical Ass'n v. United Healthcare Corp.
S.D.N.Y.,2002.

United States District Court,S.D. New York.
THE AMERICAN MEDICAL ASSOCIATION, et al., Plaintiffs,
v.
UNITED HEALTHCARE CORPORATION, et al., Defendants.
**No. 00Civ.2800(LMM)(GWG).**

Oct. 23, 2002.

Participants in health plans, out-of-network medical services providers, as assignees of participants' rights under plans, and medical associations brought putative class action against administrators of several health plans, alleging violations of the Employee Retirement Income Security Act (ERISA), as well as, breach of contract and implied covenant of good faith and fair dealing, and deceptive acts and practices in violation of New York law. On administrators' motions to dismiss for failure to state claim, for stay of proceedings pending remand, and for stay of discovery, the District Court, McKenna, J., held that: (1) further discovery, limited to determining proper parties, rather than merits of claims, was warranted to assist in resolving the parties' respective issues regarding standing of various groups of plaintiffs, alleged exhaustion of remedies by certain plaintiffs, and the proper defendants; (2) associations had representational standing to maintain claims against administrators only to extent such claims sought prospective relief, such as injunction or declaratory judgment, as opposed to damages; (3) associations did not have standing to assert claims on their own behalf; (4) insofar as plan insurers actually controlled distribution of plan funds and decided whether or not to grant benefits, insurers could be sued as plan administrators under ERISA; (5) motion to stay action, pending remand to administrators for further proceedings, was premature at motion to dismiss stage; (6) plaintiffs could plead both breach of fiduciary duty claims, under ERISA section providing for appropriate equitable relief, and ERISA benefits claims; (7) plaintiffs' allegations of fraud underlying their breach of fiduciary duty claims against administrators were pled with requisite particularity; (8) plaintiffs stated claim that administrator breached ERISA by preventing self-funded employers from complying with plans' obligations to conform with terms of their group health plans; (9) obligation under ERISA to provide participants with full and fair review of decision denying benefits claim applied only to plans, not to administrators; (10) administrator did not engage in prohibited self-dealing under ERISA; (11) issue of whether data regarding usual and customary rates of pay of out-of-network medical providers established right to benefits or policy regarding benefit calculation, such that administrators were required to supply information upon participants' request under ERISA, could not be determined at motion to dismiss stage; (12) punitive damages were not available for breach of contract claim under New York law; and (13) participant's claims based on denial of benefits were timely under plan.

Motions granted in part, and denied in part.
West Headnotes
**[1] Federal Civil Procedure 170A** ⚖ **1828**

170A Federal Civil Procedure
  170AXI Dismissal
    170AXI(B) Involuntary Dismissal
      170AXI(B)5 Proceedings
        170Ak1827 Determination
          170Ak1828 k. Time of Determination; Reserving Decision. Most Cited Cases
Further discovery, limited to determining proper parties, rather than merits of claims, in putative class action against health plan administrators, alleging, inter alia, violations of ERISA, was warranted to assist in resolving the parties'

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                         Page 2
Not Reported in F.Supp.2d, 2002 WL 31413668 (S.D.N.Y.), 29 Employee Benefits Cas. 1488
**(Cite as: Not Reported in F.Supp.2d)**

respective issues regarding standing of various groups of plaintiffs, alleged exhaustion of remedies by certain plaintiffs, and the proper defendants. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

**[2] Associations 41 ⇐20(1)**

41 Associations
    41k20 Actions by or Against Associations
        41k20(1) k. In General. Most Cited Cases
Medical associations had representational standing to maintain claims against ERISA health plan administrators, only to extent such claims sought prospective relief, such as injunction or declaratory judgment, as opposed to damages, which would require individualized proof of both fact and extent of injury of each individual member's claim. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

**[3] Associations 41 ⇐20(1)**

41 Associations
    41k20 Actions by or Against Associations
        41k20(1) k. In General. Most Cited Cases
Medical associations did not have standing to assert claims against ERISA health plan administrators, on their own behalf, challenging administrators' allegedly wrongful acts, policies, and practices with respect to handling of claims by out-of-network medical service providers; associations did not show actual or threatened injury in fact that was fairly traceable to alleged illegal actions and likely to be redressed by favorable court decision. U.S.C.A. Const. Art. 3, § 2, cl. 1.

**[4] Labor and Employment 231H ⇐678**

231H Labor and Employment
    231HVII Pension and Benefit Plans
        231HVII(K) Actions
            231HVII(K)5 Actions to Recover Benefits
                231Hk678 k. Parties in General; Standing. Most Cited Cases
        (Formerly 296k139)
Claim for benefits under ERISA can be brought against plan, or administrators and trustees of the plan. Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), 29 U.S.C.A. § 1132(a)(1)(B).

**[5] Labor and Employment 231H ⇐465**

231H Labor and Employment
    231HVII Pension and Benefit Plans
        231HVII(C) Fiduciaries and Trustees
            231Hk460 Who Are Fiduciaries
                231Hk465 k. Insurance Companies and Agents. Most Cited Cases
    (Formerly 296k41)
Insofar as health plan insurers actually controlled distribution of ERISA plan funds and decided whether or not to grant benefits under plans, insurers could be sued as plan administrators under ERISA. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

**[6] Action 13 ⇐69(1)**

13 Action
    13IV Commencement, Prosecution, and Termination
        13k67 Stay of Proceedings
            13k69 Another Action Pending
                13k69(1) k. In General. Most Cited Cases
Motion to stay ERISA benefits action, pending remand to plan administrator for further proceedings, was premature at motion to dismiss stage; remand was proper step to take if, upon review, district court concludes that decision by trustee or plan administrator was arbitrary and capricious, and such review had not occurred at motion to dismiss stage. Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), 29 U.S.C.A. § 1132(a)(1)(B); Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[7] Federal Civil Procedure 170A ⇐675.1**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(B) Complaint
            170AVII(B)1 In General
                170Ak675 Alternate, Hypothetical and Inconsistent Claims
                    170Ak675.1 k. In General. Most Cited Cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 3
Not Reported in F.Supp.2d, 2002 WL 31413668 (S.D.N.Y.), 29 Employee Benefits Cas. 1488
**(Cite as: Not Reported in F.Supp.2d)**

ERISA health plan participants and their assignees were not precluded from pleading claims for breach of fiduciary duty against health plan administrators under ERISA civil enforcement section providing for appropriate equitable relief, even though they also asserted ERISA benefits claim; it was not possible to determine whether claims were duplicative at motion to dismiss stage, and thus claims could proceed in tandem until determination could be made. Employee Retirement Income Security Act of 1974, §§ 502(a)(1)(B), 502(a)(3), 29 U.S.C.A. §§ 1132(a)(1)(B), 1132(a)(3).

