Exhibit 5

**Westlaw.**

Not Reported in F.Supp.2d                                                                                                           Page 1

Not Reported in F.Supp.2d, 2004 WL 3019097 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Skidmore Energy, Inc. v. KPMG LLP
N.D.Tex.,2004.
Only the Westlaw citation is currently available.
    United States District Court,N.D. Texas, Dallas
                        Division.
    SKIDMORE ENERGY, INC., et al. Plaintiffs,
                           v.
           KPMG, et al. Defendants.
              **No. Civ.A.3:03CV2138-B.**

                    Dec. 28, 2004.

Gary Sullivan, Sullivan & Associates, Dallas, TX, for Plaintiffs.
Timothy W. Mountz, Baker Botts, Michael V. Powell, James David Walker, Locke Liddell & Sapp, Josephine H. Jamison, Bell Nunnally & Martin, Robert Edwin Davis, Hughes & Luce, Timothy S. Perkins, P. Theodore Stoinoff, Smith Underwood & Perkins, Dallas, TX, for Michael R. Knox, Law Office of Michael R. Knox, Fort Worth, TX, George W. Lederer, Jr., Crain Caton & James, Houston, TX, Mark C. Hansen, Michael K. Kellogg, Steven F. Benz, Kellogg Huber Hansen Todd & Evans, Washington, DC, for Defendants.

                *MEMORANDUM ORDER*
BOYLE, J.
*1 Before the Court are the Motions of Defendants KPMG LLP ("KPMG"), Abdu Saoud ("Saoud"), Reuven M. Bisk ("Bisk") and Crain, Caton & James, P.C. ("Crain, Caton") to Dismiss for Failure to State a Claim Pursuant to Rules 12(b)(6) and 9(b) and, in the Alternative, for Lack of Subject Matter Jurisdiction, filed January 23, 2004, March 8, 2004, and January 16, 2004, respectively. Also before the Court are the Motions of Defendants John Quinn ("Quinn") and Chris Rosetti ("Rosetti") to Dismiss for Lack of Personal Jurisdiction, filed January 16, 2004. For the reasons explained below, each of the Defendants' motions is GRANTED, and the Plaintiffs' claims against these Defendants are DISMISSED. Additionally, the Court DISMISSES the Plaintiffs' claims against Defendants Rosetti, Quinn, Saudi Aramco and Faisal Islamic Bank ("Faisal") for failure to state a claim and for lack of subject matter jurisdiction.

        I. FACTUAL AND PROCEDURAL
                BACKGROUND

As described in prior orders of this Court, this case arises out of the failed investments of two American companies, Skidmore Energy, Inc. ("Skidmore") and Geoscience International, Inc. ("Geoscience") in Maghreb Petroleum Exploration S.A. ("MPE") (formerly Lone Star Energy Corporation), a Moroccan energy company. *See generally* (Plaintiffs' Original Complaint ("Complaint")). Because the facts applicable to the instant motion are identical to those set out in the Court's Memorandum Order of September 3, 2004, certain pertinent facts as recited in that order will be repeated here. On July 20, 1999, Skidmore, a Texas oil and gas exploration company, formed and capitalized MPE in Morocco for the purpose of discovering commercial quantities of hydrocarbons, investing substantial sums of money, and employing Geoscience, another Texas company, to collect geologic data to detect the presence of hydrocarbons under the Moroccan soil. (*Id.* at 2, ¶¶ 1, 4, 7, 11-13). Skidmore allegedly made this investment after retaining the services of, and receiving assurances from, Azzedine Benmoussa ("Benmoussa"), a Moroccan citizen and an accountant at a KPMG member firm located in Morocco. (*Id.* at 3, ¶¶ 5-7; Benmoussa Motion Brief) at 5). In May 2000, Skidmore's investment began to pay off when one well "cut pay" by striking a deposit of oil, natural gas, and gas condensate. (Complaint at ¶ 14).

Sometime before September 2000, Skidmore agreed to take on several Moroccan investors who allegedly invested in MPE through Mideast Fund

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                       Page 2
Not Reported in F.Supp.2d, 2004 WL 3019097 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

for Morocco ("MFM") (formerly Armadillo Holdings, Ltd .), a Liechtenstein company. (*Id.* at ¶¶ 8-10, 16). Skidmore asserts that it later discovered that MFM was actually by owned Prince Bandar bin Sultan Abdulaziz ("Prince Bandar") and Dallah AlBaraka Holding Co. ("Dallah"), a Saudi Arabian corporation allegedly controlled by Saleh Abdullah Kamel ("S.A.Kamel"), (*Id* . at 4-7, ¶¶ 27-28), and his son, Abdullah Kamel, all apparently citizens of Saudi Arabia. (Plaintiffs' Response to Defendant Saleh Abdullah Kamel's Motion to Dismiss under Rules 12(b)(2) and 12(b)(6) at 2; Complaint at 5-7).

