Exhibit 6

Westlaw.

--- A.2d ----                                                                                                            Page 1

--- A.2d ----, 2007 WL 1310141 (Md.)
**(Cite as: --- A.2d ----)**

H
Wells Fargo Home Mortg., Inc. v. Neal
Md.,2007.
--- A.2d ----Only the Westlaw citation is currently available.
Court of Appeals of Maryland.
WELLS FARGO HOME MORTGAGE, INC.
v.
Alan NEAL.
**No. 58, Sept. Term, 2006.**

May 7, 2007.

**Background:** Residential mortgagor brought claims for breach of contract and declaratory judgment against mortgage loan servicer which had been assigned mortgage, alleging servicer's failure to comply with United States Housing and Urban Development's (HUD) mortgage servicing requirements before initiating foreclosure proceedings. The Circuit Court, Frederick County, John H. Tisdale, J., granted summary judgment to servicer. Mortgagor appealed, and the Court of Special Appeals, 168 Md.App. 747, 899 A.2d 208, vacated and remanded. Servicer petitioned for writ of certiorari.

**Holdings:** On motion for reconsideration, the Court of Appeals, Harrell, J., held that:

(1) paragraph in deed of trust referring to loss mitigation regulations was not bargained-for and did not give rise to a private cause of action for breach of contract, but

(2) mortgagor could assert via pre-foreclosure injunction his defense that mortgage servicer failed to comply with its duty to pursue loss mitigation.

Reversed and remanded with instructions.

**[1] Declaratory Judgment 118A ⇌393**

118A Declaratory Judgment
    118AIII Proceedings
        118AIII(H) Appeal and Error
            118Ak392 Appeal and Error
                118Ak393 k. Scope and Extent of Review in General. Most Cited Cases

**Mortgages 266 ⇌578**

266 Mortgages
    266X Foreclosure by Action
        266X(P) Review
            266k578 k. Scope and Mode of Review. Most Cited Cases
Court of Appeals would consider mortgagor's request that trial court declare that mortgage servicer could not initiate any foreclosure proceeding until such time as it complied with all conditions precedent incorporated in the parties' agreement as a request for an injunction rather than for a declaratory judgment, although request was titled as a request for declaratory relief, as request sought to compel servicer not to consummate foreclosure at some future date, rather than merely asking the court to resolve what general rights mortgagor may have with respect to the property.

Court of Appeals would consider mortgagor's request that trial court declare that mortgage servicer could not initiate any foreclosure proceeding until such time as it complied with all conditions precedent incorporated in the parties' agreement as a request for an injunction rather than for a declaratory judgment, although request was titled as a request for declaratory relief, as request sought to compel servicer not to consummate foreclosure at some future date, rather than merely asking the court to resolve what general rights mortgagor may have with respect to the property.

**[2] Declaratory Judgment 118A ⇌386.1**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----  
--- A.2d ----, 2007 WL 1310141 (Md.)  
**(Cite as: --- A.2d ----)**

Page 2

118A Declaratory Judgment  
    118AIII Proceedings  
        118AIII(G) Judgment  
            118Ak386 Executory or Coercive Relief  
                118Ak386.1 k. In General. Most Cited Cases  
A "declaratory judgment" is one that declares the rights of the parties and does not necessarily involve executory process or coercive relief.

**[3] Injunction 212** ⚷ 1

212 Injunction  
    212I Nature and Grounds in General  
        212I(A) Nature and Form of Remedy  
            212k1 k. Nature and Purpose in General. Most Cited Cases

**Injunction 212** ⚷ 4

212 Injunction  
    212I Nature and Grounds in General  
        212I(A) Nature and Form of Remedy  
            212k4 k. Preventive and Protective Remedy. Most Cited Cases  
Injunctive relief is relief prohibiting someone from doing some specified act or commanding someone to undo some wrong or injury; generally, it is a preventive and protective remedy, aimed at future acts, and it is not intended to redress past wrongs.

**[4] Appeal and Error 30** ⚷ 863

30 Appeal and Error  
    30XVI Review  
        30XVI(A) Scope, Standards, and Extent, in General  
            30k862 Extent of Review Dependent on Nature of Decision Appealed from  
                30k863 k. In General. Most Cited Cases  
In reviewing a grant of summary judgment, the Court of Appeals independently reviews the record to determine whether the parties properly generated a dispute of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. Md.Rule 2-501.

**[5] Mortgages 266** ⚷ 216

266 Mortgages  
    266IV Rights and Liabilities of Parties  
        266k215 Actions for Damages  
            266k216 k. Between Parties to Mortgage or Their Privies. Most Cited Cases  
Paragraph in Fair Housing Administration (FHA) approved form deed of trust, which stated that regulations issued by the Secretary of the Department of Housing and Urban Development (HUD) might limit the lender's foreclosure rights and that it did not authorize acceleration or foreclosure if not permitted by regulations of the Secretary, was not a bargained-for term between mortgagor and mortgage servicer, as mortgage servicer, which had been assigned the mortgage, did not author that provision and did not participate in negotiations for or drafting of the deed of trust, and thus servicer's alleged violation of the regulation did not give rise to a private cause of action for breach of contract which mortgagor commenced after mortgage servicer initiated foreclosure proceedings. 24 C.F.R. § 203.500.

**[6] Mortgages 266** ⚷ 216

266 Mortgages  
    266IV Rights and Liabilities of Parties  
        266k215 Actions for Damages  
            266k216 k. Between Parties to Mortgage or Their Privies. Most Cited Cases  
Housing and Urban Development (HUD) regulations setting forth the rules and procedures for Fair Housing Administration (FHA) mortgage insurance program, including the loss mitigation regulations, address how participating lenders are to conduct their activities, and thus the regulations do not control directly the relationship between the mortgagor and mortgagee and may not be invoked by the mortgagor as a sword in an offensive cause of action against the mortgagee. 24 C.F.R. § 203.501.

**[7] Mortgages 266** ⚷ 415(1)

266 Mortgages  
    266X Foreclosure by Action  
        266X(B) Right to Foreclose and Defenses  
            266k415 Defenses  
                266k415(1) k. In General. Most Cited

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----    Page 3
--- A.2d ----, 2007 WL 1310141 (Md.)
(Cite as: --- A.2d ----)

Cases
Mortgagor could assert via pre-foreclosure injunction his defense that mortgage servicer, which had been assigned mortgage, failed to comply with its duty to pursue loss mitigation efforts before initiating foreclosure; if allegation was proven, such a failure could constitute improper and/or inequitable conduct precluding default until mortgage servicer complied with the statutory and regulatory imperative to pursue loss mitigation prior to foreclosure. National Housing Act, § 230(a), as amended, 12 U.S.C.A. § 1715u(a); 24 C.F.R. § 203.501; Md.Rule 14-209.

[8] Mortgages 266 ⇐383

266 Mortgages
   266X Foreclosure by Action
      266X(A) Nature and Form of Remedy
         266k383 k. Remedies in Personam and in Rem. Most Cited Cases
The power of sale foreclosure is intended to be a summary, in rem proceeding which carries out the policy of Maryland law to expedite mortgage foreclosures. Md.Rule 14-204.

[9] Mortgages 266 ⇐415(1)

266 Mortgages
   266X Foreclosure by Action
      266X(B) Right to Foreclose and Defenses
         266k415 Defenses
            266k415(1) k. In General. Most Cited Cases
The rule governing power of sale foreclosures does not prohibit mortgagors from raising viable defenses to a foreclosure to which the mortgagee is not entitled. Md.Rule 14-204.

