IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Long Term Care Pharmacy Alliance and<br>American Society of Consultant Pharmacists,<br><br>Plaintiffs,<br><br>v.<br><br>UnitedHealth Group Inc.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No.: 1:06-CV-01221 (ESH)<br>)<br>)<br>)<br>)<br>) |

**Defendant's Memorandum of Points and Authorities In Opposition to Plaintiffs'
Motion to Consolidate Civil Action No. 01:06-CV-01221 (ESH) and
<u>Civil Action No. 01:07-CV-01115 (ESH)</u>**

Defendant, UnitedHealth Group, Inc. ("UHG"), by and through its undersigned counsel, respectfully submits this Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion to Consolidate Civil Action No. 01:06-CV-01221 (ESH) and Civil Action No. 01:07-CV-01115 (ESH) (the "Motion to Consolidate") [Docket No. 29].

I.  **Introduction**

Plaintiffs, the Long Term Care Pharmacy Alliance ("LTCPA") and the American Society of Consultant Pharmacists ("ASCP"), move to consolidate their contract-based lawsuit against UHG (Civil Action No. 06-01221) with its recently filed lawsuit against the Centers for Medicare and Medicaid Services ("CMS") (Civil Action No. 07-01115), which seeks a writ of mandamus. The two lawsuits—filed almost a year apart against different defendants—assert different causes of actions, involve separate legal issues, raise different factual issues, and seek entirely different forms of relief. Given that Plaintiffs' actions against UHG and CMS present such dissimilar operative facts and issues, consolidation under Fed. R. Civ. P. 42(a) is not warranted. This is especially so

given the unique jurisdictional arguments and defenses that are likely to be advanced by CMS in response to Plaintiffs' lawsuit. See In re Tobacco/Governmental Health Care Litig., 76 F. Supp. 2d 5, 9 (D.D.C. 1999) (denying consolidation due to legal issues unique to the United States as a party to the action).

Further, UHG's Motion to Dismiss Plaintiffs' Amended Complaint (the "Motion to Dismiss") [Docket No. 25] has been fully briefed and is pending before the Court. Given that the Court's ruling on the Motion to Dismiss may result in dismissal of Plaintiffs' action against UHG, consolidation of Plaintiffs' actions against UHG and CMS is, at best, premature. See, e.g., Chisum v. Colvin, 276 F. Supp. 2d 1, 5 (D.D.C. 2003) (denying, as moot, plaintiff's motion to consolidate following dismissal of plaintiff's amended complaint).

## II. Argument

In their Motion to Consolidate, Plaintiffs assert that "[d]uring hearings in March 2007 . . . this Court expressed its concern that the presence of the federal government, specifically [CMS], would be important to its adjudication." (Plfs' Memo. in Support of Motion to Consolidate ("Plfs' Memo."), at 1). Plaintiffs, however, fail to note that the Court's concern was raised in connection with Plaintiffs' Motion for a Temporary Restraining Order and a Preliminary Injunction [Docket Nos. 3 and 19], and the looming May 31, 2007 deadline that CMS had imposed for PDPs to submit prescription drug reimbursement reports to CMS. CMS declined to participate in the preliminary injunction proceedings, and the Court noted that to the extent the Plaintiffs' Complaint against UHG raised a contract action, "I don't blame CMS for telling you [Plaintiffs and

2

UHG] to work it out[.]" (Transcript of March 29, 2007 Hearing, at 12:1-3, attached as Exhibit 1 to UHG's Motion to Dismiss).

After denial of their Motion for a TRO and a Preliminary Injunction, and notwithstanding the Court's expressed concern as to Plaintiffs' standing to bring a contract action and whether UHG was the proper defendant, LTCPA and ASCP filed an Amended Complaint [Docket No. 24] that continues to assert, as its centerpiece, contract-based claims against UHG alone. Just as the Court previously noted that CMS's presence was not necessary to adjudicate the contract claims asserted in Plaintiffs' original complaint, so too is CMS's presence not required to adjudicate the contract-based claims asserted in Plaintiffs' Amended Complaint.

### A.   Plaintiffs Bear the Burden of Establishing that Consolidation Is Appropriate.

Consolidation is permitted only when the Court determines, in its discretion, that separate actions involve a "common question of law or fact," and that consolidation "may . . . avoid unnecessary costs or delay." Fed. R. Civ. P. 42(a). "A court has discretion to consolidate cases under Rule 42(a) if such consolidation will help it manage its caseload with 'economy of time and effort for itself, for counsel, and for litigants.'" Mylan Pharmaceuticals, Inc. v. Henney, 94 F. Supp. 2d 36, 43 (D.D.C. 2000) (internal quotation and citation omitted), rev'd on other grounds, 276 F.3d 627 (D.C. Cir. 2002). "The party moving for consolidation bears the burden of showing the commonality of factual or legal issues." Sidari v. Orleans County, 174 F.R.D. 275, 281 (W.D.N.Y. 1996) (quoting In re Repetitive Stress Injury Litig., 11 F.3d 368, 373 (2d Cir. 1993)).

