# Exhibit 1

Westlaw.

Slip Copy                                                                                          Page 1

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
**(Cite as: Slip Copy)**

**H**
American Medical Ass'n v. United HealthCare Corp.
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
The AMERICAN MEDICAL ASSOCIATION, et al., Plaintiffs,
v.
UNITED HEALTHCARE CORPORATION, et al., Defendants.
No. 00 Civ. 2800(LMM).

June 18, 2007.

*MEMORANDUM AND ORDER*
McKENNA, D.J.
*1 Defendants [FN1] here move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs, who include subscribers to certain health plans ("Subscriber Plaintiffs") [FN2], out-of-network medical care providers suing as assignees of certain subscribers' benefits claims ("Provider Plaintiffs") [FN3], and medical associations suing in their associational capacity on behalf of their members ("Medical Association Plaintiffs") [FN4] (all, collectively, " Plaintiffs"), oppose Defendants' motion for summary judgment. For the reasons set forth herein, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

FN1. The defendants consist of the United HealthCare Corporation, including the UnitedHealth Group Incorporated ("UGI"), United HealthCare Insurance Company ("UHIC"), United HealthCare Services, Inc. ("UHS"), United HealthCare Services of Minnesota, Inc. ("UHS of Minnesota"), United HealthCare Services Corporation ("UHSC"), Ingenix, Inc. ("Ingenix") (collectively, "United Defendants"); Metropolitan Life Insurance Company, and

American Airlines, Inc. ("American Airlines") (all, collectively, "Defendants").

FN2. For purposes of this motion, Subscriber Plaintiffs consist of David and Colleen Finley ("the Finleys"), S. Joseph Domina ("Domina"), Sandra Taylor (" Taylor"), Clifford E. Wilson, individually and as executor of the estate of Michele S. Wilson ("the Wilsons"), Peter Oborski (" Oborski"), Michael and Susie Grisham (" the Grishams"), Paul Steinberg ("Steinberg "), Helene Coull ("Coull"), and Edward F. Mitchell, Jr. ("Mitchell"). Subscriber Plaintiffs as referred to herein do not include Matthew Crema or any of the various intervenor plaintiffs in this litigation.

FN3. The Provider Plaintiffs are John Marcum, M.D., Michael Attkiss, M.D., and William B. Ericson, Jr., M.D.

FN4. The Medical Association Plaintiffs consist of the American Medical Association, the Medical Society of the State of New York, and the Missouri State Medical Association.

## I. BACKGROUND

In this action, Plaintiffs challenge Defendants' practices in relation to decisions involving the " usual, customary, and reasonable" ("UCR") rates paid by Defendants for out-of-network medical services in connection with certain health care plans. All of the Subscriber Plaintiffs are participants or beneficiaries in one of four employer-sponsored health care plans ("Employer Plans"): Subscriber Plaintiffs Taylor, Wilson, Oborski, Steinberg, Coull, and the Grishams are participants or beneficiaries of the Employer Plan sponsored by American Airlines ("American Airlines Plan"); Subscriber Plaintiff Mitchell was a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 2

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
**(Cite as: Slip Copy)**

participant in the Employer Plan sponsored by Osram Sylvania ("Osram Plan"); Subscriber Plaintiff Domina is a participant in the Employer Plan sponsored by Chase Manhattan Bank ("Chase Plan"); and the Finleys were participants in the Employer Plan sponsored by Professional Engineering Consultants ("PEC Plan"). (Defs.' Statement of Undisputed Facts ("Defs.' Statement") No. 3.) Each of these Employer Plans authorizes its subscribers to obtain health care services from " out-of-network" physicians who do not participate in a network of providers maintained by one of the United Defendants. (*Id.*) Subscribers are then reimbursed a certain percentage of the "usual, customary and reasonable" fees for such services based on United Healthcare's calculation of the UCR rates.[FN5]

> FN5. Defendants object to the use of the term UCR, arguing that it mischaracterizes the terms of the Employer Plans. The Court recognizes that the plans employ slightly different language and will, of course, differentiate between them as necessary. Nonetheless, the Court will continue to employ this term in the way that various litigants have throughout this litigation: for convenience.

Plaintiffs allege that Defendants' practices in determining UCR rates, including Defendants' alleged reliance on the Prevailing Healthcare Charges System ("PHCS") database, violate ERISA, the terms of the Employer Plans themselves, and, in the case of certain plaintiffs, New York's Deceptive Trade Practices statute and contract law. This Court recently authorized Plaintiffs to assert additional claims against United Defendants for antitrust and RICO violations based on their alleged scheme to under-reimburse beneficiaries and medical care providers by manipulating UCR data. *See Am. Med. Ass'n v. United Healthcare Corp.,* No. 00 Civ. 2800(LMM), 2006 WL 3833440 (Dec. 29, 2006). A comprehensive fourth amended complaint has yet to be filed.

This action was initially filed in New York state

court and was removed to this Court in April 2000. In the intervening years this Court has addressed several motions, including multiple motions to dismiss. Most recently, the Court granted in part and denied in part both a motion to dismiss the Counterclaim Complaint, *see Am. Med. Ass'n v. United Healthcare Corp.,* No. 00 Civ. 2800(LMM), 2007 WL 683974 (S.D.N.Y. March 5, 2007), and a motion for leave to amend the Third Amended Complaint, *see Am. Med. Ass'n v. United Healthcare Corp.,* No. 00 Civ. 2800(LMM), 2006 WL 3833440 (S.D.N.Y. Dec. 29, 2006).

**\*2** In its memorandum and order addressing Defendants' motion to dismiss the Third Amended Complaint, the Court noted its concerns relating to certain preliminary issues raised by Defendants, such as whether Plaintiffs had exhausted their administrative remedies, whether various Plaintiffs had standing, and whether Defendants were proper parties to certain of Plaintiffs' claims. *See Am. Med. Ass'n v. United Healthcare Corp.,* No. 00 Civ. 2800(LMM), 2002 WL 31413668 (S.D.N.Y. Oct. 23, 2002) (the "October 2002 Order"). Given the procedural posture of the case on that motion to dismiss, the Court accepted the Plaintiffs' allegations as true and, for the most part, denied Defendants' motion to dismiss on those preliminary issues. However, recognizing that proceeding to merits discovery represented a massive undertaking for all parties, the Court ordered the parties to proceed only with what it termed "Stage One" discovery. Stage One discovery was "limited to the proper parties in this action as opposed to the merits of the case." October 2002 Order at \*6.[FN6]

> FN6. Several developments have occurred in this litigation following the October 2002 Order, including the unopposed motion of the Union Plaintiffs to intervene in this action on behalf of their members, which this Court granted January 30, 2003, *see Am. Med. Ass'n v. United Healthcare Corp.,* No. 00 Civ. 2800(LMM), 2003 WL 230897 (S .D.N.Y. Jan. 30, 2003), and Defendants' subsequent motion to dismiss Union Plaintiffs' Complaint in Intervention and to compel arbitration of the Union

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 3

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Plaintiffs' claims, which the Court denied on August 22, 2003. *See Am. Med. Ass'n v. United Healthcare Corp.,* No. 00 Civ. 2800(LMM), 2003 WL 28004877 (S.D.N.Y. Aug. 22, 2003). More recently, the Court granted Plaintiffs' motion for leave to amend the Third Amended Complaint-that is, to file a Fourth Amended Complaint-primarily in order to add RICO and antitrust claims against United Defendants. *See Am. Med. Ass'n v. United Healthcare Corp.,* No. 00 Civ. 2800(LMM), 2006 WL 3833440 (S.D.N.Y. Dec. 29, 2006). The Fourth Amended Complaint has not yet been filed. Stage One discovery did not include these new plaintiffs or these new claims, and Defendants do not seek summary judgment on them here.

Stage One discovery has now been completed, and before the Court here is what may be termed Defendants' Stage One summary judgment motion; that is, Defendants' motion for summary judgment based on whether there are disputed issues of material fact regarding those preliminary issues for which discovery was conducted during Stage One.

## II. DISCUSSION

### A. Defendants' Motions to Strike

In conjunction with their reply memorandum of law in this summary judgment motion, Defendants submitted both a Motion to Strike Plaintiffs' Responses to Defendants' Statement of Undisputed Facts and a Motion to Strike the Affidavits of D. Brian Hufford and Barry M. Epstein. Because the outcome of these motions could affect the facts considered in deciding this summary judgment motion, the Court addresses them as a preliminary matter here.

### 1. The Motion to Strike Plaintiffs' Responses to Defendants' Statement of Undisputed Facts

Defendants argue that Plaintiffs' counterstatement of facts fails to comply with Local Rule 56.1 because it contains mischaracterizations of the record, includes arguments and legal conclusions, and neglects to cite admissible evidence.

Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York establishes rules both parties must satisfy when a summary judgment motion is filed. Rule 56.1(a) requires a party moving for summary judgment to submit a short, concise statement that, in numbered paragraphs, sets forth each material fact in the case. Rule 56.1(b) requires a party opposing a motion for summary judgment to include a counterstatement of material facts. Rule 56.1(d) requires that each statement filed pursuant to Rules 56.1(a) and (b) cite to admissible evidence in the record.

"Local Rule 56.1 is designed to place the responsibility on the parties to clarify the elements of the substantive law which remain at issue because they turn on contested facts." *Monahan v. New York City Dep't of Corrections,* 214 F.3d 275, 292 (2d Cir.2000). When parties decline to file Rule 56.1 statements, or when the statements they file lack citations or are in some other way deficient, courts are "free to disregard" the assertions therein. *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir.2001). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Id.* As the Court of Appeals in this Circuit has recognized, "while a court 'is not required to consider what the parties fail to point out' in their Local Rule 56.1 statements, it may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file such a statement." *Id.* (citations omitted). *See also Derienzo v. Metropolitan Transp. Authority,* 404 F.Supp.2d 555 (S.D.N.Y.2005).

**\*3** Here, Plaintiffs filed a response to Defendants' statement of undisputed facts, thereby satisfying the formal requirement of Local Rule 56.1(b). Defendants accurately point to certain portions of Plaintiffs' response that lack citations to the record. However, for the most part Plaintiffs' factual

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
**(Cite as: Slip Copy)**

responses refer the Court to admissible evidence and thereby comply with Local Rule 56.1(d). To the extent that they do not contain citations to admissible evidence in the record, the Court finds it not unduly burdensome to seek to fill such gaps by its own perusal of the record, especially as the extensive briefing on the motion for summary judgment provides significant guidance through repeated citations to the record.

Because the Court experiences minor inconvenience, rather than undue burden, as a result of Plaintiffs' occasional failure to cite admissible evidence in the response to the statement of undisputed facts, it chooses to exercise its discretion "to overlook" any such "failure to comply with local court rules." *Holtz,* 258 F .3d at 73. For this reason, and because the Court finds Defendants' other objections [FN7] to Plaintiffs' response unavailing, Defendants' Motion to Dismiss Plaintiffs' Response to Defendants' Statement of Undisputed Facts is DENIED.

> FN7. Defendants assert that Plaintiffs' response misrepresents the record and is, at times, argumentative and conclusory. Plaintiffs' opposition to Defendants' motion to strike Plaintiffs' response raises similar complaints regarding Defendants' statement of undisputed facts. The Court, in deciding the motion for summary judgment, disregards any such arguments and conclusory statements and relies, of course, on the record itself rather than on either party's representations regarding the record.