[8] Federal Civil Procedure 170A ⌸636

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak633 Certainty, Definiteness and Particularity
                170Ak636 k. Fraud, Mistake and Condition of Mind. Most Cited Cases
Allegations of fraud underlying breach of fiduciary duty claims against administrators of ERISA health plans by participants and their assignees were pled with requisite particularity; the complaint sufficiently detailed alleged misrepresentations of administrators in respective health care plan documents, it identified the party which prepared documents, stated when and where misrepresentations were made, and explained why they were fraudulent. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.; Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

[9] Labor and Employment 231H ⌸661

231H Labor and Employment
    231HVII Pension and Benefit Plans
        231HVII(K) Actions
            231HVII(K)3 Actions to Enforce Statutory or Fiduciary Duties
                231Hk658 Judgment and Relief
                    231Hk661 k. Penalties. Most Cited Cases
    (Formerly 296k87)
Secretary of Labor is the sole party that may collect civil penalties for violations of ERISA. Employee Retirement Income Security Act of 1974, § 502(1), 29 U.S.C.A. § 1132(1).

[10] Labor and Employment 231H ⌸680

231H Labor and Employment
    231HVII Pension and Benefit Plans
        231HVII(K) Actions
            231HVII(K)5 Actions to Recover Benefits
                231Hk680 k. Pleading. Most Cited Cases
    (Formerly 296k139)
Allegations that ERISA health plan administrator actually made benefit determinations on numerous claims submitted to self-funded employers and that administrator refused to provide requested data to plan participants and their assignees regarding criteria used to deny benefits, sufficiently asserted claim, to satisfy notice pleading requirements, that administrator breached ERISA by preventing self-funded employers from complying with plans' obligations to conform with terms of their group health plans. Employee Retirement Income Security Act of 1974, § 405(a), 29 U.S.C.A. 1105(a); Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A.

[11] Labor and Employment 231H ⌸621

231H Labor and Employment
    231HVII Pension and Benefit Plans
        231HVII(J) Determination of Benefit Claims by Plan
            231Hk620 Administrative Review
                231Hk621 k. In General. Most Cited Cases
    (Formerly 296k135)
Obligation under ERISA to provide plan participants with full and fair review of decision denying benefits applied only to benefit plans, not to plan administrators Employee Retirement Income Security Act of 1974, § 503, 29 U.S.C.A. § 1133.

[12] Labor and Employment 231H ⌸493

231H Labor and Employment
    231HVII Pension and Benefit Plans
        231HVII(C) Fiduciaries and Trustees
            231Hk487 Investments and Expenditures

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 4
Not Reported in F.Supp.2d, 2002 WL 31413668 (S.D.N.Y.), 29 Employee Benefits Cas. 1488
**(Cite as: Not Reported in F.Supp.2d)**

231Hk493 k. Prohibited Transactions; Parties in Interest. Most Cited Cases
    (Formerly 296k43.1)
Health plan administrator did not engage in prohibited self-dealing under ERISA with respect to its alleged actions of acquiring and disseminating information to its subsidiaries and other administrators, regarding usual and customary health care rates charged by out-of-network medical service providers; health plan funds were not used to acquire information, subsidiaries' use of information to make claims decisions did not involve transaction between plan and a party adverse in interest, and administrator did not sell information to other administrators for profit. Employee Retirement Income Security Act of 1974, § 406(b)(2), 29 U.S.C.A. § 1106(b)(2).

**[13] Federal Civil Procedure 170A ⇌1831**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination
                    170Ak1831 k. Fact Issues. Most Cited Cases
Although data used by ERISA health plan administrators, regarding usual and customary rates charged by out-of-network physicians, impacted calculation of benefits under plan, issue of whether data established right to benefits or policy regarding benefit calculation, such that administrators were required to supply information upon participants' request under ERISA, could not be determined at motion to dismiss stage. Employee Retirement Income Security Act of 1974, § 104(b)(4), 29 U.S.C.A. § 1024(b)(4); Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A..

**[14] Labor and Employment 231H ⇌481**

231H Labor and Employment
    231HVII Pension and Benefit Plans
        231HVII(C) Fiduciaries and Trustees
            231Hk479 Notice and Disclosure Requirements
                231Hk481 k. Participants' Request for Information. Most Cited Cases

    (Formerly 296k49)
Even if health plan administrators were required to disclose, under ERISA, data they used to determine benefits claims, regarding usual and customary rates charged by out-of-network physicians, administrators were not liable for penalties for failure to disclose data, absent specific request by participants in writing for data. Employee Retirement Income Security Act of 1974, §§ 104(b)(4), 502(c), 29 U.S.C.A. § 1024(b)(4), 1132(c).

**[15] Damages 115 ⇌89(2)**

115 Damages
    115V Exemplary Damages
        115k88 Injuries for Which Exemplary Damages May Be Awarded
            115k89 In General
                115k89(2) k. Breach of Contract. Most Cited Cases
Under New York law, extraordinary remedy of punitive damages is not available for claims asserting merely breach of contract.

**[16] Antitrust and Trade Regulation 29T ⇌392**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(E) Enforcement and Remedies
            29TIII(E)7 Relief
                29Tk387 Monetary Relief; Damages
                    29Tk392 k. Punitive or Exemplary Damages. Most Cited Cases
    (Formerly 92Hk40 Consumer Protection)

**Insurance 217 ⇌3376**

217 Insurance
    217XXVII Claims and Settlement Practices
        217XXVII(C) Settlement Duties; Bad Faith
            217k3373 Amount and Items Recoverable
                217k3376 k. Punitive Damages. Most Cited Cases
Under New York law, claim that health plan insurer engaged in deceptive business practices, with respect to handling of insured's claim for benefits, was not tort independent of contract between

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 5
Not Reported in F.Supp.2d, 2002 WL 31413668 (S.D.N.Y.), 29 Employee Benefits Cas. 1488
**(Cite as: Not Reported in F.Supp.2d)**

insurer and insured, so as to allow recovery of punitive damages from insurer. McKinney's General Business Law § 349.

**[17] Limitation of Actions 241** ⇐66(6)

241 Limitation of Actions
    241II Computation of Period of Limitation
        241II(B) Performance of Condition, Demand, and Notice
            241k66 Demand
                241k66(6) k. Demand for Performance of Contract. Most Cited Cases

Two-year limitations period in ERISA health plan for bringing claims against plan administrator based on denial of benefits began to run when participant received written denials of his benefit appeals from administrator. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

*MEMORANDUM AND ORDER*

MCKENNA, J.