*2 According to the Plaintiffs, MFM "refused to disclose its true ownership, refused to cooperate in providing the financing it had agreed to provide [to MPE], and interfered with Skidmore's efforts to bring in additional financing or shareholders...." (Complaint at ¶ 31; *see also id.* at ¶¶ 16-26, 34-36) (outlining the rocky investment relationship between Skidmore, MFM, and MPE). Specifically, the Plaintiffs assert that the Defendants MFM and Mediholding S.A. ("Mediholding") staged an illegal takeover of MPE, (*Id.* at 7, ¶¶ 31-43), and that the Defendants generally "carried out a scheme to destroy the value of Plaintiff Skidmore's equity in [MPE]." (*Id.* at ¶ 41). The Plaintiffs also argue that the Defendants MFM and Mediholding improperly replaced MPE's president with current MPE director, Defendant Nackvi. (*Id.* at ¶ 33). (*Id.* at 6, 7; Brief in Support of Motion to Dismiss under Rule 12(b)(2) of Defendant Shezi Nackvi ("Nackvi Motion Brief") at 1-2). As a result of the Defendants' allegedly illegal actions, the Plaintiffs contend that MPE became "financially impaired," " alienated its creditors," and "shut down all offshore and onshore operations," and the Plaintiffs' interest in MPE was fraudulently diluted. (Complaint at ¶ 37 & 43).

On September 19, 2003, the Plaintiffs filed suit in this court, seeking recovery against various defendants for alleged violations of the United States' Sherman Antitrust Act, 15 U.S.C. §§ 1-2, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.,* and for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, libel, civil conspiracy, and fraud. *See generally* (Complaint).

In three separate orders, the Court has dismissed thirteen of the defendants for lack of personal jurisdiction. First, in its Order of September 3, 2004, the Court granted the motions to dismiss of the non-resident defendants being sued in their individual capacity, Mohammed Benslamine (" Benslamane"), Moulay Abdellah Alaoui ("Alaoui"), Benmoussa, Abdullah Kamel, S.A. Kamel, Richard Menkin ("Menkin") and Nackvi (Memorandum Order Dated September 3, 2004). Then, on December 3, 2004, the Court granted the motions to dismiss of certain nonresident companies, including MPE, MFM, Samaha Trading (UK) Ltd. ("Samaha" ), Dallah, and Mediholding. (Memorandum Order Dated December 3, 2004). Also that same day, the Court granted the motion to dismiss of the Saudi Arabian Ambassador to the United States being sued in his individual capacity, Prince Bandar. (Memorandum Order Dated December 3, 2004).

Thus, the remaining defendants are KPMG, Quinn, Rosetti, Saoud, Bisk, Crain, Caton, Faisal and Saudi Aramco [FN1] (collectively "the remaining Defendants"). Presently before the Court are motions of Defendants KPMG, Saoud, Bisk and Crain, Caton to dismiss for failure to state a claim and for lack of subject matter jurisdiction and the motions of Defendants Rosetti and Quinn to dismiss for lack of personal jurisdiction.

> FN1. Both Faisal and Saudi Aramco were served via publication. Neither party has filed an answer to the Plaintiffs' Complaint.

II. ANALYSIS

A. *Motions of Defendants KPMG, Saoud, Bisk and Crain, Caton for Dismissal Pursuant to Rules 12(b)(6) and 9(b).*

1. Legal Standards.

a. Standard for Dismissal Under Rule 12(b)(6).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 3
Not Reported in F.Supp.2d, 2004 WL 3019097 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

*3 Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982). The Court liberally construes the complaint in the plaintiff's favor, and all pleaded facts are taken as true. *Campbell v. Wells Fargo Bank, N.A.,* 781 F.2d 440, 442 (5th Cir.1986). Unless it appears beyond doubt that the plaintiff cannot prove any set of facts entitling it to relief, the complaint should not be dismissed. *Conley v. Gibson,* 355 U.S. 42, 45 (1957).

b. Heightened Pleading Requirements of Rule 9(b).

Rule 9(b) elevates the federal rules' liberal pleading standards to require plaintiffs to plead the circumstances of constituting claims for fraud claims with particularity. The Fifth Circuit requires plaintiffs alleging fraud to specifically allege the " time, place, and contents of the false representations, as well as the identity of the person making the representation and what the person obtained thereby." *Tuchman v. DSC Comm. Corp.,* 14 F.3d 1061, 1068 (5th Cir.1994) (citations omitted); *Williams v. WMX Tech., Inc.,* 112 F.3d 175, 177 (5th Cir.1994), *cert. denied,* 522 U.S. 966, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997). Motions to dismiss under Rule 9(b) receive the same treatment as motions for dismissal pursuant to Rule 12(b)(6). *See Shushany v. Allwaste, Inc.,* 992 F.3d 517, 520 (5 th Cir.1993) ("A dismissal for failure to state fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim.").

2. The Plaintiffs Have Failed to Plead a Cause of Action Against KPMG LLP Based on the Alleged Actions of Its Moroccan Member Firm.

As an initial matter, KPMG contends that the Plaintiffs' claims against it must fail as a matter of law because, as a limited liability partnership, it may not be held liable for the Moroccan KPMG member firm which engaged in the alleged conduct. (KPMG Motion at 3). The Plaintiffs' Complaint contains the following allegations to support its theory of liability:

Defendant KPMG is a company organized under the law of Switzerland with its principal offices at Burgermeester Rijnderslaan 10, 1185 MC Amstelveen, Netherlands, and 280 Park Avenue, New York, New York 10017. For the purposes of this Complaint and in fact, KPMG acted and continues to act as a single enterprise, thus each office of KPMG, as well as its partners, members, personnel serving on its management bodies, professional staff and agents are jointly and severally liable for the damages caused by any KPMG entity in furtherance of the schemes set forth herein below, both for their direct actions in this matter, as well as for failure to supervise adequately KPMG and its personnel.