[10] Mortgages 266 ⇐413

266 Mortgages
   266X Foreclosure by Action
      266X(B) Right to Foreclose and Defenses
         266k413 k. Restraining Foreclosure in General. Most Cited Cases

Mortgages 266 ⇐526(2)

266 Mortgages
   266X Foreclosure by Action
      266X(M) Sale
         266k526 Confirmation
            266k526(2) k. Grounds of Objection to Confirmation in General. Most Cited Cases

Mortgages 266 ⇐563

266 Mortgages
   266X Foreclosure by Action
      266X(O) Disposition of Proceeds and Surplus
         266k563 k. Disposition in General. Most Cited Cases
Mortgagors are possessed of three means of challenging a foreclosure: obtaining a pre-sale injunction, filing post-sale exceptions to the ratification of the sale, and the filing of post-sale ratification exceptions to the auditor's statement of account. Md.Rules 2-543(g, h), 14-209(b)(1), 14-305(d).

[11] Mortgages 266 ⇐413

266 Mortgages
   266X Foreclosure by Action
      266X(B) Right to Foreclose and Defenses
         266k413 k. Restraining Foreclosure in General. Most Cited Cases
A movant for a pre-foreclosure sale injunction must (1) either admit or deny that an amount of debt is due and payable, (2) if an amount is admitted, state that the amount has been paid into the court, and (3) provide a detailed statement of facts, demonstrating that the debt and interest has been paid fully, that there is no default, or that the mortgage was obtained by the mortgagee through fraud. Md.Rule 14-209(b)(1).

[12] Mortgages 266 ⇐413

266 Mortgages
   266X Foreclosure by Action
      266X(B) Right to Foreclose and Defenses
         266k413 k. Restraining Foreclosure in General. Most Cited Cases
If a default is admitted by a mortgagor seeking a pre-foreclosure sale injunction, the mortgagor must post a bond with, or otherwise pay into, the court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----  Page 4
--- A.2d ----, 2007 WL 1310141 (Md.)
(Cite as: --- A.2d ----)

for the full amount of the mortgage and any applicable interest. Md.Rule 14-209(b)(1).

[13] Mortgages 266 413

266 Mortgages
   266X Foreclosure by Action
      266X(B) Right to Foreclose and Defenses
         266k413 k. Restraining Foreclosure in General. Most Cited Cases

Mortgages 266 415(1)

266 Mortgages
   266X Foreclosure by Action
      266X(B) Right to Foreclose and Defenses
         266k415 Defenses
            266k415(1) k. In General. Most Cited Cases
A mortgagor seeking to raise a violation of the Department of Housing and Urban Development (HUD) loss mitigation regulations as a defense to foreclosure is not required to pay his or her debt in full in order to be granted a pre-foreclosure sale injunction because, under principles of equity, a mortgagee's commencement of a foreclosure proceeding on a Fair Housing Administration (FHA) insured mortgage, without first having adhered to the mandatory HUD loss mitigation regulations, may invalidate the mortgagee's declaration of default. 24 C.F.R. § 203.501; Md.Rule 14-209.

[14] Mortgages 266 413

266 Mortgages
   266X Foreclosure by Action
      266X(B) Right to Foreclose and Defenses
         266k413 k. Restraining Foreclosure in General. Most Cited Cases
A mortgagor subject to an allegedly invalid declared default is permitted in a pre-foreclosure action for injunctive relief to deny that a delinquent amount is due and payable and further claim that there is no default; the trial court then must exercise its discretion in granting or denying the requested injunction based on the evidence relevant to the mortgagor's asserted defense. Md.Rule 14-209.

[15] Mortgages 266 386

266 Mortgages
   266X Foreclosure by Action
      266X(A) Nature and Form of Remedy
         266k386 k. In Equity. Most Cited Cases
The foreclosure procedure in Maryland is equitable in nature.

[16] Mortgages 266 338

266 Mortgages
   266IX Foreclosure by Exercise of Power of Sale
      266k338 k. Restraining Exercise of Power. Most Cited Cases
An action to enjoin the foreclosure of a deed of trust entreats a trial court to exercise its equitable powers. Md.Rule 14-209.

[17] Equity 150 65(1)

150 Equity
   150I Jurisdiction, Principles, and Maxims
      150I(C) Principles and Maxims of Equity
         150k65 He Who Comes Into Equity Must Come with Clean Hands
            150k65(1) k. In General. Most Cited Cases
The venerated equity doctrine of clean hands, which requires that he who comes into equity must come with clean hands, is applicable in foreclosure proceedings.

[18] Equity 150 65(1)

150 Equity
   150I Jurisdiction, Principles, and Maxims
      150I(C) Principles and Maxims of Equity
         150k65 He Who Comes Into Equity Must Come with Clean Hands
            150k65(1) k. In General. Most Cited Cases
The "clean hands doctrine" states that courts of equity will not lend their aid to anyone seeking their active interposition, who has been guilty of fraudulent, illegal, or inequitable conduct in the matter with relation to which he seeks assistance.

[19] Equity 150 65(3)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----                                                                                              Page 5

--- A.2d ----, 2007 WL 1310141 (Md.)
**(Cite as: --- A.2d ----)**

150 Equity
    150I Jurisdiction, Principles, and Maxims
        150I(C) Principles and Maxims of Equity
            150k65 He Who Comes Into Equity Must Come with Clean Hands
                150k65(3) k. Conduct with Respect to Different Transactions. Most Cited Cases

The clean hands doctrine does not mandate that those seeking equitable relief must have exhibited unblemished conduct in every transaction to which they have ever been a party, but rather that the particular matter for which a litigant seeks equitable relief must not be marred by any fraudulent, illegal, or inequitable conduct.

Mark D. Maneche (Michael Schatzow, Venable LLP, Baltimore, on brief), for petitioner.
Scott C. Borison (Douglas B. Bowman, Legg Law Firm, LLC, Frederick, on brief), for respondent.
Janet M. Hostetler, Francis D. Murnaghan, Jr., Appellate Advocacy Fellow, Eric Sherbine, Suzanne Sangree, Public Justice Center, Phillip Robinson, Nevett Steele, Civil Justice, Inc., Baltimore, amici curiae.

Argued before BELL, C.J., RAKER, WILNER [FN*], CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

**ORDER**

*1 The Court having considered the motion for reconsideration and the answer filed thereto in the above-captioned case, it is this 7th day of May, 2007,

ORDERED, by the Court of Appeals of Maryland, that the motion be, and it is hereby, granted, and it is further

ORDERED that the reported opinion filed on March 13, 2007, be, and it is hereby, withdrawn, and the revised opinion attached hereto is filed today in place of the previously filed opinion.
HARRELL, J.
We issued a writ of certiorari in this matter, 394 Md. 479, 906 A.2d 942 (2006), to review a judgment of the Court of Special Appeals that was grounded on a holding that a mortgagor under a Fair Housing Administration (FHA) insured loan may be able to maintain a breach of contract claim under State law against a mortgagee for an alleged breach of certain federal regulations alluded to in the parties' FHA-prescribed form deed of trust. Wells Fargo Home Mortgage, Inc. (Wells Fargo), the mortgagee by assignment, argues here that the Court of Special Appeals erred in vacating the summary judgment granted it by the Circuit Court for Frederick County. The Circuit Court concluded that no private cause of action may be asserted by a mortgagor under the mortgage servicing regulations promulgated by the U.S. Department of Housing and Urban Development (HUD) pursuant to the National Housing Act of 1934(NHA).[FN1] We hold that Alan Neal, the mortgagor and plaintiff in the Circuit Court, may not advance, as an affirmative cause of action, a State law contract claim based on an asserted breach of the HUD regulations alluded to in his FHA form deed of trust, but may raise a violation of the regulations in pursuit of an injunction blocking foreclosure. Accordingly, we shall reverse the judgment of the Court of Special Appeals.