### B. Plaintiffs' Contract-Based Action Against UHG, and Their Mandamus Action Against CMS, Do Not Involve Common Questions of Law or Fact.

Plaintiffs have failed to satisfy their burden of establishing common questions of law or fact in their separate actions against UHG and CMS. Specifically, the causes of action that Plaintiffs assert against UHG and CMS, and the relief sought, are entirely distinct and the facts necessary for adjudication of Plaintiffs' actions are different. The simple fact that both lawsuits involve co-payments with respect to a sub-class of Medicare Part D beneficiaries is insufficient to warrant consolidation under Rule 42(a). See Sidari, 174 F.R.D. at 281 (consolidation is not warranted when a plaintiff "allege[s] distinct claims under the same general theory of law or statute.").

The Court has previously noted—and Plaintiffs and UHG agree—that there is no dispute that Institutionalized Dual Eligibles are not liable for co-payments for prescription drugs that are covered under the Medicare Part D program. (See Transcript of March 29, 2007 Hearing, at 19:21-20:13; Plfs' Opp. to UHG's Motion to Dismiss at 23; UHG's Reply Memorandum In Support of Its Motion to Dismiss ("Reply Memo.") [Docket No. 28] at 1). UHG also recognizes that, subject to the terms of their contracts with LTC pharmacies, UHG-affiliated prescription drug plans ("PDPs") are responsible for reimbursing long term care ("LTC") pharmacies for these co-payments. (Reply Memo. at 1-2).

The core issue in Plaintiffs' lawsuit against UHG is a contractual one: whether UHG-affiliated PDPs improperly reimbursed Plaintiffs' members for co-payments under their respective pharmacy network contracts. As detailed in UHG's Motion to Dismiss and its Reply Memo., the resolution of Plaintiffs' lawsuit against UHG turns on three

4

points: (1) the terms of the parties' respective contracts, which Plaintiffs have belatedly acknowledged differ in relevant part;[1] (2) the parties' actual performance under those contracts; specifically, whether the pharmacies timely submitted and/or re-submitted claims, in the format, and with the content, required under the applicable contract; and (3) the facts relating to the specific claims at issue, including, e.g.: (a) whether the resident of the LTC facility on whose behalf the claim was submitted satisfied the statutory criteria of an Institutionalized Dual Eligible; (b) whether the individual was covered under a UHG-affiliated PDP, as opposed to some other PDP; (c) whether the pharmacy collected or waived a co-payment from such individual and carried a corresponding debt on its books; and (d) whether the prescription drug was covered by the PDP.

The factual matters at issue in Plaintiffs' contract-based action against UHG are not germane to Plaintiffs' lawsuit against CMS, in which Plaintiffs assert the "[p]aramount [issue] is CMS's acknowledged failure . . . to provide PDPs with accurate data" resulting in "a systemic data-based impediment to the proper functioning of the Part D program," for which Plaintiffs seek mandamus relief. (Compl., LTCPA v. Leavitt, 1:07-cv-01115 (ESH), ¶ 3; id., Prayer for Relief (3)). Specifically, the terms of network pharmacy contracts between UHG-affiliated PDPs and LTC pharmacies, and the parties' actual performance under those contracts, are not at issue in Plaintiffs' lawsuit against CMS.

---

[1] Compare Compl. ¶ 34 ("Upon information and belief, Defendant's network contract is virtually uniform in all relevant parts") (emphasis added), *with* Am. Compl. ¶ 38 ("Defendant, directly or through its affiliates, has one or more 'network pharmacy contracts' with each of Plaintiffs' member LTC Pharmacies.").

5

Similarly, the legal issues in the two lawsuits are distinct, as is the relief requested. In their lawsuit against UHG, Plaintiffs' core claim is that UHG breached its alleged network contracts with Plaintiffs' members by withholding co-payments with respect to certain Institutionalized Dual Eligibles, and Plaintiffs purport to seek an order "declaring" that UHG must pay the co-payments at issue to LTC pharmacies. In contrast, the "paramount issue" in Plaintiffs' action against CMS is CMS's alleged violation of federal law stemming from its "failure to provide complete and accurate eligibility data to PDPs," for which Plaintiffs seek a writ of mandamus that would, *inter alia*, compel CMS to "provide timely, complete, updated, and accurate eligibility data to PDPs within a time to be defined by the Court." (See Compl., LTCPA v. Leavitt, 1:07-cv-01115, ¶3, Prayer for Relief (2)-(3)(a)).