### 2. The Motion to Strike the Affidavits

Defendants also move to strike the affidavits of D. Brian Hufford ("Hufford Affidavit") and Barry M. Epstein ("Epstein Affidavit"), which Plaintiffs submitted in conjunction with their opposition to Defendants' motion for summary judgment. Defendants argue that both affidavits violate Fed.R.Civ.P. 56(e). Plaintiffs, in addition to opposing the motion to strike, submitted revised versions of both the Hufford Affidavit ("Revised

Hufford Affidavit") and the Epstein Affidavit ("Revised Epstein Affidavit"). Defendants counter that even the revised affidavits should be stricken because the Revised Epstein Affidavit is not based on personal knowledge and because both affidavits mischaracterize evidence and rely on inadmissible hearsay.

Rule 56(e) provides, in relevant part, that " [s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e).

To the extent that the Revised Hufford and Epstein Affidavits contain argument or facts of which the affiants do not have personal knowledge, the Court disregards them. The majority of both revised affidavits appears, however, to be based on personal knowledge of the record and to set forth (and cite to) admissible evidence. The Court will consider those portions of the revised affidavits that comply with Rule 56(e) and, of course, the exhibits attached to both affidavits. The motions to strike both affidavits are therefore DENIED.

### B. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "A dispute is not 'genuine' unless 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Nabisco, Inc. v. Warner-Lambert Co.,* 220 F.3d 43, 45 (2d Cir.2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.' " *Overton v. N.Y. State Div. of Military & Naval Affairs,* 373 F.3d 83, 89 (2d Cir.2004) (quoting *Anderson,* 477 U.S. at 248).

*\*4 The party seeking summary judgment bears the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                            Page 5

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
**(Cite as: Slip Copy)**

burden of showing that no genuine factual dispute exists. *See Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir.1995). After the moving party has made such a showing, the burden shifts to the nonmoving party to raise a triable issue of fact. *Anderson,* 477 U.S. at 250. On a motion for summary judgment, a court must view the record in the light most favorable to the nonmoving party, resolving all ambiguities and drawing all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

**C. Exhaustion of Administrative Remedies**

Defendants first argue that summary judgment should be granted on the vast majority of Plaintiffs' claims because the Subscriber Plaintiffs have not exhausted their administrative remedies. (Defs.' Mem. in Supp. 6.) Defendants contend that, "[o]ut of a total of 9,489 claims determinations, all of Plaintiffs *combined* asserted appeals for only 135 individual claims" (the "135 Fully Appealed UCR Claims") and that Defendants are entitled to summary judgment for all of the Subscriber Plaintiffs' ERISA claims except for the 135 Fully Appealed UCR Claims. (Defs.' Mem. in Supp. 8.) The question on this motion is whether Plaintiffs have presented evidence to create a triable issue of fact as to whether these claims were exhausted or, if not, whether their failure to satisfy the exhaustion requirement should be excused.

Stage One discovery has revealed three general groupings of Subscriber Plaintiffs and claims in regards to administrative exhaustion: the 135 Fully Appealed UCR Claims made by Subscriber Plaintiffs Domina, Oborski, Taylor, Wilson, and the Finleys; claims made by Subscriber Plaintiff Mitchell that were fully appealed; and claims by those same plaintiffs and by Subscriber Plaintiffs Steinberg, Grisham, and Coull that were not fully appealed.

**1. ERISA's Exhaustion Requirement**

"ERISA requires both that employee benefit plans

have reasonable claims procedures in place, and that plan participants avail themselves of these procedures before turning to litigation." *Eastman Kodak Co. v. STWB, Inc.,* 452 F.3d 215, 219 (2d Cir.2006) (citing 29 C.F.R. § 2560.503-1 and *Jones v. UNUM Life Ins. Co. of Am.,* 223 F.3d 130, 140 (2d Cir.2000)). As this Court observed in its October 2002 Order, "[t]he Second Circuit has recognized "the firmly established policy favoring exhaustion of administrative remedies in ERISA cases.' " Oct. 2002 Order at *4 (quoting *Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588, 594 (2d Cir.1993) (internal citation omitted)). This exhaustion requirement serves to "(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo.*" *Davenport v. Harry N. Abrams, Inc.,* 249 F.3d 130, 133 (2d Cir.2001); *see also Kennedy,* 989 F.3d at 594.

*5 The parties dispute whether the administrative exhaustion requirement in ERISA cases is jurisdictional in nature, with Defendants asserting that "exhaustion [is] a jurisdictional prerequisite to bringing suit under ERISA" and Plaintiffs countering that whether to require exhaustion "lies within the sound discretion of the court." (Defs.' Mem. in Supp. 7; Pls.' Mem. in Opp. 11.) The Second Circuit resolved this issue after this motion was fully submitted, holding that "a failure to exhaust ERISA administrative remedies is not jurisdictional, but is an affirmative defense." *Paese v. Hartford Life Accident Ins. Co.,* 449 F.3d 435, 446 (2d Cir.2006).

While the ERISA exhaustion requirement is not jurisdictional, neither is it an insignificant procedural hurdle. Claimants may be exempted from the administrative exhaustion requirement only by making a " 'clear and positive showing' that pursuing available administrative remedies would be futile." *Kennedy,* 989 F.2d at 594 (internal citation omitted). *See also Eastman Kodak,* 452 F.3d at 594 ("Unless a 'clear and positive showing' is made that it would be futile for the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 6

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
(Cite as: Slip Copy)

claimant to pursue her claim through the internal claims process, 'that remedy must be exhausted prior to the institution of litigation.' " (internal citations omitted)).

**2. Exhaustion of the 135 Fully Appealed UCR Claims**

The Court first addresses the status of the 135 Fully Appealed UCR Claims. Defendants do not dispute that Plaintiffs Domina, Taylor, Oborski, Wilson, and the Finleys pursued each required level of appeal regarding the issue of UCR reimbursement and therefore fully exhausted their administrative remedies for these particular claims.[FN8] (*See* Epstein Aff. Ex. 2.) However, although Defendants concede that Plaintiffs satisfied the procedural requirements to exhaust administrative remedies for these 135 Fully Appealed UCR Claims, they nonetheless assert that they are entitled to summary judgment on these claims because Plaintiffs, Defendants argue, did not assert "a flaw in the PHCS database or that any purported flaw caused an underpayment" during the appeals process. (Defs.' Mem. in Supp. 10.)

> FN8. Three of the four Employer Plans are represented by these Subscriber Plaintiffs: Plaintiff Domina is a subscriber to the Chase Plan; Plaintiffs Taylor, Oborski, and Wilson are subscribers to the American Airlines Plan; and Plaintiff Finley is a subscriber to the PEC Plan.

Defendants thus contend that they are entitled to summary judgment because Plaintiffs failed to exhaust not the claims themselves but rather the underlying issue of the PHCS database and related methodology. (Defs.' Reply 7.) They further assert that the Court's review of these appeals should be limited to evidence in the administrative record, which Defendants note does not include information regarding the PHCS database and underlying data.

The Court need not decide the scope of its review of the administrative appeals determinations in order to determine whether Plaintiffs adequately raised

the issue of the PHCS database and UCR determinations in their 135 Fully Exhausted UCR Claims, and it declines to do so at this phase of the litigation. [FN9] The question in this Stage One summary judgment motion is limited to whether Plaintiffs have introduced evidence to create an issue of fact as to whether the UCR calculation rates and methodology were raised in their administrative appeals.

> FN9. Whether the Court's review of these claims will be confined to the administrative record or whether good cause exists to go beyond that record are issues for the merits and are not within the scope of this Stage One summary judgment motion.

*6 Plaintiffs have presented evidence that the Subscriber Plaintiffs involved in the 135 Fully Appealed UCR Claims did raise the issue of the UCR calculation and methodology in their appeals. For instance, Subscriber Plaintiff Wilson argued in one appeal that "[t]he determination of usual and prevailing is flawed." (Kemper Aff. Ex. 29.) Subscriber Plaintiffs David and Colleen Finley challenged a determination of reasonable and customary fees by stating: "Please explain in detail why United Healthcare considers my doctors' charges to be above 'Reasonable and Customary.' I would also like to see any studies or other back-up information that United Healthcare is relying upon." (Epstein Aff. Ex. 41.) One of Subscriber Plaintiff Oborski's appeals requested "the basis for your conclusion in determining UCR" and, at a later stage, stated "[p]lease provide a satisfactory answer, as well as the underlying data, to support any ' reasonable charge' that is *less* " than a figure that Oborski believed to be reasonable. (Epstein Aff. Ex. 42 .) Plaintiffs have pointed to such evidence for other Subscriber Plaintiffs as well. (*See* Pls.' Response to Defs.' Statement of Undisputed Facts No. 11.)

The Court finds that this evidence is sufficient to create an issue of fact as to whether Plaintiffs raised the PHCS issue in their administrative appeals of the 135 Fully Appealed UCR Claims. Defendants'

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
**(Cite as: Slip Copy)**

motion for summary judgment as to the PHCS issue in the 135 Fully Appealed UCR Claims is therefore DENIED.

### 3. Exhaustion of Plaintiff Mitchell's Appealed Claims

Both parties agree that Subscriber Plaintiff Mitchell "appealed several of his claims for benefits under ERISA § 502(a)(1)(B) to completion under the relevant administrative remedies under the Osram Plan." (Defs.' Statement No. 9; *see also* Pls.' Response No. 9.) Defendants argue, however, that Plaintiff Mitchell did not exhaust the issue of UCR reimbursement rates in his appeals. Unlike with the 135 Fully Appealed UCR Claims, here Defendants argue not that Plaintiff Mitchell failed to specifically challenge the PHCS database and methodology but rather that the subject matter of his appeals was United Healthcare's determination regarding the "medical necessity" of various medical services provided. Defendants seek summary judgment on Plaintiff Mitchell's claims, arguing that he failed to exhaust his administrative remedies because, although he completed the necessary appeals, he "did not contest whether he was reimbursed at the 'reasonable charge' as defined in the Osram Plan." (Defs.' Statement No. 9.) Plaintiffs challenge Defendants' characterization of the basis of Plaintiff Mitchell's appeals, "disput[ing]" that Mitchell did not raise the issue of UCR in his appeals to Osram." (Pls.' Response No. 9.)

Plaintiffs have not identified any specific instance of Mitchell's raising the issue of UCR reimbursement rates in his appeals, and the majority of the appeals documentation appears to involve evaluations of medical necessity rather than of UCR reimbursement rates. For instance, a letter of appeal prepared by Mitchell's attorney, which summarizes Mitchell's medical condition in detail and chronicles United Healthcare's response, notes that United Healthcare

*7 unquestioningly paid for the treatments ... throughout 1996 and early 1997. Then in the first half of 1997 United refused payments for the exact same treatments for which they had previously paid.

For the greater part of 1997 and all of 1998 United Health Care has refused to pay for Mr. Mitchell's treatment alleging that these treatments were not m edically necessary.

(Kemper Aff. Ex. 6.)