*1 In this action, plaintiffs have brought a putative class action complaint against numerous defendants [FN1] alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA") and under New York law for breach of contract, the implied covenant of good faith and fair dealing, and deceptive acts and practices pursuant to New York General Business Law § 349. The lawsuit concerns the reimbursement for treatment by "out-of-network" physician providers under certain employer-sponsored health plans. Plaintiffs include subscribers to certain health plans,[FN2] out-of-network providers who are suing as assignees of their subscribers' benefit claims,[FN3] and medical associations which are suing in their associational capacity on behalf of their members. [FN4] Defendants have jointly moved to dismiss a number of claims in the Third Amended Complaint (the "TAC"). The Defendants have also moved for a stay of proceedings pending remand to the plan administrators and for a stay of discovery.

FN1. United Healthcare Corporation, United Healthcare Service Corp., UnitedHealth Group Incorporated, UnitedHealthCare Insurance Company, United Healthcare Insurance Company of New York, United Healthcare of the Midwest, Inc., United Healthcare Services of Minnesota, Inc. ("UHS of Minn."), Ingenix, Inc., (collectively "United Healthcare"), American Airlines, Inc. ("AA"), and Metropolitan Life Insurance Company ("Met Life").

FN2. David and Colleen Finley (the "Finleys"), Sandra Taylor ("Taylor"), Clifford E. Wilson, individually and as executor of the estate of Michele S. Wilson ("Wilson"), Peter Oborski ("Oborski"), Michael and Susie Grisham (the "Grishams"), Paul Steinberg ("Steinberg"), Helene Coull ("Coull"), Edward F. Mitchell, Jr. ("Mitchell"), S. Joseph Domina ("Domina") (collectively "Subscriber Plaintiffs") and Matthew Crema ("Crema").

FN3. John Marcum, M.D. ("Dr.Marcum"), Michael J. Attkiss, M.D. ("Dr.Attkiss"), William B. Ericson, Jr., M.D. ("Dr.Ericson") (collectively "Provider Plaintiffs").

FN4. The American Medical Association (the "AMA"), the Medical Society of the State of New York (the "MSSNY"), the Missouri State Medical Association (the "MSMA") (collectively "Medical Association Plaintiffs").

For the reasons set forth below, the motions to dismiss are granted with respect to: a) the Medical Association Plaintiffs' claims on their own behalf (part of Count II); b) claims for civil penalties under ERISA § 502(1) (part of Counts III, IV and X); c) claims for self-dealing pursuant to ERISA § 406 (part of Counts III and X); d) the claims of plaintiffs Steinberg, Coull and the Grishams for § 104(b)(4) penalties (part of Count XIII); and, e) plaintiff Crema's claim for punitive damages (part of Count XIV). The stay of proceedings is denied and the stay of discovery is granted in part.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 6
Not Reported in F.Supp.2d, 2002 WL 31413668 (S.D.N.Y.), 29 Employee Benefits Cas. 1488
**(Cite as: Not Reported in F.Supp.2d)**

Background

This action involves five health care plans [FN5] that permit participants to receive medical services from an "out-of-network" provider. (TAC, ¶ 1). Participants who choose to receive such out-of-network services are usually reimbursed for these services at a rate of 80% of what is "usual, customary, and reasonable" ("UCR") in terms of fees charged by other out-of-network physicians. (*Id.*)

> FN5. The four plans are: American Airlines, Osram Sylvania, Chase Manhattan Bank, and Professional Engineering Consulting. Plaintiffs Taylor, Wilson, Oborski, the Grishams, Steinberg and Coull were policyholders in the American Airlines plan. (TAC, ¶ 4). Plaintiff Mitchell is a subscriber to the Osram Sylvania plan. (TAC, ¶ 14). Plaintiff Domina is a policyholder of the Chase Manhattan Bank plan. (TAC, ¶ 15). The Finleys were members of the Professional Engineering Consultant plan. (TAC, ¶ 54). In addition to these four plans, plaintiff Crema brings state law claims under his ERISA-exempt health plan, the Empire Plan. (TAC, ¶ 6).

Plaintiffs' allege that defendants, who acted as administrators to the plans, have violated their fiduciary obligations to the plans and their subscribers by adopting, using and relying on flawed or inadequate data for determining UCR amounts resulting in reimbursements that were well below what they should have been. (*Id.* ¶¶ 1, 31-37). Plaintiffs further allege that these defendants refused to disclose either the UCR data upon which they relied or the basis for their determinations, claiming that the UCR data is proprietary and confidential. (*Id.* ¶ 38). As a result, plaintiffs seek restitution or reimbursement of their improperly reduced health care payments and other legal and equitable relief to compel defendants to make UCR determinations in accordance with the subscribers' plans.

This Court has already considered a motion to dismiss the Second Amended Complaint in this action, *see Am. Med. Ass'n v. United Healthcare Corp.,* Nos. 00 Civ. 2800(LMM), 00 Civ. 7246 (LMM), 2001 WL 863561 (S.D.N.Y. July 31, 2001) (*"AMA v. UHC"*), and granted that motion in part, with leave to replead. Following this decision, plaintiffs filed the TAC.

Standard of Review

*2 Under Rule 12(b)(6), a complaint will be dismissed if there is a failure "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). The Court must read the complaint generously accepting the truth of and drawing all reasonable inferences from well-pleaded factual allegations. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). "A court should only dismiss a suit under Rule 12(b)(6) if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

On a Rule 12(b)(6) motion, courts may consider " any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference, as well as public disclosure documents required by law to be, and that have been, filed ... and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor,* 220 F.3d 81, 88-89 (2d Cir.2000) (citations omitted).

Discussion

I. Standing to Sue

A) The Provider Plaintiffs

In Count II, the Provider Plaintiffs bring claims under ERISA § 502(a)(1)(B) [FN6] stating that such

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 7
Not Reported in F.Supp.2d, 2002 WL 31413668 (S.D.N.Y.), 29 Employee Benefits Cas. 1488
**(Cite as: Not Reported in F.Supp.2d)**

claims "were assigned to them by policyholders" in ERISA health plans directly insured by United Healthcare. (TAC, ¶¶ 5, 17, 43, 102-3, 114). There is no question that a healthcare provider has standing to bring a claim if a beneficiary has properly assigned it in exchange for health care. *Simon v. Gen. Elec. Co.,* 263 F.3d 176, 177-178 (2d Cir.2001) (citing *I.V. Servs. of Am., Inc. v. Trustees of Am. Consulting Eng'rs Council Ins. Trust Fund,* 136 F.3d 114, 117 n. 2 (2d Cir.1998)).

> FN6. § 502(a)(1)(B) provides that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

[1] However, defendants argue that Provider Plaintiffs have not sufficiently alleged facts to support the assertion that they have received such assignments. (Defs. Memo. at 14-15). For example, the TAC does not include the names of the subscribers from whom assignments were received or the plan to which the subscribers were members. (*Id.* at 14). The Court shares defendants' concern, but feels that the more appropriate way to obtain this information and resolve this issue is through the discovery process.