(Complaint at 3) (emphasis added).In 1999, when Skidmore retained KPMG [Morocco], Mr. Benmoussa gave explicit assurances that he was the exclusive country representative of KPMG's worldwide organization, and Skidmore relied on his representations, which were confirmed on KPMG's website. Plaintiffs are informed and believe and therefore allege that other KPMG offices and members in the United States were involved in the account. Specifically, John Quinn from the Short Hills office of KPMG in New Jersey and Chris Rosetti from the Albany office in New York performed accounting services on the account in Rabat, Morocco in 2002. At the time, Mr. Gustin believed he would receive the quality of service and treatment from Mr. Benmoussa and his colleagues that one would expect from any KPMG professional.

*4 (Complaint at 8). (emphasis added).

KPMG contends that the Plaintiffs' allegations that KPMG was acting as a "worldwide organization" are "insufficient as a matter of law to state a claim against KPMG LLP for the acts of the KPMG member firm in Morocco"-and points out that numerous courts addressing similar allegations " have required plaintiffs to plead substantially more than a bare bones "unified company theory." (KPMG Motion at 3) (citing *In re Asia Pulp & Paper Sec. Litig.,* 293 F.Supp.2d 391 (S.D.N.Y.2003); *Howard v. Klynveld Peat Marwick Goerdeler,* 977 F.Supp. 654, 662-63 (S.D.N.Y.1997); *In re AM Int'l, Inc. Sec. Litig.* 606

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                                     Page 4
Not Reported in F.Supp.2d, 2004 WL 3019097 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

F.Supp. 600, 607 (S.D.N.Y.1985); *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 634 (Tex.App.-Dallas 1993, writ denied). The Court agrees.

The cases cited by KPMG, although not in the RICO context, are instructive. In *In re Asia Pulp & Paper Securities Litigation,* the federal court for Southern District of New York examined allegations that another accounting firm, Andersen Worldwide Societe Cooperative ("AWSC") was liable as a "control person" for the actions of member firm Arthur Andersen Singapore for securities fraud. 293 F.Supp.2d at 394-96. The court found that the plaintiffs failed to plead facts sufficient to support a reasonable inference of control-that AWSC "possessed 'the power to direct or cause the direction of the management and policies of [Arthur Andersen Singapore] ...' " *Id.* at 396. Key to the court's decision was the plaintiffs' failure to allege that "AWSC, pursuant to agreement or otherwise, was able to control or in any way influence the particular audits conducted or opinions offered by its individual member firms." *Id.* The court rejected, as other courts have in various contexts, the " 'one firm,' unified-company theory." *Id.* (citing, e.g., *Howard,* 977 F.Supp. at 662-63 (refusing to exercise personal jurisdiction based on KPMG's public relations materials that suggested the company was a global firm); *In re AM Int'l, Inc. Sec. Litig.,* 606 F.Supp. at 607 (dismissing claims against certain Price Waterhouse entities and finding the plaintiffs' allegations that Price Waterhouse affiliates world-wide operated as one entity insufficient to state a claim for aiding and abetting).

Notably, the KPMG website the Plaintiffs purportedly relied upon as confirmation of Benmoussa's alleged assertions regarding KPMG's operation as a world-wide organization (Complaint at 3), specifically states that:
KPMG International is a Swiss cooperative of which all KPMG firms are members. KPMG International provides no professional services to clients. Each member firm is a separate and independent legal entity and each describes itself as such (e.g., 'KPMG LLP, a U .S. limited liability partnership, is a member of KPMG International'

or 'KPMG LLP, the U.S. member firm of KPMG International').

(KPMG Motion Appendix at 5).[FN2]

> FN2. The Fifth Circuit has approved the consideration of "documents a defendant attaches to a motion to dismiss as part of the pleadings if they are referred to in the plaintiff[s'] complaint and are central to [their claims]." *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir.2000).

**\*5** In response to KPMG's motion to dismiss, the Plaintiffs, without disputing KPMG's legal arguments regarding the liability issue, assert, for the first time in their Response brief, an alter ego theory, arguing that the Court should pierce the corporate veil and hold KPMG liable for the Moroccan entity. (Resp. to KPMG Motion at 5-6). The Plaintiffs also assert, without any authority, that it would be unfair not to allow them to sue KPMG LLP for the acts of the Moroccan member firm and that KPMG has a higher standard of care toward the Plaintiffs than the rest of the defendants. (*Id.* at 6-7). The Court agrees with KPMG that any discussion of standard of care is irrelevant in light of the Plaintiffs' allegations as pleaded. (KPMG Reply at 3-4; *see also generally* Complaint).

Furthermore, it is well established that the Plaintiffs may not amend their Complaint through briefs submitted in response to KPMG's motion to dismiss. *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984) *cert. Denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985); *Davis v. Davis,* 1998 WL 51366, at \*2 n. 3 (N.D.Tex. Jan.21, 1998) (Fish, J.) (citing *Beanal v. Freeport-McMoRAN, Inc.,* 969 F.Supp. 362, 367 (1997). Finally, an alter ego theory of liability is inapplicable to the relationship between KPMG LLP and the Moroccan member firm, because KPMG LLP is not a corporate entity but a limited liability partnership organized under Delaware law. *See, e.g., Pinebrook Prop., Ltd. v. Brookhaven Lake Prop. Owners Ass'n,* 77 S.W.3d 487, 499-500 (Tex.App.-Texarkana 2002, pet. denied) (holding

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 5
Not Reported in F.Supp.2d, 2004 WL 3019097 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

that alter ego theories are inapplicable to partnerships because they are unnecessary). The Plaintiffs have failed to plead a cognizable claim against KPMG LLP based on the actions of its member firm in Morocco. Therefore, the Court GRANTS KPMG's motion and DISMISSES all of the Plaintiffs' claims against it.