I. FACTS AND PROCEDURAL HISTORY

On 20 June 1991, Alan and Sheri Neal [FN2] executed a "Maryland FHA Deed of Trust" with Margaretten & Company, Inc., to secure the purchase money loan for a dwelling located in Walkersville, Maryland. The mortgage was insured by the FHA pursuant to the provisions of § 203(b) of the NHA.[FN3] The deed of trust was assigned by Margaretten for servicing to Wells Fargo. Sometime in 2002 or 2003, Neal fell behind in making the monthly mortgage payments when due. Wells Fargo initiated foreclosure proceedings in the Circuit Court, which proceedings were stayed when Neal filed a Complaint on 27 August 2003 that commenced the action that is the subject of this case.

[1][2][3] Neal posited in his Complaint, and maintains in this Court, that Wells Fargo breached the terms of paragraph 9(d) of the deed of trust by failing to observe the various pre-foreclosure loss mitigation procedures set out in the HUD mortgage

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ---- Page 6

--- A.2d ----, 2007 WL 1310141 (Md.)
**(Cite as: --- A.2d ----)**

servicing regulations. Paragraph 9(d) of the deed of trust provides:

9. Grounds for Acceleration of the Debt

3

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations o f the Secretary.

*2 Based on Wells Fargo's purported failure to follow the HUD regulations before accelerating the mortgage debt and instituting foreclosure, Neal advanced two causes of action. First, Neal claimed that the regulatory violations constituted a breach of contract, entitling him to monetary damages. Second, he petitioned for declaratory relief [FN4] to prevent Wells Fargo from pursuing foreclosure under the deed of trust. Wells Fargo responded with a motion for summary judgment, arguing that the HUD regulations relied on by Neal do not afford a borrower a private cause of action such as the one pleaded in Neal's Complaint. Neal opposed Wells Fargo's motion and filed a cross-motion for summary judgment advancing the same contentions asserted in his Complaint. After a motions hearing, the court entered summary judgment in favor of Wells Fargo based on the premise that the HUD regulations were intended for the benefit of HUD enforcement of the FHA mortgage insurance program and did not grant a private cause of action for a borrower such as Neal.

Neal appealed to the Court of Special Appeals, which vacated the summary judgment granted by the Circuit Court and remanded the matter for further proceedings on the contract claim asserted by Neal. *Neal v. Wells Fargo Home Mortgage, Inc.,* 168 Md.App. 747, 750-51, 899 A.2d 208, 210 (2006). Although the intermediate appellate court acquiesced in the notion that the HUD regulations did not afford a private right of action for their violation, it found fault with the Circuit Court's grant of summary judgment for its failure to consider whether Neal could rely on the regulations referred to in the deed of trust to support a State law breach of contract action. *Neal,* 168 Md.App. at 752-53, 899 A.2d at 211-12. The Court of Special Appeals found support for its holding in *Wells v. Chevy Chase Bank, F.S.B.,* 377 Md. 197, 832 A.2d 812 (2003), *cert. denied,* 541 U.S. 983, 124 S.Ct. 1875, 158 L.Ed.2d 485 (2004), and *College Loan Corp. v. SLM Corp.,* 396 F.3d 588 (4th Cir.2005). The appellate court panel construed those cases to stand for the general proposition that private parties are bound by and may be liable, each to the other, under state and federal statutory or regulatory standards specifically incorporated into contracts executed between them. Therefore, the Court of Special Appeals remanded the case to the Circuit Court to determine whether Neal and Wells Fargo bargained for the provision referring to the HUD loss mitigation regulations.

II. ANALYSIS

A. Standard of Review for the Grant of Summary Judgment

[4] "In reviewing a grant of summary judgment under Md. Rule 2-501, we independently review the record to determine whether the parties properly generated a dispute of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Livesay v. Baltimore,* 384 Md. 1, 9-10, 862 A.2d 33, 38 (2004). Because we perceive no genuine dispute of material fact in the instant controversy,[FN5] we review the Circuit Court's grant of summary judgment *de novo* to determine if the court's decision was legally correct. *Myers v. Kayhoe,* 391 Md. 188, 203, 892 A.2d 520, 529 (2006) (citing *Livesay,* 384 Md. at 9, 862 A.2d at 38); *Dual Inc. v. Lockheed Martin Corp.,* 383 Md. 151, 162, 857 A.2d 1095, 1101 (2004).

B. A Private Right of Action?

*3 At the outset, we note a distinction between Neal's theory of this case and the more ubiquitous argument that violation of the NHA or the companion HUD regulations may support a private

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ---- Page 7

--- A.2d ----, 2007 WL 1310141 (Md.)
(Cite as: --- A.2d ----)

cause of action for individuals harmed by those violations. The parties agree that the weight of authority around the country roundly rejects the notion that either the NHA or associated HUD regulations support either direct or implied private causes of action for their violation. *See, e.g., Krell v. Nat'l Mortgage Corp.,* 214 Ga.App. 503, 448 S.E.2d 248, 249 (1994) (holding that a defaulting FHA mortgagor had no private right of action to pursue under the NHA); *Prudential Ins. Co. of Am. v. Jackson,* 270 N.J.Super. 510, 637 A.2d 573, 576 (1994) (reiterating that no private cause of action is derived from the provisions of the HUD regulations concerning foreclosure avoidance); *Perry v. Hous. Auth.,* 664 F.2d 1210, 1215-17 (4th Cir.1981) (rejecting the argument that a private right of action can be implied from the NHA); *Shivers v. Landrieu,* 674 F.2d 906, 910-12 (D.C.Cir.1981) (finding that the NHA does not provide for an implied private right of action under its accompanying HUD regulations); *Falzarano v. United States,* 607 F.2d 506, 509-11 (1st Cir.1979) (stating that the NHA does not provide expressly for a private cause of action and concluding that no implied private right of action exists based on the factors set forth in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and the presence of a regulatory enforcement scheme controlled by the Secretary of HUD); *Cedar-Riverside Assocs., Inc. v. City of Minneapolis,* 606 F.2d 254, 258-59 (8th Cir.1979) (holding that no private cause of action is created in the NHA for a violation of its competitive bidding provisions); *City of Rohnert Park v. Harris,* 601 F.2d 1040, 1045-47 (9th Cir.1979) (holding that the "Housing Act does not expressly provide that private persons may sue to enforce its terms," and reasoning that "[a]ll four criteria [of *Cort v. Ash* ] militate against implying a cause of action"), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980); *Roberts v. Cameron-Brown Co.,* 556 F.2d 356, 360 (5th Cir.1977) (concluding that because the NHA and its accompanying regulations do not provide for a private right of action, the HUD Handbook distributed by the Department to mortgagees as a reference guide similarly could not support a private right of action); *M.B. Guran Co. v. City of Akron,* 546 F.2d 201, 204 (6th Cir.1976); *see also In re Miller,* 124 Fed. App'x. 152, 154-56 (4th Cir.2005) (unpublished) (determining that no private right of action arises from violation of NHA loss mitigation provisions); *see generally Burroughs v. Hills,* 741 F.2d 1525, 1531-32 (7th Cir.1984) ("Efforts to enforce implied causes of action under the National Housing Legislation or the HUD Handbook, have frequently come under consideration of appellate courts, and have always failed."), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985).