Further, Plaintiffs' Complaint against CMS raises a number of unique legal issues that weigh against consolidation. For example, the writ of mandamus that Plaintiffs seek against CMS is a "drastic and extraordinary remedy reserved for really extraordinary causes." Cheney v. United States Dist. Ct. for the Dist. of Columbia, 542 U.S. 367, 380 (2004) (internal quotation omitted).[2] Considering the myriad of unique jurisdictional

---

[2] As explained by the Supreme Court:

> [T]he Writ is one of the most potent weapons in the judicial arsenal, [and] three conditions must be satisfied before it may issue. First, the party seeking issuance of the writ must have no other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process. Second, the petitioner must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable. Third, even if the first to prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

Id. at 380-81 (internal citations and quotations omitted).

arguments and defenses that are likely to be advanced by CMS in response to Plaintiffs' lawsuit, consolidation of that action with Plaintiffs' lawsuit against UHG is not warranted. See In re Tobacco/Governmental Health Care Litig., 76 F. Supp. 2d at 9 (denying defendant's motion to consolidate action brought by the United States with those brought by foreign governments involving allegedly identical misrepresentations and anticompetitive behavior of a tobacco company, noting that "most of the legal questions to be decided before trial are unique to the lawsuit filed by the United States, eliminating any increase in efficiency or justice to be gained by the consolidation of the U.S. and foreign actions."). Accordingly, consolidation under Fed. R. Civ. P. 42(a) is not warranted. See Southwest Marine, Inc. v. Triple A Machine Shop, Inc., 720 F. Supp. 805, 807 (N.D. Cal. 1989) ("[C]onsolidation of these two, complex actions outweighs any efficiencies that might be achieved through consolidation[,]" since the two lawsuits "do not state the same cause of action . . . [and] the facts necessary to prove the claims in the respective actions are not in common, nor do the actions necessarily concern the same . . . contracts.").

    C.    **Consolidation Will Not Promote Judicial Economy.**

Plaintiffs assert that consolidation of their actions against UHG and CMS will promote judicial economy by "having the primary actors in the Part D process present to explain their actions[.]" (Plfs' Memo. at 3). Plaintiffs misstate the test of judicial economy under Rule 42(a); it is not merely having a group of defendants "present to explain their actions" to the court in one proceeding; it is whether "consolidation would increase efficiency by reducing the possibility of duplicative discovery and by achieving judicial economy in the adjudication of potentially dispositive motions involving *similar*

7

*material facts*, a single group of actors present during the events at issue, and *common questions of law*." Chang v. U.S., 217 F.R.D. 262, 266-67 (D.D.C. 2003) (emphasis added). As noted above, Plaintiffs' actions are predicated upon different operative facts, and assert different causes of action and prayers for relief against different defendants; accordingly, consolidation under Fed. R. Civ. P. 42(a) is not warranted.

Further, consolidation of Plaintiffs' actions will not promote judicial economy. UHG's Motion to Dismiss was fully briefed even before Plaintiffs filed suit against CMS. Given that the Court's ruling on the Motion to Dismiss may result in dismissal of Plaintiffs' action against UHG, and given the unique legal issues presented by Plaintiffs' action against CMS, consolidation of these actions is, at best, premature. Kalodner v. Bodman, 241 F.R.D. 6, 9 (D.D.C. 2006) ("The Court agrees with [d]efendants that [plaintiff's] request for consolidation is unnecessary and dismissal of the instant action is appropriate."); Chisum v. Colvin, 276 F. Supp. 2d at 5 (denying, as moot, plaintiff's motion to consolidate following dismissal of plaintiff's amended complaint). See also In re Tobacco/Governmental Health Care Litig., 76 F. Supp. 2d at 9 (denying consolidation due to legal issues unique to the United States as a party to the action).

Plaintiffs cite to only one case, Linquist v. Brown, 633 F. Supp. 846, 856-57 (W.D. Mo. 1986), aff'd 813 F.2d 884 (8th Cir. 1987), as "show[ing] the benefit of having all these parties before the Court on a consolidated basis." (Plfs' Memo. at 3). Plaintiffs' reliance on Linquist is misplaced. In Linquist, the court addressed whether it had subject matter jurisdiction over a *single* action brought against two defendants. The court's ruling was absolutely silent as to consolidation of separate actions under Fed. R. Civ. P.

8

42(a). The <u>Linquist</u> decision, therefore, is irrelevant to the issue of whether Plaintiffs' separate actions against UHG and CMS should be consolidated.

### III. <u>Conclusion</u>

For the foregoing reasons, UHG respectfully submits that the Court should deny Plaintiffs' Motion to Consolidate.

July 6, 2007                              Respectfully submitted,

                                              /s/ Mark C. Nielsen
Thomas F. Fitzgerald (Bar No. 58232)
Michael J. Prame (Bar No. 451017)
Mark C. Nielsen (Bar No. 465220)
Groom Law Group, Chartered
1701 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone:  202.857.0620
Facsimile:   202.659.4503

**Attorneys for Defendant**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of UnitedHealth Group Incorporated's Memorandum in Opposition to Plaintiffs' Motion to Consolidate was served, via electronic delivery, on the 6th day of July 2007, upon the following:

    David Farber, Esq.
    Harry Silver, Esq.
    Patton Boggs
    2550 M Street, NW
    Washington, DC  20037
    dfarber@pattonboggs.com
    hsilver@pattonboggs.com

    Counsel for Plaintiffs

July 6, 2007

        /s/ Mark C. Nielsen
Mark C. Nielsen (Bar No. 465220)
Groom Law Group, Chartered
1701 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone:   202.857.0620
Facsimile:   202.659.4503
Email:          mcn@groom.com

**Counsel for Defendant**