However, Plaintiffs do point to somewhat ambiguous references to reimbursement amounts in documents submitted in conjunction with Mitchell's appeals, including: Mitchell's letter complaining that the reimbursement amount of $82 for a procedure was "ridiculous" (Kemper Aff. Ex. 6); Mitchell's letter requesting that United Healthcare " straighten out all of 1997 bills" (Kemper Aff. Ex. 6); a letter by Mitchell's attorney noting "confusion concerning what are covered services under his health care insurance and *the appropriate reimbursements for same*" (Epstein Aff. Ex. 37 (emphasis added)); and Mitchell's letter inquiring " [w]hen surgery is covered, why is it that United always picks the lower cost one?") (Epstein Aff. Ex. 37.)

A review of the claim summary record for the time period at issue in the above-cited letters buttresses Plaintiffs' interpretation as to the basis of at least some of Mitchell's appeals. The record includes not only claims that were denied in full, as one would expect when the basis for the denial was lack of medical necessity, but also claims that were allowed in part, that is, claims where United Healthcare paid some but not all of the amount claimed. (Epstein Aff. Ex. 1.) Without additional information about the specific claims, the Court cannot conclude that Defendants have met their burden of showing that there is no issue of fact as to the subject of Mitchell's appeals requesting that United HealthCare "straighten out all of 1997 bills." (Kemper Aff. Ex. 6, Letter of April 14, 1998 to Lisa Vasas.)

As noted above, a court considering a motion for summary judgment must view the record in the light most favorable to the nonmoving party, resolving all ambiguities and drawing all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Resolving all ambiguities in the appeals

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
**(Cite as: Slip Copy)**

record in Plaintiff Mitchell's favor, the Court finds that Plaintiffs have presented sufficient evidence to create a question of fact as to the basis for at least some of Plaintiff Mitchell's appealed claims and have therefore met their burden. Defendants' motion for summary judgment as to the basis of Plaintiff Mitchell's fully exhausted administrative appeals is DENIED.[FN10]

> FN10. Plaintiff Mitchell subscribed to the Osram Plan, so at least one Subscriber Plaintiff from each of the four Employer Plans fully exhausted administrative appeals for certain claims.

### 4. Claims That Were Not Fully Appealed

Defendants assert that, "[o]ut of a total of 9,489 claims determinations, all of Plaintiffs *combined* asserted appeals for only 135 individual claims" and that Defendants are entitled to summary judgment on each of the ERISA claims for which appeals have not been exhausted. (Defs.' Mem. in Supp. 8.) As discussed above, Plaintiffs have presented evidence to create a triable issue of fact as to the exhaustion both of the 135 Fully Appealed UCR Claims and of Plaintiff Mitchell's claims. Defendants have shown (and Plaintiffs do not dispute) that there is no issue of fact as to whether the remaining Subscriber Plaintiffs-Steinberg, Grisham, and Coull-exhausted their administrative remedies for any of their claims: they clearly did not. Nor is there an issue of fact as to whether the other Subscriber Plaintiffs (Domina, Taylor, Oborski, Wilson, and the Finleys) exhausted administrative remedies for claims other than the 135 Fully Appealed UCR Claims. The remaining question is therefore whether all of these concededly unexhausted claims (the "Unexhausted Claims") should be excused from the exhaustion requirement.

### a. The Futility Exception

*8 In order to be excused from the requirement that an ERISA plaintiff exhaust available administrative remedies, that plaintiff must make a "clear and

positive showing" that pursuing administrative remedies would have been futile. *Kennedy,* 989 F.2d at 594. Courts in this district have recognized that this imposes a substantial burden on plaintiffs, for "[t]he threshold required by the futility exception is very high." *Patterson v. J .P. Morgan Chase & Co.,* No. 01 Civ. 7513, 2002 WL 207123 *3 (S.D.N.Y. Feb. 11, 2002). To survive this motion for summary judgment, Plaintiffs must present evidence to create an issue of fact as to whether they could, at trial, make a "clear and positive showing" of the futility of pursuing administrative appeals for the Unexhausted Claims. Despite Plaintiffs' numerous arguments, the Court finds that Plaintiffs have failed to present such evidence.

### b. Procedural Inadequacies

Plaintiffs argue that their failure to exhaust administrative appeals for these claims should be excused as futile because the appeals process did not provide them with "full and fair review" of the claim decisions as required by ERISA. (Pls.' Mem. in Opp. 46 .) While Plaintiffs correctly note that " [a] host of procedural deficiencies have been held to excuse exhaustion of administrative remedies," Plaintiffs have not introduced evidence to show that any of the procedural deficiencies recognized to constitute futility existed in the appeals procedures for the Unexhausted Claims. (*Id .*)

### i. Full and Fair Review and the PHCS Database

Plaintiffs first assert that United Healthcare " repeatedly provided inadequate explanation for its determinations," thereby denying them full and fair review of the claims decisions. (Pls.' Mem. in Opp. 47.) Classically, courts have found futility for failure to provide full and fair review where plan administrators failed to respond to requests for review of claims decisions, *see, e.g., Ludwig v. NYNEX Service Co.,* 838 F.Supp. 769, 782 (S.D.N.Y.1993), and where beneficiaries were not informed of their right to appeal a claim decision, *see, e.g., Novak v. TRW, Inc.,* 822 F.Supp. 963, 969 (E.D.N.Y.1993). Courts have also observed that full

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                          Page 9

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
**(Cite as: Slip Copy)**

and fair review may require that the plan administrator "inform the participant or beneficiary of the evidence that the fiduciary relied upon and provide 'an opportunity to examine that evidence and to submit written comments or rebuttal' documents." *Lidoshore v. Health Fund 917,* 994 F.Supp. 229, 236-237 (S.D.N.Y.1998) (quoting *Grossmuller v. International Union,* 715 F.2d 853, 858 (3d Cir.1983)). *See also Jurash v. Hartford Life Ins. Co.,* No. 99 Civ. 8916, 2000 WL 364896 *3 (S.D.N.Y. April 7, 2000).

Here, Plaintiffs argue that they were denied full and fair review because Defendants refused to disclose the evidence on which they relied in making their claims decisions, including the existence of the PHCS database, the methodology by which the PHCS UCR figures were calculated, and the underlying data on which the PHCS figures were based. In notices informing beneficiaries of decisions, United Healthcare explained that billed charges were not paid because they exceeded UCR amounts.[FN11] While some further details-such as the existence of the database-were sometimes provided during appeals, Plaintiffs have introduced substantial evidence that appeals personnel did not disclose, and often were not even aware of, the underlying methodology and data used in calculating the UCR rates. (Pls. Mem. in Opp. 48-49; Pls.' Response to Defs.' Statement of Facts Nos. 17, 35.)

> FN11. For instance, in an explanation of benefits form provided to Plaintiff Grisham, United Healthcare explained that benefits were denied because "[y]our plan covers reasonable charges for covered health services. The reasonable charge is based on amounts charged by other health care providers in the area for similar services or supplies. Benefits are not available for that portion of the charge that exceeds the reasonable charge determined for this service." (Epstein Aff. Ex. 11.)

**\*9** As Defendants note, however, Plaintiffs were supplied with information regarding the basis for their claims denials, including the UCR allowance,

the number of occurrences that the allowance was based on, and the geographic area included in the calculation of the allowance. (Defs.' Mem. in Reply 18.) Plaintiffs who did appeal were thus provided with more information, and sounder bases for full and fair review of claims denials, than were the plaintiffs found to have been denied full and fair review in the cases upon which Plaintiffs rely. In *Jurash,* for instance, the plan administrator "twice stated that it relied on plaintiff's claim file as a whole in making its termination decision and yet refused to provide an opportunity to examine the file in full." *Jurash,* 2000 WL 364896 at *3. Plaintiffs here were not denied access to their files, and they were given more information than was the plaintiff in *Grossmuller,* where the Third Circuit affirmed a finding that the plaintiff had been denied full and fair review where the administrator " informed [the plaintiff] only that his benefits had been terminated on the ground that he was found to be gainfully employed. The [administrator] did not state upon what evidence it relied or invite [the plaintiff] to examine that evidence or to submit written comments or rebuttal documentary evidence. " *Grossmuller,* 715 F.2d at 858.

While Defendants denied Plaintiffs access to the underlying database information or the UCR calculation methodology during the appeals process, Plaintiffs have failed to show that Defendants' refusal to provide such information rendered any and all appeals of UCR determinations futile. The question of whether and under what circumstances Defendants are required to disclose such information is at the heart of this litigation. It remains a significant issue as this case proceeds to the merits on claims that were procedurally preserved, but it does not excuse Plaintiffs' failure to exhaust appeals for the Unexhausted Claims.

### ii. Exhaustion under Department of Labor Regulations

Plaintiffs next argue that their failure to appeal the Unexhausted Claims should be excused as futile on procedural grounds because the health plans at issue in this litigation failed "to establish or follow claims procedures consistent with the [Department of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Labor] requirements ..." (Pls.' Mem. in Opp. 50 .) Plaintiffs rely on 29 C.F.R. § 2560.503-1, citing its provisions regarding, *inter alia,* evidence used in claims determinations, reasons that must be provided in benefits denials, and the maximum number of appeals that may be required in a plan. As Plaintiffs correctly note, these procedural requirements were not followed; for instance, the American Airlines Plan, the Chase Plan, and the Osram Plan all required a third level of appeal for exhaustion while the regulation limits the required number of appeals to two. (Pls.' Mem. in Opp. 53; Pls.' Reply to Defs.' Statement of Facts No. 15.) Plaintiffs argue, therefore, that they should "be deemed to have exhausted the administrative remedies available under the plan" as provided by 29 C.F.R. § 2560.503-1(*l* ).

**\*10** However, as Plaintiffs acknowledge, the official effective date of this Department of Labor regulation is 2002. 29 C.F.R. § 2560.503-1(o). As the Court of Appeals has observed, "[t]he regulation took effect in 2002, and [superseded] a similar but narrower provision." *Eastman Kodak Co. v. STWB,* 452 F.3d 215, 222 (2d Cir.2006). Courts have declined to apply the current provision retroactively, *see, e.g., DiCamillo v. Liberty Life,* 287 F.Supp.2d 616, 625 (D.Md.2003), and this Court will not do so here. Plaintiffs' administrative remedies, therefore, are not deemed exhausted on those grounds.

#### c. Fixed Policy and the PHCS Database

In addition to their arguments regarding procedural flaws, Plaintiffs assert that any appeals would also have been, as they term it, "substantively" futile; that is, that because Defendants rely on PHCS data in evaluating administrative appeals, appeals are futile in that "a successful appeal will never result in [a UCR reimbursement] amount in excess of the figure generated by the PHCS database." (Pls.' Mem. in Opp. 24, 30.) Plaintiffs thus contend that their failure to exhaust administrative remedies for these claims should be excused as substantively futile because of United Healthcare's "fixed policy of refusing to reconsider the validity of the PHCS database." (Pls.' Mem. in Opp. 26.)