In the following sections, the Court will be faced with a number of issues that can be resolved through what will be called "Stage One discovery." The Court believes that, for the time being, discovery in this case should be limited to determining the proper parties in this action as opposed to the merits of the case. Both sides should exchange information with each other specifically limited to the issue of the proper parties. In this way, both sides will be able to resolve their respective issues regarding the standing of the various groups of plaintiffs in this case, the alleged exhaustion of remedies by certain plaintiffs, and the proper defendants, before engaging in what will likely be a massive exchange of documents in merits discovery.

*3 Defendants' motion to dismiss the Provider Plaintiffs for lack of standing is accordingly denied.

B) The Medical Association Plaintiffs

In Count II, the Medical Association Plaintiffs assert claims against United Healthcare under ERISA § 502(a)(1)(B) for injunctive and declaratory relief on behalf of provider members who have been assigned claims of policyholders as well as on their own behalf. (TAC, ¶¶ 44-45, 125). Defendants argue that the Medical Association Plaintiffs neither have standing to assert claims on behalf of these members nor to assert claims on their own behalf.

1. Representational Standing

[2] The Supreme Court has held that an organization may have standing under certain conditions solely as a representative of its members, even absent an injury to itself. *Int'l Union, United Auto. Workers v. Brock,* 477 U.S. 274, 281, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1988). Both sides agree that the test is whether: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Defendants claim that the Medical Association plaintiffs are unable to meet either the first or third prong of the *Hunt* test. The Court disagrees.

As stated above, the Provider Plaintiffs do have standing for the purposes of this motion to dismiss. Thus, the first prong of *Hunt* is met. Yet, defendants argue that the third prong is not met because the claim and the relief requested necessitates the involvement of the individual members of the association in the lawsuit to demonstrate such things as the assignees' exhaustion of administrative remedies and the particulars of their benefits claims. (Defs. Memo. at 26-27). Plaintiffs counter that "

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                       Page 8
Not Reported in F.Supp.2d, 2002 WL 31413668 (S.D.N.Y.), 29 Employee Benefits Cas. 1488
**(Cite as: Not Reported in F.Supp.2d)**

[o]nly the most limited participation, if any, of the Medical Societies' members will be required to prosecute this action." (Opp. at 44).

The Court will allow each respective Medical Association Plaintiff to proceed with its representation of its particular member Provider Plaintiff insofar as it relates to claims for injunctive and declaratory relief only.[FN7] As the Supreme Court has held, individual participation by an association's membership may be unnecessary when the relief sought is prospective, such as an injunction or declaratory judgment, as opposed to a damages claim that would require individualized proof of both the fact and extent of injury of each individual member's claim. *Brock,* 477 U.S. at 287-288; *see also New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1348-9 (2d Cir.1989); *Pennsylvania Psychiatric Soc'y v. Green Spring Health Servs., Inc.,* 280 F.3d 278, 284 (3d Cir.2002). The Court agrees with defendants that conferring associational standing would be improper for claims requiring a fact-intensive and individualized inquiry. As the Third Circuit held in *Pennsylvania Psychiatric Soc'y,* although the Court questions whether the Medical Association Plaintiffs will be able to establish their representative claims with limited individual participation, at this stage of the proceedings on a motion to dismiss for lack of standing, the Court will accept the fact that it is possible. *Id.,* at 286-287. If, however, the Medical Association Plaintiffs are unable to establish their representative claims with limited individual participation, or they attempt to involve themselves in claims for damages, their claims will be dismissed.

FN7. Dr. Marcum is a member of both the AMA and the MSMA. (TAC, ¶¶ 17, 20). Dr. Attkiss is a member of both the AMA and the MSSNY. (TAC, ¶¶ 17, 19). Dr. Ericson is a member of the AMA. (TAC, ¶¶ 17).

2. Medical Association Plaintiffs' claims

*4 [3] Despite the fact that its claims were dismissed in this Court's previous decision, *AMA v. UHC,* 2001 WL 863561, at *14, the Medical Association Plaintiffs once again attempt to bring claims on their own behalf. As the Court stated in its previous decision, Article III of the Constitution requires that the Medical Association Plaintiffs " show actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." *Id.* (quotations omitted). The Second Amended Complaint merely stated that the Medical Association Plaintiffs: a) were "adversely affected by the acts, policies and practices of United HealthCare"; b) had to devote "resources to countering such practices"; and c) were "thereby distracted from pursuing other issues." (Second Am. Compl. ¶¶ 25-27, 161-62). This Court deemed this insufficient to confer standing. *AMA v. UHC,* 2001 WL 863561, at *14.

Plaintiffs claim that they have added "substantially greater details" concerning their injury, such as the fact that the AMA has hired additional staff to respond to inquiries from member providers concerning UCR and other issues. (Opp. at 47). The only newly added fact, then, is that one of the Medical Association Plaintiffs (the AMA) has set up a program to assist its members. This is not a concrete injury. This is volunteering to assist one's own members. Thus, the Medical Association Plaintiffs' claims on its own behalf are dismissed with prejudice.

II. The Subscriber Plaintiffs and the Exhaustion of their Administrative Remedies

The Second Circuit has recognized " 'the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.' " *Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588, 594 (2d Cir.1993) (quoting *Alfarone v. Bernie Wolff Construction,* 788 F.2d 76, 79 (2d Cir.1986)). In fact, the Second Circuit has recently stated that the "exhaustion of benefit claims brought under ERISA" is required. *Chapman v. Choicecare Long Island Term Disability Plan,* 288 F.3d 506, 511 (2d Cir.2002) (citing *Kennedy,* 989 F.2d at 594). "The primary purposes of the exhaustion requirement are to: (1) uphold Congress' desire that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d   Page 9
Not Reported in F.Supp.2d, 2002 WL 31413668 (S.D.N.Y.), 29 Employee Benefits Cas. 1488
**(Cite as: Not Reported in F.Supp.2d)**

ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo.*" *Kennedy,* 989 F.2d at 594 (quoting *Denton v. First Nat'l Bank of Waco, Texas,* 765 F.2d 1295, 1300 (5th Cir.1985)).

In this case, seven Subscriber Plaintiffs have alleged exhaustion: the Finleys (¶ 62), Taylor (¶ 69), Wilson (¶ 75), Oborski (¶ 80), Mitchell (¶ 89), and Domina (¶¶ 95-96). The remaining Subscriber Plaintiffs-Coull, Steinberg and the Grishams-have alleged that the exhaustion requirement should be excused on the basis of futility.[FN8] Defendants ask that the claims of Subscriber Plaintiffs Coull, Steinberg and the Grishams under ERISA § 502(a)(1)(B) be dismissed for failing to adequately allege facts sufficient to support a claim that exhaustion would be futile. (Defs. Memo. at 23-25). Further, defendants argue that all of the Subscriber Plaintiff claims should be dismissed for failing to specifically allege exhaustion of the breach of fiduciary duty claims. (Defs. Memo. at 52-53).