Although the Court has determined that the Plaintiffs have failed to state a claim against KPMG LLP based on the actions of its Moroccan member firm, out of an abundance of caution, the Court will also analyze whether the Plaintiffs have otherwise stated claims against KPMG LLP, at the same time it analyzes whether the Plaintiffs have stated claims against Defendants Bisk and Crain, Caton. Moreover, recognizing that a district court may dismiss a complaint on its own motion for failure to state a claim, the Court will likewise examine whether the Plaintiffs have failed to state a claim against the other remaining defendants, Rosetti, Quinn, Saudi Aramco and Faisal.

   3. The Plaintiffs' Antitrust Claims Against the Remaining Defendants Fail as a Matter of Law.

In their First Cause of Action, the Plaintiffs allege two antitrust counts against all Defendants generally, both claiming violations of Sections 1 and 2 of the Sherman Antitrust Act ("the Sherman Act"). (Complaint at 16-17). KPMG contends that the Plaintiffs' antitrust claims fail for two reasons: (1) failure to sufficiently identify the relevant product and geographic markets and failure to properly plead claims for restraint of trade and civil conspiracy. The Court agrees as to all remaining defendants.

   a. Relevant Market.

*6 The Plaintiffs bear the burden of identifying the relevant product and geographic markets, and must do so in compliance with the rules of "reasonable interchangeability" and "cross-elasticity of demand." *Apani Southwest, Inc. v. Coca Cola Enter., Inc.,* 300 F.3d 620, 626, 628 (5th Cir.2002) (dismissing the plaintiff's Sherman Act claim for failure to plead a relevant market); *Rockbit Indus. U.S.A., Inc. v. Baker Hughes, Inc.,* 802 F.Supp. 1544, 1550-51 (S.D.Tex.1991) (same). Courts analyzing whether a plaintiff has met its burden should consider both the "extent to which the seller's product is 'interchangeable in use' and the degree of 'cross-elasticity of demand between the product itself and substitutes for it.' " *Id.* Although it is difficult to distinguish from their Complaint (Complaint at 16-18), the Plaintiffs state in their Response to KPMG's Motion that the relevant market is "hydrocarbon production in Morocco, including all production, refining and transportation. (Resp. to KPMG Motion at 7). While KPMG contends that this cannot be the relevant market because it is actually a combination of two products-oil and gas, it cites no authority for this position, and the Court has found no such authority in its own research. (Complaint at 16-17).

Under the law of the Fifth Circuit, the relevant geographic market must "correspond to the commercial realities of the industry and be economically significant." *Apani,* 300 F.3d at 628. The Plaintiffs also contend in their Response to KPMG's Motion that they have identified the country of Morocco is the relevant geographic market. (Resp. to KPMG at 7). The Plaintiffs' underlying assertion that their ability to compete in the hydrocarbon production, including oil and gas production, refining, and transportion is limited to Morocco is untenable and goes against the purpose of antitrust laws and of the Sherman Act, which is meant to protect the viability of competition, not the individual competitors. *Double D Spotting Serv., Inc. v. Supervalu, Inc.,* 136 F.3d 554, 561 (8th Cir.1998). Because the Plaintiffs' antitrust claims fail on other grounds, however, as discussed below, the Court declines to address whether the Plaintiffs have properly pleaded a relevant antitrust market.

   b. The Plaintiffs Have Failed to Plead an Agreement to Restrain Trade and Civil Conspiracy.

Plaintiffs' antitrust claims rest on their allegations that the Defendants as a whole have together restrained trade in violation of Section 1 of the Sherman Act and engaged in a conspiracy to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 6
Not Reported in F.Supp.2d, 2004 WL 3019097 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

monopolize the relevant market in violation of Section 2 of the Sherman Act. (Complaint at 16-18). Thus, the Plaintiffs must allege facts sufficient to show that there was joint or concerted action among more than one of the defendants that unreasonably restrained trade in interstate or foreign commerce. *Taylor Sales,* 28 F.3d at 1385-86. In order to establish that there was joint or concerted action among the defendants, the Plaintiffs must allege facts which, if true would support the existence of a conspiracy among the defendants and support the existence of a motive for Defendants KPMG, Rosetti, Quinn, Bisk, Crain, Caton, Faisal, and Saudi Aramco to participate in the alleged conspiracy. *See Larry R. George Sales Co. v. Cool Attic Corp.,* 587 F.2d 266, 274 (5th Cir.1979). The Court will analyze the Plaintiffs' allegations as to each of the remaining defendants separately.

*7 First, as to Defendant KPMG, the only facts alleged are that "[a]ided by an inaccurate and fraudulent accounting analysis prepared by KPMG ... Defendant [s] MFM and Mediholding approved a resolution issuing Defendant MFM nearly 1.6 million additional Lone Star shares and diluting Skidmore's 44% interest to 0.48%. (Complaint at 13). This is the only attempt by the Plaintiffs to connect Defendant KPMG LLP, a U.S. accounting firm, to the alleged conspiracy or agreement to restrain trade in the hydrocarbon market. As such, the Plaintiffs' allegations are insufficient to state a claim against Defendant KPMG. *See, e.g., Nelson Radio & Supply Co. v. Motorola, Inc.,* 200 F.2d 911, 913-14 (5th Cir.1952). There are no facts supporting a motive on the part of KPMG LLP or actions by KPMG LLP constituting participation in an alleged conspiracy. As such, the Plaintiffs' antitrust claims against these defendants fail as a matter of flaw and are therefore DISMISSED.