*4 [5] In the instant case, Neal does not plead a private action derived directly or impliedly from the NHA or its implementing regulations. At issue here, rather, is whether a paragraph in an FHA-approved form deed of trust alluding to a particular sub-set of HUD regulations is a bargained-for term between the mortgagor and mortgagee such that an alleged violation of the regulations may give rise to a private action maintainable by the mortgagor against the mortgagee for breach of contract under Maryland law. As principal support for this theory, Neal and the Court of Special Appeals rely on our decision in *Wells v. Chevy Chase Bank, F.S.B.,* 377 Md. 197, 832 A.2d 812 (2003), and the opinion of the U.S. Court of Appeals for the Fourth Circuit in *College Loan Corp. v. SLM Corp.,* 396 F.3d 588 (4th Cir.2005). Both cases involved private parties entering into contracts which contained voluntarily incorporated references to state or federal statutes or regulations as binding terms governing the parties' performance. Neal contends that because Wells Fargo voluntarily chose to participate as a lender in the FHA mortgage insurance program, it necessarily elected to accede to FHA-approved and required forms and comply with the regulations and procedures of the program, which Neal claims the mortgage servicer violated. Having violated the regulations, which were incorporated into the parties' contract by mutual assent, Wells Fargo, as the theory goes, is liable in damages to Neal for breach of contract. We conclude that *Wells* and *College Loan Corp.* are distinguishable from the case at hand.

*Wells* involved a contract dispute between Chevy Chase Bank and certain of its credit card holders arising from the bank's amendment of its cardholder agreement. The cardholders alleged that the amendment was ineffective because it was made

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ---- Page 8
--- A.2d ----, 2007 WL 1310141 (Md.)
(Cite as: --- A.2d ----)

contrary to the notice requirements prescribed by certain provisions of the Commercial Law Article of the Maryland Code, which were referred to expressly in the cardholder agreement. *Wells,* 377 Md. at 202-03, 832 A.2d at 815. In concluding that the cardholders were entitled to pursue their contract claim to enforce the Commercial Law Article provisions, notwithstanding the fact that those provisions otherwise would have been preempted by federal law, we specifically noted that the statutory notice standards were the product of " undertakings voluntarily assumed and reflected in private contracts and agreements...." *Wells,* 377 Md. at 221, 832 A.2d at 826. To that point, the cardholder agreement "was prepared by Chevy Chase; it was not imposed on Chevy Chase as a matter of law." *Wells,* 377 Md. at 231, 832 A.2d at 832.

Chevy Chase Bank's voluntary election, as the drafter of the cardholder agreement, to incorporate the provisions of the Commercial Law Article as the law governing the contract stands in contrast to the situation presented here where Wells Fargo was required to use a form deed of trust created by the FHA, [FN6] an agency of HUD, which form alluded, by way of notice, to certain of its regulations that might affect whether debt acceleration was proper. Wells Fargo and Margaretten & Company, Inc., unlike Chevy Chase Bank in *Wells,* did not author this provision of the contract entered into with the mortgagor. Thus, the inclusion of paragraph 9(d) alluding to the HUD regulations regarding mortgage acceleration and foreclosure options was not an " undertaking [ ] voluntarily assumed" by Wells Fargo such that it may be invoked by Neal in an offensive thrust, such as a private cause of action for damages. Given the primary purpose of these regulations, discussed *infra,* and the lack of language in paragraph 9(d) to support a conclusion that the parties expressly adopted the standards of the federal regulations as between them, *Wells* does not support Neal's contentions or the Court of Special Appeals's conclusion.

*5 *College Loan Corp.* similarly is distinguishable from the present controversy. In that case a student loan lender, College Loan Corporation, pursued, inter alia, a state law contract claim against a company, Sallie Mae, with which it contracted to service certain of College Loan Corporation's loans. *College Loan Corp.,* 396 F.3d at 593. In their agreement, the parties "voluntarily included federal standards (the HEA [or Higher Education Act] ) in their bargained-for private contractual arrangement," on which College Loan Corporation based its suit against Sallie Mae for violations thereof. *College Loan Corp.,* 396 F.3d at 598. The Fourth Circuit reasoned that because the parties were free to draft their servicing agreement as they liked and "[b]oth *expressly agreed* to comply with the HEA," Sallie Mae could not defend against College Loan Corporation's claim by arguing later that the state contract action was preempted by the HEA. *Id.*

Just as in *Wells,* the lynchpin of the *College Loan Corp.* court's analysis was that the contractual term binding the parties privately to an otherwise statutory standard of conduct was the product of a negotiation yielding a freely-entered contract. In the matter before us, Wells Fargo did not participate in negotiations for or drafting of the deed of trust to which it became assignee.[FN7] Therefore, it could not have bargained, in any sense that we are prepared to accept, for paragraph 9(d) with the Neals at the time the deed was executed.

This is not to say that Wells Fargo is not bound otherwise to Neal at all by the other terms of the deed of trust to which it is now a party. Rather, the question here is whether the mortgagor may recover damages for breach of a certain provision of the deed in a private cause of action. The answer to that question lies within the HUD regulations themselves. Section 203.500 of Title 24 of the Code of Federal Regulations provides that noncompliance with the FHA mortgage servicing regulations empowers the Secretary of HUD to impose a "civil money penalty, including a penalty under § 30.35(c)(2), or withdrawal of HUD's approval of a mortgagee." This enforcement scheme comports with the notion that the regulations enacted pursuant to the NHA were intended to govern the relationship between the mortgagee and the government rather than, as Neal would have it, the mortgagee and the mortgagor.

[6] The overall purpose of the FHA mortgage

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----  
--- A.2d ----, 2007 WL 1310141 (Md.)  
**(Cite as: --- A.2d ----)**

Page 9

insurance program is to encourage leading lenders, in exchange for a government guarantee of the loan, to extend mortgages to those carrying higher credit risks. The regulations setting forth the rules and procedures for the program, including the loss mitigation regulations pointed to by Neal and alluded to in paragraph 9(d) of the deed, address how participating lenders are to conduct their activities. Thus, the regulations do not control directly the relationship between the mortgagor and mortgagee and may not be invoked by the mortgagor as a sword in an offensive cause of action against the mortgagee. *See Fed. Nat'l Mortgage Ass'n v. Prior,* 128 Wis.2d 182, 381 N.W.2d 558, 560 (1985); *Roberts,* 556 F.2d at 360.

*6 The language of the regulations bear this out. With respect to mitigating losses, "[m]ortgagees must consider the comparative effects of their elective servicing actions, and must take those appropriate actions which can reasonably be expected to generate the smallest financial loss to the Department." 24 C.F.R. § 203.501. The emphasis on reducing the possible losses to HUD, rather than the mortgagor, demonstrates that the regulations exist primarily to govern the relationship between the government and the mortgagee. This is logical in light of the fact that HUD, by guaranteeing the mortgages under the program, has a considerable stake in the administration of the insured mortgages. Therefore, it uses the regulations to protect its interests and manage the program. Section 203.502(a) of Title 24 of the Code of Federal Regulations also illustrates this point by declaring that mortgagees and servicers are "fully responsible to the Secretary for proper servicing." Notably, the regulation does not address that the mortgagees' and servicers' are responsible to the mortgagors.