Plaintiffs rely on a number of cases finding futility where "the insurer or the Plan ha[s] adopted an across-the-board or fixed policy that will result in a 'predetermined' fruitless appeal." (Pls.' Mem. in Opp. 27.) Several of these cases do not apply to the facts at hand because the "fixed policy" at issue therein was one of simply making a blanket denial of a certain type of claim. *See, e.g., Berger v. Edgewater Steel Co.,* 911 F.2d 911, 917 (3d Cir.1990) (finding that exhaustion would have been futile where the company had adopted a policy of denying all applications for a specific plan); *Sibley-Schreiber v. Oxford Health Plans,* 62 F.Supp.2d 979, 988-989 (E.D.N.Y.1999) (finding futility based on "blanket denial of coverage" where "plaintiffs [we]re challenging a policy that they have been told over and over again is not subject to exception" after insurance company altered its plan interpretation so that it would "would pay for only six Viagra pills per month regardless of the number of pills prescribed by the physician.") Other cases cited by Plaintiffs in their "fixed policy" argument are similarly inapplicable because they involve an insurer's relying on an interpretation of a plan despite contradictory evidence submitted on appeal. *See, e.g., McGraw v. Prudential Ins. Co. of America,* 137 F.3d 1253, 1264 (10th Cir.1998) (finding that the district court had abused its discretion in declining to find futility where, in addition to procedural defects in the appeals process, the insurance company "followed its own interpretation of the Plan isolated from any understanding of the treatment needs of the Plan's beneficiary" despite the beneficiary's "treating neurologist and urologist's opinions the services prescribed were medically necessary.").

**\*11** More to the point is *Corsini v. United Healthcare Corp.,* a case relied on by both Plaintiffs and Defendants in which the plaintiffs alleged futility in their challenges of two practices: first, the defendants' policy of calculating co-payment amounts using the average and prevailing charge rather than the discounted charge that had been negotiated between the defendants and medical care providers (the "co-payment claims "), and, second, the defendants' refusal to disclose data that would allow the plaintiffs to calculate the annual premiums paid by their employers, which the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
**(Cite as: Slip Copy)**

plaintiffs sought in order to enable them to recover, as provided by their plans, "reimbursement for co-payments that exceed 200% of their annual premiums" (the "reimbursement claims"). *Corsini v.. United Healthcare Corp.*, 965 F.Supp. 265, 267 (D.R.I.1997). The *Corsini* court found that the plaintiffs had satisfied their "heavy burden" of making a "clear and positive showing of virtual certainty that resort to administrative remedies would result in denial of the claim" for their co-payment claims but not for their reimbursement claims. *Id.* at 269 (citing *Makar v. Health Care Corp.*, 872 F.2d 80, 83 (4th Cir.1989)). The *Corsini* court reasoned that, in light of the defendants' fixed and long-standing policy of calculating co-payment amounts according to its own interpretation of the plan, "it is inconceivable that resort to the administrative review process would result in anything other than a denial of the plaintiffs' [co-payment] claim." *Id.* at 269-70.[FN12]

> FN12. Notably, while it excused the plaintiffs from the administrative exhaustion requirement for the co-payment claims, the *Corsini* court found that the plaintiffs had not met their "heavy burden" of showing futility with respect to their reimbursement claims: "Apart from the question of whether, under the Plan, the defendants are obliged to provide subscribers with tallies of the premiums paid by them and/or their employers, there is no indication that some mutually satisfactory accommodation could not be reached through the administrative review process." *Corsini*, 965 F.Supp. 265, 270 (D.R.I.1997). Examples of such mutually satisfactory outcomes exist in this case, such as where Defendants paid the full billed charge because there was insufficient data in the PHCS database to support the database rate. (Hufford Aff. ¶ 20.) While such examples are certainly exceptions to the standard outcome of Plaintiffs' appeals regarding UCR determinations, they nonetheless undercut Plaintiffs' ability to show that it was "inconceivable that resort to the

administrative process would result in anything other than denial of the plaintiffs' claim." *Corsini*, 965 F.Supp. at 269-70.

In the instant case, Defendants have shown that it is far from "inconceivable" that pursuit of administrative appeals would result in some grant of additional benefits; rather, Defendants have pointed to evidence in the record where Plaintiffs actually received additional reimbursements through the administrative appeals process. For example, Defendants have presented evidence to show that additional benefits were granted in appeals where the initial UCR reimbursement amount was based on a database rate that lacked sufficient supporting data; in such cases, the full billed charge was allowed. (Hufford Aff. ¶ 21.) In other examples, beneficiaries received additional reimbursements through the appeals process when that process indicated that incorrect procedure codes had been used in the initial benefits decision or that preauthorization had been granted for the procedure at issue. (Hufford Aff. ¶¶ 22, 35(a).)[FN13]

> FN13. Plaintiffs correctly note that these are "selective" examples of appeals that resulted in some additional reimbursement and that the vast majority of appealed claims did not result in additional benefits. The point remains, however, that these examples of success in the claims process undermine Plaintiffs' ability to make the requisite "clear and positive showing" that their appeals would have been denied.

In addition to *Corsini*, Plaintiffs also rely heavily on *Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410 (6th Cir.1998). In *Fallick*, the Sixth Circuit found that the district court had abused its discretion in failing to find futility where the plaintiff, on his own behalf and on behalf of a proposed class, had engaged in a two-year long "triangular dialogue of communications in every direction [with] the State Insurance Department and [the insurance company]" regarding the methodology by which the insurance company calculated the UCR reimbursement rate under his health insurance plan. *Id.* at 417. While the district

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
(Cite as: Slip Copy)

Page 12

court had "found that this lengthy dialogue did not comply with the Plan's formal appeals process" and declined to excuse the plaintiff's failure to exhaust that formal appeals process, the Sixth Circuit excused the failure to exhaust administrative appeals as futile where the insurance company had consistently defended its policy of using Health Insurance Association of America ("HIAA") data, refused to provide "more than but a cursory explanation of its methodology," and insisted that it would continue to use HIAA data "to calculate its reimbursement determinations despite evidence that this policy violates the actual terms of the [health insurance plan]." *Id.* at 417, 420.

**\*12** Factually, *Fallick* has much in common with the instant case: it involved a putative class action challenging a health insurance company's use of HIAA data to calculate UCR reimbursement rates, and it alleged that the administrative appeals process was futile because the insurance company refused to disclose its methodology for calculating those UCR rates during the appeals process. Defendants seek to distinguish *Fallick* by arguing that Plaintiffs here have made only general challenges to UCR reimbursement rates, rather than explicit challenges to United Healthcare's methodology, and that "[w]ithout the same type of multiple, specific and consistent challenges to the methodology used in creating the PHCS database ... Plaintiffs have not established futility under the tenets of *Fallick.*" (Defs.' Reply 27.) The Court finds this attempted distinction unavailing and declines to hold that *Fallick* does not apply simply because Plaintiffs' appeals of UCR reimbursement rates were not sophisticatedly worded or not sufficiently targeted at United Defendants' use of the PHCS database, particularly as Defendants repeatedly declined to provide the information that would have enabled Plaintiffs to better direct their appeals.

Nonetheless, *Fallick* does not mandate a finding of futility in the instant action. As the *Fallick* Court observed, in finding "[c]lear and positive evidence of the futility of exhausting the Plan's administrative remedies" a court should look to the purposes of the exhaustion of remedies doctrine. *Id.* at 420. This approach is consistent with that of the Second

Circuit, which has, in several decisions exploring the futility exception, looked to the purposes of the administrative exhaustion doctrine. *See, e.g., Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588, 594 (2d Cir.1993); *Davenport v. Harry N. Abrams, Inc.,* 249 F.3d 130, 133 (2d Cir.2001).

The *Fallick* Court enumerated four such purposes: avoiding frivolous lawsuits and unnecessarily adversarial proceedings; reducing litigation costs; establishing a sufficient factual record; and giving the administrator the opportunity to correct errors or change its position during administrative proceedings. *Fallick,* 162 F.3d at 420-21. The Second Circuit has also recognized "provid[ing] a sufficiently clear record of administrative action if litigation should ensue" as a primary purpose behind the administrative exhaustion requirement. *Davenport,* 249 F.3d at 133.

In examining this case in light of the purposes behind the administrative exhaustion requirement, the Court finds that Plaintiffs have not established that their failure to exhaust their administrative remedies should be excused as futile. Rather, most of these purposes are served by requiring administrative exhaustion in the instant litigation. In particular, administrative appeals of the Unexhausted Claims would have allowed Defendants the opportunity to correct errors such as incorrect procedural codes, as they did in several instances. Additionally, pursuing administrative appeals would have created a record that would have supported Plaintiffs' contentions as to the basis for their appeals. In this way, the instant case is distinguishable from *Fallick;* the *Fallick* plaintiff had developed an extensive factual record by engaging in a two-year long "triangular dialogue of communications in every direction [with] the State Insurance Department and [the insurance company]" regarding the facts at issue in the litigation. *Fallick,* 162 F.3d at 417. Here, Plaintiffs have not presented a sufficiently developed factual record for the Unexhausted Claims. In *Fallick,* the dialogue between the plaintiff, the insurance company, and the state agency, although it did not satisfy the criteria of the administrative appeals process, created a detailed factual record as to the basis of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
**(Cite as: Slip Copy)**

the plaintiff's claims. No such record was created as to Plaintiffs' Unexhausted Claims here such that excusing Plaintiffs' failure to appeal those claims would serve the purposes behind the futility doctrine.

**\*13** Moreover, as a Sixth Circuit decision, *Fallick* is not directly binding on this court, particularly in light of the fact that it has never been cited by the Second Circuit Court of Appeals. While it has been cited in three unpublished decisions in this district, these references are all string citations regarding broad principles rather references to the specific facts or reasoning of the *Fallick* opinion. *See Fisher v. J.P. Morgan Chase & Co.,* 230 F.R.D. 370, 374 (S.D.N.Y.2005); *Spann v. AOL Time Warner, Inc .,* 219 F.R.D. 307, 317 (S.D.N.Y.2003); *Jurash v. Hartford Life Ins. Co.,* No. 99-8916, 2000 WL 364896 (Apr. 7, 2000). No court in this district-or, insofar as the Court can determine, anywhere else-has made a finding of futility as broad as that announced in *Fallick* in that no other court has found that a plaintiff made a clear and positive showing of futility where there existed examples of successful appeals. In *Fallick,* the insurance company had "reconsidered specific calculation errors with respect to a number of his claims, [but] it had not altered the Plan's underlying methodology for calculating the claims of Plan beneficiaries." *Fallick,* 162 F.3d at 415. This Court respectfully disagrees with the Sixth Circuit's conclusion that futility can be found in such circumstances, believing instead that such examples of successful appeals, even on technical issues rather than on substantive ones, undermine a plaintiff's ability to make a clear and positive showing that pursuing administrative remedies would have been futile. It is undisputed that examples of such successful appeals abound in this litigation. (Defs.' Statement ¶ 32 (citing Kemper Aff. Exs. 38, 39).)

Although Plaintiffs have presented an issue of fact as to whether the Defendants ever deviate from the PHCS database in calculating the UCR reimbursement rate, Plaintiffs have failed to show that Defendants' alleged refusal to do so demonstrates that all appeals are futile. The core of Plaintiffs' argument in this case-that the PHCS database is "invalid or an inappropriate basis upon

which to make UCR decisions"-relates not to the preliminary issue of the futility exception to the administrative exhaustion requirement but to the actual merits of this litigation. (Hufford Aff. ¶ 25.) The existence of alleged flaws in the PHCS database, and the legality of United Healthcare's alleged sole reliance on that database, do not in and of themselves make out a " 'clear and positive showing' that pursuing available administrative remedies would be futile." *Kennedy,* 989 F.2d at 594 (internal citation omitted).