> FN8. The TAC alleges: "Administrative exhaustion as to Plaintiffs Coull, Grishams and Steinberg, and the other members of the Self-Funded Subclass, should be excused on the basis of futility. It is clear that the administrative process would not have resulted in the receipt of additional reimbursement, data, documentation or adequate redress." (TAC, ¶ 84).

*5 Futility is clearly an exception to the exhaustion requirement and claimants must make a "clear and positive showing" that pursuing available administrative remedies would be futile. *Kennedy,* 989 F.2d at 594. *See also Davenport v. Harry N. Abrams, Inc.,* 249 F.3d 130, 133 (2d Cir.2001). For the purposes of this motion to dismiss, futility has been adequately alleged by Subscriber Plaintiffs Coull, Steinberg and the Grishams. Similarly, the Court believes that exhaustion has been adequately alleged as to all of the Subscriber Plaintiff claims. Through the period of Stage One discovery, however, defendants will be able to examine and test these allegations and it will be clearer as to whether Subscriber Plaintiffs Coull, Steinberg and the Grishams are indeed able to make a clear and positive showing of futility and whether the Subscriber Plaintiffs as a whole truly did exhaust their administrative remedies.

### III. Proper Defendants to Benefits Claims Under ERISA § 502(a)(1)(B)

In Count I, the Finleys bring a claim under ERISA § 502(a)(1)(B) against United Healthcare. (TAC, ¶ 117). In Count II, the Provider Plaintiffs claim benefits under this section on behalf of the assignees of directly insured policyholders for whom United Healthcare has made UCR determinations. (TAC, ¶ 123). In Count IX, the Subscriber Plaintiffs who are members of the AA plan [FN9] seek relief under § 502(a)(1)(B) against AA, which allegedly functions as the insurer and plan administrator of the AA plan and as the plan itself. (TAC, ¶ 167). Defendants argue that a claim for monetary benefits under this section can be asserted only against an employer plan as an entity, and not against the plan administrator. (Defs. Memo. at 16-19). Plaintiffs counter that these claims can be asserted against either the plan administrator, the trustees or the plan itself. (Opp. at 9-10). Plaintiffs further argue that an insurer of a group plan which retains the decision-making authority over benefits can be considered a plan administrator. (Opp. at 10-11).

> FN9. These plaintiffs are: Taylor, Wilson, Oborski, the Grishams, Steinberg and Coull.

[4] As the Court stated in its previous decision, the law in the Second Circuit is very clear-a claim for benefits can be brought against the plan, or the administrators and trustees of the plan. *AMA v. UHC,* 2001 WL 863561, at *5; *Chapman v. Choicecare Long Island Term Disability Plan,* 288 F.3d 506, 510 (2d Cir.2002) ("Other circuits have

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 10

Not Reported in F.Supp.2d, 2002 WL 31413668 (S.D.N.Y.), 29 Employee Benefits Cas. 1488
**(Cite as: Not Reported in F.Supp.2d)**

noted that benefits may be recovered against a plan administrator. Those holdings are entirely consistent with the view we expressed in *Leonelli* and *Crocco* that 'the plan and the administrators and trustees of the plan in their capacity as such may be held liable." ' (citations omitted)); *Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1199 (2d Cir.1989) ("[i]n a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable."); *see also Crocco v. Xerox Corporation,* 137 F.3d 105, 107 (2d Cir.1998).

*6 Thus, because AA is alleged to be the plan administrator, Count IX appears to be properly pled. As for Count I, however, there is a factual dispute between the parties as to who is truly the plan administrator. After a consideration of the affidavits submitted to the Court on this issue, it appears that UHS of Minn. is the plan administrator of the Professional Engineering Consulting plan.[FN10] However, because defendants have not clarified who they actually believe to be the plan administrator, the Court will permit this issue to be decided after the period of Stage One discovery.[FN11]

> FN10. In the Certificate of Coverage governing the health care plan of the Finleys, the "Administrator" is specifically defined as being UHS of Minn. (Fieldstein Aff. Exh. K at 4). Furthermore, the "Administrator" appears to fulfil the classic role of a plan administrator. For example, participants are advised that "[i]f you have questions concerning your benefits, please contact the Administrator...." (*Id.* at 3, 639 N.Y.S.2d 283, 662 N.E.2d 763).

> FN11. This also affects the Finleys' allegations in Count VI that United Healthcare violated §§ 104(b)(4) and 102. Because only plan administrators can be held liable for violations of these sections, the claims are allowed to proceed until the proper defendant is determined after Stage One discovery.

[5] The final issue regards plaintiffs' argument that insurance companies can be considered plan administrators if they control the decision-making process. In *Sheehan v. Metro. Life Ins. Co.,* No. 01 Civ. 9182(CSH), 2002 WL 1424592 (S.D.N.Y. June 28, 2002), the court stated that "[i]f an insurance company controls the distribution of funds and decides whether or not to grant benefits under an employee benefit plan, then it can be sued as a plan administrator." *Sheehan,* at *2 (citations omitted). Insofar as any of the insurance company defendants in this action actually controlled the distribution of funds and decided whether or not to grant benefits under one of the plans, these entities may be sued as plan administrators. But if, after Stage One discovery, it is determined that none of the defendants fit this criteria, these claims will be dismissed. Pending Stage One discovery, the motion is denied.

IV. Defendants' Request to Stay Proceedings and Remand the § 502(a)(1)(B) Claims to Applicable ERISA Plan Administrators

[6] Defendants try to engage the Court in a discussion of the appropriateness of a remand of plaintiffs' ERISA § 502(a)(1)(B) claims to the relevant plan administrators for reconsideration. (Defs. Memo. at 29-30). Quite simply, this is not the time to be discussing a remand. A remand is the proper step to take "if upon review a district court concludes that the [trustee's or administrator's] decision was arbitrary and capricious...." *Miller v. United Welfare Fund,* 72 F.3d 1066, 1071 (2d Cir.1995). In this case, there has not yet been a review of any of the benefits decisions at issue. This is a motion to dismiss. Motion denied.[FN12]

> FN12. Defendants make the same argument regarding plaintiffs' claims under § 502(a)(3). (Defs. Memo. at 53). For the same reasons, defendants request for a remand of these claims is denied.