Second, as to Defendants Rosetti and Quinn, the Plaintiffs' allegations against them regarding their part in the alleged conspiracy are even more tenuous, as the sole allegations against them are that they work in KPMG's New York and New Jersey offices, respectively (Complaint at 3-4) and that they each "performed accounting services on the account in Rabat, Morocco in 2002." (*Id.* at 8). As such, the Plaintiffs claims against Defendants Rosetti and Quinn fail to include a single fact connecting either of these Defendants to a conspiracy to restrain trade in the relevant market, and are therefore DISMISSED as a matter of law. *See Larry R. George Sales Co.,* 587 F.2d at 273-74.

Third, the Plaintiffs' claims against Defendants Bisk and Crain, Caton merely include a vague reference to "aid" provided by these Defendants to Defendants MFM and Mediholding in approving the resolution that allegedly diluted Skidmore's interest in MPE. (Complaint at 13). These allegations, like those against Defendants KPMG, Rosetti and Quinn, are insufficient as a matter of law to plead the existence of a conspiracy or agreement to restrain trade and are DISMISSED. *See Larry R. George Sales Co.,* 587 F.2d at 273-74 ( "A general allegation of the forming of a combination or conspiracy with resulting injury to the public and to the Plaintiff[s] simply does not satisfy the requisites for stating a cause of action."); *Futurevision Cable Sys. of Wiggins, Inc. v. Multivision Cable TV Corp.,* 789 F.Supp. 760, 773-74 (S.D.Miss.1992).

Fourth, regarding Defendant Saoud, Plaintiffs have not alleged any facts specifically identifying him and connecting him to a conspiracy or agreement to restrain trade, and, in fact, merely state in their response on the issue that they "are entitled to prove their case before a jury after normal discovery," and that Saoud "should be required to file an answer and the parties should proceed with discovery in due course." The Court finds the Plaintiffs' antitrust allegations against Defendant Saoud to be insufficient as a matter of law and DISMISSES the Plaintiffs' antitrust claims against him. *See Larry R. George Sales Co.,* 587 F.2d at 273-74.

*8 Finally, the Court examines whether the Plaintiffs have stated antitrust claims against Defendants Faisal and Saudi Aramco. As with Defendant Saoud, the Plaintiffs have failed to allege a single fact specifically identifying either Defendant and connecting it to a conspiracy or agreement to restrain trade. The Court therefore finds that the Plaintiffs antitrust claims against Defendants Faisal and Saudi Aramco should be DISMISSED. *See* (*id.*).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 7
Not Reported in F.Supp.2d, 2004 WL 3019097 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

### c. The Plaintiffs' Antitrust Claims Fail Because Their Only Damages Relate to a Foreign Injury.

The final reason for dismissal of the Plaintiffs' antitrust claims lies with the lack of domestic injury under the Sherman Act. The Foreign Trade Antitrust Improvements Act of 1982 (FTAIA) specifically excludes claims under the Sherman Act causing only foreign injury unless the conduct causes significant harm to U.S. imports, domestic commerce, or U.S. exporters. *F. Hoffman-LaRoche Ltd. v. Empagran S.A.,* 2004 WL 130031, at *3 (U.S.Dist.Col.). In *Empagran,* the U.S. Supreme Court recently analyzed this statute in a factually similar context. *Id.* In *Empagran,* vitamin sellers world-wide formed an agreement to fix prices, which resulted in a higher cost for vitamins both domestically and, independently, in foreign countries. *Id.* The Court concluded that "under this scenario, a purchaser in the United States could bring a Sherman Act claim under the FTAIA based on *domestic injury,* but a purchaser in Equador could not bring a Sherman Act claim based on *foreign harm." Id.* (emphasis added). Defendants Bisk and Crain, Caton assert that, because the Plaintiffs' sole alleged antitrust damages-the alleged dilution of its interest in MPE (formerly Lone Star Energy) was independent of any alleged increase in the price of oil in the U.S., their claims are prohibited by the FTAIA. (Bisk and Crain, Caton Supp. Reply at 1-2). The Court agrees, and finds another basis for dismissal of the Plaintiffs' claims against the remaining Defendants.

In sum, the Court DISMISSES the Plaintiffs' antitrust claims against each of the remaining Defendants: KPMG, Rosetti, Quinn, Bisk, Crain, Caton, Faisal and Saudi Aramco. Next, the Court will address whether the Plaintiffs have stated RICO claims against any of these Defendants.

### 4. The Plaintiffs RICO Claims Against the Remaining Defendants Fail as a Matter of Law.

The second cause of action asserted in the Plaintiffs' Complaint alleges RICO claims against all Defendants generally pursuant to 18 U.S.C. § 1962(c) and (d). (Complaint at 19-21; RICO Statement at 4). At the Court's request, the Plaintiffs also filed a "RICO Statement" on October 2, 2003, which sets out their RICO claims in more detail.