Although the HUD regulations provide for formidable consequences for lenders' noncompliance, the fact that the HUD Secretary is the sole entity empowered to enforce affirmatively the regulations presents some unfortunate, but pragmatic, challenges to uniform and consistent enforcement. As *amici* here, Civil Justice, Inc., the Public Justice Center, and the National Consumer Law Center, point out that HUD's limited resources,

as a practical matter, prohibit it from prosecuting every potential violation of its mortgage servicing regulations. In an effort to enforce most effectively the regulations and prosecute the worst cases of noncompliance, HUD ranks mortgagees according to their loss mitigation strategies and foreclosure rates into different tiers ranging from one to four, with four representing mortgagees with the worst loss mitigation records. U.S. Dep't of Housing & Urban Development, HUD NSC Tier Ranking System, at http://www.hud.gov/offices/hsg/sfh/nsc/trsovrvw.cfm (last modified 4 January 2007). HUD has indicated that, while no mortgagee is exempt, it "will focus on Tier 4 mortgagees for review purposes," and "primarily concentrate on those mortgagees that engage in little or no loss mitigation." Treble Damages for Failure To Engage in Loss Mitigation, 70 Fed.Reg. 21,573 (April 26, 2005). Considering this unfortunate reality, we are invited to examine alternative means of enforcement of the HUD regulations in light of one of the NHA's prime objectives: to preserve home ownership and avoid the devastating financial consequences of foreclosure. *See Topa Equities, Ltd. v. City of Los Angeles,* 342 F.3d 1065, 1072 (9th Cir.2003) (quoting 12 U.S.C. § 1701t (1994)); *Pozzie v. U.S. Dep't of Hous. & Urban Dev.,* 48 F.3d 1026, 1028 (7th Cir.1995) (same); *Conille v. Sec'y of Hous. and Urban Dev.,* 840 F.2d 105, 116 (1st Cir.1988) (same); *Fleet Real Estate Funding Corp. v. Smith,* 366 Pa.Super. 116, 530 A.2d 919, 923-24 (1987); U.S. Dep't Of Hous. & Urban Dev., Loss Mitigation Program-Comprehensive Clarification Of Policy And Notice Of Procedural Changes, Mortgagee Letter 00-05 at 1 (Jan. 19, 2000) (hereinafter HUD Mortgagee Letter 00-05).

C. Asserting a Defense to Foreclosure via Injunction

*7 [7] Although we conclude that a mortgagor may not wield as a sword the HUD regulations alluded to in a mandatory FHA form deed of trust, there is ample support that aggrieved mortgagors may assert an allegation of regulatory noncompliance as a shield against unauthorized foreclosure actions. The statutory law is clear on the mortgagee's duty to pursue loss mitigation efforts. The NHA requires

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----                                                                Page 10
--- A.2d ----, 2007 WL 1310141 (Md.)
**(Cite as: --- A.2d ----)**

that, in the event of a mortgagor default,[FN8] a mortgagee "shall engage in loss mitigation actions for the purpose of providing an alternative to foreclosure." 12 U.S.C. § 1715u(a) (2000). The HUD regulation effectuating this mandate states that [m]ortgagees must consider the comparative effects of their elective servicing actions, and must take those appropriate actions which can reasonably be expected to generate the smallest financial loss to the Department. Such actions include, but are not limited to, deeds in lieu of foreclosure under § 203.357, pre-foreclosure sales under § 203.370, partial claims under § 203.414, assumptions under § 203.512, special forbearance under §§ 203.471 and 203.614, and recasting of mortgages under § 203.616.[FN9]

24 C.F.R. § 203.501. The statutory and regulatory language frames participation in loss mitigation activities as a mandatory endeavor by the use of the terms "shall" and "must," respectively. *State v. Green,* 367 Md. 61, 82, 785 A.2d 1275, 1287 (2001) ("When the Legislature commands that something be done, using words such as 'shall' or 'must' rather than 'may' or 'should,' the obligation to comply with the statute or rule is mandatory."); *accord Alabama v. Bozeman,* 533 U.S. 146, 153, 121 S.Ct. 2079, 2085, 150 L.Ed.2d 188 (2001) (" The word 'shall' is ordinarily 'the language of command.' ") (quoting *Anderson v. Yungkau,* 329 U.S. 482, 485, 67 S.Ct. 428, 91 L.Ed. 436 (1947), in turn quoting *Escoe v. Zerbst,* 295 U.S. 490, 493, 55 S.Ct. 818, 79 L.Ed. 1566 (1935)). A letter from HUD to the mortgagees participating in the FHA mortgage insurance program, in no uncertain terms, reiterates the compulsory nature of engaging in loss mitigation activities: "Though lenders have great latitude in selecting the loss mitigation strategy appropriate for each borrower, it is critical to understand that **PARTICIPATION IN THE LOSS MITIGATION PROGRAM IS NOT OPTIONAL.**" HUD Mortgagee Letter 00-05 at 6 (emphasis in original). In fact, echoing the NHA's command, the letter states that "[l]enders may not initiate foreclosure until all loss mitigation options have been considered." HUD Mortgagee Letter 00-05 at 12. Against this backdrop, we consider the viability of mounting as a defense an allegation of a violation of these regulations.

Neal directs our attention to certain recent HUD policy initiatives with respect to the loss mitigation requirements in the FHA-insured loan program as support for his theory that HUD contemplated that individual borrowers be empowered to initiate private lawsuits against noncompliant lenders. Not only has HUD taken positions in other litigation contrary to Neal's theory, [FN10] language contained in the sources cited by Neal further convince us that HUD envisioned that borrowers might invoke only defensively the NHA and associated HUD regulations.

*8 Neal cites first to language contained in a " Notice of Policy" statement published by HUD in the Federal Register addressing the creation of mortgage instruments for use in the FHA mortgage insurance program. We reproduce the relevant portion of the Notice with emphasis on the language Neal believes to be an indication that mortgagors may sue mortgagees for regulatory noncompliance:
A commenter made specific suggestions to eliminate language referring to regulations issued by the Secretary in the default section of the mortgage instrument as well as other similar references. The commenter noted that such language would create foreclosure proceedings that would be more time consuming and expensive. The borrower's attorneys could commence exhaustive discovery to determine whether the lender met all of the servicing requirements. We rejected the commenter's suggestions that the references to regulations by the Secretary will impair the ***lender's ability to successfully defend a suit.*** HUD does not intend to create a conflict between the mortgage language and regulations, and there should be no adverse impact of informing the borrower that some regulations procedures exist which limit a lender's rights to foreclose.

Requirements for Single Family Mortgage Instruments, 54 Fed.Reg. 27,599 (June 29, 1989). While the highlighted language, standing alone, appears to support Neal's contention, the context belies his argument. The Notice's remarks regarding the defense of a suit were tied to a commenter's suggestions that the inclusion in FHA mortgage instruments of references to certain HUD regulations would complicate foreclosure

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----                                                                                           Page 11

--- A.2d ----, 2007 WL 1310141 (Md.)
**(Cite as: --- A.2d ----)**

proceedings because it would allow borrowers to delay the foreclosure by raising the issue of regulatory compliance. This persuades us that the "defense of a suit" mentioned in the Notice was a reference to the lender's ability to proceed with the foreclosure despite a borrower's knowledge that HUD regulations limit a lender's ability to accelerate or foreclose on a mortgage. Further, we note that the Notice frames the inclusion of the regulations in the mortgage instrument as a means to "inform [ ] the borrower" of the proper procedures, but does not mention anything about empowering mortgagors to maintain a private cause of action against noncomplying mortgagees.