The Court finds, therefore, that Plaintiffs have failed to show that Defendants' reliance on the PHCS data in calculating UCR rates entitles Plaintiffs to be excused from ERISA's administrative exhaustion requirement. Particularly in light of Defendants' evidence that some appeals of UCR determinations were granted, Plaintiffs have not shown that seeking to resolve their claims through the administrative process could not have resulted in additional benefits. They have therefore failed to create an issue of material fact as to the requisite "clear and positive showing" of futility, and Defendant's motion for summary judgment on Plaintiffs' Unexhausted Claims for benefits [FN14] is GRANTED.

> FN14. Defendants' motion for summary judgment is denied to the extent the Unexhausted Claims are for breach of fiduciary duty rather than for benefits; as discussed *infra* Section II.C.5, administrative exhaustion is not required for bona fide breach of fiduciary duty claims.

**5. Exhaustion of Plaintiffs' Fiduciary Duty Claims**

**\*14** Defendants also argue that all "Plaintiffs' claims for breach of fiduciary duty must be dismissed because those claims were never asserted prior to the instant litigation" and therefore were not exhausted. (Defs.' Reply 12.) Plaintiffs assert that ERISA's administrative exhaustion requirement does not apply to claims for breach of fiduciary duty, noting that that the majority of the circuits do

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                   Page 14

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
**(Cite as: Slip Copy)**

not require administrative exhaustion of such claims. (Pls.' Mem. in Opp. 59.) Defendants counter that the Second Circuit has held to the contrary, requiring that administrative remedies be exhausted for breach of fiduciary duty claims under ERISA.

In the 1989 case on which Defendants rely, the Second Circuit affirmed a district court's denial of leave to amend a complaint to add ERISA claims for breach of fiduciary duty, holding that the proposed amendment would have been futile for several reasons: that the defendants were not fiduciaries of the plan, that the claim had been filed against improper parties, and, finally, that the plaintiff had "made no attempt, as required, to exhaust the administrative remedies provided for under the plan." *Leonelli v.. Pennwalt Corp.,* 887 F.2d 1195, 1199 (2d Cir.1989). More recent developments in the law of this circuit indicate, however, that despite this reference to exhaustion in relation to ERISA fiduciary claims, the question of whether such claims are subject to the administrative exhaustion requirement remains open.

Decisions from six other circuits have held that the administrative exhaustion requirement applies to plan-based ERISA claims-that is, claims relating to violations of the terms or provisions of the plan at issue-but not to statutory ERISA claims-that is, claims that arise from a violation of the statute itself rather than of a plan. *See Smith v. Snydor,* 184 F.3d 356, 364-65 (4th Cir.1999); *Chailland v. Brown & Root, Inc.,* 45 F.3d 947 (5th Cir.1995); *Richards v. General Motors Corp.,* 991 F.2d 1227 (6th Cir.1993); *Held v. Manufacturers Hanover Leasing Corp.,* 912 F.2d 1197 (10th Cir.1990); *Zipf v. American Telephone & Telegraph Co.,* 799 F.2d 889, 891-92 (3d Cir.1986); *Amaro v. Continental Can Co.,* 724 F.2d 747, 749-50 (9th Cir.1984). *See also De Pace v. Matsushita Elec. Corp. of Am.,* 257 F .Supp.2d 543, 557 (E.D.N.Y.2003) (collecting cases). The Seventh and Eleventh Circuits, however, have declined to distinguish between statutory and plan-based ERISA claims, and instead require exhaustion regardless of the nature of the claim. *See Mason v. Continental Group, Inc.,* 763 F.2d 1219, 1227 (11th Cir.1985); *Kross v. Western Electric Co.,* 701 F.2d 1238 (7th Cir.1983).

Despite its earlier reference in *Leonelli* to administrative exhaustion in connection with fiduciary duty claims, the Second Circuit has explicitly recognized that the question of whether exhaustion is required for statutory as well as plan based claims remains open in this circuit. *See Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 102 (2d Cir.2005) (recognizing the existence of a split among the circuits on this question and declining to "here decide whether administrative exhaustion is a prerequisite to a statutory ERISA claim.").[FN15] As the *Nechis* Court recognized, " [d]istrict courts in the Second Circuit have routinely dispensed with the exhaustion prerequisite where plaintiffs allege a statutory ERISA violation." *Id.* (quoting *De Pace,* 257 F.Supp.2d at 558). District courts have continued to do so subsequent to the *Nechis* decision. *See, e.g., Richards v. FleetBoston Financial Corp.,* 427 F.Supp.2d 150, 180 (D.Conn.2006) (declining to require exhaustion of administrative remedies where the plaintiff sought " relief for statutory violations, rather than violations of the terms of the Amended Plan.") This Court agrees with the reasoning of *De Pace* and *Richards,* as well as with that of the Third, Fourth, Fifth, Sixth, Ninth, and Tenth Circuits, and notes that the Second Circuit has hinted that it also may do so, observing that it was "dubious that Nechis's claims may be dismissed for failure to exhaust administrative remedies[.]" *Nechis,* 421 F.3d at 100 . The Court declines, therefore, to require administrative exhaustion of statutory-as opposed to plan-based-ERISA claims.

> FN15. In noting the existence of an open question in this circuit as to whether exhaustion is required for statutory ERISA claims, the Second Circuit did not recognize itself to be disagreeing with *Leonelli,* the 1989 case in which it mentioned failure to exhaust administrative remedies as one basis for affirming a district court's denial of leave to amend a complaint.

**\*15** The remaining question, therefore, is whether the ERISA claims for breach of fiduciary duty at issue here are statutory.[FN16]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                            Page 15

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
**(Cite as: Slip Copy)**

FN16. Most of the circuit cases holding that exhaustion of statutory claims is not required involved alleged violations of § 510 of ERISA. *See Zipf,* 799 F.2d at 891-94; *Amaro,* 724 F.2d at 750-52; *Held,* 912 F.2d at 1204-05; *Chailland,* 45 F.3d at 950-51.

Cases in other circuits have examined the question of fiduciary duty claims in this context in some detail. Two circuits have said that exhaustion of fiduciary duty claims under ERISA is required. *See Drinkwater v. Metro. Life Ins. Co.,* 846 F.2d 821, 825-26 (1st Cir.1988), *cert. denied,* 488 U.S. 909 (1988); *Simmons v. Wilcox,* 911 F.3d 1077, 1081 (5th Cir.1990). In reaching its conclusion in *Drinkwater,* the First Circuit reasoned that almost every denial of benefits could be characterized as a breach of fiduciary duty, so exempting such claims from the exhaustion requirement would render the exhaustion requirement meaningless: plaintiffs who had not exhausted could avoid that requirement by artfully pleading their benefits claims as claims for breach of fiduciary duty. *Drinkwater,* 846 F.2d at 825-26. The Fifth Circuit expressed its agreement with this reasoning in adopting a similar rule. *Simmons,* 911 F.2d at 1081.

Perhaps because of their reliance on this rationale, both cases have since been interpreted by some courts to apply to narrow circumstances where a claim for breach of fiduciary duty is actually a claim for benefits that is artfully pled in an attempt to avoid the exhaustion requirement. As the Fourth Circuit observed, the logic of *Drinkwater* and *Simmons* applies only to certain types of fiduciary duty claims: benefit claims that are artfully pled as fiduciary duty claims in "a naked attempt to circumvent the exhaustion requirement." *Smith v. Snydor,* 184 F.3d 356, 362 (4th Cir.1999). Relying on *Drinkwater* and *Simmons,* the *Smith* Court reasoned that bona fide fiduciary duty claims can be distinguished from artfully pled benefits claims: "a claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an *ERISA-regulated plan* rather than upon an interpretation and application of *ERISA.*" *Smith,* 184 F.3d at 362(emphasis in original). The Fourth

Circuit then held that exhaustion of bona fide fiduciary duty claims-that is, those based on a violation of the statute itself and not of the plan-was not required: "[t]he judicially created exhaustion requirement does not apply to a claim for breach of fiduciary duty as defined in ERISA." *Id.* at 365.

The Third Circuit has endorsed this rule, distinguishing bona fide breach of fiduciary duty claims from artfully pled benefits claims and requiring administrative exhaustion of the latter. *See Harrow v. Prudential Ins. Co.,* 279 F.3d 244, 253-55 (3d Cir.2002). There are indications that the Second Circuit may be inclined to follow the Fourth Circuit's reasoning. In *Nechis,* the case in which the Second Circuit declined to decide the question of whether statutory claims must be exhausted but expressed doubt about requiring exhaustion of such claims, the plaintiffs' claims included claims for breach of fiduciary duty. In discussing whether exhaustion of such claims would be required, the *Nechis* Court noted that these claims were "equitable in nature and do not involve interpretation of the terms of her plan." *Nechis,* 421 F.3d at 102. The prevailing rule, then, seems to be that bona fide breach of fiduciary duty claims-that is, those that are based on an interpretation of the ERISA statute rather than of a plan and are not claims for benefits artfully pled as claims for breach of fiduciary duty-are statutory and not subject to the administrative exhaustion requirement.

*16 The ERISA-based breach of fiduciary duty claims at issue in this case are statute-based rather than plan-based. Resolution of Plaintiffs' fiduciary duty claims therefore rests on an interpretation of the ERISA statute rather than on an interpretation of any of the plans at issue in this litigation. There is no allegation that these claims are claims for benefits artfully pled as claims for breach of fiduciary duty. The Court declines, therefore, to require administrative exhaustion of Plaintiffs' breach of fiduciary duty claims,[FN17] and Defendants' motion for summary judgment on Plaintiffs' fiduciary duty claims is DENIED.

FN17. The Court notes that, even if the administrative exhaustion requirement did

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
**(Cite as: Slip Copy)**

apply to Plaintiffs' fiduciary duty claims, Plaintiffs have satisfied that requirement with respect to the 135 Fully Appealed UCR Claims and Subscriber Plaintiff Mitchell's claims. Therefore claims for breach of fiduciary duty would proceed for at least one plaintiff from each of the four Employer Plans at issue in this litigation.

### D. Standing

Defendants next argue that they are entitled to summary judgment as to claims by certain plaintiffs because those plaintiffs cannot demonstrate standing. Defendants assert that the three Provider Plaintiffs lack standing because they cannot show that they received proper assignments of benefits claims; that Plaintiffs Ericson, Marcum, and Colleen Finley lack standing because they have not shown actual injury; and, finally, that the Association Plaintiffs lack standing because they cannot meet the three prongs of the associational standing standard enunciated in *Hunt.*

### 1. Provider Plaintiffs

Defendants assert that they are entitled to summary judgment on the bulk of the three Provider Plaintiffs' ERISA claims because those plaintiffs have "failed to produce actual assignments on which they predicate the vast majority of their claims." (Defs.' Mem. in Support 25.) Defendants concede that, during Stage One discovery, Plaintiffs produced "sufficient proof of assignment" as to 2,153 of their 21,741 claims. As Plaintiffs point out, these 2,153 undisputedly assigned claims include claims that were assigned to each of the three Provider Plaintiffs; as a result, all three of the Provider Plaintiffs have standing to proceed to merits discovery at least as to the undisputedly assigned claims. (Pls.' Mem. in Opp. 61.) Defendants nonetheless assert that because the Provider Plaintiffs have failed to produce written assignments as to the remaining 19,588 claims Defendants are entitled to summary judgment on those claims because Plaintiffs "cannot satisfy their burden at trial of proving the existence or terms of actual assignments."