V. Breach of Fiduciary Duty under ERISA § 502(a)(3): Counts III, IV, V, VII, X, XI, and XII

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                               Page 11
Not Reported in F.Supp.2d, 2002 WL 31413668 (S.D.N.Y.), 29 Employee Benefits Cas. 1488
**(Cite as: Not Reported in F.Supp.2d)**

A) Whether plaintiffs are prevented from alleging claims under both §§ 502(a)(1)(B) and 502(a)(3)

[7] Plaintiffs allege claims for breach of fiduciary duty arising under ERISA § 502(a)(3).[FN13] Defendants argue that the equitable relief provided by this section is available only when plan participants do not have an adequate remedy under ERISA § 502(a)(1)(B). (Defs. Memo. at 32). By pursuing a claim for benefits in Counts I and X pursuant to § 502(a)(1)(B), defendants maintain that plaintiffs are conceding that § 502(a)(1)(B) provides an adequate remedy and, as a result, plaintiffs' claims under § 502(a)(3) should be dismissed. (Defs. Memo. at 33).

> FN13. This section provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

*7 At the pleading stage, it is not for the Court to determine whether there is some set of facts that will permit or preclude recovery under § 502(a)(1)(B), but will make out a breach of fiduciary duty claim under § 502(a)(3). It is not clear that by asserting the ERISA claims under §§ 502(a)(3) and 502(a)(1)(B) that plaintiffs are seeking the same relief. *See Communications Workers of America, AFL-CIO v. Nynex Corp.,* No. 93 Civ. 3322(LMM), 1998 WL 85323, at *1 (S.D.N.Y. Feb.26, 1998). "Even if the claims are duplicative, no binding authority has held that a plaintiff cannot plead both claims." *Id.* At this point in the proceedings, plaintiffs are entitled to proceed under both ERISA theories.[FN14] "These claims may proceed in tandem at this stage." *Suozzo v. Bergreen,* Nos. 00 Civ. 9649(JGK), 01 Civ. 7528 (JGK), 2002 WL 1402316, at *5 (S.D.N.Y. June 27, 2002) (citing *Varity Corp. v. Howe,* 516 U.S. 489, 513-14, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), for the proposition that "ERISA claims for breach of fiduciary duty are not necessarily duplicative of claims for benefits"); *id.* at * 5 (citing *Devlin v. Empire Blue Cross & Blue Shield,* 274 F.3d 76, 88, 89-90 (2d Cir.2001), as "allowing a claim for breach of fiduciary duty to proceed along with a claim for benefits, though limiting recovery to that equitable relief, if any, that is appropriate in light of the complete equities, including any recovery of benefits that might obviate the need for equitable relief").

> FN14. This ruling also applies to plaintiffs' claims in Counts VI and XIII for failure to provide an accurate Summary Plan Description pursuant to § 102. There is no binding authority for the proposition suggested by defendants that a plaintiff may only recover under § 502(a)(1)(B) for such a violation. (Defs. Reply Memo. at 41-42). It is clear that an action may also be brought pursuant to § 502(a)(3) for breach of fiduciary duty.

As the Second Circuit has repeatedly stated, a private cause of action for breach of fiduciary duty is not eliminated " 'when another potential remedy is available; instead, the district court's remedy is limited to such equitable relief as is considered appropriate.' " *Abbruscato v. Empire Blue Cross & Blue Shield,* 274 F.3d 90, 102 (2d Cir.2001) (citing *Devlin,* 274 F.3d at 90.) Admittedly, such equitable relief has been severely circumscribed by the Supreme Court's recent decision in *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). For example, an injunction ordering specific performance under the plan-that is, reimbursement-would not constitute equitable relief. *Id.* at 713; *see also Kishter v. Principal Life Ins. Co.,* 186 F.Supp.2d 438, 444 (S.D.N.Y.2002). "[T]he term 'equitable relief' in § 502(a)(3) must refer to 'those categories of relief that were *typically* available in equity....' " *Great-West Life,* 122 S.Ct. at 712 (quoting *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)).

There are some sections of the TAC that appear to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 31413668 (S.D.N.Y.), 29 Employee Benefits Cas. 1488
**(Cite as: Not Reported in F.Supp.2d)**

seek money damages that would not be permitted under *Great-West Life*. (*See* Counts III, IV, X and XI, TAC ¶¶ 136, 144, 178, 183). However, at this time, the Court will defer a decision on the precise type of equitable relief that is available to plaintiffs, including lost profits and fiduciary removal, until a later date when and if the Court actually deems equitable relief to be appropriate.

B) Alleged Misrepresentations and Omissions of Defendants

**\*8** [8] Defendants argue that plaintiffs' allegations of fraud underlying their breach of fiduciary duty claims in Counts III and X (TAC, ¶¶ 133, 176) are not pled with sufficient particularity pursuant to Fed R. Civ. P. 9(b). ("In all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity.") (Defs. Memo. at 38-9). The Court has determined that these allegations are sufficiently particularized.

Both sides agree (Defs. Memo. at 39; Opp. at 63) that "when a complaint charges fraud, it must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui,* 91 F.3d 337, 347 (2d Cir.1996) (citations omitted). The TAC, however, sufficiently details the alleged misrepresentations of United Healthcare and AA in the respective health care plan documents (such as how they define UCR or the process by which they will make UCR determinations); identifies the party which prepared the documents (either United Healthcare or AA); states when and where they were made (in the plan document during the Class Period); and explains why they were fraudulent (by misrepresenting that defendants used a valid database for making its UCR determinations when their database was so flawed as to prevent it from being used in that capacity).

As stated in the Court's previous decision, however, to the extent that plaintiffs' breach of fiduciary duty claims in Counts III and X rest on the argument that defendants had an obligation to disclose accurate data under § 404, the claim is dismissed. *AMA v. UHC,* 2001 WL 863561, at \*9.

C) Civil Penalties pursuant to ERISA § 502(1)

[9] In Counts III, IV and X, plaintiffs contend that civil penalties are available to them under § 502(1). (TAC, ¶¶ 135, 142, 178). However, plaintiffs are not entitled to relief under this section because the Secretary of Labor is the sole party that may collect civil penalties. 29 U.S.C. § 1132(1). *See Yager v. Carey,* 910 F.Supp. 704, 729 (D.D.C.1995). These portions of Counts III, IV and X are dismissed with prejudice.

D) Breach of a Co-Fiduciary Duty under ERISA § 405

[10] In Count VII, plaintiffs allege that United Healthcare breached ERISA § 405 by "prevent[ing] self-funded employers, such as American Airlines, Osram Sylvania and Chase Manhattan Bank, from complying with such plans' obligations to conform with the terms of their group health plans." (TAC, ¶ 158). Section 405(a) provides, in relevant part:
[A] fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

**\*9** (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).

Defendants argue that Count VII should be dismissed because the allegations fail under Fed.R.Civ.P. 8(a) to put United Healthcare on notice of how it allegedly prevented these plan administrators from complying with the terms of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 13
Not Reported in F.Supp.2d, 2002 WL 31413668 (S.D.N.Y.), 29 Employee Benefits Cas. 1488
**(Cite as: Not Reported in F.Supp.2d)**

plans. (Defs. Memo. at 51). The Court disagrees.