Sections (c) and (d) of the RICO statute read as follows: (c) a person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through racketeering activity; and (d) a person cannot conspire to violate subsections (a), (b), or (c). The Plaintiffs must allege the following essential elements under either section (c) or (d) to state a claim for which relief may be granted: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an *enterprise." Crows,* 43 F.3d at 204 (citations omitted) (emphasis added); *Calces Marine Natal Bank v. Grant,* 943 F.2d 1453, 1461 (5th Cir.1991). KPMG, Rosetti, Quinn, Bisk, Crain, Caton and Saoud all assert that the Plaintiffs RICO claims against them fail as a matter of law. The Court agrees, and finds that the Plaintiffs have failed to allege RICO claims against each of these Defendants as well as Defendants Faisal and Saudi Aramco. The Court will analyze the Plaintiffs claims as to the remaining Defendants below.

### a. The Plaintiffs Have Failed to Sufficiently Plead the Existence of a RICO Enterprise.

*9 In order to plead a cognizable RICO claim, the Plaintiffs must first plead the existence of an enterprise, which may be a legal entity or a non-legal entity that is a "group of individuals associated in fact." 18 U.S.C. § 1962(c), (d); § 1961(4); *United States v. Phillips,* 664 F.2d 971, 1013 (5th Cir.1981). The Plaintiffs' RICO claims against all of the remaining Defendants fail as a matter of law because the Plaintiffs have failed to meet their initial burden and plead facts supporting the existence of an enterprise, which is essential to a violation of 18 U.S.C. §§ (c) or (d).

Because the Plaintiffs have not pleaded that there is a legal entity constituting a RICO enterprise, the Court assumes that the Plaintiffs are attempting to plead the second option-a nonlegal entity that is associated in fact.[FN3] In its Order regarding the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 8
Not Reported in F.Supp.2d, 2004 WL 3019097 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

Plaintiffs' RICO Case Statement ("RICO Order"), the Court specifically required the Plaintiffs to " Describe in detail the alleged enterprise for each RICO claim ..." and required the Plaintiffs to set forth specific information. (RICO Order at 3-4). In its RICO Statement, the Plaintiffs set forth the following pertinent allegations regarding the alleged RICO enterprise:

> FN3. While the Plaintiffs repeatedly refer to the "KPMG enterprise" and the "Maghreb Enterprise" in their RICO statement, they have not sufficiently identified any RICO enterprise nor alleged any facts supporting why any of the named "enterprises" in their complaint would constitute a RICO enterprise.

a. State the names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise; (RICO Order at 3-4).

The enterprise is constituted of the following entities and individuals:
[Dallah], including the following agents: [Prince Bandar], S.A. Kamel, Abdellah Kamel.
[Faisal], including the following agents: S.A. Kamel.
[Samaha], including the following agents: Nackvi, Menkin, S.A. Kamel and Abdellah Kamel.
[Mediholding], including the following agents: Alaoui and Benslimane.
KPMG, including the following agent: Benmoussa.
MFM, including the following shareholders, [Saoud], Mediholding, [Faisal], [Samaha] and [Dallah].
MPE, including the following current or former directors: Nackvi and Abdellah Kamel.

RICO Statement at 19-20.

b. Describe the structure, function and course of conduct of the enterprise; (RICO Order at 4).

The enterprise comprises of multiple individuals and entities who through a series of misrepresentations and nondisclosures converted the American technology and capital to their own use.
The day to day operation of the enterprise is directed by Defendants Nackvi, Benslamine and others. Plaintiff[s are] informed and believ[e] that these Defendants acted and continue to act under the direction of S.A. Kamel and [Prince Bandar]. Nackvi is assisted by Menkin, Abdellah Kamel, Benslimane, Alaoui and Benmoussa.

RICO Statement at 20-21.

The Plaintiffs do not allege that any of the remaining Defendants are employees, officers or directors of the alleged enterprise. (*Id.* at 21). Without alleging supporting factual allegations, the Plaintiffs make the conclusory assertion that "[a]ll named defendants are either the enterprise itself or members of the enterprise." (*Id.*). When questioned whether any of the defendants are associated with the enterprise (forming the basis of the associated in fact method of alleging the existence of an enterprise), the Plaintiffs merely state that "[t]o the best of Plaintiffs' information and belief, all named defendants are associated with the enterprise as set forth above," and that [t]he precise relationships will be defined further after discovery and through testimony of experts and records. Further, the Plaintiffs make the conclusory claim, without any factual allegations, that the KPMG Enterprise (comprised of KPMG LLP, Benmoussa, Rosetti and Quinn) (RICO Statement at 2) and the Maghreb Enterprise (comprised of MFM, S.A. Kamel, Dallah, Abdellah Kamel, Samaha, Benslimane, Alaoui, Nackvi and Menkin) (*Id.* at 3) "act in concert." (*Id.* at 22).

*10 The Plaintiffs have failed to allege facts supporting the continuity required to allege an enterprise. *See Calces,* 943 F.2d at 1461, 1462 (" Continuity or the ongoing nature of an association in fact is the linchpin of enterprise status.") (citations omitted); *Marriot Bros.,* 704 F.Supp. at 742. The Plaintiffs must allege facts supporting an associated in fact enterprise that is more than the sum of the alleged criminal acts. *Montesano v. Seafirst Commercial Corp.,* 818 F.2d 423, 426-27 (5th Cir.1987). In *Delta Truck v. J.I. Case Co.,* the Fifth Circuit clarified the requirements for an

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 9
Not Reported in F.Supp.2d, 2004 WL 3019097 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

associated-in-fact enterprise, stating that it must "(1) have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization, and (3) its members must function as a unit as shown by a hierarchical or consensual decision making structure." 855 F.2d 241, 243 (5th Cir.1988) (citations omitted).