More pointedly, the paragraph following the one containing the language cited by Neal twice states that mortgagors may assert a violation of the HUD regulations as a defense, presumably to a foreclosure action by the mortgagee. We recite below the Notice language:
We note that the proposed mortgage language does not incorporate all of HUD's servicing requirements into the mortgage, but simply prevents acceleration and foreclosure on the basis of the mortgage language when foreclosure would not be permitted by HUD regulations. For example, 24 C.F.R. § 203.606 specifically prohibits a mortgagee from foreclosing unless three full monthly payments due on the mortgage are unpaid. As long as this requirement remains in the regulations, we do not expect mortgagees to violate it even though the mortgage fails to repeat the requirement, and we believe that *a borrower could appropriately raise the regulatory violation in his or her defense.* If a mortgagee has violated parts of the servicing regulations which do not specifically state prerequisites to acceleration or foreclosure, however, the reference to regulations in the mortgage would not be applicable. HUD retains the general position recited in 24 C.F.R. § 203.500, that whether *a mortgagee's refusal or failure to comply with servicing regulations is a legal defense* is a matter to be determined by the courts.

*9 Requirements for Single Family Mortgage Instruments, 54 Fed.Reg. 27,599 (June 29, 1989) (emphasis added). This language is in accord with several court decisions holding that a mortgagor may invoke a mortgagee's noncompliance with the HUD regulations as an affirmative defense in a foreclosure proceeding. *See, e.g., Williams v. Nat'l Sch. of Health Tech., Inc.,* 836 F.Supp. 273, 283 (E.D.Pa.1993) ("Pennsylvania courts have recognized a mortgagee's failure to comply with HUD forbearance regulations as an equitable defense to foreclosure"), *aff'd,* 37 F.3d 1491 (3d Cir.1994); *Fed. Land Bank of St. Paul v. Overboe,* 404 N.W.2d 445, 449 (N.D.1987) (stating that " various courts have held that the failure of a lender to follow HUD regulations governing mortgage servicing constitutes a valid defense sufficient to deny the lender the relief it seeks in a foreclosure action" an d cataloguing cases); *Fed. Nat'l Mortgage Ass'n v. Moore,* 609 F.Supp. 194, 196 (N.D.Ill.1985) ("In Illinois, a mortgagee's failure to comply with the mortgage servicing regulations can be raised in a foreclosure proceeding as an affirmative defense.").

[8][9][10] Neal, however, counters that Maryland law renders ineffective the possibility of asserting regulatory noncompliance as a defense to a foreclosure action. He claims that the prominent cases recognizing the noncompliance argument are effective only as an equitable defense in jurisdictions utilizing judicial foreclosure. *See, e.g., Fleet Real Estate Funding Corp.,* 530 A.2d at 923; *Fed. Land Bank of St. Paul,* 404 N.W.2d at 449; *Heritage Bank, N.A. v. Ruh,* 191 N.J.Super. 53, 465 A.2d 547, 557-58 (1983). He submits that this route, effectively, may not be pursued in Maryland where judicial foreclosures are rare and most foreclosures are accomplished through the filing of an order to docket, which does not involve any hearings prior to, or meaningful judicial supervision of, the sale. Maryland Rule 14-204; Alexander Gordon Iv, Gordon On Maryland Foreclosures § 5.01, at 223 (3d ed.1994) (hereinafter "Gordon"). This "power of sale" foreclosure is "intended to be a summary, in rem proceeding" which carries out " the policy of Maryland law to expedite mortgage foreclosures." *G.E. Capital Mortgage. Servs., Inc. v. Levenson,* 338 Md. 227, 245, 657 A.2d 1170, 1178 (1995). We, however, do not construe the Rule governing power of sale foreclosures to prohibit mortgagors from raising viable defenses to a foreclosure to which the mortgagee is not entitled.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----    Page 12
--- A.2d ----, 2007 WL 1310141 (Md.)
**(Cite as: --- A.2d ----)**

*See Bachrach v. Washington United Coop.,* 181 Md. 315, 319, 29 A.2d 822, 825 (1943) ("The purpose of this legislation was to provide a more expeditious, and less expensive, method of enforcing mortgages than the former proceeding by formal bill in equity, but not, by any means, to impair or defeat the right of the mortgagor to be heard in defense of his property.") (quoting *Albert v. Hamilton,* 76 Md. 304, 308, 25 A. 341, 342 (1892)). To the contrary, mortgagors are possessed of three means of challenging a foreclosure: obtaining a pre-sale injunction pursuant to Maryland Rule 14-209(b)(1), filing post-sale exceptions to the ratification of the sale under Maryland Rule 14-305(d), and the filing of post-sale ratification exceptions to the auditor's statement of account pursuant to Maryland Rule 2-543(g), (h). Gordon § 21.01, at 655; *see generally Greenbriar Condo., Phase I Council of Unit Owners, Inc. v. Brooks,* 387 Md. 683, 740-46, 878 A.2d 528, 563-66 (2005) *(Greenbriar Condo).*

*10 Specifically, Neal asserts that our holding in *Greenbriar Condo* vitiates any defensive utility of the pre-sale injunction procedure in situations such as are alleged in the present case. He states that *Greenbriar Condo* limits to the pre-sale injunction procedure a mortgagor's opportunity to present issues relating to the mortgagee's entitlement to seek foreclosure, including matters of whether a debt is delinquent or amenable to acceleration. 387 Md. at 737-38 & n. 29, 878 A.2d at 560-61 & n. 29. Accordingly, Neal would be required to assert, in a pre-sale injunction petition, his theory that no debt is owed as alleged at the time of foreclosure because of Wells Fargo's noncompliance with the HUD regulations limiting the circumstances in which mortgagees may obtain a foreclosure. In order to obtain the injunction, however, Maryland Rule 14-209(b)(1) requires that the defaulting mortgagor pay into the court an amount representing "the debt and all interest due." This, argues Neal, defeats the entire purpose of the defense to the claim that a debt is due; a mortgagor who fundamentally disputes his indebtedness is still required by the Rule to pay the debt in order to assert his defense that he does not owe the amount claimed as delinquent or accelerated.

[11][12][13][14] Notwithstanding Neal's protestations, we are of the opinion that the violations of the HUD mortgage servicing regulations alleged of Wells Fargo by Neal may be asserted effectively as an affirmative defense within the injunctive relief apparatus provided in Rule 14-209(b)(1).[FN11] As the Rule states, a movant must (1) either admit or deny that an amount of debt is due and payable, (2) if an amount is admitted, state that the amount has been paid into the court, and (3) provide a detailed statement of facts, demonstrating one of the following: (a) the debt and interest has been paid fully, (b) there is no default, or (c) the mortgage was obtained by the mortgagee through fraud. Both the Rule and our cases establish firmly the principle that if a default is admitted, the mortgagor must post a bond with, or otherwise pay into, the court for the full amount of the mortgage and any applicable interest. *Goldsborough v. County Trust Co. of Md.,* 180 Md. 59, 62, 22 A.2d 920, 921 (1941); *Talbott v. Laurel Bldg. Ass'n,* 140 Md. 565, 569, 118 A. 63, 65 (1922) ("It is well settled upon all the authorities that the mortgagor must pay the amount admitted to be due into court before the court will grant an injunction to restrain the sale upon a default in the mortgage.") (quoting *Buckner v. Cronhardt,* 132 Md. 612, 616, 104 A. 169, 170 (1918)); *see also* GORDON § 21.02, at 656. A mortgagor seeking to raise a violation of the HUD loss mitigation regulations as a defense to foreclosure, however, is not required to pay his or her debt in full in order to be granted an injunction under Rule 14-209. This is because, under principles of equity, a mortgagee's commencement of a foreclosure proceeding on an FHA-insured mortgage, without first having adhered to the mandatory HUD loss mitigation regulations, may invalidate the mortgagee's declaration of default. Therefore, a mortgagor subject to an allegedly invalid declared default is permitted, under the Rule, to deny that a delinquent amount is due and payable and further claim that there is no default. A trial court then must exercise its discretion in granting or denying the requested injunction based on the evidence relevant to the mortgagor's asserted defense. *State Comm'n on Human Relations v. Talbot County Det. Ctr.,* 370 Md. 115, 129, 803 A.2d 527, 535 (2002); *Dep't of Health and Mental Hygiene v. Baltimore County,* 281 Md. 548, 554,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ---- Page 13
--- A.2d ----, 2007 WL 1310141 (Md.)
(Cite as: --- A.2d ----)