It is undisputed that the law of this circuit confers standing to bring certain ERISA claims on "healthcare providers to whom a beneficiary has assigned his claim in exchange for health care." *Simon v. GE,* 263 F.3d 176, 178 (2d Cir.2001). Nor do the parties disagree that the plaintiff bears the burden of proving the existence of a valid assignment for purposes of establishing standing. The parties do dispute, however, the means by which a valid assignment may be proven: Defendants contend that Plaintiffs may prove that they received an assignment-and therefore that they have standing for their ERISA claims-only if they are "in possession of actual assignments from plan participants." (Defs.' Mem. in Supp. 25.)

**\*17** Defendants have failed to show, however, that Provider Plaintiffs are so constrained in the means by which they may prove receipt of a valid assignment. Neither case law nor any provision of the plan agreements at issue in this litigation requires that assignments be in writing. In fact, the only case on which Defendants rely for the proposition that "[p]ossession of an actual assignment is essential to the Provider Plaintiffs' standing with regard to each claim" (Defs.' Mem. in Support 27) actually holds that, but for the existence of a nonassignment clause, the plaintiff, a health care provider, "still may be able to prove at trial that his patients assigned their benefit rights to him" despite his failure to produce either a written assignment or evidence of "any agreement with his patients to use their signatures to evince their intent to execute assignments." *Brandoff v. Empire Blue Cross and Blue Shield,* 707 N.Y.S.2d 291, 294 (1999).

The Court finds, therefore, that Provider Plaintiffs' failure to produce written assignments for the majority of their claims during Stage One discovery does not preclude their proving the existence of those assignments by some other means during trial. Defendants have failed to meet their burden of showing that there exists no issue of material fact as to whether Provider Plaintiffs obtained valid assignments for the remaining 19,588 claims. Defendants' motion for summary judgment as to those claims on the ground that Provider Plaintiffs lack standing is therefore DENIED.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
**(Cite as: Slip Copy)**

### 2. Subscriber Plaintiffs Ericson, Marcum, and Colleen Finley

Defendants next argue that they are entitled to summary judgment on certain claims by Plaintiffs Ericson, Marcum, and Colleen Finley because those plaintiffs have not shown actual or threatened injury and therefore lack standing to pursue those claims. (Defs.' Mem. in Supp. 28.)

#### a. Background Relating to Exemplar Claims

During the course of Stage One discovery, Defendants sought discovery that could indicate whether Plaintiffs had suffered out-of-pocket losses in relation to Defendants' UCR reimbursement decisions; documents they sought included Subscriber Plaintiffs' financial records, waivers or cancellations of charges by the out-of-network health care providers, and records of communications between Subscriber Plaintiffs and their providers regarding payment of the difference between Defendants' UCR reimbursement and the providers' full billed charge. (Defs.' Statement of Undisputed Facts Nos. 45-46; Kemper Aff. Ex. 61.) Plaintiffs objected, and, with the apparent agreement of the parties, Magistrate Judge Gorenstein ordered Plaintiffs to produce certain " exemplar" claims for Plaintiffs Ericson, Marcum, and Colleen Finley wherein "there was a waiver of payment by the provider or a payment by a secondary party." (Kemper Aff. Ex. 62.) Judge Gorenstein expressly noted that allowing this discovery would enable Defendants to present " examples of parties who fit into these categories" and then to argue in the Stage One summary judgment motion that "any party that fits into these categories ... is going to lack standing." (*Id.*)

**\*18** Plaintiffs then produced such exemplar claims for Plaintiffs Ericson, Marcum, and Finley (the " Exemplar Claims"). For Provider Plaintiff Marcum, Plaintiffs provided "an example of where the assignor failed to pay Dr. Marcum the unpaid balance (e.g., the amount above the UCR amount allowed)"; for Provider Plaintiff Ericson, Plaintiffs provided a claim wherein Dr. Ericson "did not bill [the patient] for unpaid amounts since [the patient]

is a fellow physician"; for Plaintiff Finley, Plaintiffs provided a claim wherein "Finley was verbally advised that [her physician] wrote off the disallowed $16, and so she did not pay such amount, nor has she been balance billed for such amount." (Kemper Aff. Ex. 64.)

Defendants here seek summary judgment as to those Exemplar Claims because, they argue, Plaintiffs cannot demonstrate actual injury in that they never suffered-and do not face the threat of suffering-out-of-pocket loss on those claims. (Defs.' Mem. in Supp. 28).[FN18] Plaintiffs respond by asserting that "this attempt at selective dismissal of specific claims is inappropriate at this stage of the litigation." (Pls.' Mem. in Opp. 63.) Such an assertion is somewhat disingenuous, given that both Magistrate Judge Gorenstein and the parties recognized the purpose of using such exemplar claims to be to test Defendants' standing argument without engaging in more expansive discovery during Stage One. It is not premature for the Court to decide now whether there is an issue of material fact as to the standing of Plaintiffs Marcum, Ericson, and Finley to assert the Exemplar Claims.

> FN18. The Court notes that Defendants do not appear to seek summary judgment for claims where the medical care provider has not yet collected payment but has not excused payment, either. Discussion of standing in this opinion is confined to claims for which the provider has expressly excused the patient from paying the remainder of the claim. For those claims where the provider has not excused the patient from payment, there likely exists "threatened injury" sufficient to confer standing on the patient.

Plaintiffs proffer three types of alleged "actual or threatened injury" that they argue entitle them to standing to assert the Exemplar Claims even in the absence of an out-of-pocket-or threatened out-of-pocket-loss: injury to contract expectations, injury to the relationship between patients and out-of-network physicians, and injury based on breach of fiduciary duty.[FN19]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
**(Cite as: Slip Copy)**

FN19. In addition to these three alleged injuries, Plaintiffs assert that the beneficiaries' "contracts do not permit United Healthcare to withhold rightfully due reimbursement to beneficiaries (or their assignees) pending a demonstration of out-of-pocket loss." (Pls.' Mem. in Opp. 65.) This argument is inapposite to the question of standing under Article III, which is whether any alleged violation of those contracts caused Plaintiffs "actual or threatened injury."

**b. The Standing Injury Requirement for Claims Other Than Fiduciary Duty Claims**

"[S]tanding to sue is an essential component" of Article III's "case" or "controversy" requirement. *Jaghory v. New York State Dept. of Educ.,* 131 F.3d 326, 330 (2d Cir.1997). "Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant ...' " *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472 (1982) (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 (1979)). The alleged injury must be " distinct and palpable ..." *Warth v. Seldin,* 422 U.S. 490, 501 (1997). There is no "exception to the traditional injury requirement [in standing analysis] in contractual ERISA claims for benefits ..." *Weiss v. CIGNA Healthcare, Inc.,* 972 F.Supp. 748, 755 n. 7 (S.D.N.Y.1997).

**\*19** Plaintiffs argue that both deprivation of contract expectations and harm to the relationship between patients and out-of-network providers constitute injuries-in-fact for purposes of showing standing. To satisfy the standing requirement, however, a plaintiff must show injury-in-fact that is "distinct and palpable." *Warth,* 422 U.S. at 501. Plaintiffs fail to point to any case supporting their argument that effects either on contract expectations or on the relationship between patients and out-of-network medical care providers constitute " actual or threatened injury" for standing purposes. The only case Plaintiffs cite recognizes that these effects of a denial of benefits are injuries, but it

does not do so in the context of standing analysis and therefore does not support Plaintiffs' standing argument. *HCA Health Serv. Of Georgia, Inc. v. Employers Health Ins. Co.,* 240 F.3d 982, 1005-06 (11th Cir.2001). Such abstract injuries do not constitute "distinct and palpable" harm for purposes of standing.

Therefore, summary judgment is GRANTED for the Exemplar Claims of Plaintiffs Finley, Ericson, and Marcum except to the extent that they seek injunctive relief for breach of fiduciary duty; *see infra* Section II.D.2.c.[FN20]

FN20. This judgment applies only to those specific Exemplar Claims; the Court denies Defendants' request that "the Court . .. enter judgment for Defendants on ... all other claims for which the Plan Participant Plaintiffs or the assignors of the Provider Plaintiffs cannot demonstrate that they have suffered an actual injury." (Defs.' Mem. in Supp. 30.) To obtain summary judgment, Defendants bear the burden of showing that there is no issue of material fact as to whether Plaintiffs face "actual or threatened injury." Defendants cannot meet that burden without presenting additional evidence about particular claims.

**c. The Standing Injury Requirement for Fiduciary Duty Claims Seeking Injunctive Relief**

Defendants have failed to show, however, that Plaintiffs Finley, Ericson, and Marcum lack standing to pursue the Exemplar Claims to the extent those claims seek injunctive relief for alleged breach of fiduciary duty.

While "[t]he case law does not create an exception to the traditional injury requirement in contractual ERISA claims for benefits, ... it does in fiduciary duty ERISA claims for prospective relief." *Weiss,* 972 F.Supp. at 755 n. 7. The Second Circuit has adopted a "broad view of participant standing under ERISA," holding that a violation of ERISA § 404 satisfies Article III's injury requirement. *Financial Inst. Retirement Fund v. Office of Thrift*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
**(Cite as: Slip Copy)**

*Supervision,* 964 F.2d 142, 149 (2d Cir.1992). *See also Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.,* 433 F.3d 181, 200 (2d Cir.2005). Under the law of this circuit, therefore, an ERISA plaintiff is not required to "demonstrate actual harm in order to have standing to seek *injunctive relief* requiring [a defendant to] satisfy its statutorily-created disclosure or fiduciary responsibilities." *Id.* at 199 (emphasis in original).

To the extent that the Exemplar Claims seek injunctive relief for breach of fiduciary duty, Plaintiffs Finley, Ericson, and Marcum have presented an issue of material fact as to the injury requirement despite their inability to show out-of-pocket loss and therefore have standing to proceed in those claims.

Therefore, Defendants' motion for summary judgment as to the Exemplar Claims is DENIED to the extent those claims seek injunctive relief for alleged breach of fiduciary duty and is GRANTED in all other respects.

### 3. Associational Standing

**\*20** Defendants next seek summary judgment as to all ERISA claims by the Medical Association Plaintiffs on the ground that those Plaintiffs lack standing. In its October 2002 Order, this Court found that the Medical Association Plaintiffs lacked standing to pursue claims brought on their own behalf but allowed the claims brought on behalf of the Medical Associations' members to proceed to discovery on the question of whether the Association Plaintiffs could demonstrate representational standing. Oct.2002 Order at *3-4. Defendants here move for summary judgment on the representational claims, arguing that Stage One discovery has revealed that there is no issue of material fact as to whether the Association Plaintiffs have representational standing.

As this Court noted in the October 2002 Order, " [t]he Supreme Court has held that an organization may have standing under certain conditions solely as a representative of its members, even absent an

injury to itself." Oct.2002 Order at *3 (citing *Int'l Union, United Auto. Workers v. Brock,* 477 U.S. 274, 281 (1988)). Plaintiffs and Defendants agree that the test for whether an organization has representational standing is three-pronged: first, whether "its members would otherwise have standing to sue in their own right;" second, whether "the interests it seeks to protect are germane to the organization's purpose;" and, third, whether " neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Adver. Comm'n,* 342 U.S. 333, 343 (1977); *see also Building and Const. Trades Council of Buffalo, New York and Vicinity v. Downtown Development, Inc.,* 448 F.3d 138, 144 (2d Cir.2006). Defendants here argue that the Medical Association Plaintiffs fail both the second and third prongs of the *Hunt* test.