The TAC sufficiently alleges United Healthcare's awareness of and failure to remedy the alleged breaches. First, plaintiffs allege that United Healthcare actually made the determinations on numerous claims submitted by all of the plaintiffs in the self-funded employer plans-Taylor, Wilson, Oborski, the Grishams, Steinberg, Coull, Mitchell and Domina. (TAC, ¶¶ 66-67, 72-3, 77-8, 82-3, 87-8, 92-3). Second, it was allegedly United Healthcare itself who refused to provide the requested data to the relevant plaintiffs. (TAC, ¶¶ 68, 74, 79, 90, 95). As a result, this Count is sufficiently alleged.

E) Disclosure of UCR data by Defendants

The Court rejects defendants' argument that plaintiffs' breach of fiduciary duty claims are now moot as a result of defendants' responses to certain discovery requests. (Defs. Memo. at 44). This is a motion to dismiss and the Court is examining plaintiffs' pleadings, not the course of discovery.

VI. Failure to Provide a Full and Fair Review pursuant to ERISA § 503: Counts V and XII

[11] In Counts V and XII, plaintiffs allege that defendants failed to provide a "full and fair review" and otherwise to make necessary disclosures pursuant to § 503. In the previous decision, the Court left open the question of whether a plan administrator is liable under this section in addition to the plan itself. *AMA v. UHC,* 2001 WL 863561, at *7. The Court now holds that § 503 is inapplicable to a plan administrator. *See Dade v. Sherwin-Williams Co.,* 128 F.3d 1135, 1143 (7th Cir.1997) (a violation of § 503 imposes a duty on the plan as opposed to § 502(c) which imposes fines against an administrator); *Wilczynski v. Lumbermens Mut. Cas. Co.,* 93 F.3d 397, 406 (7th Cir.1996) (§ 503 establishes requirements for plans, not plan administrators); *Stuhlreyer v. Armco, Inc.,* 12 F.3d 75, 79 (6th Cir.1993) ("[A] plan administrator cannot violate § 1133 ... because § 1133 imposes obligations on the 'plan' rather than

the 'plan administrator.' " (citations omitted)); *Groves v. Modified Ret. Plan,* 803 F.2d 109, 116 (3d Cir.1986) (Section 502(c) "does not provide for sanctions against plans. By contrast, § 503 and one of the two regulations that were violated in this case, 29 C.F.R. § 2560.503-1(g), impose duties on the plan, and not on the plan administrator.") Section 503 specifically refers to the duties of plans, not plan administrators:
In accordance with regulations of the Secretary, every employee benefit *plan* shall-
*10 (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133 (emphasis added). Section 502(c), on the other hand, refers to the duties of plan administrators, not benefit plans:(1) Any *administrator* ... (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the *administrator* ) ... may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal.

29 U.S.C. § 1132(c) (emphasis added).

The Court does not make a determination at this time as to how this analysis affects the parties in this case. Once the proper plans and plan administrators are determined in Stage One discovery, the Court may rule on this issue. Furthermore, defendants' request for a determination on the propriety of a remand is premature. (Defs. Memo at 43).

VII. Self-Dealing under ERISA § 406(b)(2): Counts III and X

In Count III, Subscriber Plaintiffs allege that United

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 14

Not Reported in F.Supp.2d, 2002 WL 31413668 (S.D.N.Y.), 29 Employee Benefits Cas. 1488
**(Cite as: Not Reported in F.Supp.2d)**

Healthcare "engaged in prohibited self-dealing by virtue of its acquisition and operation of the UCR database, through which it has improperly obtained profits." (TAC, ¶ 132). Count X contains a very general statement as to AA's alleged "self-dealing" and participation in "financial arrangements that benefit the fiduciary at the expense of plan participants and beneficiaries." (TAC, ¶ 174). Both of these claims are dismissed with prejudice.

Section 406(b)(2) provides that a fiduciary shall not "in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries." 29 U.S.C. § 1106(b)(2). "The Second Circuit has read this section narrowly, holding that a transaction between the plan and a party having an adverse interest is required." *Gruby v. Brady,* 838 F.Supp. 820, 833 (S.D.N.Y.1993) (citation omitted); *see also Donovan v. Bierwirth,* 680 F.2d 263, 270 (2d Cir.1982) ( "We read this section of the statute as requiring a transaction between a plan and a party having an adverse interest ... We see no reason to think Congress intended the expansive interpretation of the various specific prohibitions of s 406 urged by the [plaintiff], particularly in light of the inclusion of the sweeping requirements of prudence and loyalty contained in s 404."). In addition, "there must be a transaction involving the monies, property, or other assets of the fund." *Gruby,* 838 F.Supp. at 833 (citation omitted).

*11 [12] In their Opposition, plaintiffs claim that United Healthcare engaged in self-dealing "through its acquisition by Ingenix of the flawed PHCS database from HIAA, its agreement for other United Healthcare subsidiaries to use that database improperly for setting UCR rates, and its sale of that database to other insurance companies for a profit." (Opp. at 56-57, fn. 37). As a preliminary matter, by not addressing the argument, plaintiffs are essentially conceding that they did not properly allege that AA engaged in self-dealing. Indeed, there are simply no facts alleged in the TAC that could support such a claim. Thus, the claim for self-dealing against AA in Count X is dismissed.

In addition, despite plaintiffs' argument as to United Healthcare, Count III must be dismissed. First, nowhere in the TAC do plaintiffs allege that Ingenix Inc. used "monies, property or other assets" of any of the funds to acquire the database from HIAA.[FN15] Second, the fact that any of the United Healthcare subsidiaries use the database in order to make claims decisions does not involve a transaction between a plan and a party adverse in interest. Finally, the TAC contains no facts to support plaintiffs' contention that United Healthcare sells the database to other insurance companies for a profit. Motion granted.

> FN15. The only information contained in the TAC regarding the transaction is as follows: "In 1998, Defendant Ingenix, Inc. purchased the UCR database, known as the Prevailing Healthcare Charge System (' PHCS') database, from the Health Insurance Association of America ('HIAA' ), an insurance trade association." (TAC, ¶ 31).

VIII. Failure to Supply Requested Information pursuant to ERISA § 104(b)(4): Count VI and XIII

In Counts VI and XIII, plaintiffs allege that United Healthcare and AA are liable under § 502(c) for failing to supply required information to certain of the Subscriber Plaintiffs pursuant to § 104(b)(4).[FN16]

> FN16. § 104(b)(4) provides in relevant part: "The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4).