First, the Plaintiffs have not only failed to allege that the enterprise exists separate and apart from the pattern of racketeering, they allege the exact opposite, stating that "[t]here is no difference between the activities of the enterprise and the pattern of racketeering activity." (RICO Statement at 22). Second, the Plaintiffs have put forth no allegations that the enterprise is an ongoing organization with continuing membership, as is required for an enterprise, and in fact, speaks of the enterprise as a composition of individuals who "through a series of misrepresentations and nondisclosures converted the American technology and capital to their own use." (RICO Statement at 20). This single alleged goal is insufficient to allege the continued membership required to state a claim. See Manax v. McNamara, 842 F.2d 808, 811-12 (5th Cir.1988); Marriot Bros., 704 F.Supp. at 741. Finally, the Plaintiffs have not made any allegations that the enterprise operates with a unified decision-making structure (Manax, 842 F.2d at 811), but rather makes the conclusory assertion that Defendants Nackvi, Benslimane and others operate the day to day activity at the direction of S.A. Kamel and Prince Bandar, and that Nackvi is assisted by Menkin, Abdellah, Kamel, Benslimane, Alaoui and Benmoussa. (RICO Statement at 20). These allegations are problematic in that there are no factual allegations alleged which support the conclusions drawn by the Plaintiffs. See Manax, 842 F.2d at 811. The allegations are especially deficient as they pertain to the remaining Defendants: KPMG, Rosetti, Quinn, Bisk, Crain, Caton, Faisal and Saudi Aramco, none of which are mentioned specifically in the description of the decision-making structure of the enterprise. (RICO Statement at 12-13).

The Court finds that the Plaintiffs have failed to allege the existence of an enterprise as required to allege a RICO claim, and the Plaintiffs RICO claims against the remaining Defendants thus fail as a matter of law and are DISMISSED.

b. There are Additional Bases for Dismissal of the Plaintiffs' RICO Claims.

*11 Additionally, the Plaintiffs RICO claims fail against Defendants KPMG, Rosetti, Quinn, Bisk, Crain, Caton, Faisal and Saudi Aramco because there are insufficient allegations of a pattern of racketeering activity against these defendants. See Tel-Phonic Serv., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1139-40 (5th Cir.1992).[FN4] Finally, the Plaintiffs' claims against the remaining defendants for violations of Section 1962(d) of the RICO statute because the Plaintiffs have failed to even allege that there was an agreement among any of the remaining Defendants and other alleged coconspirators to commit any of the alleged predicate acts. See Tel-Phonic, 975 F.2d at 1140. For all of these reasons, the Plaintiffs' RICO claims against the remaining Defendants are DISMISSED for failure to state a claim.

FN4. In fact, the only remaining Defendant the Plaintiffs attempt to allege at least two predicate acts against is KPMG, whom the Plaintiffs claim (1) engaged in a fraudulent audit and (2) refused to cooperate with another accounting firm the Plaintiffs claim to have retained to conduct an audit of MPE. (RICO Statement at 15). As the Fifth Circuit in Tel-Phonic explained, the intent of RICO is to put a halt to activities amounting to or threatening "long-term criminal activity." 975 F.2d at 1141. Notably, neither of the two activities the Plaintiffs describe is a racketeering activity as described in the RICO statute. 18 U.S.C. § 1961(1).

5. The Plaintiffs' State Law Claims Against the Remaining Defendants are Dismissed for Want of Subject-Matter Jurisdiction.

The Court has dismissed all of the Plaintiffs' federal claims against each of the remaining

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                 Page 10

Not Reported in F.Supp.2d, 2004 WL 3019097 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

Defendants-KPMG, Rosetti, Quinn, Bisk, Crain, Caton, Faisal and Saudi Aramco. The only claims remaining against these Defendants are the Plaintiffs' state law claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraud and libel. Moreover, the parties have not begun to conduct discovery in this Court, thirteen (13) of the original defendants have been dismissed for lack of personal jurisdiction, and all the situs of the conduct at issue is all centered in the country of Morocco. "[T]he balance of the factors to be considered under the federal jurisdiction doctrine," including judicial economy, convenience, fairness or the existence of important federal policies, " weigh heavily in favor of declining jurisdiction[,]" in this case, where all federal law claims have been dismissed. *Rahr v. Grant Thornton LLP,* 142 F.Supp.2d 793, 801 (N.D.Tex.2000); *Parker & Parsley Petroleum v. Dresser Indus.,* 972 F.2d 580, 590 (5th Cir.1992) (finding abuse of discretion by the district court in refusing to dismiss state law claims after all federal law claims were dismissed).

### B. *Motions of Defendants Rosetti and Quinn for Dismissal for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2).*

Because the Court has dismissed the Plaintiffs' claims against Defendants Rosetti and Quinn for Failure to State a Claim and for Lack of Subject Matter Jurisdiction, it is unnecessary to reach these Defendants' motions to dismiss for lack of personal jurisdiction. The Court will briefly address, however, this second basis of dismissal of the Plaintiffs' claims against Defendants Rosetti and Quinn. The Plaintiffs bear the burden of proof to show that the nonresident Defendants are subject to the Court's jurisdiction.[FN5] *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.,* 85 F.3d 201, 204 (5th Cir.1996) (citations omitted), and that the Plaintiffs have failed to meet the two necessary preconditions: (1) the nonresident must be amenable to service of process under Texas's long-arm statute; and (2) the assertion of jurisdiction over the nonresident must comport with the Due Process Clause of the Constitution. *Jones v. Petty-Ray Geophysical, Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir.1992). Because Texas's long-arm statute has been held to co-extend with the limits of due process, the Court would only need determine whether jurisdiction over Rosetti and Quinn is constitutionally permissible. *Id.* at 1067-68 (citing *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990)).