383 A.2d 51, 55 (1977); *McKeever v. Washington Heights Realty Corp.,* 183 Md. 216, 223, 37 A.2d 305, 310 (1944). Because, based on a review of the case file, it appears that the foreclosure sale has not been held yet, Neal is still able to assert this affirmative defense in the pending foreclosure action.

*11 [15][16][17] The foreclosure procedure in Maryland is equitable in nature. *Plaza Corp. v. Alban Tractor Co.,* 219 Md. 570, 577-78, 151 A.2d 170, 174 (1959) ("Foreclosure of mortgages after default has long been peculiarly within a court of equity's jurisdictional powers...."); *see also Village Green Mut. Homes, Inc. v. Randolph,* 361 Md. 179, 181 n. 1, 760 A.2d 716, 717 n. 1 (2000); *Fairfax Sav., F.S.B. v. Kris Jen Ltd. P'ship,* 338 Md. 1, 21, 655 A.2d 1265, 1275 (1995); *Ver Brycke v. Ver Brycke,* 150 Md.App. 623, 649 n. 16, 822 A.2d 1226, 1241 n. 16 (2003) (citing Dan. B. Dobbs, Law Of RemediesS § 2.6(3), at 111-12 (2d ed.1993)), rev'd on other grounds, 379 Md. 669, 843 A.2d 758 (2004); *Voge v. Olin,* 69 Md.App. 508, 514-15, 518 A.2d 474, 477 (1986); *Billingsley v. Lawson,* 43 Md.App. 713, 723, 406 A.2d 946, 953 (1979) (quoting *Fisher v. Fed. Nat'l Mortgage Ass'n,* 360 F.Supp. 207, 210-11 (D.Md.1973)). Similarly, an injunction under Rule 14-209 to enjoin the foreclosure of a deed of trust entreats a trial court to exercise its equitable powers. *Greenbriar Condo.,* 387 Md. at 740-41, 878 A.2d at 563 (identifying the defenses of injunctive relief and exceptions to a foreclosure as equitable in nature); *see also Ver Brycke,* 379 Md. at 693-94, 843 A.2d at 772 ("*First,* a claim could be deemed equitable if it sought a coercive remedy like injunction....") (quoting DAN. B. DOBBS, LAW OF REMEDIES § 2.1(2) (2d ed.1993)); *Talbot County Det. Ctr.,* 370 Md. at 139, 803 A.2d at 541 ("An injunction is a writ framed according to the circumstances of the case ... restraining an act which it esteems contrary to equity and good conscience.") (quoting *El Bey v. Moorish Science Temple of Am., Inc.,* 362 Md. 339, 353, 765 A.2d 132, 139 (2001)) (internal quotations and citations omitted); *Colandrea v. Wilde Lake Cmty. Ass'n, Inc.,* 361 Md. 371, 394, 761 A.2d 899, 911 (2000) ("The trial court ordinarily has the discretion to grant or deny a request for injunctive relief in general equity matters ...."); *Dundalk Holding Co. v. Easter,* 215 Md. 549, 554, 137 A.2d 667, 669-70 (1958) (stating that "[i]njunction is historically and fundamentally a process of equity," and discussing the origin and application of injunctions in courts of both equity and law). Thus, the venerated equity doctrine of clean hands which requires that "he who comes into equity must come with clean hands," *Hlista v. Altevogt,* 239 Md. 43, 48, 210 A.2d 153, 156 (1965), is applicable in foreclosure proceedings such as the one implicated in the present case.

[18][19] The clean hands doctrine states that "courts of equity will not lend their aid to anyone seeking their active interposition, who has been guilty of fraudulent, illegal, or inequitable conduct in the matter with relation to which he seeks assistance." *Hlista,* 239 Md. at 48, 210 A.2d at 156; *see also Hicks v. Gilbert,* 135 Md.App. 394, 400, 762 A.2d 986, 989-90 (2000). The doctrine does not mandate that those seeking equitable relief must have exhibited unblemished conduct in every transaction to which they have ever been a party, but rather that the particular matter for which a litigant seeks equitable relief must not be marred by any fraudulent, illegal, or inequitable conduct. *Hlista,* 239 Md. at 48, 210 A.2d at 156; *Hicks,* 135 Md.App. at 400-01, 762 A.2d at 990 ("There must be a nexus between the misconduct and the transaction, because '[w]hat is material is not that the plaintiff's hands are dirty, but that he dirties them in acquiring the right he now asserts.'") (quoting *Adams v. Manown,* 328 Md. 463, 476, 615 A.2d 611, 617 (1992)). As we have stated previously, the NHA and its implementing regulations compel FHA mortgagees to pursue loss mitigation strategies before initiating foreclosure. In the present case, if Neal's contentions regarding Wells Fargo's failure to comply with the loss mitigation directives are proven to the satisfaction of the trial court, such a failure may constitute improper and/or inequitable conduct, depending on the proven circumstances. Thus, under the doctrine of clean hands, while Neal technically may be said to be in default, the legal fiction that no default exists may be maintainable until such time as Wells Fargo complies with the statutory and regulatory imperative to pursue loss mitigation prior to foreclosure.[FN12]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----                                                                      Page 14
--- A.2d ----, 2007 WL 1310141 (Md.)
**(Cite as: --- A.2d ----)**

*12 The invocation and application of equity principles produces not only a process that is fundamentally fair to the parties and prevents the Court from rewarding inequitable conduct, *Adams,* 328 Md. at 474-75, 615 A.2d at 616, but also reflects the effectiveness of loss mitigation efforts in avoiding foreclosure. U.S. Dep't Of Hous. & Urban Dev., Hud Strategic Plan FY 2006-FY 2011, at 9 (2006) ("Because HUD requires participating lenders to employ loss mitigation techniques, over 59 percent of families who defaulted on FHA-insured mortgages in FY 2005 were able to work out their delinquencies and remain in their homes."). The effectiveness of loss mitigation options demonstrate the reality that if mortgagees who pursue foreclosures without carrying out their loss mitigation obligations had done so, it is highly conceivable that many defaulting mortgagors, in time, may be able to remedy their delinquencies and avoid foreclosure.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR FREDERICK COUNTY TO CONSOLIDATE RESPONDENT'S ACTION FOR INJUNCTIVE RELIEF WITH THE FORECLOSURE PROCEEDING, DISMISS RESPONDENT'S CLAIM FOR BREACH OF CONTRACT, AND FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS IN THIS COURT TO BE DIVIDED EQUALLY BY THE PARTIES.