#### a. The Second Prong: Germaneness of Interests to Organization's Purpose

Under the second prong of the *Hunt* test, "the interests [the organization] seeks to protect [must be] germane to the organization's purpose" in order for the organization to establish representational standing. *Hunt,* 342 U.S. at 343. The Second Circuit recently elaborated on the meaning of this second prong, expressing its agreement with the reasoning of the D.C. Circuit and the Ninth Circuit in holding that the proper approach to the germaneness issue is for a court to "determine whether an association's lawsuit would, if successful, reasonably tend to further the general interests that individual members sought to vindicate in joining the association and whether the lawsuit bears a reasonable connection to the association's knowledge and experience." *Building and Const. Trades Council of Buffalo,* 448 F.3d at 149 (citing *Humane Soc'y of the United States v. Hodel,* 840 F.2d 45, 58 (D.C.Cir.1988)).

Defendants urge the Court to apply a slightly different standard for germaneness, arguing that, based on language in a footnote from the D.C. Circuit's *Hodel* decision, the germaneness requirement is not met unless the association

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
**(Cite as: Slip Copy)**

plaintiffs' claims affect "a critical mass of association members." (Defs.' Mem. in Supp. 31 (citing *Hodel,* 840 F.2d at 58 n. 21).) Even the *Hodel* Court did not apply such a stringent standard: the footnote expresses the court's "understanding that prong two guarantees that the grievances expressed in a suit apply to a critical mass of association members" in explaining another case rather than in reaching its own decision. *Hodel,* 840 F.2d at 58, n. 21. The *Hodel* Court neither adopts nor applies the "critical mass" language in its analysis of whether the germaneness requirement is satisfied. Moreover, the second prong of the *Hunt* standard is widely recognized-even by the *Hodel* court-to be "undemanding." *Id.* at 58. Perhaps for this reason, no federal court has applied the "critical mass" test here urged by Defendants. The Second Circuit's extensive exploration of the *Hodel* decision does not even refer to that decision's " critical mass" language. The Court finds, therefore, that Defendant's "critical mass" standard for germaneness is unsupported, and applies instead the standard recently explained by the Second Circuit: " whether an association's lawsuit would, if successful, reasonably tend to further the general interests that individual members sought to vindicate in joining the association and whether the lawsuit bears a reasonable connection to the association's knowledge and experience." *Building and Const. Trades Council of Buffalo,* 448 F.3d at 149 (citation omitted).[FN21]

> FN21. The Court notes, however, that there likely would be an issue of fact as to whether Association Plaintiffs could meet the "critical mass" standard; as Plaintiffs point out, "the declaratory and injunctive relief sought by the Medical Association Plaintiffs will inure to the benefit of each of their members with equitable claims." (Pls.' Mem. in Opp. 69.)

**\*21** Defendants have failed to show that there is no issue of fact as to either of these points. The relationship between medical care providers and insurance companies, and the compensation of those medical care providers, including decisions relating to the UCR reimbursement rate, are interests that may prompt individual members to join organizations such as the Medical Association Plaintiffs, and success in this lawsuit would vindicate those interests. Furthermore, these issues, which constitute the subject matter of this lawsuit, are reasonably related to the "knowledge and experience" of the Medical Association Plaintiffs. The Court finds, therefore, that the Medical Association Plaintiffs have satisfied the second prong of the *Hunt* test for purposes of this summary judgment motion.

**b. The Third Prong: Participation of Individual Members**

The third prong of the *Hunt* test for associational standing is that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt,* 432 U.S. at 343. In the October 2002 Order, the Court expressed its doubts about "whether the Medical Association Plaintiffs will be able to establish their representative claims with limited individual participation" but, in light of the procedural posture at that time, "accept[ed] the fact that it is possible." Oct.2002 Order at \*3. Following Stage One discovery, Defendants now contend that the Medical Association Plaintiffs cannot pursue their ERISA claims without individual member participation because such participation is necessary in order for the Association Plaintiffs to demonstrate, *inter alia,* exhaustion of administrative remedies and receipt of valid assignments from plan participants. The Court agrees.

As discussed in detail *supra* Section II.C.1, ERISA requires "that plan participants avail themselves of [administrative appeal] procedures before turning to litigation." *Eastman Kodak Co. v. STWB, Inc.,* 452 F.3d 215, 219 (2d Cir.2006) (citations omitted). Courts require that a plaintiff show that the ERISA claim has been administratively exhausted or that administrative exhaustion of that claim would be futile. *See Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588, 594 (2d Cir.1993). Defendants argue that individualized member participation would be required to demonstrate exhaustion of administrative remedies. Plaintiffs

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                Page 21

**Slip Copy, 2007 WL 1771498 (S.D.N.Y.)**
**(Cite as: Slip Copy)**

counter that this argument "may be disposed of easily," directing the Court to the section of their brief arguing that exhaustion of administrative remedies should be excused as futile. (Pls.' Mem. in Opp. 70.) The Court has found, however, that the futility exception does not apply in this case, *see supra* Section II.C.4. Consequently, Plaintiffs must show that they did exhaust their administrative remedies for each of the ERISA claims for benefits at issue in this litigation, and Provider Plaintiffs cannot do this without the participation of their members, who must provide detailed information regarding claims and appeals in order to show administrative exhaustion. The detailed and fact-specific inquiry required for a determination of whether ERISA's administrative exhaustion requirement has been satisfied essentially forecloses an association's ability to proceed in such cases without individualized member participation.[FN22]

> FN22. Plaintiffs also assert that "since ERISA explicitly permits a claim to clarify future benefits, exhaustion as a prerequisite to such injunctive relief is clearly unnecessary." (Pls.' Mem. in Opp. 70.) Plaintiffs point to no law supporting this argument, and courts in this jurisdiction have held otherwise. *See Schein v. News Am. Publishing, Inc.,* No. 89 Civ. 0052, 1989 WL 56255, *2 (S.D.N.Y. May 23, 1989) (holding that the administrative exhaustion requirement applies to actions seeking declaratory relief).

**\*22** Because the ERISA administrative exhaustion requirement does not apply to Plaintiffs' bona fide breach of fiduciary claims, *see supra* Section II.5, it alone would not preclude the Medical Association Plaintiffs' satisfying the third prong of the *Hunt* test. However, the Medical Association Plaintiffs must still show receipt of valid assignments to proceed in their ERISA claims, even for breach of fiduciary duty. The Court finds that the Medical Association Plaintiffs could not make such a detailed and fact-intensive showing without the participation of their individual members.

Because a showing is required that administrative remedies have been exhausted and that assignments have been received, and because to make such showings the Medical Association Plaintiffs would be forced to rely on participation by their members, the Court finds that the Medical Association Plaintiffs fail the third prong of the *Hunt* test for their ERISA claims. Defendants' motion for summary judgment on all the ERISA claims of the Medical Association Plaintiffs is therefore GRANTED.[FN23]

> FN23. The Medical Association Plaintiffs remain in this litigation for their non-ERISA claims.

**E. Proper Defendants**

Defendants next argue that they are entitled to summary judgment because Plaintiffs "cannot maintain ERISA claims brought against the wrong parties." (Defs.' Mem. in Supp. 33.) In ordering Stage One discovery, the Court observed that it would allow both sides to resolve not only the issues of administrative exhaustion and standing for various parties, but also of who constituted "the proper defendants" in this action. Oct.2002 Order at * 2. After having conducted this discovery, Defendants now assert that summary judgment should be granted for all of Plaintiffs' ERISA claims against Defendant Ingenix and for all of Plaintiffs' ERISA claims for monetary benefits against all United Defendants.

**1. ERISA Claims against Ingenix**

Defendants first urge the Court to grant summary judgment for "all Plaintiffs' ERISA claims against Ingenix because it is not a proper party in this action " with respect to Plaintiffs' ERISA claims for monetary benefits and breach of fiduciary duty. (Defs.' Mem. in Supp. 34.) Ingenix is a wholly-owned subsidiary of United HealthCare, and in their Third Amended Complaint Plaintiffs define United HealthCare to include Ingenix. (TAC ¶ 1, 23.) Accordingly, as it now stands, each of Plaintiffs' claims against United HealthCare is also

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
**(Cite as: Slip Copy)**

asserted against Ingenix.

### a. ERISA Claims against Ingenix for Monetary Benefits

First, with regard to Plaintiffs' ERISA claims for monetary benefits, Defendants argue that such claims cannot be maintained against Ingenix because it is not an Employer Plan or an ERISA Plan Administrator. (Defs.' Mem. in Supp. 35.) It is well-settled-both within this Circuit and within the instant litigation-that claims for monetary benefits under ERISA § 502(a)(1)(B) may be asserted only against "the plan, or the administrators or trustees of the plan." Oct.2002 Order at *5 (citing *AMA v. UHC*, No. 00 Civ. 2800, 2001 WL 863561, at *5 (S.D.N.Y. July 31, 2001); *Chapman v. Choicecare Long Island Term Disability Plan*, 288 F.3d 506, 620 (2d Cir.2002); *Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir.1998); *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir.1989)). Plaintiffs, in apparent recognition of this point, " disclaim any 502(a)(1)(B) benefits claim against Ingenix" in their opposition papers. (Pls.' Mem. in Opp. 71.) For this reason, and because there is no issue of fact as to whether Ingenix is a plan, administrator, or trustee of any of the Employer Plans at issue in this litigation, Defendants' motion for summary judgment is GRANTED as to Plaintiffs' ERISA claims for monetary benefits against Ingenix.

### b. ERISA Claims against Ingenix for Breach of Fiduciary Duty

**\*23** Second, with regard to Plaintiffs' ERISA claims for breach of fiduciary duty against Ingenix, Defendants assert that they are entitled to summary judgment "because Ingenix is not a named or functional fiduciary as to any of Plaintiffs' Employer Plans." (Defs.' Mem. in Supp. 36.) Plaintiffs concede that Ingenix is not a named fiduciary for the Employer Plans but argue that they have introduced evidence to create an issue of material fact as to whether Ingenix is a functional fiduciary for the Employer Plans. Plaintiffs contend that Defendant Ingenix is a functional fiduciary and

therefore a proper defendant to their ERISA claims for breach of fiduciary duty because it exercises discretionary "authority and control respecting plan management or assets" in two ways: first, through " its creation and sale of PHCS data which substantially determine plan reimbursements," and, second, through its actions in defense of the "PHCS database, methodology, and reimbursement decisions, including through direct communications with beneficiaries on behalf of its United Healthcare parent and affiliates." (Pls.' Mem. in Opp. 71.)

Under Section 3(21)(A) of ERISA, a person is a fiduciary with respect to a plan when, *inter alia*, "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or ... has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Thus, as the Second Circuit has observed, "whether or not an individual or entity is an ERISA fiduciary must be determined by focusing on the function performed, rather than on the title held." *Blatt v. Marshall and Lassman*, 812 F.2d 810, 812 (2d Cir.1987). In assessing whether an entity or individual is a functional fiduciary under ERISA, courts distinguish between those who "exercise ... discretionary authority or control over plan management or administration," *Siskind v. Sperry Ret. Program, Unisys*, 47 F.3d 498, 505 (2d Cir.1996), and those who "perform[ ] purely ministerial functions for a benefit plan," *Blatt*, 812 F.3d at 813 (citation omitted).