A) Physician Charge Data is not an "Other" Instrument Under Which the Plan is "Operated"

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 15
Not Reported in F.Supp.2d, 2002 WL 31413668 (S.D.N.Y.), 29 Employee Benefits Cas. 1488
**(Cite as: Not Reported in F.Supp.2d)**

[13] Defendants argue that the physician charge data sought by plaintiffs is neither on the enumerated list of items in § 104(b)(4) nor an " other instrument[ ] under which the plan is established or operated." (Defs. Memo. at 55-58). The Court stated in its previous decision:
Although UCR data does impact the calculation of benefits, whether it establishes a right to benefits or a policy regarding benefit calculation cannot be determined at this stage in the proceedings. Thus, the Court cannot rule out that UCR data is information a plan administrator is obligated to disclose under § 104(b)(4).

*AMA v. UHC,* 2001 WL 863561, at *10.

The Court relies on its previous holding. Motion denied.[FN17]

>     FN17. This also addresses defendants' argument that because the plan administrators do not have a duty to disclose UCR data, then plaintiffs' claims in Count VII that United Healthcare is liable under § 405 as a co-fiduciary should also be dismissed. (Defs. Memo. at 59). This claim is allowed to proceed.

B) Certain AA Plaintiffs Fail to Allege Requesting Information in Writing

[14] As stated in the Court's previous decision, " [e]ven if § 104(b) requires the disclosure of UCR data, plaintiffs must have requested the UCR data in writing in order to trigger § 502(c) penalties." *Id.* at *11 (citation omitted). The Court held that Taylor had made the requisite request in writing, and also liberally construed the "direct" or "specific" requests made by Dr. Attkiss, Dr. Marcum, and Mitchell. *Id.* Here, defendants argue, and the Court agrees, that Steinberg, Coull and the Grishams fail to allege that they requested information in writing or that they even made "direct" or "specific" requests for such information. As a result, these plaintiffs' claims in Count XIII for § 104(b)(4) penalties must fail.

IX. Supplying Inadequate Summary Plan Description pursuant to ERISA § 102: Counts VI and XIII

*12 Section 102 requires that the participants and beneficiaries of any employee benefit plan be provided with a summary plan description ("SPD") as provided in § 104(b). 29 U.S.C. § 1022(a). The SPD must be "written in a manner calculated to be understood by the average plan participant" and must "be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." *Id* . In Counts VI and XIII, plaintiffs allege that they are entitled to injunctive and declaratory relief for United Healthcare's and AA's failure to provide certain plaintiffs with accurate SPD materials as required under § 102.

Defendants argue that the Finleys' Certificate of Coverage is not an SPD because it does not contain all of the information required to be in an SPD under § 102(b) such as the name and type of administration of the plan, the name and address of the administrator of the plan, and the source of the plan's financing. (Defs. Memo. at 60-61). Defendants further argue that even if the Court finds the Finleys' Certificate of Coverage to be an SPD, the information provided in it and the AA SPD, do not violate any obligations imposed by ERISA. (*Id.* at 61-62). However, these are factual questions that need not be determined on this motion.

X. Crema's State Law Claims: Counts XIV and XV

In Count XIV, plaintiff Crema asserts claims for breach of contract and the implied covenant of good faith and fair dealing against United Healthcare and Met Life. In addition to damages, and declaratory and injunctive relief, Crema also seeks exemplary damages. (TAC, ¶ 198; p. 57, L). In Count XV, Crema alleges that both United Healthcare and Met Life violated N.Y. Gen. Bus. L. § 349 which specifically prohibits deceptive acts or practices in the conduct of any business, trade or commerce. (TAC, ¶ 200). Crema seeks compensatory, statutory and exemplary damages, and declaratory and injunctive relief to remedy defendants' alleged

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                     Page 16
Not Reported in F.Supp.2d, 2002 WL 31413668 (S.D.N.Y.), 29 Employee Benefits Cas. 1488
**(Cite as: Not Reported in F.Supp.2d)**

deceptive practives. (TAC, ¶ 210; pp. 57-8, M).

A) Punitive Damages: Count XIV

[15] Defendants argue that Crema's request for punitive damages based solely on a breach of contract claim should be dismissed. The Court agrees. "It is a well-settled principle of New York law that the extraordinary remedy of punitive damages is not available for claims asserting merely a breach of contract." *Aniero Concrete Co., Inc. v. New York City Constr. Auth.,* No. 94 Civ. 3506(CSH), 2000 WL 863208, at *28 (S.D.N.Y. June 27, 2000). In *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995), the Court of Appeals clarified " the pleading elements required to state a claim for punitive damages as an additional and exemplary remedy when the claim arises from a breach of contract." *Id.* at 316, 639 N.Y.S.2d 283, 662 N.E.2d 763. The four prongs are as follows: 1) defendant's conduct must be actionable as an independent tort; 2) the tortious conduct must be of the egregious nature set forth in *Walker v. Sheldon,* 10 N.Y.2d 401, 404-405, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961); 3) the egregious conduct must be directed to plaintiff; and 4) it must be part of a pattern directed at the public generally. *New York Univ.,* 87 N.Y.2d at 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (citing *Rocanova v. Equitable Life Assurance Soc'y.,* 83 N.Y.2d 603, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994)). "Where a lawsuit has its genesis in the contractual relationship between the parties, the threshold task for a court considering defendant's motion to dismiss a cause of action for punitive damages is to identify a tort independent of the contract." *Id.*

*13 [16] Here, plaintiff Crema has not alleged a tort independent of the contract. The only argument advanced by plaintiffs is that its allegation of a violation of N.Y. Gen. Bus. L. § 349 in Count XV " is sufficiently independent of the cause of action for breach of contract to justify a punitive damages claim at the pleading stage." (Opp. at 81). In *New York University,* the plaintiff had also alleged deceptive business practices in violation of § 349, but this did not prevent the Court of Appeals from finding that the complaint failed to state a tort independent of the contract. *New York Univ.,* 87 N.Y.2d at 315, 320-321, 639 N.Y.S.2d 283, 662 N.E.2d 763. Thus, plaintiff Crema's claim for punitive damages in Count XIV is dismissed.

B) Statute of Limitations

[17] Defendants argue that Crema's claims based on denial of benefits asserted prior to two years before the action was brought are time-barred. (Defs. Memo. at 68-70). A section of the Empire Plan documents entitled "Time Limits on Starting Lawsuits" states: "Lawsuits to obtain benefits may not be started less than 60 days or more than two years following the date you receive written notice that benefits have been denied." (Fieldstein Aff. Exh. M at 72). Plaintiffs adequately demonstrate that Crema commenced this action on March 15, 2000, within two years of the date he received written denials of his appeals (dated March 29, 1999 and May 6, 1999). (Epstein Aff. ¶ 36 and Exh. L). Motion denied.

Conclusion

For the foregoing reasons, the Court grants in part and denies in part defendants' motion to dismiss with prejudice.

S.D.N.Y.,2002.
American Medical Ass'n v. United Healthcare Corp.
Not Reported in F.Supp.2d, 2002 WL 31413668 (S.D.N.Y.), 29 Employee Benefits Cas. 1488

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.