> FN5. "The Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir.1985).

*12 To meet the federal constitutional test of due process, two elements must be satisfied: (1) the defendants must have purposefully availed themselves of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that they should reasonably anticipate being haled into court there; and (2) the exercise of jurisdiction over the defendants must not offend traditional notions of fair play and substantial justice. *Jones,* 954 F.2d at 1068. The " minimum contacts" test can be met by contacts giving rise to either general or personal jurisdiction. *Gundle,* 85 F.3d at 205. Specific jurisdiction exists when the nonresident defendants' contacts with the forum state arise from, or are directly related to, the cause of action. *Id.* (citation omitted). "General personal jurisdiction is found when the nonresident defendant[s]' contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." *Marathon Oil Co. v. Ruhrgas,* 182 F.3d 291, 295 (5th Cir.1999) (citation omitted). In either context, the Court considers the totality of the circumstances in conducting the minimum contacts analysis; no single factor is determinative. *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir.1985). The analysis ultimately reduces to whether the nonresident defendants purposefully availed themselves of the privilege of conducting business in this state, thereby invoking the benefits and protections of Texas law. *Id.* at 1191.

Defendants Roset ti and Quinn argue that they are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://web2.westlaw.com/print/printstream.aspx?fn=_top&destination=atp&mt=PensionAn... 6/18/2007

Not Reported in F.Supp.2d                                                                                                 Page 11
Not Reported in F.Supp.2d, 2004 WL 3019097 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

non-residents who have entirely insufficient contacts with Texas (Quinn Motion at 3; Rosetti Motion at 3). In Response, the Plaintiffs offer nothing to meet their burden of proof and demonstrate that this Court has jurisdiction over these Defendants other than to state that, because they have alleged claims against Defendants Quinn and Rosetti under the RICO statute, the statute's authorization of nationwide service of process establishes personal jurisdiction over these Defendants. As discussed above, the Plaintiffs have failed to state valid RICO claims against any of the remaining Defendants, and thus could not rely upon the RICO statute to meet their burden of proof regarding personal jurisdiction over Defendants Rosetti and Quinn. In addition to dismissing all of the Plaintiffs' claims against Defendants' Rosetti and Quinn for failure to state a claim and for lack of subject matter jurisdiction, these Defendants' motions to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) are GRANTED, and the Plaintiffs' claims against them are DISMISSED on this basis as well as for failure to state a claim and lack of subject matter jurisdiction.

The Plaintiffs request, in the alternative, for leave to amend their complaint if the Court determines that they have failed to state valid claims. *See, e.g.,* (Resp. to KPMG). In deciding whether to allow a plaintiff to amend the Court may consider whether, *inter alia,* the Plaintiff has repeatedly failed to cure deficiencies by amendments previously allowed and futility of amendment. *See, e.g. Price v. Pinnacle Brands, Inc.,* 138 F.3d 602, 607 (5th Cir.1998) (citation omitted). The Court finds that the Plaintiffs have had ample opportunity to articulate their claims, not only in their Original Compliant, but also in the detailed response required by the Court's RICO Order. Moreover, the Court finds that any amendment by the Plaintiffs would be futile, as the Plaintiffs, in Response to various motions to dismiss, have, rather than noting specific supporting facts, requested discovery to develop the necessary facts to properly plead their claims.[FN6]

FN6. *See, e.g.,* (Resp. to KPMG at 6, 8, 9 and 10). The Plaintiffs must, however, " have some basis in fact for the action" they are bringing against the Defendants. The Court will not allow the Plaintiffs to conduct a "fishing expedition" in an effort to manufacture their claims. *Russell v. Choicepoint Serv., Inc.,* 2004 WL 193111, at *11 (E.D.La. Jan.28, 2004) (citations omitted); *Leiter v. Handcrafted Homes, Inc.,* 1991 WL 154448, at *4 (M.D.Pa. Jan.29, 1991) (dismissing RICO claims and refusing to allow the plaintiff to " conduct a fishing expedition to attempt to construct a RICO claim ...").

### III. CONCLUSION

*13 Based on the facts currently before the Court, the Court GRANTS the motions of Defendants KPMG, Saoud, Bisk, and Crain, Caton to dismiss for failure to state a claim and for lack of subject matter jurisdiction, and DISMISSES all of the Plaintiffs' claims against those Defendants. The Court also DISMISSES all of the Plaintiffs claims against Defendants Rosetti, Quinn, Faisal and Saudi Aramco for failure to state a claim and for lack of subject matter jurisdiction. The Court also GRANTS the motions of Defendants Rosetti and Quinn for dismissal of the Plaintiffs' claims against them for lack of personal jurisdiction.

As a result of this Order, the Court has now dismissed the Plaintiffs' claims against all of the remaining defendants.

SO ORDERED.

N.D.Tex.,2004.
Skidmore Energy, Inc. v. KPMG LLP
Not Reported in F.Supp.2d, 2004 WL 3019097 (N.D.Tex.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.