FN* Wilner, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

FN1. 12 U.S.C. §§ 1701 *et seq.* (2000).

FN2. The couple is now divorced. Sheri Neal is not, and never has been, a party to this case.

FN3. 12 U.S.C. § 1709(b) (1988). Section 203(b) permits qualified borrowers to purchase mortgage insurance, which guarantees payment of the loan by the FHA in the event of the borrower's default. This program allows low-and moderate-income borrowers to obtain financing from reputable lenders and, in turn, insulates those lenders from the losses associated with default and foreclosure.

FN4. Neal fashioned his second count as a request for "DECLARATORY RELIEF PURSUANT TO C & JP SEC. 3-403." He asked the Circuit Court to declare that the " Defendant may not initiate any foreclosure proceeding until such time as the defendant has complied with all conditions precedents *[sic]* incorporated in the parties' agreement." As the Court of Special Appeals noted, such a request is of an injunctive nature. *Neal v. Wells Fargo Home Mortgage, Inc.,* 168 Md.App. 747, 750 n. 2, 899 A.2d 208, 210 n. 2 (2006). " A declaratory judgment is one that declares the rights of the parties and does not necessarily involve executory process or coercive relief." *Sumrall v. State Central Collection Unit,* 150 Md.App. 290, 295, 819 A.2d 1149, 1152 (2003) (citing *Davis v. State,* 183 Md. 385, 389, 37 A.2d 880, 884 (1944)). On the other hand, "[i]njunctive relief is relief ' prohibiting someone from doing some specified act or commanding someone to undo some wrong or injury ... [g]enerally, it is a preventive and protective remedy, *aimed at future acts,* and it is not intended to redress past wrongs.' " *Colandrea v. Wilde Lake Cmty. Ass'n, Inc.,* 361 Md. 371, 394-95, 761 A.2d 899, 911 (2000) (quoting *Carroll County Ethics Comm'n v. Lennon,* 119 Md.App. 49, 58, 703 A.2d 1338, 1342-43 (1998)). Neal's request is injunctive because it seeks to compel

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----                                                                                        Page 15
--- A.2d ----, 2007 WL 1310141 (Md.)
**(Cite as: --- A.2d ----)**

Wells Fargo not to consummate foreclosure at some future date, rather than merely asking the court to resolve what general rights Neal may have with respect to the property (i.e. possessory interest). We, thus, consider it as an request for an injunction. *See Frank v. Storer,* 66 Md.App. 459, 464, 504 A.2d 1163, 1165 (regarding motion to dismiss foreclosure proceeding as a request for injunctive relief), *rev'd on other grounds,* 308 Md. 194, 517 A.2d 1098 (1986).

FN5. Wells Fargo asserted in the Circuit Court that it made several attempts, in compliance with the HUD regulations, to avoid foreclosure under Neal's deed of trust. In the instant case seeking review of the grant of summary judgment, the sole legal issue is whether the HUD regulations may be invoked either to create a private contract action or, alternatively, provide a defense to a foreclosure action. Wells Fargo's compliance or noncompliance with those regulations has no bearing on the resolution of this exclusively legal and sole question before us now. Whether Wells Fargo complied with the relevant HUD regulations may be resolved in the Circuit Court's resolution of Neal's request for injunctive relief, which, as explained *infra,* may proceed.

FN6. The FHA requires that participants in its mortgage insurance program utilize the form deed of trust prepared by the agency. *See* 24 C.F.R. § 203.17(a)(2)(i); *see also Warren v. Gov't Nat'l Mortgage Ass'n,* 611 F.2d 1229, 1231 n. 3 (8th Cir.1980). The " MARYLAND FHA DEED OF TRUST" executed by the Neal and Wells Fargo is a specimen of the FHA's standard form required by HUD regulations.

FN7. The original mortgagee-assignor also had no control over the substantive terms of the contract. Although the first page of the deed indicates that it was "prepared by Margaretten & Co., Inc.," the deed nevertheless was a prefabricated FHA form with blanks to be filled in with the appropriate facts as applicable to the parties (i.e. names, addresses, purchase price, identity of the property, etc.). In that sense only was the deed "prepared" by Margaretten & Co., Inc.

FN8. The applicable provision of the Code of Federal Regulations defines a "default" as a scenario where "the mortgagor fails to make any payment or to perform any other obligation under the mortgage, and such failure continues for a period of 30 days...." 24 C.F.R. § 203.331(a).

FN9. Also included among the required loss mitigation efforts, and alleged by Neal not to have been attempted by Wells Fargo in this case, is a required face-to-face interview between the mortgagor and mortgagee before three months of delinquency accrues. 24 C.F.R. § 203.604(b).

FN10. *See, e.g., Vaughn v. Consumer Home Mortgage, Inc.,* 293 F.Supp.2d 206, 210 n. 2 (E.D.N.Y.2003) ("HUD cites *Cort v. Ash* for the proposition that a private right of action cannot be implied from the National Housing Act or the Fair Housing Act unless expressly granted.") (citation omitted).

FN11. The Rule provides, in pertinent part:
**(b) Injunction to Stay Foreclosure.** (1) *Motion.* The debtor, any party to the lien instrument, or any person who claims under the debtor a right to or interest in the property that is subordinate to the lien being foreclosed, may file a motion for an injunction to stay any sale or any proceedings after a sale under these rules. The motion shall not be granted unless the motion is supported by affidavit as to all facts asserted and contains: (1) a statement as to whether the moving party admits any amount of the debt to be due and payable as of the date the motion is filed, (2) if an

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- A.2d ----                                                                                                    Page 16

--- A.2d ----, 2007 WL 1310141 (Md.)
**(Cite as: --- A.2d ----)**

amount is admitted, a statement that the moving party has paid the amount into court with the filing of the motion, and (3) a detailed statement of facts, showing that: (A) the debt and all interest due thereon have been fully paid, or (B) there is no default, or (C) fraud was used by the secured party, or with the secured party's knowledge, in obtaining the lien.

FN12. We are ill-equipped, on the current record, to assess whether Neal's allegations regarding Wells Fargo's noncompliance with the HUD loss mitigation regulations are sufficient. As we noted *supra* at 5, n. 5, Wells Fargo alleges that it acted to comply with its loss mitigation responsibilities. We leave for the trial court, on remand, to decide whether Neal, in his pursuit of injunctive relief, is able to substantiate his affirmative defense. As with all affirmative defenses, Neal bears the burden of proof. *See, e.g., Newell v. Richards,* 323 Md. 717, 725, 594 A.2d 1152, 1156 (1991); *Weston Builders & Developers, Inc. v. McBerry, LLC,* 167 Md.App. 24, 55, 891 A.2d 430, 448 (quoting *Wickman v. Kane,* 136 Md.App. 554, 561, 766 A.2d 241, 245, *cert. denied,* 364 Md. 462, 773 A.2d 514 (2001)), *cert. denied* 392 Md. 726, 898 A.2d 1005 (2006); Paul V. Niemeyer & Linda M. Schuett, Maryland Rules Commentary 216 (3d ed. 2003) ("[W]hen an affirmative defense is raised by the defendant, the defendant has the burden of persuasion.") (citing *Armstrong v. Johnson Motor Lines, Inc.,* 12 Md.App. 492, 280 A.2d 24, *cert. denied,* 263 Md. 709 (1971) ).

Md.,2007.
Wells Fargo Home Mortg., Inc. v. Neal
--- A.2d ----, 2007 WL 1310141 (Md.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.