Those who carry out ministerial functions-that is, functions that do not involve the exercise of discretion or control-do not qualify as ERISA fiduciaries. *Id.* (citing 29 C.F.R. § 2509.75-8); *see also Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 21 (2d Cir.1996). "Such ministerial functions include the application of rules determining eligibility for participation, calculation of services and benefits, and collection of contributions." *Blatt*, 812 F.2d at 812. However, those who perform functions that do involve the exercise of discretion or control over the management of a plan, the management or disposition of its assets, or the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1771498 (S.D.N.Y.)
**(Cite as: Slip Copy)**

administration of a plan qualify as fiduciaries for purposes of ERISA even if they do not have absolute discretion over the benefit plan. 29 U.S.C. § 1002(21)(A). As the Second Circuit has explained, "[a]n entity need not have absolute discretion with respect to a benefit plan in order to be considered a fiduciary; rather, fiduciary status exists with respect to any activity enumerated in the statute over which the entity exercises discretion or control." *Blatt*, 812 F.2d at 812.

*24 Plaintiffs assert that Defendant Ingenix is a functional fiduciary and therefore a proper defendant to their ERISA claims for breach of fiduciary duty because, *inter alia*, it exercises discretionary "authority and control respecting plan management or assets" through "its creation and sale of PHCS data which substantially determine plan reimbursements ..." (Pls.' Mem. in Opp. 71.) Defendants counter that the creation and dissemination of the PHCS data is, if anything, a mere recommendation rather than an exercise of discretionary authority or control because the ultimate decision rests with the Plans or their administrators (rather than Defendant Ingenix), who determine what percentage of the PHCS figure to reimburse and whether to depart from that " recommended" figure in reimbursement decisions.

The exact process by which UCR is determined for each of the plans is a question largely beyond the scope of Stage One discovery, which was "limited to determining the proper parties in this action as opposed to the merits of the case." Oct.2002 Order at *2. While the question of whether Defendant Ingenix is a proper party is appropriately raised here, the answer to that question is entwined with facts relating to the merits of this case and therefore not yet adequately explored. The Court thus finds that at this point Defendants have failed to show that there is no issue of material fact as to whether Defendant Ingenix functioned as a fiduciary for the plans. Whether Defendant Ingenix's role in creating the PHCS figure is a simple "calculation of benefits" -and therefore a ministerial function-or an act of discretionary "authority or control respecting management or disposition of [a plan's] assets" that gives rise to fiduciary status is a question of fact that cannot be resolved in this Stage One summary

judgment motion.[FN24] Defendants' motion to for summary judgment as to Plaintiffs' ERISA fiduciary duty claims against Defendant Ingenix is therefore DENIED, although Defendants may reassert it following merits discovery.[FN25]

> FN24. Plaintiffs' other asserted basis for arguing that Defendant Ingenix functioned as a fiduciary is that Ingenix representatives communicated directly with beneficiaries regarding benefits decisions. (Pls.' Mem. in Opp. 74.) The Court need not reach the question of whether this is sufficient to give rise to fiduciary status.

> FN25. Because Plaintiffs have withdrawn their ERISA claims for benefits against Ingenix and because the Court finds that Plaintiffs are entitled to proceed against Ingenix with their remaining ERISA claims for breach of fiduciary duty, it does not reach the question of whether Ingenix could be liable as an alter ego of United Healthcare.

### 2. ERISA Benefits Claims against United Defendants

Finally, Defendants seek summary judgment in their favor for all Plaintiffs' ERISA benefits claims against all United Defendants because "none of the United Defendants is the Plan or the plan administrator" of the Employer Plans at issue in this action. (Defs.' Mem. in Supp. 40.)

As this Court has observed in two previous decisions in this litigation, "the law in the Second Circuit is very clear-a claim for benefits can be brought against the plan, or the administrators and trustees of the plan." Oct.2002 Order at *5 (citing *AMA v. UHC,* No. 00 Civ. 2800, 2001 WL 863561, at *5 (S.D.N.Y. July 31, 2001); *Chapman v. Choicecare Long Island Term Disability Plan,* 288 F.3d 506, 620 (2d Cir.2002); *Crocco v. Xerox Corp.,* 137 F.3d 105, 107 (2d Cir.1998); *Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1199 (2d Cir.1989) ). In its October 2002 decision ordering discovery

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                     Page 24

**Slip Copy, 2007 WL 1771498 (S.D.N.Y.)**
**(Cite as: Slip Copy)**

to determine who served as the plan administrators for the four Employer Plans at issue in this litigation, this Court also held that insurance companies, even if not designated as plan administrators, could be sued in that capacity if they "actually controlled the distribution of funds and decided whether or not to grant benefits under one of the plans ..." Oct. 2002 Order at *6 (citing *Sheehan v. Metro. Life Ins. Co.,* No. 01 Civ. 9182(CSH), 2002 WL 1424592 (S.D.N.Y. June 28, 2002)).

*\*25* In denying Defendants' subsequent motion for reconsideration, this Court reaffirmed its understanding that an insurance company could, by means of certain actions, assume the mantle of de facto plan administrator and thereby be subject to ERISA claims for monetary benefits, and noted its belief that such understanding was not inconsistent with Second Circuit precedent because "specific facts may take a case out of the black letter rule of *Crocco.*" *Am. Med. Assn. v. United Healthcare, Inc.,* No. 00-2800, 2003 WL 348963, *1 (S.D.N.Y. Feb. 7, 2003). As the Court then emphasized, "the time to address the issue [of whether any of the United Defendants may be sued for benefits as a de facto plan administrator] is after the relevant discovery is complete." *Id.* at *2.

### a. ERISA Benefits Claims against United Defendants for the American Airlines, Osram, and Chase Plans

Defendants now present evidence obtained during Stage One discovery as to "the identities of de jure administrators" for three of the four Employer Plans, pointing to plan documents identifying American Airlines as the ERISA administrator of the American Airlines Plan, Osram Sylvania as administrator for the Osram Plan, and Chase Manhattan Bank as the designated administrator of the Chase Manhattan Plan. (Defs.' Reply 47, Kemper Exs. 1, 2, 3.) Plaintiffs do not dispute that these entities are the designated plan administrators for the American Airlines, Osram, and Chase Manhattan Plans,[FN26] instead arguing that United Defendants were de facto administrators for each of these three plans and that the existence of a

designated plan administrator does not preclude claims for benefits against a de facto administrator.

> FN26. The parties do dispute who is designated as the plan administrator for the PEC Plan. See *infra* Section II.E.2.b.

The Second Circuit, however, has rejected this argument, holding that claims for benefits under ERISA § 502(a)(1)(B) may not be maintained against a de facto administrator when a designated administrator has been named for the plan. *See Crocco,* 137 F.3d at 107; *Lee,* 991 F.2d at 1010. In both *Lee* and *Crocco,* the Second Circuit cited with approval the Tenth Circuit's decision in *McKinsey v. Sentry Ins. Co.,* 986 F.2d 401 (10th Cir.1993), which relied on the unambiguous statutory language in reaching its conclusion that de facto administrators could not be sued for monetary benefits when the plan had a designated administrator: "[29 U.S.C. § ] 1002(16)(A) provides that if a plan specifically designates a plan administrator, that individual or entity is *the* plan administrator for purposes of ERISA." *McKinsey,* 986 F.2d at 404.

In this case, as in *Crocco,* the underlying plan documents for these three of the four Employer Plans specifically identify the designated administrators for each plan. While Plaintiffs present facts to make a convincing showing that United Defendants and their representatives played a significant role in decisions regarding benefits and in communicating about those decisions with plan beneficiaries, Plaintiffs do not dispute that the American Airlines, Osram, and Chase Plans each designated a plan administrator other than one of the United Defendants. The facts regarding the extent of United Defendants' involvement in and control or authority over benefits decisions may give rise to functional fiduciary status and are therefore relevant to Plaintiffs' ERISA breach of fiduciary duty claims, but whether they are sufficient to create an issue of fact regarding whether United Defendants served as de facto administrators of any of these three plans is immaterial in light of the undisputed fact that each of these three plans designated a plan administrator.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 25

**Slip Copy, 2007 WL 1771498 (S.D.N.Y.)**
**(Cite as: Slip Copy)**

**\*26** In light of the undisputed fact that the American Airlines, Osram Sylvania, and Chase Manhattan Plans all have designated administrators other than United Defendants, Defendants' motion for summary judgment on Plaintiffs' claims against them for monetary benefits under ERISA § 502(a)(1)(B) is GRANTED in relation to those three plans.

#### b. ERISA Benefits Claims against United Defendants for the PEC Plan

While the law regarding parties against whom claims for monetary benefits may be brought is the same for all four Employer Plans-that is, such claims may not be sustained against a de facto administrator when a plan has a designated administrator-the facts uncovered during Stage One discovery are slightly different with respect to the PEC Plan. Unlike for the American Airlines, Osram, and Chase Plans, for the PEC Plan there exists a factual dispute as to who, if anyone, is designated as the plan administrator.

Plaintiffs contend that United Healthcare of Minnesota is designated as the plan administrator on the plan certificate and that United Healthcare serves as a de facto administrator for the PEC Plan. (Pls.' Mem. in Opp. 79-80.) Defendants assert that the designation on the PEC certificate of coverage was a mere "license[ ] to perform third party administrative claims processing services" rather than a designation of United Healthcare of Minnesota as the plan's ERISA plan administrator. (Defs.' Mem. in Reply 49.)

In addition to this factual dispute regarding who is the designated ERISA plan administrator, Plaintiffs also assert that United Healthcare functioned as a de facto administrator for the PEC Plan by "grant[ing] or den[ying] benefits, mak [ing] UCR determinations, interface[ing] with beneficiaries who have questions, and decide[ing] appeals." (Pls.' Mem. in Opp. 80.) As discussed *supra* Section II.E.2, in the absence of a designated plan administrator, claims for benefits may be maintained against de facto administrators who satisfy certain criteria. Whether United Healthcare's

actions in relation to the PEC Plan qualify it as a de facto administrator is a question of fact.

The Court finds that Plaintiffs have created an issue of fact regarding who is designated as the ERISA plan administrator for the PEC Plan and whether, if there is no such designated administrator, United Healthcare is a de facto administrator for that plan. Defendants' motion for summary judgment as to Plaintiffs' ERISA claims for benefits relating to the PEC Plan is therefore DENIED.

#### III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment regarding the Stage One issues is GRANTED IN PART AND DENIED IN PART. It is GRANTED with respect to Plaintiffs' Unexhausted Claims for benefits under ERISA, Plaintiffs' Exemplar Claims for benefits under ERISA, the Medical Association Plaintiffs' claims for benefits and for breach of fiduciary duty under ERISA, Plaintiffs' ERISA claims for monetary benefits against Ingenix, and Plaintiffs' ERISA claims for monetary benefits against United Defendants in relation to the American Airlines, Chase, and Osram Plans; the motion is DENIED in all other respects.

**\*27** SO ORDERED.

S.D.N.Y.,2007.
American Medical Ass'n v. United HealthCare Corp.
Slip Copy, 2007 WL 1771498 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.